## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Reem Bridals, LLC,<br><br>            Plaintiff,<br><br>    v.<br><br>The Burlington Insurance Company and Alterra America Insurance Company,<br><br>            Defendants. | Case No.  1:25-cv-07817-CM |

**DEFENDANT ALTERRA AMERICA INSURANCE COMPANY N/K/A PINNACLE NATIONAL INSURANCE COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)**

TROUTMAN PEPPER LOCKE LLP
*Attorneys for Defendant Alterra America*
*Insurance Company n/k/a Pinnacle National*
*Insurance Company*
875 3rd Avenue
New York, NY 10022
Tel.: (212) 704-6256
Fax: (202) 654-5807

On the Brief:  Daniel W. Cohen
               Richard J. Pratt
               Matthew J. Griffin

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................1

II.     FACTUAL BACKGROUND ..............................................................................2

    A.      The Policies ..............................................................................................2

    B.      Reem's Underlying Claims Against MJR .................................................3

    C.      Alterra's Default Judgment Against MJR .................................................3

    D.      The Instant Lawsuit .................................................................................6

III.    LEGAL STANDARD ........................................................................................7

IV.     ARGUMENT .....................................................................................................8

    A.      Plaintiff's First Cause of Action Under N.Y. Ins. Law § 3420 Must Be
         Dismissed .................................................................................................8

        1.      Plaintiff's Complaint Is Subject to Dismissal Under the Doctrine of
               *Res Judicata* ...............................................................................8

        2.      In Any Event, the Alterra Excess Policy Was Rescinded and Is
               Null and Void *Ab Initio* ............................................................10

        3.      In the Alternative, the Alterra Excess Policy's Total Pollution
               Exclusion Bars the Coverage Reem Now Seeks .........................12

    B.      Plaintiff's GBL 349 Claim Is Also Subject to Dismissal ......................16

        1.      Reem Fails to Allege Consumer-Oriented Conduct .................18

        2.      Reem Fails to Allege Deceptive or Misleading Conduct .........21

        3.      Reem Fails to Allege Causation ...............................................23

V.      CONCLUSION ................................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................................7, 9, 20

*Associated Indus. Ins. Co. v. Farahnik*,
   239 A.D.3d 533 (1st Dep't 2025) ..........................................................................11

*Caldwell v. Gutman, Mintz, Baker & Sonnenfeldt, P.C.*,
   701 F. Supp. 2d 340 (E.D.N.Y. 2010) ..................................................................20

*Conboy v. AT&T Corp.*,
   241 F.3d 242 (2d Cir. 2001) ..........................................................................21, 22

*D'Arata v. N.Y. Cent. Mut. Fire Ins. Co.*,
   76 N.Y.2d 659 (1990) ...........................................................................................9

*Euchner-USA, Inc. v. Hartford Cas. Ins. Co.*,
   754 F.3d 136 (2d Cir. 2014) ..........................................................................19, 20

*Evvtex Co. v. Hartley Cooper Associates Ltd.*,
   911 F. Supp. 732 (S.D.N.Y. 1996) ..................................................................20, 22

*Fed. Ins. Co. v. Distinguished Props. Umbrella Managers Inc.*,
   721 F. Supp. 2d 293 (S.D.N.Y. 2010) ..................................................................20

*Fika Midwifery PLLC v. Indep. Health Ass'n, Inc.*,
   208 A.D.3d 1052 (4th Dep't 2022) .......................................................................18

*Folksamerica Reinsurance Co. v. Clean Water of N.Y., Inc.*,
   413 F.3d 307 (2d Cir. 2005) .................................................................................13

*Freedom Gravel Prods., Inc. v. Mich. Mut. Ins. Co.*,
   819 F. Supp. 275 (W.D.N.Y. 1993) .......................................................................13

*Gaidon v. Guardian Life Ins. Co. of Am.*,
   94 N.Y.2d 330 (1999) ....................................................................................21, 22

*Giannone v. York Tape & Label, Inc.*,
   548 F.3d 191 (2d Cir. 2008) .................................................................................17

*Glob. Network Commcn's, Inc. v. City of New York*,
   458 F.3d 150 (2d Cir. 2006) ..............................................................................1, 7

*Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v. Matthew Bender & Co.*,
    37 N.Y.3d 169 (2021) ................................................................................17

*INA Underwriters Ins. Co. v. D.H. Forde & Co.*,
    630 F. Supp. 76 (W.D.N.Y. 1985) ...........................................................12

*JD & K Assocs., LLC v. Selective Ins. Grp., Inc.*,
    143 A.D.3d 1232 (4th Dep't 2016) ...........................................................19

*Kerisli Chiropractic, P.C. v. Am. Transit Ins. Co.*,
    86 N.Y.S.3d 858 (N.Y. Civ. Ct. 2018) .......................................................9

*Kim-Chee LLC v. Phila. Indem. Ins. Co.*,
    535 F. Supp. 3d 152 (W.D.N.Y. 2021) .....................................................22

*Kiss Constr. NY, Inc. v. Rutgers Cas. Ins. Co.*,
    61 A.D.3d 412 (1st Dep't 2009) ...............................................................10

*Lang v. Hanover Ins. Co.*,
    3 N.Y.3d 350 (2004) ......................................................................9, 11, 15

*Lautman v. 2800 Coyle St. Owners Corp.*,
    No. 13-CV-967 (ARR)(VVP), 2014 WL 2200909 (E.D.N.Y. May 23, 2014) ......................20

*Lazides v. P & G Enters.*,
    58 A.D.3d 607 (2d Dep't 2009) ...............................................................8, 9

*Lobello v. N.Y. Cent. Mut. Fire Ins. Co.*,
    152 A.D.3d 1206 (4th Dep't 2017) ...........................................................19

*Michelo v. Nat'l Collegiate Student Loan Tr. 2007-2*,
    419 F. Supp. 3d 668 (S.D.N.Y. 2019) ....................................................9-10

*Migra v. Warren City Sch. Dist. Bd. of Educ.*,
    465 U.S. 75 (1984) .....................................................................................8

*Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*,
    815 F. Supp. 2d 679 (S.D.N.Y. 2011) ...........................................1, 2, 4, 7, 15

*N.Y. Cent. Mut. Fire Ins. Co. v. Kilmurray*,
    181 A.D.2d 40 (3d Dep't 1992) ...............................................................8, 9

*N.Y. Univ. v. Cont'l Ins. Co.*,
    87 N.Y.2d 308 (1995) ...............................................................................18

*O'Brien v. City of Syracuse*,
    54 N.Y.2d 353 (1981) ...............................................................................17

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*,
    85 N.Y.2d 20 (1995) ....................................................................................18, 21

*PB Ams. Inc. v. Cont'l Cas. Co.*,
    690 F. Supp. 2d 242 (S.D.N.Y. 2010) ..........................................................19

*Republic Franklin Ins. Co. v. L&J Realty Corp.*,
    280 A.D.2d 351 (1st Dep't 2001) ..................................................................14

*Robbins v. Growney*,
    229 A.D.2d 356 (1st Dep't 1996) ....................................................................8

*Simmons v. Trans Express Inc.*,
    355 F. Supp. 3d 165 (E.D.N.Y. 2019) ............................................................8

*SJN Props. LLC v. Harleysville Ins. Co.*,
    738 F. Supp. 3d 405 (S.D.N.Y. 2024) ..........................................................17

*Small v. Lorillard Tobacco Co.*,
    94 N.Y.2d 43 (1999) ................................................................................21, 23

*TechnoMarine SA v. Giftports, Inc.*,
    758 F.3d 493 (2d Cir. 2014) ............................................................................8

*Temple Constr. Corp. v. Sirius Am. Ins. Co.*,
    40 A.D.3d 1109 (2d Dep't 2007) ..................................................................20

*Thompson v. Cnty. of Franklin*,
    15 F.3d 245 (2d Cir. 1994) ..............................................................................7

*Tonoga, Inc. v. N.H. Ins. Co.*,
    201 A.D.3d 1091 (3d Dep't 2022) ................................................................13

*Vigilant Ins. Co. v. V.I. Techs., Inc.*,
    253 A.D.2d 401 (1st Dep't 1998) ..................................................................14

*Yoon v. Fordham Univ. Fac. & Admin. Ret. Plan*,
    263 F.3d 196 (2d Cir. 2001) ............................................................................8

*Zimmerman v. Tower Ins. Co. of N.Y.*,
    13 A.D.3d 137 (1st Dep't 2004) ......................................................................9

**Statutes**

N.Y. Gen. Bus. Law § 349 ................................................................................ *passim*

N.Y. Ins. Law § 3420 ..................................................................................8, 9, 15, 16

**Other Authorities**

1 RCNY § 101-08 ................................................................................................................15, 16

## I.    **INTRODUCTION**

Eight years ago, Defendant Alterra America Insurance Company n/k/a Pinnacle National Insurance Company ("Alterra") obtained a default judgment against its former insured, MJR Construction Services Corp. ("MJR"), on the basis of a blatant *fraud* and *forgery* (the "Fraud and Forgery Judgment"). Based on the overwhelming evidence provided, the Fraud and Forgery Judgment declared the relevant insurance policy issued by Alterra null, void *ab initio*, and rescinded, and further declared that no benefit was due and/or owing to MJR or anyone else based on the relevant policy. The Fraud and Forgery Judgment also declared that coverage was barred for the action styled *R.A. Luxury LLC, et al. v. The Chetrit Group LLC, et al.*, Index No. 150365/2016 (N.Y. Sup. Ct. N.Y. Cnty.) (the "Underlying Smoke and Soot Action"). After obtaining its own default judgment against MJR in the Underlying Smoke and Soot Action, Plaintiff Reem Bridals, LLC ("Reem" or "Plaintiff") now seeks a declaration here in its complaint (the "Complaint") that its default judgment (the "Reem Judgment") should be honored and all others ignored. Specifically, Reem demands that Alterra reimburse it for the Reem Judgment eight years after Alterra's December 21, 2017 Fraud and Forgery Judgment.[1] Reem also argues that Alterra violated New York General Business Law Section 349 ("GBL 349"). Plaintiff's action is, however, plainly barred for at least four reasons.

---

[1] The Court may consider the Fraud and Forgery Judgment in connection with this motion for two reasons. First, Reem's Complaint made "a clear, definite and substantial reference to the documents." *Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 815 F. Supp. 2d 679, 691 (S.D.N.Y. 2011). Second, the Court "may take judicial notice of a document filed in another court . . . ." *Glob. Network Commc'n, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006). Here, the Complaint explicitly refers to the Fraud and Forgery Judgment (*see* Compl., ¶ 32,) and the Fraud and Forgery Judgment is a document from a related state court action. The Fraud and Forgery Judgment was initially entered on December 21, 2017, amended on February 16, 2018, and corrected on April 9, 2018 to reference the appropriate policy numbers. (*See* Exhibit 1, Declaration of Daniel W. Cohen ("Cohen Decl."), Exs. G, H, I.)

First, the Fraud and Forgery Judgment is *res judicata* as to all claims brought by Reem in this instant action.  The Fraud and Forgery Judgment against MJR rescinded and declared *void ab initio*, *inter alia*, Alterra Policy No. MAXA3EC50001169 (the "Alterra Excess Policy").  That judgment is binding on Reem, which is in privity with MJR for purposes of application of *res judicata* under controlling law.  Second and relatedly, because the policy issued by Alterra is null, void *ab initio*, and rescinded (as Reem acknowledges in its Complaint), there is no policy from which Reem can recover.  Third, the Alterra Excess Policy's Total Pollution Exclusion plainly bars coverage for the Underlying Smoke and Soot Action, further barring all of Reem's claims in this action.  Fourth, Reem fails to (and cannot) allege the prerequisites necessary to maintain its GBL 349 claim against Alterra.

Accordingly, under New York law and Federal Rule of Civil Procedure 12(b)(6), Plaintiff's wasteful and feckless Complaint must be dismissed.

## II.    FACTUAL BACKGROUND

### A.    The Policies

The Alterra Excess Policy was issued to MJR for the policy period March 2, 2014 to October 27, 2014, and provided coverage, subject to its terms and conditions, excess of policy no. 509BW27687 issued by The Burlington Insurance Company (the "Burlington Policy" and, together with the Alterra Excess Policy, the "Policies").  (*See* Compl., Exs. 1–2.)[2]  The Alterra Excess Policy generally "follows form" in that it is "subject to the same terms, conditions, agreements, exclusions and definitions as the 'Underlying Insurance'[.]"  (*See id.*, Ex. 2 (Section

---

[2] As "documents appended to the complaint or incorporated in the complaint by reference," *Mosdos*, 815 F. Supp. 2d at 691, this Court may consider the Policies in adjudicating this motion to dismiss under Rule 12(b)(6).

I.1.b.).)  The Burlington Policy is the relevant "Underlying Insurance."  (*See id.* (Schedule of Underlying Insurance).)

The Alterra Excess Policy's Total Pollution Exclusion provides that the Alterra Excess Policy does not apply to any liability "which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants' at any time."  (*See, e.g.*, *id.*, Ex. 1 (Section I.2.f. (as amended by and referred to in the pertinent policy language itself and herein as the "Total Pollution Exclusion")); *see also* Compl., ¶ 31.)  The pertinent policy language defines "pollutants" to mean "any solid, liquid, gaseous or thermal irritant or contaminant, including . . . ***smoke***, vapor, ***soot***, fumes, acids, alkalis, chemicals and waste."  (*See, e.g.*, Compl., Ex. 1 (Section V.15.) (emphasis added).)

### B.    Reem's Underlying Claims Against MJR

In or about January 2016, Reem and its insurance company initiated the Underlying Smoke and Soot Action against MJR and other entities concerning property damage at Reem's studio caused by "soot and smoke" from a fire allegedly caused by two MJR employees' negligence at a nearby building.  (Compl., ¶¶ 10–11.)  The court in the Underlying Smoke and Soot Action recently "entered a judgment on default in favor of Reem against MJR" and subsequently "awarded Reem damages, jointly and severally, against the defaulting defendants, including MJR, in the amount of $20,912,897 along with statutory interest, less credits, with costs and disbursements." (*Id.*, ¶ 12.)  "On June 4, 2025, a judgment was entered in favor of Reem against MJR and the other defaulting defendants in the amount of $38,666,735.94[.]"  (*Id.*)

### C.    Alterra's Default Judgment Against MJR

On or about June 14, 2016, Burlington brought suit against MJR in an action styled *The Burlington Insurance Company, et al. v. MJR Construction Services Corp.*, Index No. 653129/2016 (N.Y. Sup. Ct. N.Y. Cnty.) (the "Fraud and Forgery Action"), seeking a declaration

that the Burlington Policy did not provide coverage to MJR.  (*Id.*, ¶ 20.)  Alterra intervened in the Fraud and Forgery Action and, in its intervenor complaint, sought a declaration that the Alterra Excess Policy was rescinded, null, and void *ab initio* owing to MJR's obvious fraud and forgery.

MJR was named after Michael J. Russell ("Michael"), but Michael's father, Steven Russell ("Steven"), ran MJR.  Michael, however, had practically no responsibilities and was a "figurehead" whose name was "used to incorporate the company."  (*See* Cohen Decl., Ex. B (Oct. 21, 2020 Steven Russell Dep. 13:21-23, 15:13-16); *see also id.*, Ex. C (Jan. 4, 2021 Steven Russell Dep. 84:23-25, 85:5-9, 86:21-87:4, 90:13-17).)[3]  In a different litigation, when asked whether Michael was "involved in running [MJR] when it first began," Steven responded, "[n]ot at all.  Like I had a rubber stamp[,]" and that he, Steven, was "the one running the company" because Michael "was in school."  (*Id.*, Ex. C (Jan. 4, 2021 Steven Russell Dep. 94:24-95:8).)  Steven also admitted that "from start to finish it was [Steven] running the company and not Michael[.]"  (*Id.* (Jan. 4, 2021 Steven Russell Dep. 95:9-11).)  For his part, Michael swore out an affidavit in the Fraud and Forgery Action and averred, among other things, that his father Steven "had fraudulently used my name and/or signature, without my knowledge or consent, to execute Company financial and operational transactions."  (*See* Cohen Decl., Ex. A (Michael Russell Aff., ¶ 12).)  Michael went on to state that he had "never signed my signature on any document relating to insurance coverage, including applications or representations in connection thereto, on behalf of the Company," nor had he ever "consented or authorized any person to sign my signature on any document relating to insurance coverage, including applications or representations in connection thereto."  (*Id.* (Michael

---

[3] As "documents appended to the complaint or incorporated in the complaint by reference," *Mosdos*, 815 F. Supp. 2d at 691, this Court may consider the October 2020 and January 2021 deposition transcripts, as well as the Affidavit of Michael Russell in the Fraud and Forgery Action, in adjudicating this motion to dismiss under Rule 12(b)(6).  (*See* Compl., ¶¶ 24-25, 28.)

Russell Aff., ¶¶ 15-16).)  Michael Russell, in his affidavit, further confirmed that none of *nineteen* documents signed as "Michael Russell" was truly his signature and that he was not aware of those documents—in other words, those documents (including the application for the Alterra Excess Policy) were fraudulently procured with his signature as *forgeries*.  (*Id.* (Michael Russell Aff., ¶¶ 19-38).)

In addition to the declaration regarding the rescission of the Alterra Excess Policy, Alterra further sought a declaration that the Alterra Excess Policy did not provide coverage for the Underlying Smoke and Soot Action due to (1) the Alterra Excess Policy's Pollution Exclusion; (2) MJR's breach of the Alterra Excess Policy's Cooperation Provision; and (3) MJR's breach of the Alterra Excess Policy's Notice Provision.  (*See id.*, Ex. F (Alterra's Intervenor Complaint in the Fraud and Forgery Action, ¶¶ 52-63).)[4]

On December 21, 2017, after granting Alterra's Motion to Intervene in the Fraud and Forgery Action (*See id.*, Ex. E (Order Granting Alterra's Motion to Intervene in the Fraud and Forgery Action)), and after MJR repeatedly failed to appear or respond, the court there entered the Fraud and Forgery Judgment against MJR in favor of Alterra "for a declaration that [the Alterra Excess Policy] is null, void ab initio, rescinded, and that no benefit under the [Alterra Excess Policy] is due and/or owing to [MJR] or anyone with a claim against [MJR] based on the alleged forgery of documents provided to Alterra in connection with the application and issuance of the [Alterra Excess Policy]."  (*See* Compl., ¶ 32; *see also* Cohen Decl., Exs. G, H, I.)  The court in the Fraud and Forgery Action went on to hold:

---

[4] Alterra does not raise the latter two defenses here but reserves the right to defend against this action on those bases, if need be, at a later date.

[Alterra] ha[s] submitted proof of service of the summons and complaint and proof of service of this motion upon [MJR]. [MJR] has defaulted in appearance on this motion. [Alterra] has further submitted an affidavit of facts pursuant to CPLR 3215(f), as well as evidence of the default of defendants by attorney affirmation. [Alterra] has also submitted proof of the additional mailing of the summons required by CPLR 3215(g)(4). This motion is brought within one year of the default. The court shall therefore grant a declaratory judgment on default against [MJR] for the relief sought in the Complaint.

. . .

[I]t is further ADJUDGED and DECLARED that [Alterra] . . . ha[s] no duty or obligation to defend or indemnify [MJR] with respect to claims asserted in the [Underlying Smoke and Soot Action] . . . .

(Cohen Decl., Exs. G, H.) By operation of the Fraud and Forgery Judgment, the Alterra Excess Policy was null, void *ab initio*, and rescinded. A few years later, on August 3, 2021, the court in the Fraud and Forgery Action similarly entered "a judgment on default against MJR in favor of Burlington's motion that Burlington owes no duty to defend or indemnify MJR." (Compl., ¶ 33.)

### D.    The Instant Lawsuit

On or about August 19, 2025, Reem filed this action in the Supreme Court of New York, County of New York, Index No. 654960/2025 (the "State Court Action"), seeking a declaration that Alterra and Burlington "are obligated to reimburse Reem for the June 2025 judgment entered against" MJR. (Compl., ¶ 1.) Alterra was served with a copy of the summons and Complaint on or about August 21, 2025. (*See* ECF No. 1 (Notice of Removal, Ex. A).) On or about September 19, 2025, Alterra timely removed the State Court Action to this Court and filed its notice of notice of removal in the State Court Action. (*Id.* (Notice of Removal).)

-6-

Reem alleges that it "is entitled to a judgment declaring that Burlington and Alterra must indemnify MJR in the Underlying Action, and that Burlington and Alterra must satisfy the Judgment against MJR up to the limits of the Burlington and Alterra policies[,]" and further that "Burlington and Alterra have violated General Business Law ('GBL') § 349 by misrepresenting their coverage while engaging in the unfair claims practices . . . and by improperly refusing to pay the Judgment against MJR up to the limits of the Burlington and Alterra policies." (Compl., ¶¶ 42, 46.)

## III.   LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

"Generally, '[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken.'" *Mosdos*, 815 F. Supp. 2d at 691. For a document to be incorporated by reference, "the [c]omplaint must make a clear, definite and substantial reference to the documents." *Id.* The Court may take judicial notice of "a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." *Global Network*, 458 F.3d at 157.

Further, it is well settled that "*res judicata* challenges may properly be raised via a motion to dismiss for failure to state a claim under Rule 12(b)(6)." *Thompson v. Cnty. of Franklin*, 15 F.3d 245, 253 (2d Cir. 1994). "A court may consider a *res judicata* defense on a Rule 12(b)(6)

motion to dismiss when the court's inquiry is limited to the plaintiff's complaint, documents attached or incorporated therein, and materials appropriate for judicial notice." *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 498 (2d Cir. 2014).

## IV.   ARGUMENT

### A.   Plaintiff's First Cause of Action Under N.Y. Ins. Law § 3420 Must Be Dismissed

#### 1.   Plaintiff's Complaint Is Subject to Dismissal Under the Doctrine of *Res Judicata*

Because the Fraud and Forgery Action "was decided by a New York court, New York law determines the preclusive effect of the earlier judgment." *Simmons v. Trans Express Inc.*, 355 F. Supp. 3d 165, 168 (E.D.N.Y. 2019), *aff'd*, 16 F.4th 357 (2d Cir. 2021); *see also Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984) ("[A] federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered.").

Under New York law, "res judicata applies 'to an order or judgment taken by default which has not been vacated, as well as to issues which were or could have been raised in the prior [action].'" *Lazides v. P & G Enters.*, 58 A.D.3d 607, 609 (2d Dep't 2009); *see also Robbins v. Growney*, 229 A.D.2d 356, 357 (1st Dep't 1996) ("The doctrine of *res judicata* is applicable to a judgment taken by default which has not been vacated."); *Yoon v. Fordham Univ. Fac. & Admin. Ret. Plan*, 263 F.3d 196, 200 (2d Cir. 2001) ("Moreover, '[t]he doctrine is applicable to an order or judgment taken by default which has not been vacated, as well as to issues which were or could have been raised in the prior proceeding.'").  Furthermore, "[a] judgment in a prior action is binding not only on the parties to that action, but also on those in privity with them." *N.Y. Cent. Mut. Fire Ins. Co. v. Kilmurray*, 181 A.D.2d 40, 42-43 (3d Dep't 1992).

Here, Reem, "by proceeding directly against [the insurer], does so as subrogee of the insured's rights and is subject to whatever rules of estoppel would apply to the insured." *D'Arata v. N.Y. Cent. Mut. Fire Ins. Co.*, 76 N.Y.2d 659, 665 (1990).  In other words, Reem is "in privity with the insured."  *See Kilmurray*, 181 A.D.2d at 42; *D'Arata*, 76 N.Y.2d at 665.  Indeed, under N.Y. Ins. Law § 3420, after first obtaining a judgment against the tortfeasor and serving the insurance company with a copy of said judgment, "the injured party steps into the shoes of the tortfeasor."  *Lang v. Hanover Ins. Co.*, 3 N.Y.3d 350, 355 (2004).  Thus, it is well settled under New York law that if the Fraud and Forgery Judgment would preclude an action by MJR against Alterra so, too, would it preclude an action by Reem.

The Fraud and Forgery Judgment, a "default judgment which has not been vacated," is a "final order, thus preclusive."  *Kerisli Chiropractic, P.C. v. Am. Transit Ins. Co.*, 86 N.Y.S.3d 858, 859 (N.Y. Civ. Ct. 2018) (cleaned up); *see also Lazides*, 58 A.D.3d at 609 ("Thus, res judicata applies 'to an order or judgment taken by default which has not been vacated, as well as to issues which were or could have been raised in the prior [action].'").  Accordingly, the Fraud and Forgery Judgment has preclusive effect under New York law.  Further, Reem, under controlling New York precedent, is in privity with MJR, the party against whom the Fraud and Forgery Judgment was entered.  *See D'Arata*, 76 N.Y.2d at 665.

Alterra expects that Reem will cite to *Zimmerman v. Tower Ins. Co. of N.Y.*, 13 A.D.3d 137 (1st Dep't 2004), to argue that default judgments "such as those entered in [the Fraud and Forgery Action], have no preclusive effect on Reem's entitlement to coverage based on New York Insurance Law § 3420."  (*See* Compl., ¶ 41.)[5]  Not so.  As explained in *Michelo v. Nat'l Collegiate*

_____

[5] As noted above, in considering a motion to dismiss under Rule 12(b)(6), the Court accepts as true all well-pleaded *factual* allegations.  *Iqbal*, 556 U.S. at 678.  Paragraph 41 of the Complaint

*Student Loan Tr. 2007-2*, the "logic" of the *Zimmerman* case applies to collateral estoppel and "has little bearing on the application of res judicata, since 'actual litigation' is not a requirement for application of this doctrine."  419 F. Supp. 3d 668, 689 n.8 (S.D.N.Y. 2019).

The issue is simple: the Fraud and Forgery Judgment has preclusive effect on MJR (against whom it was entered) and anyone in privity with MJR.  Reem, under New York law, is legally (and practically) in privity with MJR.  Thus, with respect to Reem, the Fraud and Forgery Judgment is binding and preclusive, with *res judicata* effect, to the same extent it would be as against MJR.  Consequently, the doctrine of *res judicata* requires that Reem's Complaint be dismissed in its entirety.

> 2.    In Any Event, the Alterra Excess Policy Was Rescinded and Is Null and Void *Ab Initio*

The Alterra Excess Policy does not exist.  As noted above, the court in the Fraud and Forgery Action entered a judgment against MJR in favor of Alterra "for a declaration that [the Alterra Excess Policy] is null, void ab initio, [and] rescinded . . . based on the alleged forgery of documents provided to Alterra in connection with the application and issuance of the [Alterra Excess Policy]."  (*See* Compl., ¶ 32; *see also* Cohen Decl., Exs. G, H, I.)

"[N]eedless to say, if [the insurer] prevails in its claim of right to rescind on the basis of fraud in the inducement, . . . the policy will be rendered void from its inception irrespective of the point in the life of the policy that a liability claim may have arisen."  *Kiss Constr. NY, Inc. v. Rutgers Cas. Ins. Co.*, 61 A.D.3d 412, 414-15 (1st Dep't 2009) (reversing trial court's denial of

---

alleges no facts and instead purports to make a legal argument.  Accordingly, the legal argument contained in Paragraph 41 of the Complaint need not and should not be accepted as true.

insurer's motion for summary judgment based on rescission).  Because, by operation of rescission, there *is no* Alterra Excess Policy, there can be no right to recovery thereunder.[6]

Additionally, as noted above, Reem's rights in this action are coextensive with those of MJR, *see, e.g.*, *Lang*, 3 N.Y.3d at 355, and MJR has no rights under the Alterra Excess Policy as explained above.  It necessarily follows that Reem also has *no rights* under the Alterra Excess Policy.  Furthermore, the rescission of the Alterra Excess Policy (and its status as null and void *ab initio*) applies, *regardless* of whether the Fraud and Forgery Judgment alone precludes the instant action, and Reem cannot challenge the finding that there was forgery and material misrepresentations in the pertinent insurance applications.  *See Associated Indus. Ins. Co. v. Farahnik*, 239 A.D.3d 533, 533-34 (1st Dep't 2025) ("[P]laintiff Associated Industries Insurance Company, Inc. was granted a default judgment against its insured, defendant Joseph Farahnik, on its claim seeking rescission of the policy based on allegations that he made material misrepresentations in his application for insurance.  As a result of his default, Farahnik is 'deemed to have admitted all factual allegations contained in the complaint and all reasonable inferences that flow from them,' including the allegations that he made material misrepresentations in the insurance application.  The policy, therefore, was void ab initio.  Thus, Halpern & Pintel, an additional insured, cannot raise a challenge to the finding of material misrepresentation . . . ." (citations omitted)).  While Reem is perhaps blameless in connection with the misrepresentations and forgery, so too is Alterra.  A "contrary decision would have resulted in similar hardship to the insurance company, which would find itself supplying coverage to a risk it never meant to insure."

---

[6] As Alterra recounted above, the evidence that MJR committed fraud in obtaining the Alterra Excess Policy is overwhelming.  This evidence includes Michael's Affidavit in the Fraud and Forgery Action, which Reem made direct and explicit reference to in its Complaint.  In any event, Alterra reserves the right, if necessary, to submit this overwhelming evidence to the Court in a subsequent motion for judgment on the pleadings or summary judgment.

*INA Underwriters Ins. Co. v. D.H. Forde & Co.*, 630 F. Supp. 76, 77 (W.D.N.Y. 1985); *see also id.* ("[I]t must be recognized that plaintiff insurers are likewise innocent parties."). Here, then, because the Alterra Excess Policy is null, void *ab initio*, and rescinded—and to avoid needless litigation and the re-litigation of issues previously litigated and adjudicated—Reem's Complaint must be dismissed under Rule 12(b)(6).

3.  <u>In the Alternative, the Alterra Excess Policy's Total Pollution Exclusion Bars the Coverage Reem Now Seeks</u>

Even were the Court to rule against Alterra on the import of the Fraud and Forgery Judgment, Plaintiff's Complaint (along with the Policies attached thereto) conclusively demonstrate that, as alleged in the Complaint, Reem would not be entitled to reimbursement under the Alterra Excess Policy for the Reem Judgment. The reason is straightforward: as alleged in the Complaint, the Alterra Excess Policy "excludes property damage caused by 'pollutants.'" (Compl., ¶ 31; *see also id.*, Ex. 1 (Section I.2.f. (as amended by Total Pollution Exclusion Endorsement)).)[7] As noted above and in the materials appended to Plaintiff's Complaint, the Alterra Excess Policy's Total Pollution Exclusion provides that the Alterra Excess Policy does not apply to any liability "which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants' at any time." (*See, e.g.*, *id.*, Ex. 1 (Section I.2.f. (as amended by Total Pollution Exclusion Endorsement)); *see also* Compl., ¶ 31.) The Alterra Excess Policy defines "pollutants" to mean "any solid, liquid, gaseous or thermal irritant or contaminant, including . . . *smoke*, vapor, *soot*, fumes, acids, alkalis, chemicals and waste." (*See, e.g.*, Compl., Ex. 1 (Section V.15.) (emphasis added).) The Total Pollution Exclusion applies neatly and conclusively to the facts here.

---

[7] As noted above, the Alterra Excess Policy "follows form" to the Burlington Policy such that the Total Pollution Exclusion is also part of the Alterra Excess Policy.

As its name implies, New York courts interpret total pollution exclusions very broadly. For instance, the United States District Court for the Western District of New York, applying New York law, noted that a similar total pollution exclusion was "without exception and very broad." *Freedom Gravel Prods., Inc. v. Mich. Mut. Ins. Co.*, 819 F. Supp. 275, 278 (W.D.N.Y. 1993) (granting insurer's motion for summary judgment on the duty to indemnify and defend on the basis of the policy's total pollution exclusion); *see also Tonoga, Inc. v. N.H. Ins. Co.*, 201 A.D.3d 1091, 1094-95 (3d Dep't 2022) (noting that the standard pollution exclusion "broadly excludes from coverage damages 'arising out of the discharge, dispersal, release or escape of smoke, vapors, soot . . . ."). The United States Second Circuit Court of Appeals has also noted that absolute pollution exclusions "broadly exclude pollution liabilities[.]" *Folksamerica Reinsurance Co. v. Clean Water of N.Y., Inc.*, 413 F.3d 307, 321 (2d Cir. 2005).

Not only is the Total Pollution Exclusion here broad, but also its terms were met under the facts of the case. First, the Complaint indisputably alleges that the loss here was caused by a pollutant, as that term is defined in the Alterra Excess Policy. After all, the Complaint alleges that "[t]he soot and smoke from the Fire traveled into the immediately adjacent building where Reem's studio was located, resulting in significant property damage to Reem." (Compl., ¶ 10.) And the Alterra Excess Policy defines "pollutants" to specifically include both "smoke" and "soot." (*See id.*, Exs. 1-2.)

Notably, it is not just the Alterra Excess Policy and New York Law that deem soot and smoke to be "pollutants." Rather, this commonsense understanding of what constitutes a "pollutant" is mirrored in New York regulations. For instance, New York regulatory agencies, unsurprisingly, consider smoke and soot to be "pollutants," independent of the definition in the Alterra Excess Policy. By way of example, the New York City Department of Department of

Health refers to fine particulate matter "caused by smoke from fires, either building fires, wildfires or event fireworks" as one of the "Common Air Pollutants" and provides information with guidance on how to "protect yourself from fire-related smoke." https://www.nyc.gov/site/doh/health/health-topics/air-quality-air-pollution-protection.page.

Further, in its fact sheet on fires, New York's Department of Environmental Control cautions people to "[s]tay out of the smoke" because "inhaling smoke is unhealthy," and refers to "harmful smoke and soot." *See* www.dec.ny.gov/chemical/32060.html. Similarly, New York's "clean heat" program is designed to prevent and lessen soot from entering New York City's air. *See* https://cleanheat.ny.gov/. To avoid the harmful effects of smoke, the Department advises people to "[s]tay indoors with windows and doors closed if temperatures allow," "[u]se a portable air cleaner," and "consider wearing a well-fitting N95 or KN95 mask" if you cannot stay out of the smoke. *Id.* Finally, Reem itself treats the smoke and soot as pollutants when it alleges here that Reem's property was "contaminated" by the smoke and soot. (*See* Compl., ¶ 10; *see also* Cohen Decl., Ex. K (Underlying Smoke and Soot Action Compl., ¶¶ 29-30).)

Second, the Underlying Smoke and Soot Action alleges the "discharge, dispersal, seepage, migration, release or escape" of the smoke and soot, as required to trigger the Total Pollution Exclusion. (*See* Cohen Decl., Ex. K (Underlying Smoke and Soot Action Compl., ¶¶ 28-30) (alleging that the "smoke and soot" "spread" from the construction site and "entered" the nearby property of Reem). Courts routinely hold that similar factual patterns trigger pollution exclusions. *See, e.g., Vigilant Ins. Co. v. V.I. Techs., Inc.*, 253 A.D.2d 401, 403 (1st Dep't 1998) (holding that "in the context of 'pollution,'" words such as "discharge" and "dispersal" "connote a spread beyond containment in the owner's premises, to the outside air, land or water"); *Republic Franklin Ins. Co. v. L&J Realty Corp.*, 280 A.D.2d 351, 351 (1st Dep't 2001) (pollution exclusion does not

apply to pollutants "that remained contained within the premises" because the pollution had not "emanated from a source outside the building or in some manner escaped from" the building). Here, of course, the smoke and soot were released from one building into the outside air and, from there, contaminated a separate building. (*See* Compl., ¶ 10.)

Under consistent New York precedent, the language of the Alterra Excess Policy, and the relevant allegations, the Alterra Excess Policy's Total Pollution Exclusion bars coverage. Accordingly, and as noted above, because Reem, as the alleged injured party, "steps into the shoes of the tortfeasor" and is subject to all defenses against the tortfeasor, *Lang*, 3 N.Y.3d at 355, the Total Pollution Exclusion bars its recovery too under N.Y. Ins. Law § 3420 to the same extent it barred coverage for MJR in connection with the Underlying Smoke and Soot Action.

Reem's argument that "the applicable New York City building rules require policies for projects like the Demolition Work to state that such a 'pollutants' exclusion does not apply to property damage 'arising out of heat, smoke or fumes from a "hostile fire",' as occurred in the case of the Fire," (Compl., ¶ 31,) is a red herring. Reem's Complaint appears to refer to 1 RCNY § 101-108,[8] and specifically to § 101-08, which provides the "Required Insurance and Indemnification" rules (the "Insurance Rule").[9] The Insurance Rule, however, is inapplicable here.

As identified on the face of the Insurance Rule, "[t]his rule applies to *permits* as defined in subdivision (a) of this section" and not to insurance policies. (Cohen Decl., Ex. D (1 RCNY § 101-08(b)) (emphasis added).) The Insurance Rule, then, by its own terms, *does not apply to*

---

[8] The applicable rules can be found here: https://www.nyc.gov/site/buildings/codes/title-1-rules-of-the-city-of-new-york.page. Reem's Complaint contained a nonworking link to the applicable rules.

[9] As a "document[ ] appended to the complaint or incorporated in the complaint by reference," *Mosdos*, 815 F. Supp. 2d at 691, this Court may consider the Insurance Rule in adjudicating this motion to dismiss under Rule 12(b)(6).

*insurers or to insurance policies themselves*.  Indeed, the only section of the Insurance Rule that refers to the scope of insurance coverage states that, "[a]s a condition to the *issuance or renewal of a permit* for which project-specific liability insurance is required under Table 1 in subparagraph (ii) of this paragraph, the permittee shall procure and maintain commercial general liability insurance for the type of work to be performed as described in the permit."  (*Id.* (1 RCNY § 101-08(d)(1)(i)) (emphasis added).)  In other words, the Insurance Rule has *nothing to do* with what terms, conditions, exclusions, or wording an insurer and its insured agree to.  The Insurance Rule, further, makes clear that in the event of noncompliance, it is the insured, not the insurer, who must provide indemnity to the city: "In the event a permittee fails to secure or maintain insurance in full compliance with this section, such permittee shall be obligated to indemnify the city pursuant to subdivision (j) of this section and/or pay the city all amounts arising from such failure[.]"  (*Id.* (1 RCNY § 101-08(k)).)

Reem's argument here is telling.  Rather than argue the merits of coverage (which Reem knows it cannot, due to the Total Pollution Exclusion), Reem sidesteps and claims that the Alterra Excess Policy was somehow required to contain a different pollution exclusion with an exception.  As explained above, the Insurance Rule Reem points to requires no such thing of insurers like Alterra.  Any burdens are on permittees, not insurance carriers.

The Total Pollution Exclusion is clear, unambiguous, and plainly applies to the damages Reem seeks to recover through N.Y. Ins. Law § 3420.  For this additional reason, there is no possibility of coverage in this case, and Reem's Complaint must be dismissed.

### B.     Plaintiff's GBL 349 Claim Is Also Subject to Dismissal

Given the deception and forgery that formed the basis of the Fraud and Forgery Judgment, the fact that the Alterra Excess Policy is null, void *ab initio*, and rescinded, and the fact that the Total Pollution Exclusion (as explained above) completely bars any potential coverage Reem

argues applies, that Plaintiff levels a GBL 349 claim against Alterra borders on farcical.  As a preliminary matter, Reem's GBL 349 claim is subject to dismissal under *res judicata*, since under New York's "transactional analysis approach[,] . . . once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy."  *O'Brien v. City of Syracuse*, 54 N.Y.2d 353, 357 (1981); *see also Giannone v. York Tape & Label, Inc.*, 548 F.3d 191, 194 (2d Cir. 2008) (same).  MJR could have brought this claim (which would have, in any event, been meritless) in connection with the Fraud and Forgery Action, but did not, and that failure is dispositive here.  Furthermore, and as explained *supra*, because the Total Pollution Exclusion indisputably applies to the Underlying Smoke and Soot Action, Alterra's positions with respect to coverage are correct, and Reem's GBL 349 claim must be dismissed.  *See SJN Props. LLC v. Harleysville Ins. Co.*, 738 F. Supp. 3d 405, 417 (S.D.N.Y. 2024) (dismissing plaintiff's GBL 349 claim because the insurer properly applied policy provisions in determining the plaintiff's entitlement to coverage).

In any event, Plaintiff fails to allege a violation of GBL 349.  GBL 349 is a consumer protection statute that prohibits deceptive acts and practices in the conduct of business.  In order to successfully plead a GBL 349 claim, "[a] plaintiff must allege that: (1) the defendant's conduct was consumer-oriented; (2) the defendant's act or practice was deceptive or misleading in a material way; and (3) the plaintiff suffered an injury as a result of the deception."  *Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v. Matthew Bender & Co.*, 37 N.Y.3d 169, 176 (2021).  Reem fails to (and cannot) properly allege any of these three elements.

First, private contract disputes such as these are not "consumer-oriented" conduct and thus cannot form the basis of a GBL 349 claim.  Second, Reem does not allege that Defendants engaged

in any deceptive or misleading conduct.  Instead, Reem appears to take issue with representations made to the City of New York by *MJR* and the *broker* (an agent of the insured, not of Alterra) and with the fact that Alterra exercised its rights by intervening in the Fraud and Forgery Action to obtain a declaration regarding the rights and obligations of the parties to the Policies.  (*See* Cohen Decl., Ex. E (Order Granting Alterra's Motion to Intervene in the Fraud and Forgery Action).) None of the complained-of conduct that Alterra engaged in is deceptive or misleading and thus cannot support a violation of GBL 349.  Third, Reem fails to allege any actual harm associated with Alterra's purportedly "deceptive" conduct.

### 1.    Reem Fails to Allege Consumer-Oriented Conduct

New York courts have made clear that, "[a]s shown by its language and background, section 349 is directed at wrongs against the consuming public." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 24 (1995).  Accordingly, "as a threshold matter, plaintiffs claiming the benefit of section 349 . . . must charge conduct of the defendant that is consumer-oriented." *Id.* at 25.  This requires a plaintiff to "demonstrate that the acts or practices have a broader impact on consumers at large." *Id.*  "Private contract disputes, unique to the parties, for example, would not fall within the ambit of the statute." *Id.* (citing *Genesco Ent. v. Koch*, 593 F. Supp. 743, 752 (S.D.N.Y. 1984)).  In consequence, courts regularly dismiss GBL 349 claims where "[t]he gravamen of the complaint is not consumer injury or harm to the public interest but, rather, harm to plaintiff[s'] business." *See e.g.*, *Fika Midwifery PLLC v. Indep. Health Ass'n, Inc.*, 208 A.D.3d 1052, 1057 (4th Dep't 2022).  Private harm to its business is exactly what Reem alleges here.

In light of these principles, courts routinely hold that disputes regarding insurance contracts do not satisfy GBL 349's requirement that the complained-of conduct be consumer oriented.  *See, e.g.*, *N.Y. Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 321 (1995) (reversing and dismissing GBL 349

claim where "defendants' acts in selling this policy and handling the claim under it do not constitute consumer-oriented conduct"); *JD & K Assocs., LLC v. Selective Ins. Grp., Inc.*, 143 A.D.3d 1232, 1232 (4th Dep't 2016) (reversing and dismissing GBL 349 claim against an insurer); *Lobello v. N.Y. Cent. Mut. Fire Ins. Co.*, 152 A.D.3d 1206, 1208 (4th Dep't 2017) (affirming denial of leave to amend complaint against insurer where action was "essentially a 'private' contract dispute over policy coverage and the processing of a claim which is unique to these parties, not conduct which affects the consuming public at large"); *Euchner-USA, Inc. v. Hartford Cas. Ins. Co.*, 754 F.3d 136, 143 (2d Cir. 2014) (affirming dismissal of GBL 349 claim against insurer where the "[insured] has not shown that [insurer] is engaged in a deceptive practice raising public, consumer-oriented concerns"); *PB Ams. Inc. v. Cont'l Cas. Co.*, 690 F. Supp. 2d 242, 252 (S.D.N.Y. 2010) ("[S]everal courts in this Circuit have considered whether disputes between policy holders and insurance companies concerning the scope of coverage can amount to conduct falling within § 349. Almost uniformly, those courts have held that such disputes are nothing more than private contractual disputes that lack the consumer impact necessary to state a claim pursuant to § 349.").

In support of its GBL 349 claim, Reem appears to allege that Alterra failed to inform the court in the Fraud and Forgery Action of a purported requirement that the Alterra Excess Policy contain a pollution exclusion with a hostile fire exception,[10] that Alterra was able to obtain an affidavit from Michael Russell and made contact with Steven Russell, and finally that "Leo Fitzgerald also certified and represented to the City of New York that the Certificate of Liability Insurance signed with Michael's name was accurate in all material aspects . . . ." (Compl., ¶¶ 27-

---

[10] As explained above, this is, in any event, a *nonexistent* requirement. The Insurance Rule Plaintiff refers to in its Complaint does not regulate insurers, but rather permittees. Nor does the Insurance Rule purport to alter the terms, conditions, wording, or exclusions of insurance contracts.

31.)  Even assuming any of these allegations are true (they are not), *none* alleges the type of

conduct that would raise "public, consumer-oriented concerns," *Euchner-USA*, 754 F.3d at 143,

and none alleges conduct that affects consumers at large.  *See Caldwell v. Gutman, Mintz, Baker

& Sonnenfeldt, P.C.*, 701 F. Supp. 2d 340, 355 (E.D.N.Y. 2010) ("[T]o the extent this claim is

predicated on FPA's actions in the civil court litigation, that allegation is not the deceptive,

consumer-oriented conduct that § 349 is intended to address."); *see also Lautman v. 2800 Coyle

St. Owners Corp.*, No. 13-CV-967 (ARR)(VVP), 2014 WL 2200909, at *8 (E.D.N.Y. May 23,

2014) ("Here, plaintiff does not assert that he himself was in any way misled by the allegedly false

rent arrears and other charges claimed by defendants in the Housing Court proceedings.  To the

extent his argument is that defendants misled the Housing Court, that argument must fail because

it does not show consumer-oriented deception.").   Here, Reem appears to take issue with

representations and arguments made either by Alterra in the context of coverage litigation, or with

representations made by "Leo Fitzgerald," a broker who acted on behalf of MJR, *not* Alterra.[11]

Reem's allegations fall woefully short of alleging the type of "consumer-oriented" conduct

necessary to sustain a GBL 349 claim and the authority of New York case law is in accord.

---

[11] To the extent Plaintiff makes conclusory legal allegations that Leo Fitzgerald was "acting as the authorized agent of Burlington and Alterra" in connection with signing certain documents or representing certain facts to the City of New York, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.  And to be clear, Plaintiff's self-serving conclusion is flat-out wrong: Leo Fitzgerald is an agent of the *insured* under New York law.  "In general, an insurance broker is considered the agent of the insured, not the insurance company . . . ." *Temple Constr. Corp. v. Sirius Am. Ins. Co.*, 40 A.D.3d 1109, 1111 (2d Dep't 2007); *see also Fed. Ins. Co. v. Distinguished Props. Umbrella Managers Inc.*, 721 F. Supp. 2d 293, 299 (S.D.N.Y. 2010) ("It is well established under New York law that 'insurance brokers act as agents on behalf of an insured and not the insurer.'"); *Evvtex Co. v. Hartley Cooper Associates Ltd.*, 911 F. Supp. 732, 738 (S.D.N.Y. 1996) ("The fiduciary duty of a broker to its insured, as outlined in 2120 of New York Insurance Law is merely a codification of the long-standing common law which generally considers broker's agents of their insured. . . . The courts in New York have long held that insurance brokers act as agents on behalf of an insured and not the insurer.")

2.    <u>Reem Fails to Allege Deceptive or Misleading Conduct</u>

Even if Reem is somehow determined to have adequately alleged that Alterra's conduct was consumer oriented, it nevertheless fails to allege any deceptive act or practice. Thus, for this additional reason, its GBL 349 claim fails.

A plaintiff must allege that the "defendant is engaging in an act or practice that is deceptive or misleading in a material way." *Oswego*, 85 N.Y.2d at 25. The New York Court of Appeals has defined a "deceptive act or practice" as "a representation or omission 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'" *Gaidon v. Guardian Life Ins. Co. of Am.*, 94 N.Y.2d 330, 344 (1999). In other words, a "Section 349 violation requires a defendant to mislead *the plaintiff* in some material way." *Conboy v. AT&T Corp.*, 241 F.3d 242, 258 (2d Cir. 2001) (emphasis added) (*citing Stutman v. Chem. Bank*, 95 N.Y.2d 24, 29 (2000)). "Generally, claims under the statute are available to an individual consumer who falls victim to misrepresentations made by a seller of consumer goods through false or misleading advertising." *Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43, 55 (1999) (citing *Genesco*, 593 F. Supp. at 751).

Reem's Complaint attempts to satisfy this requirement but does so in a way that is entirely conclusory and far too vague to be creditable, alleging only that "Defendants Burlington and Alterra have continually deceived their insureds and third-party members of the public, including the City of New York and Reem, by purporting to honor their contractual obligation under the issued policies while simultaneously employing deceptive tactics intended to avoid their contractual obligations." (Compl., ¶ 44.)

Nowhere in Reem's Complaint does Reem allege that it fell "victim to misrepresentations made by a seller of consumer goods through false or misleading advertising." *Small*, 94 N.Y.2d at 55. Nowhere in the Complaint does Reem allege that Alterra made *any* misrepresentations to it—indeed, the only alleged representations Reem complains of appear to be those made in New

York Supreme Court in connection with the Fraud and Forgery Action (which were neither misrepresentations to it nor material), or those made by Leo Fitzgerald and MJR *to the City of New York*.[12]  (*See* Compl., ¶¶ 27-31, 44.)  *None* of these alleged representations was, even as alleged, directed at any third-party consumer, and certainly not towards Reem.  And to the extent the alleged representations in the Fraud and Forgery Action could be construed as being directed towards MJR, Reem has made absolutely no allegations indicating that those representations would have been "likely to mislead a reasonable consumer acting reasonably under the circumstances."  *Gaidon*, 94 N.Y.2d at 344.  Indeed, Reem makes *no* allegation that any of the representations made in the Fraud and Forgery Action had any effect on MJR's actions, and thus fails to allege that Alterra misled MJR in any material way.  *See Conboy*, 241 F.3d at 258.  Reem's GBL 349 claim, then, falls flat for this additional reason.

Reem also appears to allege that Alterra's refusal "to pay the Judgment against MJR up to the limits of the Burlington and Alterra policies" was a violation of GBL 349, but that can't possibly be right: refusing to pay the Judgment is not a misrepresentation or a deception—it is a refusal to pay because the Alterra Excess Policy (1) did not cover the Reem Judgment due to *res judicata* and the Total Pollution Exclusion and (2) was null, void *ab initio*, and rescinded.  *See, e.g.*, *Kim-Chee LLC v. Phila. Indem. Ins. Co.*, 535 F. Supp. 3d 152, 164 (W.D.N.Y. 2021) (noting that the reason plaintiff could not recover claimed losses was not due to any deception on the part of the insurer, but rather due to the fact that its losses were not covered under the policy).  Furthermore, none of the alleged misrepresentations by Alterra was even a misrepresentation.  As

---

[12] As discussed *supra*, Leo Fitzgerald acted as an agent of the *insured*, not Alterra.  *See, e.g.*, *Hartley Cooper Associates*, 911 F. Supp. at 738.  In this regard, Reem's allegation that "Burlington and Alterra have violated General Business Law ('GBL') § 349 by misrepresenting their coverage" (Compl., ¶ 45) appears to be a direct reference to the purported representations made by Leo Fitzgerald, which aren't charged to Alterra.

explained above, the Total Pollution Exclusion *does* exclude property damage caused by "pollutants." The "applicable New York City building rules" Reem references (Compl., ¶ 31), moreover, do *not* regulate the contractual terms an insurer and insured can agree to as part of an insurance contract.

Reem's allegations, even accepted as true, do not show that Alterra misrepresented the fact that MJR breached the Alterra Excess Policy through a failure to cooperate. (*See* Compl., ¶¶ 28-30.) First, a mere telephone conversation in 2015 with Michael Russell (*see* Compl., ¶ 28) does not mean that MJR cooperated, especially given the fact that he was not involved in running MJR. That Alterra was in contact with Steven "twice" (*see* Compl., ¶ 29) also does not mean that MJR cooperated, especially in light of the multiple subsequent attempts to contact him and (*See* Cohen Decl., Ex. J (Exhibit 12 to Alterra's Motion for Default and Declaratory Judgment in the Fraud and Forgery Action).) Second, Reem appears to be conflating two distinct issues: (a) "the investigation and defense of the Underlying Action," and (b) Alterra's investigation into Steven Russell's fraud and forgery in connection with the application for and issuance of the Alterra Excess Policy. Reem makes *no* allegations that MJR cooperated in connection with the defense and investigation of the Underlying Smoke and Soot Action, instead only making vague allegations that Alterra was *able to contact* Michael Russell and Steven Russell occasionally. (*See* Compl., ¶¶ 28-29.) That, respectfully, is not enough to demonstrate that MJR cooperated. It is certainly not enough to demonstrate that Alterra misrepresented anything to the court in the Fraud and Forgery Action.

### 3. Reem Fails to Allege Causation

Finally, under GBL 349, "proof that 'a material deceptive act or practice caused actual, although not necessarily pecuniary, harm' is required to impose compensatory damages." *Small*, 94 N.Y.2d at 55-56 (citation omitted). Reem fails to so allege.

Reem makes no allegations that the purported misrepresentations or deceptive practices are what *caused* its injuries. As noted above, none of the purported misrepresentations was directed at Reem, and Reem makes no allegations that it (or MJR for that matter) changed its position in response to any of the purported misrepresentations. When stripped down to its core, Reem's GBL 349 claim merely complains that Alterra did not reimburse Reem up to policy limits for the Reem Judgment. "[M]aterial deceptive act[s] or practice[s]" are not the cause of Reem's alleged damages—the entirely justified refusal to pay up to policy limits is.

## V.   <u>CONCLUSION</u>

Alterra respectfully implores this Court not to ignore *res judicata*, the plain facts of fraud and the Alterra Excess Policy's clear Total Pollution Exclusion. To relitigate these issues and to suggest that the parties will again have to demonstrate that the forgery and the Total Pollution Exclusion preclude coverage would constitute a monumental waste of the parties' and this Court's energies and resources. It is unfortunate that Steven Russell's operations injured the Reem building. It is equally unfortunate that Steven Russell forged his son Michael's signature on policy application documents. But the defalcations of Steven Russell as to all parties in this litigation are, respectfully, not grounds to ignore either *res judicata* on the already voided policy, the facts of forgery, or the weight of New York law that consistently applies the Alterra Excess Policy's Total Pollution Exclusion. Nor are they any reason to ignore the fact that Reem fails to state a claim for violation of GBL 349. For all of the foregoing reasons, Alterra respectfully requests the Court dismiss Reem's Complaint in its entirety with prejudice.

Dated:  September 25, 2025

                  Respectfully Submitted,

                  **TROUTMAN PEPPER LOCKE LLP**

                  By: *s/ Daniel W. Cohen*

                     Daniel W. Cohen
                     875 3rd Ave
                     New York, NY 10022
                     (212) 704-6256
                     Dan.Cohen@troutman.com

                     Richard J. Pratt (admitted *pro hac vice*)
                     Matthew J. Griffin (admitted *pro hac vice*)
                     401 9th Street NW
                     #1000
                     Washington, DC 20004
                     (202) 662-2077
                     (202) 274-2949
                     Richard.Pratt@troutman.com
                     Matthew.Griffin@troutman.com

                     *Attorneys for Defendant Alterra America*
                     *Insurance Company n/k/a Pinnacle National*
                     *Insurance Company*

<u>**CERTIFICATE OF COMPLIANCE**</u>

Pursuant to Local Civil Rule 7.1, I hereby certify that this Memorandum of Law complies with the formatting rules, and the total number of words in this Memorandum of Law, excluding the caption, certification of compliance, table of contents, table of authorities, and signature blocks, is 8,125 words.

Dated:  September 25, 2025

*s/ Daniel W. Cohen*
Daniel W. Cohen