# EXHIBIT A

# EXHIBIT

# 9

Case 1:25-cv-07817-CM-RFT    Document 14-2    Filed 09/25/25    Page 3 of 62

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

THE BURLINGTON INSURANCE COMPANY, )

    Plaintiff,

v.

MJR CONSTRUCTION SERVICES CORP.,

    Defendant.

ALTERRA AMERICA INSURANCE COMPANY, )

    Plaintiff-Intervenor.

Index No. 653129/2016

STATE OF NEW YORK    )
                 ) ss:
COUNTY NEW YORK    )

### AFFIDAVIT OF MICHAEL J. RUSSELL

Before me, the undersigned authority, personally appeared MICHAEL J. RUSSELL, who, after being by me duly identified (via submission of a driver's license and personal representation) and sworn, deposed as follows:

1.      My name is Michael J. Russell. I am of sound mind, capable of making this Affidavit, and have personal knowledge of the facts stated in this Affidavit, which are true and correct.

2.      I was born on March 3, 1981. I am the son of Steven A. Russell.

3.      My father, Steven A. Russell, created MJR Construction Services Corporation (the "Company").

1

Active 29538362v1 249094.000001

4.       I had no position in the Company except as a filing clerk.

5.       I did not take part in any demolition or construction projects performed by the Company.

6.       Specifically, I was not present on or about March 8, 2013 at the premises of 1515 Bedford Avenue, Brooklyn, NY (the "Bedford Property").

7.       I have no knowledge or information regarding or relating in any way to any accident or bodily injury on or about March 8, 2013 at the Bedford Property.

8.       In addition, I was not present on or about March 27, 2014 at the premises of 245-47 West 34th Street, New York, New York 10018 (the former two-story Conway Department store building) (the "Conway Property").

9.       I have no knowledge or information regarding or relating in any way to a fire on or about March 27, 2014 at the Property.

10.      I did not serve as a director, officer, executive, or in any other position of authority with the Company.

11.      I do not now, nor have I ever held myself out as having, any director, officer or executive authority with the Company.

12.      I formally resigned from my job at the Company effective September 23, 2015. The reason for my resignation was that Steven A. Russell had fraudulently used my name and/or signature, without my knowledge or consent, to execute Company financial and operational transactions.

13.      I have never been granted, nor have I exercised, any financial or operational control over the Company's affairs.

14.      Specifically, I have never applied for any insurance coverage for the Company.

Active 29538362v1 249094.000001

15.     I have never signed my signature on any document relating to insurance coverage, including applications or representations in connection thereto, on behalf of the Company.

16.     I have never consented or authorized any person to sign my signature on any document relating to insurance coverage, including applications or representations in connection thereto.

17.     I have never made any inquiries to any insurance carrier with respect to insurance coverage for the Company.

18.     I have never made any inquiries to any insurance agents or brokers with respect to any insurance coverage for the Company.

19.     I have reviewed the exhibits attached to this Affidavit and none of the signatures on the documents attached to this Affidavit (Exhibits 1 through 18) is mine.

20.     The signature that appears on the "Signature of applicant" line on page 3 of Exhibit 1, the Contractors' Supplemental Questionnaire dated September 10, 2012, is not my signature. I was not aware of this document on the date indicated thereon and only recently became aware of this document. I did not give consent or otherwise authorize any person to sign this document on my behalf. In addition, I never served as President of the Company, as is falsely represented on Exhibit 1.

21.     The signature that appears in the "APPLICANT'S SIGNATURE" box on Exhibit 2, a three page Commercial Insurance Application dated October 23, 2012, is not my signature. I was not aware of this document on the date indicated thereon and only recently became aware of this document. I did not give consent or otherwise authorize any person to sign this document on my behalf.

3

Active 29538362v1 249094.000001

22.     The signature that appears in the "APPLICANT'S SIGNATURE" box on Exhibit 3, a two page umbrella/excess section Acord policy application dated October 23, 2012, is not my signature. I was not aware of this document on the date indicated thereon and only recently became aware of this document. I did not give consent or otherwise authorize any person to sign this document on my behalf.

23.     The signature represented as "Michael Russell" on Exhibit 4, an October 23, 2012 Policyholder Disclosure Notice of Terrorism Insurance Coverage, is not my signature. I was not aware of this document on the date indicated thereon and only recently became aware of this document. I did not give consent or otherwise authorize any person to sign this document on my behalf.

24.     The signature represented as "Michael Russell" on Exhibit 5, an October 23, 2012 Policyholder Disclosure Notice of Terrorism Insurance Coverage (Form C), is not my signature. I was not aware of this document on the date indicated thereon and only recently became aware of this document. I did not give consent or otherwise authorize any person to sign this document on my behalf.

25.     The signature represented as "Michael Russell" on Exhibit 6, an October 23, 2012 Policyholder Disclosure Notice of Terrorism Insurance Coverage, is not my signature. I was not aware of this document on the date indicated thereon and only recently became aware of this document. I did not give consent or otherwise authorize any person to sign this document on my behalf.

26.     The signature represented as "M J Russell" on both pages 1 and 2 of Exhibit 7, a February 28, 2013 "Subcontractor Agreement," is not my signature. I was not aware of this

4

document on the date indicated thereon and only recently became aware of this document. I did not give consent or otherwise authorize any person to sign this document on my behalf.

27.     The signature represented as "Michael J. Russell" on Exhibit 8, a February 14, 2013 New York Fraud Statement, is not my signature. I was not aware of this document on the date indicated thereon and only recently became aware of this document. I did not give consent or otherwise authorize any person to sign this document on my behalf. In addition, I never served as President of the Company, as is falsely represented on Exhibit 8.

28.     The signature that appears in the "APPLICANT'S SIGNATURE" box on page two of Exhibit 9, a three page Commercial Insurance Application dated October 17, 2013, is not my signature. I was not aware of this document on the date indicated thereon and only recently became aware of this document. I did not give consent or otherwise authorize any person to sign this document on my behalf.

29.     The signature represented as "Michael Russell" on Exhibit 10, an October 23, 2013 Policyholder Disclosure Notice of Terrorism Insurance Coverage, is not my signature. I was not aware of this document on the date indicated thereon and only recently became aware of this document. I did not give consent or otherwise authorize any person to sign this document on my behalf.

30.     The signature represented as "Michael Russell" on Exhibit 11, a February 4, 2014 letter on "MJR Construction Services Corp" letterhead, is not my signature. I was not aware of this document on the date indicated thereon and only recently became aware of this document. I did not give consent or otherwise authorize any person to sign this document on my behalf.

31.     The signature appearing above the line "Signature of Insured" on both pages 1 and 2 of Exhibit 12, a two-page Premium Finance Agreement dated February 20, 2014, is not my

Case 1:25-cv-07817-CM-RFT    Document 14-2    Filed 09/25/25    Page 8 of 62

signature. I was not aware of this document on the date indicated thereon and only recently became aware of this document. I did not give consent or otherwise authorize any person to sign this document on my behalf. In addition, I never served as President of the Company, as is falsely represented on Exhibit 12.

32.    The signature represented as "Michael Russell" on Exhibit 13, a February 20, 2014 letter on "MJR Construction Services Corp" letterhead, is not my signature. I was not aware of this document on the date indicated thereon and only recently became aware of this document. I did not give consent or otherwise authorize any person to sign this document on my behalf. In addition, I never served as President of the Company, as is falsely represented on Exhibit 13.

33.    The signature represented as "Michael Russell" on Exhibit 14, a March 11, 2014 letter on "MJR Construction Services Corp" letterhead, is not my signature. I was not aware of this document on the date indicated thereon and only recently became aware of this document. I did not give consent or otherwise authorize any person to sign this document on my behalf.

34.    The signature represented as "Michael Russel" (sic) on Exhibit 15, a March 26, 2014 Policyholder Disclosure Notice of Terrorism Insurance Coverage, is not my signature. I was not aware of this document on the date indicated thereon and only recently became aware of this document. I did not give consent or otherwise authorize any person to sign this document on my behalf. In addition, I never served as President of the Company, as is falsely represented on Exhibit 15.

35.    The signature that appears in the "APPLICANT'S SIGNATURE" box on Exhibit 16, a two page umbrella/excess section Acord policy application dated September 17, 2014 is not my signature. I was not aware of this document on the date indicated thereon and

6

Case 1:25-cv-07817-CM-RFT    Document 14-2    Filed 09/25/25    Page 9 of 62

only recently became aware of this document. I did not give consent or otherwise authorize any person to sign this document on my behalf.

36. The signature represented as "Michael Russell" on Exhibit 17, an October 27, 2014 Policyholder Disclosure Notice of Terrorism Insurance Coverage, is not my signature. I was not aware of this document on the date indicated thereon and only recently became aware of this document. I did not give consent or otherwise authorize any person to sign this document on my behalf. In addition, I never served as President of the Company, as is falsely represented on Exhibit 17.

37. The signature appearing above the line "Signature of Insured" on both pages 1 and 2 of Exhibit 18, a two-page Premium Finance Agreement dated October 30, 2014, is not my signature. I was not aware of this document on the date indicated thereon and only recently became aware of this document. I did not give consent or otherwise authorize any person to sign this document on my behalf. In addition, I never served as President of the Company, as is falsely represented on Exhibit 18.

38. The signature represented as "Michael Russell" on Exhibit 19, a November 4, 2014 letter on "MJR Construction Services Corp" letterhead, is not my signature. I was not aware of this document on the date indicated thereon and only recently became aware of this document. I did not give consent or otherwise authorize any person to sign this document on my behalf. In addition, I never served as President of the Company, as is falsely represented on Exhibit 19.


Further Affiant sayeth not.

7

Active 29538362v1 249094.000001

Michael J. Russell

Subscribed and sworn to before me on this 6th day of December, 2016.

Notary Public

My Commission Expires: _____

AUDREY J LUTZ PARMA
Notary Public - State of New York
No. 02PA6241615
Qualified In Westchester County
My Comm. Expires Oct. 2, 2019

8

Active 29538362v1 249094.000001

# EXHIBIT

# 1

## CONTRACTORS' SUPPLEMENTAL QUESTIONNAIRE

1. Applicant's Name: *MJR Construction Services Corp*

2. Business Address: *109 Ingraham St., Brooklyn NY 11237*

3. Years In Business Under Current Name: *4 +*

4. List all Previous Business Names: _____

5. Contractors License Number: _____

6. States In Which You Are Licensed To Do Business: *New York*

7. Percentage of Work performed as a
   a) General Contractor *O*
   b) Sub Contractor *100*

8. Percentage of Work that is
   a) Commercial *75*
   b) Residential *10*
   c) Industrial *15*
   d) Other (describe) _____

9. Percentage of Work that is
   a) New Construction *10*
   b) Remodel/Repair *90*

10. Estimate for next 12 months:

    Payroll: $ *200,000*   Sub-Contract Cost: $ *50,000*   Sales: $ *1,000,000*

Indicate the anticipated percentage of construction work over the next 12 months to be performed by you and by sub contractors:

| | Direct | Subbed | | Direct | Subbed | | Direct | Subbed |
|---|---|---|---|---|---|---|---|---|
| Blasting | % | % | Excavation | *5* % | % | Seismic Retro-Fitting | % | % |
| Bridge Bldg. | % | % | Grading | % | % | Sewer | % | % |
| Carpentry | % | % | Insulation | % | % | Steel (Structural) | % | % |
| Concrete | % | % | Masonry | % | % | Steel (Ornamental) | % | % |
| Demolition | *45* % | % | Painting | % | % | Street/Road | % | % |
| Drilling | % | % | Plastering | % | % | Supervisory | % | % |
| Earthquake Rep | % | % | Plumbing | % | % | Water/Gas Mains | % | % |
| Electrical | % | % | Roofing | % | % | Landscaping | % | % |

*Interior Demolition = 45% Direct*

*Subcontractors: Debris Removal/Trucking, Plumbing & Electrical disconnects, etc as needed to complete the job.*

Case 1:25-cv-07817-CM-RFT    Document 14-2    Filed 09/25/25    Page 13 of 62

11. Do any of your operations involve:

Asbestos Removal? Yes____ No **X**          Pile Driving? Yes____ No **X**

Blasting? Yes____ No **X**          Shoring or Underpinning? Yes____ No **X**

Demolition? Yes **X** No____          Synthetic Stucco (EIFS)? Yes____ No **X**

12. Do you now, or have you ever built on hillsides, slopes, landfills, or other terrains susceptible to subsidence? Yes____ No **X**
if so, please describe:

_____

_____

13. Do you draw any plans or blueprints used in your construction work? Yes____ No **X**
If so, please describe:

_____

_____

14. If you are a roofing contractor or otherwise performing roofing work, what percentage of operations is:

Hot Tar? _____%          Foam appliaction? _____%

Torchdown? _____%          Excess four (4) stories? _____%     N/A **X**

## CONTROLLING THE SUBCONTRACTORS EXPOSURE

If you NEVER hire subcontractors please check here _____ and skip to next section-Historical

1.   Do you always require your subcontractors to sign a hold-harmless or indemnification agreement in your favor? Yes **✓** No____

2.   Do you utilize a standard contract with all your subcontractors? Yes **✓** No____

3.   A) Do you require your subcontractors to carry General (Public) Liability Insurance? Yes **✓**
No____
   b) Do you require that you are named as an Additional Insured on their policies? Yes **✓** No____
   c) What limit of liability do you require your subcontractors to carry? __1 million__
   d) Do you request certificates of Insurance from subcontractors in order to verify compliance with items 3a, 3b, and 3c above. Yes **✓** No____

4.   a) Do you require your subcontractors to carry worker's compensation insurance? Yes **✓** No____

## HISTORICAL PREMIUM BASIS

1.   Please complete the following chart

| POLICY YEAR | GROSS RECEIPTS | PAYROLL | SUBCONTRACTED COST |
|---|---|---|---|
| Current policy Term | 1,000,000 | 200,000 | 50,000 |
| First Prior Term | 1,000,000 | 200,000 | 50,000 |
| Second Prior Term | 1,154,214 | 180,000 | 40,000 |
| Third Prior Term | 926,533 | 150,000 | 35,000 |
| Fourth Prior Term | 850,000 | 100,000 | 30,000 |
| Fifth Prior Term | | | |

2. Please describe the five largest projects undertaken by you in the past five years:

| DESCRIPTION | JOB COST | PROJECT DURATION |
|---|---|---|
| a) Exterior Demo 36 E St | 200,000 | 6 weeks |
| b) Exterior Demo | 150,000 | 4 weeks |
| c) Interior Demo | 80,000 | 3 weeks |
| d) Interior Demo | 100,000 | 5 weeks |
| e) Exterior Demo | 50,000 | 2 weeks |

3. Please describe the three largest projects planned for the upcoming year:

| DESCRIPTION | EST. JOB COST | EST. PROJECT DURATION |
|---|---|---|
| a) Exterior Demo | 200,000 | |
| b) Interior Demo | 100,000 | |
| c) | | |

4. What is the average dollar value of a completed project? __150,000__

5. Please describe any types of projects that you have discontinued (i.e. no longer build): __None.__
_____

## SUPPLEMENTAL INFORMATION

1. Are you involved in any other business besides contracting? If so please describe: __(NO)__

2. Have you been involved in or are you aware of pending litigation concerning defective workmanship? Yes_____ No __✓__. If so please describe: _____

3. In the past ten years, present policy period or upcoming policy period, has or will any of your work involve new construction activities for multi-unit residential projects including condominiums, townhouses, tract house subdivisions or master planned residential communities? Yes____ No __✓__

The undersigned applicant warrants that the above statements and particulars together with any attached or appended documents are true and complete and do not misrepresent, misstate or omit any material facts.

The applicant agrees to notify us of any material changes in the answers to the questions on this questionnaire which may arise prior to the effective date of any policy issued pursuant to this questionnaire and the applicant understands that any outstanding quotations may be modified or withdrawn based upon such changes at our sole discretion.

Notwithstanding any of the foregoing, the applicant understands that we are not obligated or under any duty to issue a policy of insurance based upon this information. The applicant further understands that if a policy of insurance is issued, this questionnaire will be incorporated into and from a part of such policy.

Signature of applicant: __X__ ___Michael Russell___

Title (Officer, Partner) __President__

Date: __9/10/2012__

Signing this questionnaire does not bind the applicant or the insurer or the underwriting manager to provide the insurance.

Case 1:25-cv-07817-CM-RFT    Document 14-2    Filed 09/25/25    Page 15 of 62

# EXHIBIT

# 2

Case 1:25-cv-07817-CM-RFT    Document 14-2    Filed 09/25/25    Page 16 of 62

# COMMERCIAL INSURANCE APPLICATION
## APPLICANT INFORMATION SECTION

DATE (MM/DD/YYYY): 09/10/2012

**AGENCY**
Leo Fitzgerald & Associates Inc
111 Broadway #806
New York            NY  10006-1956

**CONTACT NAME:**
PHONE (A/C, No, Ext): (212) 233-1535
FAX (A/C, No): (212) 964-2509
E-MAIL ADDRESS: Insureit3@AOL.COM
CODE:                SUB CODE:
AGENCY CUSTOMER ID:

**CARRIER**                NAIC CODE
UNDERWRITER:            UNDERWRITER OFFICE:
POLICIES OR PROGRAM REQUESTED            POLICY NUMBER

| INDICATE SECTIONS ATTACHED | | | |
|---|---|---|---|
| | ACCOUNTS RECEIVABLE/VALUABLE PAPERS | ELECTRONIC DATA PROC | TRUCKERS/MOTOR CARRIER |
| | BOILER & MACHINERY | EQUIPMENT FLOATER | X UMBRELLA |
| | BUSINESS AUTO | GARAGE AND DEALERS | VEHICLE SCHEDULE |
| X | COMMERCIAL GENERAL LIABILITY | GLASS AND SIGN | WORKERS COMPENSATION |
| | CRIME/MISCELLANEOUS CRIME | INSTALLATION/BUILDERS RISK | YACHT |
| | DEALERS | OPEN CARGO | |
| | DRIVER INFO SCHEDULE | PROPERTY | |
| | | TRANSPORTATION/MOTOR TRUCK CARGO | |

**STATUS OF TRANSACTION**

| | | |
|---|---|---|
| X | QUOTE | |
| | ISSUE POLICY | |
| | RENEW | |

BOUND (Give Date and/or Attach Copy):
CHANGE    DATE    TIME
CANCEL    / /    :    AM  PM

**PACKAGE POLICY INFORMATION**
ENTER THIS INFORMATION WHEN COMMON DATES AND TERMS APPLY TO SEVERAL LINES, OR FOR MONOLINE POLICIES.

| PROPOSED EFF DATE | PROPOSED EXP DATE | BILLING PLAN | PAYMENT PLAN | AUDIT |
|---|---|---|---|---|
| 10/27/2012 | 10/27/2013 | DIRECT BILL<br>X AGENCY BILL | PACKAGE POLICY PREMIUM: $ | |

**APPLICANT INFORMATION**

NAME (First Named Insured & Other Named Insureds)
MJR Construction Services Corp

MAILING ADDRESS INCL ZIP+4 (of First Named Insured)
109 Ingraham St
Brooklyn            NY  11237-1405

FEIN OR SOC SEC # (of First Named Insured):
PHONE (A/C, No, Ext): (718) 821-8018
E-MAIL ADDRESS(ES):
WEBSITE ADDRESS(ES):

| | | | | |
|---|---|---|---|---|
| | INDIVIDUAL | X CORPORATION | SUBCHAPTER "S" CORPORATION | LLC NO. OF MEMBERS AND MANAGERS |
| | PARTNERSHIP | JOINT VENTURE | NOT FOR PROFIT ORG | |

CR BUREAU NAME:
ID NUMBER:
DATE BUS STARTED 10/03/2008

INSPECTION CONTACT: Michael Russel
ACCOUNTING RECORDS CONTACT: Same
PHONE (A/C, No, Ext): (347) 244-8812
E-MAIL ADDRESS:
PHONE (A/C, No, Ext): ( ) -
E-MAIL ADDRESS:

**PREMISES INFORMATION**        ACORD 823 attached for additional premises

| LOC # | BLD # | STREET, CITY, COUNTY, STATE, ZIP+4 | CITY LIMITS | INTEREST | YR BUILT | # EMPLOYEES | ANNUAL REVENUES | % OCCUPIED |
|---|---|---|---|---|---|---|---|---|
| 1 | 1 | 109 Ingrham St<br>Brooklyn        NY  11237-<br>Office | X INSIDE<br>OUTSIDE | OWNER<br>X TENANT | | 2 | 1,000,000 | 100 |
| | | - | INSIDE<br>OUTSIDE | OWNER<br>TENANT | | | | |
| | | - | INSIDE<br>OUTSIDE | OWNER<br>TENANT | | | | |
| | | - | INSIDE<br>OUTSIDE | OWNER<br>TENANT | | | | |

**NATURE OF BUSINESS/DESCRIPTION OF OPERATIONS BY PREMISE(S)**

© 1993-2007 ACORD CORPORATION. All rights reserved.
The ACORD name and logo are registered marks of ACORD

AGENCY CUSTOMER ID: _____

## GENERAL INFORMATION

| EXPLAIN ALL "YES" RESPONSES | Y/N |
|---|---|
| 1a. IS THE APPLICANT A SUBSIDIARY OF ANOTHER ENTITY ? | N |
| 1b. DOES THE APPLICANT HAVE ANY SUBSIDIARIES? | N |
| 2. IS A FORMAL SAFETY PROGRAM IN OPERATION? | Y |
| 3. ANY EXPOSURE TO FLAMMABLES, EXPLOSIVES, CHEMICALS? | N |
| 4. ANY CATASTROPHE EXPOSURE? | N |
| 5. ANY OTHER INSURANCE WITH THIS COMPANY OR BEING SUBMITTED? | N |
| 6. ANY POLICY OR COVERAGE DECLINED, CANCELLED OR NON-RENEWED DURING THE PRIOR THREE (3) YEARS?  (Not applicable in MO) | Y |
| 7. ANY PAST LOSSES OR CLAIMS RELATING TO SEXUAL ABUSE OR MOLESTATION ALLEGATIONS, DISCRIMINATION OR NEGLIGENT HIRING? | N |
| 8. DURING THE LAST FIVE YEARS (TEN IN RI), HAS ANY APPLICANT BEEN INDICTED FOR OR CONVICTED OF ANY DEGREE OF THE CRIME OF FRAUD, BRIBERY, ARSON OR ANY OTHER ARSON-RELATED CRIME IN CONNECTION WITH THIS OR ANY OTHER PROPERTY? (In RI, this question must be answered by any applicant for property insurance.  Failure to disclose the existence of an arson conviction is a misdemeanor punishable by a sentence of up to one year of imprisonment). | N |
| 9. ANY UNCORRECTED FIRE CODE VIOLATIONS? | N |
| 10. ANY BANKRUPTCIES, TAX OR CREDIT LIENS AGAINST THE APPLICANT IN THE PAST FIVE (5) YEARS? | N |
| 11. HAS BUSINESS BEEN PLACED IN A TRUST?  IF "YES", NAME OF TRUST: | N |
| 12. ANY FOREIGN OPERATIONS, FOREIGN PRODUCTS DISTRIBUTED IN USA, OR US PRODUCTS SOLD/DISTRIBUTED IN FOREIGN COUNTRIES? (If "YES", attach ACORD 815 for Liability Exposure and/or ACORD 816 for Property Exposure) | N |

**REMARKS/PROCESSING INSTRUCTIONS (Attach additional sheets if more space is required)**

COPY OF THE NOTICE OF INFORMATION PRACTICES (PRIVACY) HAS BEEN GIVEN TO THE APPLICANT. (Not applicable in all states, consult your agent or broker for your state's requirements.)

NOTICE OF INSURANCE INFORMATION PRACTICES - PERSONAL INFORMATION ABOUT YOU, INCLUDING INFORMATION FROM A CREDIT REPORT, MAY BE COLLECTED FROM PERSONS OTHER THAN YOU IN CONNECTION WITH THIS APPLICATION FOR INSURANCE AND SUBSEQUENT POLICY RENEWALS.  SUCH INFORMATION AS WELL AS OTHER PERSONAL AND PRIVILEGED INFORMATION COLLECTED BY US OR OUR AGENTS MAY IN CERTAIN CIRCUMSTANCES BE DISCLOSED TO THIRD PARTIES WITHOUT YOUR AUTHORIZATION. YOU HAVE THE RIGHT TO REVIEW YOUR PERSONAL INFORMATION IN OUR FILES AND CAN REQUEST CORRECTION OF ANY INACCURACIES.  A MORE DETAILED DESCRIPTION OF YOUR RIGHTS AND OUR PRACTICES REGARDING SUCH INFORMATION IS AVAILABLE UPON REQUEST. CONTACT YOUR AGENT OR BROKER FOR INSTRUCTIONS ON HOW TO SUBMIT A REQUEST TO US.

ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR ANOTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION, OR CONCEALS FOR THE PURPOSE OF MISLEADING INFORMATION CONCERNING ANY FACT MATERIAL THERETO, COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME AND SUBJECTS THE PERSON TO CRIMINAL AND [NY: SUBSTANTIAL] CIVIL PENALTIES. (Not applicable in CO, FL, HI, MA, NE, OH, OK, OR, or VT; in DC, LA, ME, TN, VA and WA, insurance benefits may also be denied)
IN FLORIDA, ANY PERSON WHO KNOWINGLY AND WITH INTENT TO INJURE, DEFRAUD, OR DECEIVE ANY INSURER FILES A STATEMENT OF CLAIM OR AN APPLICATION CONTAINING ANY FALSE, INCOMPLETE, OR MISLEADING INFORMATION IS GUILTY OF A FELONY OF THE THIRD DEGREE.

THE UNDERSIGNED IS AN AUTHORIZED REPRESENTATIVE OF THE APPLICANT AND REPRESENTS THAT REASONABLE ENQUIRY HAS BEEN MADE TO OBTAIN THE ANSWERS TO QUESTIONS ON THIS APPLICATION.  HE/SHE REPRESENTS THAT THE ANSWERS ARE TRUE, CORRECT AND COMPLETE TO THE BEST OF HIS/HER KNOWLEDGE.

| PRODUCER'S SIGNATURE | PRODUCER'S NAME (Please Print) Leo Fitzgerald | NATIONAL PRODUCER NUMBER |
|---|---|---|
| APPLICANT'S SIGNATURE  X Michael Russo | | DATE 10/23/2012 |

ACORD 125 (2007/07)
INS125 (200707)

Page 2 of 3

AGENCY CUSTOMER ID: _____

## PRIOR CARRIER INFORMATION

| LINE | CATEGORY | | Indian Harbor Ins Co | Indian Harbor | Indian Harbor | Burlington Ins Co | |
|---|---|---|---|---|---|---|---|
| **GENERAL COMMERCIAL LIABILITY** | CARRIER | | Indian Harbor Ins Co | Indian Harbor | Indian Harbor | Burlington Ins Co | |
| | POLICY NUMBER | | ESG0027559 | ESG-0027559-01 | ESG-0027559-02 | 509BW20700 | |
| | POLICY TYPE | | X OCCURRENCE | X OCCURRENCE | X OCCURRENCE | X OCCURRENCE | |
| | RETRO DATE | | / / | / / | / / | / / | / / |
| | EFF-EXP DATE | | 10/27/2008 10/27/2009 | 10/27/2009 10/27/2010 | 10/27/2010 10/27/2011 | 10/27/2011 10/27/2012 | / / / / |
| | **LIMITS** GENERAL AGGREGATE | | 2,000,000 | 2,000,000 | 2,000,000 | 2,000,000 | |
| | PRODUCTS COMP OP AGGREGATE | | 1,000,000 | 1,000,000 | 1,000,000 | 1,000,000 | |
| | PERSONAL & ADV INJ | | 1,000,000 | 1,000,000 | 1,000,000 | 1,000,000 | |
| | EACH OCCURRENCE | | 1,000,000 | 1,000,000 | 1,000,000 | 1,000,000 | |
| | FIRE DAMAGE | | 50,000 | 50,000 | 50,000 | 50,000 | |
| | MEDICAL EXPENSE | | 5,000 | 5,000 | 5,000 | 5,000 | |
| | BODILY INJURY OCCURRENCE | | | | | | |
| | AGGREGATE | | | | | | |
| | PROPERTY DAMAGE OCCURRENCE | | | | | | |
| | AGGREGATE | | | | | | |
| | COMBINED SINGLE LIMIT | | | | | | |
| | MODIFICATION FACTOR | | . | . | . | . | . |
| | TOTAL PREMIUM | | 75,000.00 | 57,500.00 | 63,500.00 | 69,069.00 | . |
| **AUTOMOBILE LIABILITY** | CARRIER | | | | | | |
| | POLICY NUMBER | | | | | | |
| | POLICY TYPE | | | | | | |
| | EFF-EXP DATE | | / / / / | / / / / | / / / / | / / / / | / / / / |
| | COMBINED SINGLE LIMIT | | | | | | |
| | BODILY INJURY EA PERSON | | | | | | |
| | EA ACCIDENT | | | | | | |
| | PROPERTY DAMAGE | | | | | | |
| | MODIFICATION FACTOR | | . | . | . | . | . |
| | TOTAL PREMIUM | | . | . | . | . | . |
| **PROPERTY** | CARRIER | | | | | | |
| | POLICY NUMBER | | | | | | |
| | POLICY TYPE | | | | | | |
| | EFF-EXP DATE | | / / / / | / / / / | / / / / | / / / / | / / / / |
| | BUILDING AMT | | | | | | |
| | PERS PROP AMT | | . | | | | |
| | MODIFICATION FACTOR | | . | . | . | . | . |
| | TOTAL PREMIUM | | . | . | . | . | . |
| | CARRIER | | | | | | |
| | POLICY NUMBER | | | | | | |
| | POLICY TYPE | | | | | | |
| | EFF-EXP DATE | | / / / / | / / / / | / / / / | / / / / | / / / / |
| | LIMIT | | | | | | |
| | MODIFICATION FACTOR | | . | . | . | . | . |
| | TOTAL PREMIUM | | . | . | . | . | . |

## LOSS HISTORY

ENTER ALL CLAIMS OR LOSSES (REGARDLESS OF FAULT AND WHETHER OR NOT INSURED) OR OCCURRENCES THAT MAY GIVE RISE TO CLAIMS FOR THE PRIOR 5 YEARS (3 YEARS IN KS & NY)

CHK HERE IF NONE [X]  SEE ATTACHED LOSS SUMMARY

| DATE OF OCCURRENCE | LINE | TYPE/DESCRIPTION OF OCCURRENCE OR CLAIM | DATE OF CLAIM | AMOUNT PAID | AMOUNT RESERVED | CLAIM STATUS OPEN | CLSD |
|---|---|---|---|---|---|---|---|
| / / | | | / / | | | | |
| / / | | | / / | | | | |
| / / | | | / / | | | | |
| / / | | | / / | | | | |

REMARKS   NOTE: FIDELITY REQUIRES A FIVE YEAR LOSS HISTORY

ATTACHMENTS

STATE SUPPLEMENT(S) (if applicable)

PROPERTY OF 92 WHO CONTAINING ANY MATERIALLY FALSE INFORMATION, OR CONCEALS FOR THE PURPOSE OF MISLEADING INFORMATION CONCERNING ANY FACT MATERIAL THERETO, COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME AND SUBJECTS THE PERSON TO CRIMINAL AND ANY SUBSTANTIAL CIVIL

# EXHIBIT

# 3

# ACORD® UMBRELLA / EXCESS SECTION

**DATE (MM/DD/YYYY)** 09/10/2012

| AGENCY | | |
|---|---|---|
| **PHONE (A/C, No, Ext):** (212) 233-1535 | | |
| **FAX (A/C, No):** (212) 964-2509 | | |

Leo Fitzgerald & Associates Inc
111 Broadway #806

New York NY 10006-1956

**CODE:**    **SUBCODE:**

**AGENCY CUSTOMER ID:**

**APPLICANT (First Named Insured)** MJR Construction Services Corp
109 Ingraham St
Brooklyn NY 11237-1405

| EFFECTIVE DATE | EXPIRATION DATE | | |
|---|---|---|---|
| 10/27/2012 | 10/27/2013 | **X** DIRECT BILL / AGENCY BILL | **PAYMENT PLAN** | **AUDIT** |

**FOR COMPANY USE ONLY**

## POLICY INFORMATION

| TRANSACTION TYPE | | | | | LIMIT OF LIABILITY | RETAINED LIMIT |
|---|---|---|---|---|---|---|
| | NEW | **X** UMBRELLA | **X** OCCURRENCE | RETROACTIVE DATE | $ 24,000,000 EACH OCCURRENCE | $ 10,000 |
| **X** | RENEWAL | EXCESS | CLAIMS MADE | PROPOSED / CURRENT | $ 24,000,000 | |
| **EXPIRING POL #:** | | | | / /   / / | $ | **FIRST DOLLAR DEFENSE** YES **X** NO |

## PRIMARY LOCATION & SUBSIDIARIES (ACORD 125)

| # | NAME AND LOCATION OF PRIMARY AND ALL SUBSIDIARY COMPANIES (Describe Operations) | ANNUAL PAYROLL | ANN GROSS SALES | FOREIGN GROSS SALES | # EMPL |
|---|---|---|---|---|---|
| 1 | MJR Construction Services Corp (Contracting) | 200,000 | 1,000,000 | 0 | 6 |

## UNDERLYING INSURANCE

LIST ALL LIABILITY/COMPENSATION POLICIES IN FORCE TO APPLY AS UNDERLYING INSURANCE

| TYPE | CARRIER/POLICY NUMBER | POLICY EFF DATE | POLICY EXP DATE | LIMITS | | ANNUAL RENEWAL PREMIUM | + - RATING MOD |
|---|---|---|---|---|---|---|---|
| AUTOMOBILE LIABILITY | | / / | / / | CSL EA. ACC. | $ | $ | . |
| | | | | BI EA. ACC. | $ | $ | . |
| | | | | BI EA. PER. | $ | $ | . |
| | | | | PD EA. ACC. | $ | $ | . |
| GENERAL LIABILITY POLICY TYPE **X** OCCUR / CLAIMS MADE | | 10/27/2012 / / | 10/27/2013 / / | EACH OCCURRENCE | $ 1,000,000 | PREM/OPS | |
| | | | | GENERAL AGGR | $ 2,000,000 | $ | |
| | | | | PROD & COMP OPS AGGREGATE | $ 1,000,000 | PRODUCTS | |
| | | | | PERSONAL & ADV INJURY | $ 1,000,000 | $ | |
| | | | | DAMAGE TO RENTED PREMISES | $ 50,000 | OTHER | |
| | | | | MEDICAL EXPENSE | $ 5,000 | $ | . |
| EMPLOYERS LIABILITY | State Insurance Fund 21833710 | 01/11/2012 / / | 01/11/2013 / / | EACH ACCIDENT | $ 1,000,000 | | |
| | | | | DISEASE EACH EMPLOYEE | $ 1,000,000 | $ 56,000 | 1.0000 |
| | | | | DISEASE POLICY LIMIT | $ 1,000,000 | | . |

### UNDERLYING GENERAL LIABILITY INFORMATION (Explain all "YES" responses)

1. ARE DEFENSE COSTS:    WITHIN AGGREGATE LIMITS?    A SEPARATE LIMIT?    UNLIMITED?
2. INDICATE THE EDITION DATE OF THE ISO SIMPLIFIED FORM OR SIMILAR FILING FOR THE UNDERLYING COVERAGE:    / /
3. HAS ANY PRODUCT, WORK, ACCIDENT, OR LOCATION BEEN EXCLUDED, UNINSURED OR SELF INSURED FROM ANY PREVIOUS COVERAGE?    YES / NO
4. FOR CLAIMS MADE, INDICATE RETROACTIVE DATE OF CURRENT UNDERLYING POLICY:    / /
5. FOR CLAIMS MADE, INDICATE ENTRY DATE INTO UNINTERRUPTED CLAIMS MADE COVERAGE:    / /
6. FOR CLAIMS MADE, WAS "TAIL" COVERAGE PURCHASED FOR ANY PREVIOUS PRIMARY OR EXCESS POLICY?    YES, EFF. DATE:   / /    NO

CHECK ALL COVERAGES IN UNDERLYING POLICIES. ALSO CHECK IF ANY EXPOSURES ARE PRESENT FOR EACH COVERAGE. PROVIDE AN EXPLANATION. EXPLAIN IF DIFFERENT LIMITS, EXTENSIONS, OR EXCLUSIONS. EXPLAIN ANY SPECIAL COVERAGES BEYOND STANDARD FORMS. **EXPLAIN ALL EXPOSURES.**

| CHECK IF APPROPRIATE | COVERAGE | EXPOSURE | COVERAGE | EXPOSURE |
|---|---|---|---|---|
| | ANY AUTO (SYMBOL 1) | CARE, CUSTODY, CONTROL | | PROFESSIONAL LIABILITY (E&O) | |
| | CGL - CLAIMS MADE | EMPLOYEE BENEFIT LIABILITY | | VENDORS LIABILITY | |
| **X** | CGL - OCCURRENCE | FOREIGN LIABILITY/TRAVEL | | WATERCRAFT LIABILITY | |
| **COVERAGE** | **EXPOSURE** | GARAGEKEEPERS LIABILITY | | | |
| | AIRCRAFT LIABILITY | INCIDENTAL MEDICAL MALPRACTICE | | | |
| | AIRCRAFT PASSENGER LIABILITY | LIQUOR LIABILITY | | | |
| **X** | ADDITIONAL INTERESTS | POLLUTION LIABILITY | | | |

UNDERLYING INSURANCE COVERAGE INFORMATION (INCLUDE ALL RESTRICTIONS; E.G. LASER ENDORSEMENTS, DISCRIMINATION, SUBROGATION WAIVERS, OR EXTENSIONS OF COVERAGE - ATTACH SEPARATE SHEET IF NECESSARY)

PREVIOUS EXPERIENCE: (GIVE DETAILS OF ALL LIABILITY CLAIMS EXCEEDING $10,000 OR OCCURRENCES THAT MAY GIVE RISE TO CLAIMS, DURING THE PAST 5 YEARS, WHETHER INSURED OR NOT. SPECIFY DATE, COVERAGE, DESCRIPTION, AMOUNT PAID, AMOUNT OUTSTANDING - ATTACH SEPARATE SHEET IF NECESSARY)

**X** NO SUCH CLAIMS

ACORD 131 (2004/07)    **ATTACH TO ACORD 125 AND ACORD 126**    © ACORD CORPORATION 1991-2004

INS131 (0407).02    Page 1 of 2

## CARE, CUSTODY, CONTROL

| LOC | PROPERTY TYPE | VALUE | A* | B* | C* | D* | SQ FT OF BLDG OCC | OCCUPANCY / DESCRIPTION OF PERSONAL PROPERTY |
|---|---|---|---|---|---|---|---|---|
| | REAL | | | | | | | |
| | PERSONAL | | | | | | | |

*APPLICANT: [A] IS HELD HARMLESS IN THE LEASE, [B] HAS A WAIVER OF SUBROGATION, [C] IS A NAMED INSURED IN THE FIRE POLICY, [D] OTHER (specify)

## ADDITIONAL EXPOSURES

| EXPLAIN ALL "YES" RESPONSES, PROVIDE OTHER INFORMATION REQUIRED | YES | NO | EXPLAIN ALL "YES" RESPONSES, PROVIDE OTHER INFORMATION REQUIRED | YES | NO |
|---|---|---|---|---|---|
| **ADVERTISERS LIABILITY** | | | **POLLUTION LIABILITY**  EPA#: | | |
| 1. MEDIA USED: ANNUAL COST: $ | | | 20. DO CURRENT OR PAST PRODUCTS, OR THEIR COMPONENTS, CONTAIN HAZARDOUS MATERIALS THAT MAY REQUIRE SPECIAL DISPOSAL METHODS? | | X |
| 2. ARE SERVICES OF AN ADVERTISING AGENCY USED? | | X | 21. INDICATE THE COVERAGES CARRIED: | | |
| 3. ANY COVERAGE PROVIDED UNDER AGENCY'S POLICY? | | X | X  GL WITH STANDARD ISO POLLUTION EXCLUSION | | |
| **AIRCRAFT LIABILITY** | | | GL WITH STANDARD SUDDEN & ACCIDENTAL ONLY | | |
| 4. DOES APPLICANT OWN/LEASE/OPERATE AIRCRAFT? | | X | GL WITH POLLUTION COVERAGE ENDORSEMENT | | |
| **AUTO LIABILITY** | | | SEPARATE POLLUTION COVERAGE | | |
| 5. ARE EXPLOSIVES, CAUSTICS, FLAMMABLES OR OTHER DANGEROUS CARGO HAULED? | | X | **PRODUCT LIABILITY** | | |
| 6. ARE PASSENGERS CARRIED FOR A FEE? | | X | 22. ARE MISSILES, ENGINES, GUIDANCE SYSTEMS, FRAMES OR ANY OTHER PRODUCT USED / INSTALLED IN AIRCRAFT? | | X |
| 7. ANY UNITS NOT INSURED BY UNDERLYING POLICIES? | | X | 23. ARE FOREIGN PRODUCTS DISTRIBUTED IN U.S.? | | X |
| 8. ARE ANY VEHICLES LEASED OR RENTED TO OTHERS? | | X | 24. ARE U.S. PRODUCTS SOLD/DISTRIB'D IN FOREIGN COUNTRIES? | | X |
| 9. ARE HIRED AND NON/OWNED COVERAGES PROVIDED? | X | | 25. PRODUCT LIABILITY LOSS IN PAST 3 YEARS? (SPECIFY) | | X |
| **CONTRACTORS LIABILITY** | | | 26. GROSS SALES FROM EACH OF LAST 3 YEARS: | | |
| 10. IS BRIDGE, DAM, OR MARINE WORK PERFORMED? | | X | $ 1,000,000  $ 1,000,000  $ 800,000 | | |

11. DESCRIBE TYPICAL JOBS PERFORMED (ATTACH SEPARATE SHEETS):
**Demolition of Warehouse type building. Interior demolition of several floors.**

**PROTECTIVE LIABILITY**

27. DESCRIBE INDEPENDENT CONTRACTORS (ATTACH SEPARATE SHEETS):
**As required to complete the job.**

12. DESCRIBE AGREEMENT (ATTACH SEPARATE SHEETS):
**As required by contract**

| | YES | NO | |
|---|---|---|---|
| 13. DOES APPLICANT OWN, RENT, OR OTHERWISE USE CRANES? | | X | |
| 14. DO SUBCONTRACTORS CARRY COVERAGES OR LIMITS LESS THAN APPLICANT? | | X | **WATERCRAFT LIABILITY** |

| | YES | NO |
|---|---|---|
| 28. DOES APPLICANT OWN OR LEASE WATERCRAFT? | | X |

**EMPLOYERS LIABILITY**

| | YES | NO |
|---|---|---|
| 15. IS APPLICANT SELF-INSURED IN ANY STATE? | | X |

# OWNED  LENGTH  HORSEPOWER

16. SUBJECT TO:  JONES ACT  FELA  STOP GAP  OTHER:

**INCIDENTAL MALPRACTICE LIABILITY**

**APARTMENTS / CONDOMINIUMS / HOTELS / MOTELS**

| | YES | NO | # STORIES | # UNITS | # SWIMMING POOLS | # DIVING BOARDS |
|---|---|---|---|---|---|---|
| 17. IS A HOSPITAL OR FIRST AID FACILITY MAINTAINED? | | X | | | | |
| 18. ARE COVERAGES PROVIDED FOR DOCTORS / NURSES? | | X | | | | |

19. INDICATE # OF DOCTORS:  NURSES:  BEDS:

## REMARKS / VEHICLES

| TYPE | | # OWNED | # NON-OWNED | # LEASED | PROPERTY HAULED | 0-50 MI | 50-200 MI | OVER 200 MI |
|---|---|---|---|---|---|---|---|---|
| PRIVATE PASSENGER | | | | | | | | |
| TRUCKS | LIGHT | | | | | | | |
| | MEDIUM | | | | | | | |
| | HEAVY | | | | | | | |
| | EX. HEAVY | | | | | | | |
| TRUCKS/ TRACTORS | HEAVY | | | | | | | |
| | EX. HEAVY | | | | | | | |
| BUSES | | | | | | | | |

ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR ANOTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION, OR CONCEALS FOR THE PURPOSE OF MISLEADING INFORMATION CONCERNING ANY FACT MATERIAL THERETO, COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME AND SUBJECTS THE PERSON TO CRIMINAL AND [NY: SUBSTANTIAL] CIVIL PENALTIES. (Not applicable in CO, HI, NE, OH, OK, or VT; in DC, LA, ME, TN and VA insurance benefits may also be denied).

**APPLICABLE ONLY IN INDIANA, LOUISIANA AND NEW HAMPSHIRE:**  OTHER STATE: _____
IF THE COMPANY TO WHICH I AM APPLYING OFFERS UNINSURED MOTORISTS (UM) [AND UNDERINSURED MOTORISTS (UIM) IN INDIANA] COVERAGE IN MY STATE, I ACKNOWLEDGE THAT (UM) [AND UIM IN INDIANA] COVERAGE HAS BEEN EXPLAINED TO ME, AND I HAVE BEEN OFFERED THE OPTION OF SELECTING UM OR UIM [IN] LIMITS EQUAL TO MY LIABILITY LIMITS, UM OR UIM [IN] LIMITS LOWER THAN MY LIABILITY LIMITS, OR TO REJECT UM OR UIM [IN] COVERAGE ENTIRELY.
1. I SELECT UM LIMITS INDICATED IN THIS APPLICATION. ____ (INITIALS)  OR  2. I REJECT UM COVERAGE IN ITS ENTIRETY. ____ (INITIALS)

**APPLICABLE ONLY IN INDIANA:**
1. I SELECT UIM LIMITS INDICATED IN THIS APPLICATION. ____ (INITIALS)  OR  2. I REJECT UIM COVERAGE IN ITS ENTIRETY. ____ (INITIALS)

**APPLICABLE ONLY IN VERMONT:** IF THE COMPANY TO WHICH I AM APPLYING OFFERS UM COVERAGE, I ACKNOWLEDGE THAT I HAVE BEEN OFFERED UM COVERAGE EQUAL TO MY LIABILITY LIMITS. I HAVE SELECTED THE LIMITS INDICATED IN THIS APPLICATION.

IMPORTANT - THE STATEMENTS (ANSWERS) GIVEN ABOVE ARE TRUE AND ACCURATE. THE APPLICANT HAS NOT WILLFULLY CONCEALED OR MISREPRESENTED ANY MATERIAL FACT OR CIRCUMSTANCE CONCERNING THIS APPLICATION. THIS APPLICATION DOES NOT CONSTITUTE A BINDER.

APPLICANT'S SIGNATURE  X _Michael Purcell_  DATE 10/23/2012

ACORD 131 (2004/07)
INS131 (0407).02  **AMS**  Page 2 of 2

Case 1:25-cv-07817-CM-RFT    Document 14-2    Filed 09/25/25    Page 22 of 62

# EXHIBIT

# 4

Case 1:25-cv-07817-CM-RFT    Document 14-2    Filed 09/25/25    Page 23 of 62



# POLICYHOLDER DISCLOSURE
## NOTICE OF TERRORISM
## INSURANCE COVERAGE

You are hereby notified that under the Terrorism Risk Insurance Act, as amended, that you have a right to purchase insurance coverage for losses resulting from acts of terrorism, as defined in Section 102(1) of the Act: The term "act of terrorism" means any act that is certified by the Secretary of the Treasury—in concurrence with the Secretary of State, and the Attorney General of the United States—to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

YOU SHOULD KNOW THAT WHERE COVERAGE IS PROVIDED BY THIS POLICY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM, SUCH LOSSES MAY BE PARTIALLY REIMBURSED BY THE UNITED STATES GOVERNMENT UNDER A FORMULA ESTABLISHED BY FEDERAL LAW. HOWEVER, YOUR POLICY MAY CONTAIN OTHER EXCLUSIONS WHICH MIGHT AFFECT YOUR COVERAGE, SUCH AS AN EXCLUSION FOR NUCLEAR EVENTS. UNDER THE FORMULA, THE UNITED STATES GOVERNMENT GENERALLY REIMBURSES 85% OF COVERED TERRORISM LOSSES EXCEEDING THE STATUTORILY ESTABLISHED DEDUCTIBLE PAID BY THE INSURANCE COMPANY PROVIDING THE COVERAGE. THE PREMIUM CHARGED FOR THIS COVERAGE IS PROVIDED BELOW AND DOES NOT INCLUDE ANY CHARGES FOR THE PORTION OF LOSS THAT MAY BE COVERED BY THE FEDERAL GOVERNMENT UNDER THE ACT.

YOU SHOULD ALSO KNOW THAT THE TERRORISM RISK INSURANCE ACT, AS AMENDED, CONTAINS A $100 BILLION CAP THAT LIMITS U.S. GOVERNMENT REIMBURSEMENT AS WELL AS INSURERS' LIABILITY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM WHEN THE AMOUNT OF SUCH LOSSES IN ANY ONE CALENDAR YEAR EXCEEDS $100 BILLION. IF THE AGGREGATE INSURED LOSSES FOR ALL INSURERS EXCEED $100 BILLION, YOUR COVERAGE MAY BE REDUCED.

**Acceptance or Rejection of Terrorism Insurance Coverage**

| | |
|---|---|
| ○ | I hereby elect to purchase terrorism coverage for a prospective premium of $9,750.00 |
| X | I hereby decline to purchase terrorism coverage for certified acts of terrorism. I understand that I will have no coverage for losses resulting from certified acts of terrorism. |

X _Michael Russell_

Policyholder/Applicant's Signature

Michael Russell

Print Name

10/23/2012

Date Signed

_Alterra Excess & Surplus Insurance Company_

Insurance Company

10/27/2012

Policy Number / Effective Date

MXM102 (10/10)

Case 1:25-cv-07817-CM-RFT     Document 14-2     Filed 09/25/25     Page 24 of 62

# EXHIBIT

# 5

Case 1:25-cv-07817-CM-RFT    Document 14-2    Filed 09/25/25    Page 25 of 62

FIRST FINANCIAL INSURANCE COMPANY
THE BURLINGTON INSURANCE COMPANY
GUILFORD INSURANCE COMPANY
ALAMANCE INSURANCE COMPANY



IFG Companies'

## POLICYHOLDER DISCLOSURE
## NOTICE OF TERRORISM INSURANCE COVERAGE
### (FORM C)

| | |
|---|---|
| Insured: MJR Construction Services Corp. | Policy No.: |
| Address: 109 Ingraham St. | Type of Policy: General Liability |
| City, State, Zip: Brooklyn, NY  11237 | Policy Term: 10/27/2012 to 10/27/2013 |

You are hereby notified that under the Terrorism Risk Insurance Act, as amended, you have a right to purchase insurance coverage for losses resulting from acts of terrorism, *as defined in Section 102(1) of the Act:* the term "act of terrorism" means any act that is certified by the Secretary of the Treasury - in concurrence with the Secretary of State, and the Attorney General of the United States – to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

YOU SHOULD KNOW THAT WHERE COVERAGE IS PROVIDED BY THIS POLICY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM, SUCH LOSSES MAY BE PARTIALLY REIMBURSED BY THE UNITED STATES GOVERNMENT UNDER A FORMULA ESTABLISHED BY FEDERAL LAW. HOWEVER, YOUR POLICY MAY CONTAIN OTHER EXCLUSIONS WHICH MIGHT AFFECT YOUR COVERAGE, SUCH AS AN EXCLUSION FOR NUCLEAR EVENTS. UNDER THE FORMULA, THE UNITED STATES GOVERNMENT GENERALLY REIMBURSES 85% OF COVERED TERRORISM LOSSES EXCEEDING THE STATUTORILY ESTABLISHED DEDUCTIBLE PAID BY THE INSURANCE COMPANY PROVIDING THE COVERAGE. THE PREMIUM CHARGED FOR THIS COVERAGE IS PROVIDED BELOW AND DOES NOT INCLUDE ANY CHARGES FOR THE PORTION OF LOSS THAT MAY BE COVERED BY THE FEDERAL GOVERNMENT UNDER THE ACT.

YOU SHOULD ALSO KNOW THAT THE TERRORISM RISK INSURANCE ACT, AS AMENDED, CONTAINS A $100 BILLION CAP THAT LIMITS U.S. GOVERNMENT REIMBURSEMENT AS WELL AS INSURERS' LIABILITY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM WHEN THE AMOUNT OF SUCH LOSSES IN ANY ONE CALENDAR YEAR EXCEEDS $100 BILLION. IF THE AGGREGATE INSURED LOSSES FOR ALL INSURERS EXCEED $100 BILLION, YOUR COVERAGE MAY BE REDUCED.

Acceptance Or Rejection Of Terrorism Insurance Coverage:

| | |
|---|---|
| ☐ | I hereby elect to purchase terrorism coverage for a prospective premium of: $ |
| ☒ | I hereby decline to purchase terrorism coverage for certified acts of terrorism.  I understand that I will have no coverage for losses resulting from certified acts of terrorism. |

X _Michael Russell_
Policyholder/Applicant's Signature

_Michael Russell_
Print Name

_10/23/2012_
Date

### RETURN THIS COMPLETED FORM TO YOUR INSURANCE AGENT

Form C 01 08

Page 1 of 1

# EXHIBIT

# 6

## POLICYHOLDER DISCLOSURE
## NOTICE OF TERRORISM
## INSURANCE COVERAGE

You are hereby notified that under the Terrorism Risk Insurance Act, as amended, that you have a right to purchase insurance coverage for losses resulting from acts of terrorism, *as defined in Section 102(1) of the Act*: The term "act of terrorism" means any act that is certified by the Secretary of the Treasury --in concurrence with the Secretary of State, and the Attorney General of the United States --to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

YOU SHOULD KNOW THAT WHERE COVERAGE IS PROVIDED BY THIS POLICY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM, SUCH LOSSES MAY BE PARTIALLY REIMBURSED BY THE UNITED STATES GOVERNMENT UNDER A FORMULA ESTABLISHED BY FEDERAL LAW. HOWEVER, YOUR POLICY MAY CONTAIN OTHER EXCLUSIONS WHICH MIGHT AFFECT YOUR COVERAGE, SUCH AS AN EXCLUSION FOR NUCLEAR EVENTS OR COVERAGES YOU REJECTED IN THE UNDERLYING INSURANCE. UNDER THE FORMULA, THE UNITED STATES GOVERNMENT GENERALLY REIMBURSES 85% OF COVERED TERRORISM LOSSES EXCEEDING THE STATUTORILY ESTABLISHED DEDUCTIBLE PAID BY THE INSURANCE COMPANY PROVIDING THE COVERAGE. THE PREMIUM CHARGED FOR THIS COVERAGE IS PROVIDED BELOW AND DOES NOT INCLUDE ANY CHARGES FOR THE PORTION OF LOSS THAT MAY BE COVERED BY THE FEDERAL GOVERNMENT UNDER THE ACT.

YOU SHOULD ALSO KNOW THAT THE TERRORISM RISK INSURANCE ACT, AS AMENDED, CONTAINS A $100 BILLION CAP THAT LIMITS U.S. GOVERNMENT REIMBURSEMENT AS WELL AS INSURERS' LIABILITY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM WHEN THE AMOUNT OF SUCH LOSSES IN ANY ONE CALENDAR YEAR EXCEEDS $100 BILLION. IF THE AGGREGATE INSURED LOSSES FOR ALL INSURERS EXCEED $100 BILLION, YOUR COVERAGE MAY BE REDUCED.

### Acceptance or Rejection of Terrorism Insurance Coverage

| | |
|---|---|
| | I hereby elect to purchase terrorism coverage for a prospective premium of $0.00 |
| X | I hereby decline to purchase terrorism coverage for certified acts of terrorism. I understand that I will have no coverage for losses resulting from certified acts of terrorism. |

X _Michael Russell_
Policyholder/Applicant's Signature

michael Russell
Print Name

10/23/2012
Date

Navigators Insurance Company
Insurance Company

_____
Policy Number

PHN NAVG TERR (11 08)                                                    Page 1 of 1

Contains copyrighted material of the National Association of Insurance Commissioners

Case 1:25-cv-07817-CM-RFT    Document 14-2    Filed 09/25/25    Page 28 of 62

# EXHIBIT

# 7

**MARGE NY INC.**
1644 57th Street
Brooklyn, NY 11204

Date: 2/28/2013

Agreement#: 6735

# Subcontractor Agreement

**First Party:**

MJR Construction Services Corp
Fax 718-821-0820

**Second Party:**

MARGE NY INC.
1644 57th Street
Brooklyn, NY 11204

**Project Location:**

-1515 Bedford Ave

**Agreement Amount:**

**Scope of work and agreement terms:**

SCOPE OF WORK :
- Completely demolish 3 story corner brick building in its entirety. This includes all roof equipment, building mechanical systems, interior finishes and all exterior masonry walls.
- All cellar masonry walls, concrete floor slabs and foundations which are not part of the adjacent buildings (and approved for removal by the engineer) will be removed and the entire cellar will be backfilled and left level to grade for sign-off from the Department of Buildings
- Carting and removal of all our combustible debris from site
- An eight foot high plywood construction fence will be erected on job site perimeter
- Set-up dust control measures (on-site water & wetting of demolition operations when necessary or propose alternative dust control measures)
- Work to be performed according to all local and federal laws and guidelines.
- This proposal includes all labor, equipment and material.

This agreement is between the First Party and the Second Party, whereas the First Party agrees to perform the above scope of work at above referenced Project Location for the consideration of Agreement Amount as described above.

1) I understand & agree that all work will be done according to all applicable regulatory agencies governing the work being done at the job site, including but not limited to all NYC building codes. I also agree & affirm to have men who are fully knowledgeable & experienced with the work they are hired to do, including but not limited to all O.S.H.A. regulations & NYC Building codes. _____

2) It is also agreed upon that all men will be fully knowledgeable of all safety, pertaining to themselves, the property & the safety of the public & building occupants if any. _____.

3) It is also agreed that I will be held liable and pay any violations, fines, legal fee's etc. Arising as a result of the job at the above location. _____

4) Job to start on _____ and to be completed on _____

Time is of the essence. _____

Print Name: M Russell

I agree to the above terms: MJRussell

Page 1

**MARGE NY INC.**
**1644 57th Street**
**Brooklyn, NY 11204**

Date: 2/28/2013

Agreement#: 6735

# Subcontractor Agreement

| First Party: | Second Party: |
|---|---|
| MJR Construction Services Corp<br>Fax 718-821-0820 | MARGE NY INC.<br>1644 57th Street<br>Brooklyn, NY 11204 |

| Project Location: | Agreement Amount: |
|---|---|
| -1515 Bedford Ave | $290,000.00   ✓ OK |

**Scope of work and agreement terms:**

5) It is also agreed that neither myself, my firm, my employee's, my agents or subcontractors may discuss or divulge any information of this contract or any other contract from Marge NY Inc. (either verbal or written) to anyone especially his clients. _____

6) Terms Of payment: All payments will be made based on payments received from the client. (Marge's Client) - No payments will be made unless client approves payment & submits payment to Marge NY Inc._____

7) Sub-contractor agrees not to speak to client of Marge NY Inc. or ask for any money to the client- if sub-contractor violates this clause sub-contractor agrees to forfeit payment of the job. _____

8) Subcontractor may not divulge that he is a subcontractor to Marge NY Inc. client-violation of this clause-subcontractor agrees to forfeit payment_____

9) No payment will be made for this job before 4 weeks. _____

10) By signing this contract subcontractor agrees to all clauses of the long-term contract from the AIA (American Institute of Architects) between contractor & subcontractor. _____

11) Subcontractor must have Worker's Compensation insurance & at least $1,000,0000.00 General Liability covering all work being done in this contract. Subcontractor must indemnify & hold harmless Marge NY Inc., & the building owner for all lawsuits & liabilities arising from this job. Subcontractor must supply ample proof of the above- including but not limited to a certificate of insurance & documentation listing Marge NY Inc. and building owner as additional insured. _____

12) Subcontractor must submit to us a copy of the company site safety program and an engineer's survey prior to commencement of work ; a copy to be kept at each job office. _____

13) Marge NY Inc. has the right to terminate this contract without notice or any reason and will pay proportionate for services rendered

Print Name: _M Russell_   I agree to the above terms: _MJ Russell_

Page 2

# EXHIBIT

# 8

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

| Name Insured: | Endorsement Number: |
|---|---|
| **MJR Construction Services Corp.** | |

| Policy Number: | This Endorsement, effective at 12:01 a.m. : |
|---|---|
| **MAX3EC50000207** | **10/27/2012** |

| Issued By (Name of Insurance Company): | |
|---|---|
| **Alterra Excess & Surplus Insurance Company** | |

## STATE FRAUD STATEMENTS
## FRAUD STATEMENTS – SIGNATURE REQUIRED FOR NEW YORK ONLY

### ARKANSAS, LOUISIANA, RHODE ISLAND, TEXAS AND WEST VIRGINIA FRAUD STATEMENT

Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an applicatio for insurance is guilty of a crime and may be subject to fines and confinement in prison.

### ALASKA FRAUD STATEMENT

A person who knowingly and with intent to injure, defraud, or deceive an insurance company files a claim containing false, incomplete, or misleading information may be prosecuted under state law.

### ARIZONA FRAUD STATEMENT

For your protection Arizona law requires the following statement to appear on this form. Any person who knowingly presents a false or fraudulent claim for payment of a loss is subject to criminal and civil penalties.

### CALIFORNIA FRAUD STATEMENT

For your protection, California law requires that you be made aware of the following: Any person who knowingly presents false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.

### COLORADO FRAUD STATEMENT

It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance, and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado division of insurance within the department of regulatory agencies.

### DISTRICT OF COLUMBIA FRAUD STATEMENT

**WARNING:** It is a crime to provide false, or misleading information to an insurer for the purpose of defrauding the insurer or any other person. Penalties include imprisonment and/or fines. In addition, an insurer may deny insurance benefits if false information materially related to a claim was provided by the applicant.

Case 1:25-cv-07817-CM-RFT     Document 14-2     Filed 09/25/25     Page 33 of 62

## FLORIDA FRAUD STATEMENT

Any person who knowingly and with intent to injure, defraud or deceive any insurer, files a statement of claim or an application containing any false, incomplete, or misleading information is guilty of a felony of the third degree.

## HAWAII FRAUD STATEMENT

For your protection, Hawaii law requires you to be informed that any person who presents a fraudulent claim for payment of a loss or benefit is guilty of a crime punishable by fines or imprisonment, or both.

## IDAHO FRAUD STATEMENT

Any person who knowingly, and with intent to defraud or deceive any insurance company, files a statement of claim containing any false, incomplete or misleading information is guilty of a felony.

## INDIANA FRAUD STATEMENT

Any person who knowingly and with intent to defraud an insurer files a statement of claim containing any false, incomplete, or misleading information commits a felony.

## KENTUCKY FRAUD STATEMENT

Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime.

## MAINE FRAUD STATEMENT

It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties may include imprisonment, fines or a denial of insurance benefits.

## MARYLAND FRAUD STATEMENT

Any person who knowingly and willfully presents a false or fraudulent claim for payment of a loss or benefit or who knowingly and willfully presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

## MINNESOTA FRAUD STATEMENT

Any person who files a claim with intent to defraud or helps commit a fraud against an insurer is guilty of a crime.

## NEW HAMPSHIRE FRAUD STATEMENT

Any person who, with a purpose to injure, defraud or deceive any insurance company, files a statement of claim containing any false, incomplete or misleading information is subject to prosecution and punishment for insurance fraud, as provided in RSA 638:20.

## NEW JERSEY FRAUD STATEMENT

Any person who includes any false or misleading information on an application for an insurance policy is subject to criminal and civil penalties.

### NEW MEXICO FRAUD STATEMENT

Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to civil fines and criminal penalties.

### OHIO FRAUD STATEMENT

Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud.

### OKLAHOMA FRAUD STATEMENT

**WARNING:** Any person who knowingly and with intent to injure, defraud, or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony.

### OREGON FRAUD STATEMENT

Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents materially false information in an application for insurance may be guilty of a crime and may be subject to fines and confinement in prison.

### PENNSYLVANIA FRAUD STATEMENT

Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

### TENNESSEE, VIRGINIA, AND WASHINGTON FRAUD STATEMENT

It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits.

ASE0045N    (05/11)

Case 1:25-cv-07817-CM-RFT    Document 14-2    Filed 09/25/25    Page 35 of 62

**SIGNATURE REQUIRED**

**NEW YORK FRAUD STATEMENT**

Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.

MJR Construction Services Corp.

Insured/Applicant/Claimant

X _____

By (Authorized Representative)

President

Title

02/14/2013

Date

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.**

ASE0045N (05/11)                                                                 Page 4 of 4

# EXHIBIT

# 9

FILED: NEW YORK COUNTY CLERK 08/18/2017
NYSCEF DOC. NO. 92
Case 1:25-cv-07817-CM-RFT    Document 14-2    Filed 09/25/25    Page 37 of 62

# ACORD® COMMERCIAL INSURANCE APPLICATION

## APPLICANT INFORMATION SECTION

DATE (MM/DD/YYYY): 10/19/2014

| AGENCY | CARRIER | | NAIC CODE |
|---|---|---|---|
| Leo Fitzgerald & Associates Inc<br><br>111 Broadway #806<br><br><br>New York            NY   10006-1956 | | | |

| | | |
|---|---|---|
| **UNDERWRITER:** | **UNDERWRITER OFFICE:** | |

### POLICIES OR PROGRAM REQUESTED

| | | POLICY NUMBER |
|---|---|---|

| INDICATE SECTIONS ATTACHED | | | |
|---|---|---|---|
| | ACCOUNTS RECEIVABLE/ VALUABLE PAPERS | ELECTRONIC DATA PROC | TRUCKERS/MOTOR CARRIER |
| | BOILER & MACHINERY | EQUIPMENT FLOATER | X UMBRELLA |
| | BUSINESS AUTO | GARAGE AND DEALERS | VEHICLE SCHEDULE |
| X | COMMERCIAL GENERAL LIABILITY | GLASS AND SIGN | WORKERS COMPENSATION |
| | CRIME/MISCELLANEOUS CRIME | INSTALLATION/BUILDERS RISK | YACHT |
| | DEALERS | OPEN CARGO | |
| | DRIVER INFO SCHEDULE | PROPERTY | |
| | | TRANSPORTATION/ MOTOR TRUCK CARGO | |

**CONTACT NAME:**

**PHONE (A/C, No, Ext):** (212) 233-1535

**FAX (A/C, No):** (212) 964-2509

**E-MAIL ADDRESS:** Insureit3@AOL.COM

**CODE:**          **SUB CODE:**

**AGENCY CUSTOMER ID:**

## STATUS OF TRANSACTION

| | | |
|---|---|---|
| X QUOTE | ISSUE POLICY | RENEW |
| BOUND (Give Date and/or Attach Copy): | | |
| CHANGE   **DATE**         **TIME** | | AM |
| CANCEL    /  /        : | | PM |

## PACKAGE POLICY INFORMATION

ENTER THIS INFORMATION WHEN COMMON DATES AND TERMS APPLY TO SEVERAL LINES, OR FOR MONOLINE POLICIES.

| PROPOSED EFF DATE | PROPOSED EXP DATE | BILLING PLAN | PAYMENT PLAN | AUDIT |
|---|---|---|---|---|
| | | DIRECT BILL | | |
| 10/27/2014 | 10/27/2015 | X AGENCY BILL | PACKAGE POLICY PREMIUM: $ | |

## APPLICANT INFORMATION

| NAME (First Named Insured & Other Named Insureds) | MAILING ADDRESS INCL ZIP+4 (of First Named Insured) |
|---|---|
| MJR Construction Services Corp | 109 Ingraham St #308<br><br><br>Brooklyn            NY  11237-1405 |

| FEIN OR SOC SEC # (of First Named Insured): | PHONE (A/C, No, Ext): (718) 821-8018 |
|---|---|

**E-MAIL ADDRESS(ES):**

**WEBSITE ADDRESS(ES):**

| | | | | | | DATE BUS STARTED |
|---|---|---|---|---|---|---|
| INDIVIDUAL | X CORPORATION | SUBCHAPTER "S" CORPORATION | LLC  NO. OF MEMBERS AND MANAGERS ____ | CR BUREAU NAME: | | 10/03/2008 |
| PARTNERSHIP | JOINT VENTURE | NOT FOR PROFIT ORG | | ID NUMBER: | | |

**INSPECTION CONTACT:** Michael Russel          **ACCOUNTING RECORDS CONTACT:** Same

**PHONE (A/C, No, Ext):** (347) 244-8812   **E-MAIL ADDRESS:**     **PHONE (A/C, No, Ext):** (    )    -     **E-MAIL ADDRESS:**

## PREMISES INFORMATION      ACORD 823 attached for additional premises

| LOC # | BLD # | STREET, CITY, COUNTY, STATE, ZIP+4 | CITY LIMITS | INTEREST | YR BUILT | # EMPLOYEES | ANNUAL REVENUES | % OCCUPIED |
|---|---|---|---|---|---|---|---|---|
| 1 | 1 | 109 Ingraham St<br>Brooklyn        NY  11237-<br>Mailing Address | X INSIDE<br>OUTSIDE | OWNER<br>X TENANT | | 2 | 1,000,000 | 100 |
| | | | INSIDE<br>OUTSIDE | OWNER<br>TENANT | | | | |
| 2 | 1 | 5201 Flushing Ave<br>Maspeth        NY  11378-<br>Yard/Shop | X INSIDE<br>OUTSIDE | OWNER<br>X TENANT | | 2 | | |
| | | | INSIDE<br>OUTSIDE | OWNER<br>TENANT | | | | |

## NATURE OF BUSINESS/DESCRIPTION OF OPERATIONS BY PREMISE(S)

The insured is a demolition contractor. They do interior and exterior demolition. The principal has 20+ years of experience. They mostly bring the building down using hand demolition until a machine can be used, unless they get approval for mechanical means. The principal has 20+ yearss experience doing demolition work, they have experienced forman/supervisors that have similiar experience.

| ACORD 125 (2007/07) | Page 1 of 3 | © 1993-2007 ACORD CORPORATION. All rights reserved. |
|---|---|---|

INS125 (200707)

The ACORD name and logo are registered marks of ACORD

**GENERAL INFORMATION**

AGENCY CUSTOMER ID

| | | Y/N |
|---|---|---|
| EXPLAIN ALL "YES" RESPONSES | | |
| 1a. | IS THE APPLICANT A SUBSIDIARY OF ANOTHER ENTITY ? | N |
| 1b. | DOES THE APPLICANT HAVE ANY SUBSIDIARIES? | N |
| 2. | IS A FORMAL SAFETY PROGRAM IN OPERATION? | Y |
| 3. | ANY EXPOSURE TO FLAMMABLES, EXPLOSIVES, CHEMICALS? | N |
| 4. | ANY CATASTROPHE EXPOSURE? | N |
| 5. | ANY OTHER INSURANCE WITH THIS COMPANY OR BEING SUBMITTED? | N |
| 6. | ANY POLICY OR COVERAGE DECLINED, CANCELLED OR NON-RENEWED DURING THE PRIOR THREE (3) YEARS?  (Not applicable in MO) | Y |
| 7. | ANY PAST LOSSES OR CLAIMS RELATING TO SEXUAL ABUSE OR MOLESTATION ALLEGATIONS, DISCRIMINATION OR NEGLIGENT HIRING? | N |
| 8. | DURING THE LAST FIVE YEARS (TEN IN RI), HAS ANY APPLICANT BEEN INDICTED FOR OR CONVICTED OF ANY DEGREE OF THE CRIME OF FRAUD, BRIBERY, ARSON OR ANY OTHER ARSON-RELATED CRIME IN CONNECTION WITH THIS OR ANY OTHER PROPERTY? (In RI, this question must be answered by any applicant for property insurance.  Failure to disclose the existence of an arson conviction is a misdemeanor punishable by a sentence of up to one year of imprisonment). | N |
| 9. | ANY UNCORRECTED FIRE CODE VIOLATIONS? | N |
| 10. | ANY BANKRUPTCIES, TAX OR CREDIT LIENS AGAINST THE APPLICANT IN THE PAST FIVE (5) YEARS? | N |
| 11. | HAS BUSINESS BEEN PLACED IN A TRUST? IF "YES", NAME OF TRUST. | N |
| 12. | ANY FOREIGN OPERATIONS, FOREIGN PRODUCTS DISTRIBUTED IN USA, OR US PRODUCTS SOLD/DISTRIBUTED IN FOREIGN COUNTRIES? (If "YES", attach ACORD 815 for Liability Exposure and/or ACORD 816 for Property Exposure) | N |

**REMARKS/PROCESSING INSTRUCTIONS (Attach additional sheets if more space is required)**

COPY OF THE NOTICE OF INFORMATION PRACTICES (PRIVACY) HAS BEEN GIVEN TO THE APPLICANT. (Not applicable in all states, consult your agent or broker for your state's requirements.)

NOTICE OF INSURANCE INFORMATION PRACTICES - PERSONAL INFORMATION ABOUT YOU, INCLUDING INFORMATION FROM A CREDIT REPORT, MAY BE COLLECTED FROM PERSONS OTHER THAN YOU IN CONNECTION WITH THIS APPLICATION FOR INSURANCE AND SUBSEQUENT POLICY RENEWALS. SUCH INFORMATION AS WELL AS OTHER PERSONAL AND PRIVILEGED INFORMATION COLLECTED BY US OR OUR AGENTS MAY IN CERTAIN CIRCUMSTANCES BE DISCLOSED TO THIRD PARTIES WITHOUT YOUR AUTHORIZATION. YOU HAVE THE RIGHT TO REVIEW YOUR PERSONAL INFORMATION IN OUR FILES AND CAN REQUEST CORRECTION OF ANY INACCURACIES. A MORE DETAILED DESCRIPTION OF YOUR RIGHTS AND OUR PRACTICES REGARDING SUCH INFORMATION IS AVAILABLE UPON REQUEST. CONTACT YOUR AGENT OR BROKER FOR INSTRUCTIONS ON HOW TO SUBMIT A REQUEST TO US.

ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR ANOTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION, OR CONCEALS FOR THE PURPOSE OF MISLEADING INFORMATION CONCERNING ANY FACT MATERIAL THERETO, COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME AND SUBJECTS THE PERSON TO CRIMINAL AND [NY: SUBSTANTIAL] CIVIL PENALTIES. (Not applicable in CO, FL, HI, MA, NE, OH, OK, OR, or VT; in DC, LA, ME, TN, VA and WA, insurance benefits may also be denied) IN FLORIDA, ANY PERSON WHO KNOWINGLY AND WITH INTENT TO INJURE, DEFRAUD, OR DECEIVE ANY INSURER FILES A STATEMENT OF CLAIM OR AN APPLICATION CONTAINING ANY FALSE, INCOMPLETE, OR MISLEADING INFORMATION IS GUILTY OF A FELONY OF THE THIRD DEGREE.

THE UNDERSIGNED IS AN AUTHORIZED REPRESENTATIVE OF THE APPLICANT AND REPRESENTS THAT REASONABLE ENQUIRY HAS BEEN MADE TO OBTAIN THE ANSWERS TO QUESTIONS ON THIS APPLICATION. HE/SHE REPRESENTS THAT THE ANSWERS ARE TRUE, CORRECT AND COMPLETE TO THE BEST OF HIS/HER KNOWLEDGE.

| PRODUCER'S SIGNATURE | PRODUCER'S NAME (Please Print) | NATIONAL PRODUCER NUMBER |
|---|---|---|
| *Leo Fitzgerald* | Leo Fitzgerald & Assoc Inc ~ President | |
| APPLICANT'S SIGNATURE | | DATE |
| *[signature]* | | 10/17/2013 |

ACORD 125 (2007/07)                    Page 2 of 3

INS125 (200707)

Case 1:25-cv-07817-CM-RFT Document 14-2 Filed 09/25/25 Page 39 of 62

**PRIOR CARRIER INFORMATION** AGENCY CUSTOMER ID:

**LINE CATEGORY**

| | | Burlington Ins Co | Burlington | Indian Harbor | Burlington Ins Co | Burlington Ins Co |
|---|---|---|---|---|---|---|
| | CARRIER | Burlington Ins Co | Burlington | Indian Harbor | Burlington Ins Co | Burlington Ins Co |
| | POLICY NUMBER | 509BW26532 | 509BW27687 | ESG-0027559-02 | 509BW20700 | 509BW23770 |
| | POLICY TYPE | CLAIMS MADE / X OCCURRENCE | CLAIMS MADE / X OCCURRENCE | CLAIMS MADE / X OCCURRENCE | CLAIMS MADE / X OCCURRENCE | CLAIMS MADE / X OCCURRENCE |
| | RETRO DATE | / / | / / | / / | / / | / / |
| | EFF-EXP DATE | 10/27/2013 01/23/2014 | 03/26/2014 10/27/2014 | 10/27/2010 10/27/2011 | 10/27/2011 10/27/2012 | 10/27/2012 10/27/2013 |
| GENERAL COMMERCIAL LIABILITY | GENERAL AGGREGATE | 2,000,000 | 2,000,000 | 2,000,000 | 2,000,000 | 2,000,000 |
| | PRODUCTS COMP OP AGGREGATE | 1,000,000 | 1,000,000 | 1,000,000 | 1,000,000 | 1,000,000 |
| | PERSONAL & ADV INJ | 1,000,000 | 1,000,000 | 1,000,000 | 1,000,000 | 1,000,000 |
| LIMITS | EACH OCCURRENCE | 1,000,000 | 1,000,000 | 1,000,000 | 1,000,000 | 1,000,000 |
| | FIRE DAMAGE | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 |
| | MEDICAL EXPENSE | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 |
| | BODILY INJURY OCCURRENCE | | | | | |
| | AGGREGATE | | | | | |
| | PROPERTY DAMAGE OCCURRENCE | | | | | |
| | AGGREGATE | | | | | |
| | COMBINED SINGLE LIMIT | | | | | |
| | MODIFICATION FACTOR | . | . | . | . | . |
| | TOTAL PREMIUM | 33,031.00 | 70,202.00 | 63,500.00 | 69,069.00 | 82,909.00 |
| AUTOMOBILE LIABILITY | CARRIER | | | | | |
| | POLICY NUMBER | | | | | |
| | POLICY TYPE | | | | | |
| | EFF-EXP DATE | / / / / | / / / / | / / / / | / / / / | / / / / |
| | COMBINED SINGLE LIMIT | | | | | |
| | BODILY INJURY EA PERSON | | | | | |
| | EA ACCIDENT | | | | | |
| | PROPERTY DAMAGE | | | | | |
| | MODIFICATION FACTOR | . | . | . | . | . |
| | TOTAL PREMIUM | . | . | . | . | . |
| PROPERTY | CARRIER | | | 10/17/2013 | | |
| | POLICY NUMBER | | | | | |
| | POLICY TYPE | | | | | |
| | EFF-EXP DATE | / / / / | / / / / | / / / / | / / / / | / / / / |
| | BUILDING AMT | | | | | |
| | PERS PROP AMT | | | | | |
| | MODIFICATION FACTOR | . | . | . | . | . |
| | TOTAL PREMIUM | . | . | . | . | . |
| | CARRIER | | | | | |
| | POLICY NUMBER | | | | | |
| | POLICY TYPE | | | | | |
| | EFF-EXP DATE | / / / / | / / / / | / / / / | / / / / | / / / / |
| | LIMIT | | | | | |
| | MODIFICATION FACTOR | . | . | . | . | . |
| | TOTAL PREMIUM | . | . | . | . | . |

**LOSS HISTORY**

ENTER ALL CLAIMS OR LOSSES (REGARDLESS OF FAULT AND WHETHER OR NOT INSURED) OR OCCURRENCES THAT MAY GIVE RISE TO CLAIMS FOR THE PRIOR 5 YEARS (3 YEARS IN KS & NY)

CHK HERE IF NONE [X] SEE ATTACHED LOSS SUMMARY

| DATE OF OCCURRENCE | LINE | TYPE/DESCRIPTION OF OCCURRENCE OR CLAIM | DATE OF CLAIM | AMOUNT PAID | AMOUNT RESERVED | CLAIM STATUS OPEN | CLSD |
|---|---|---|---|---|---|---|---|
| / / | | | / / | | | | |
| / / | | | / / | | | | |
| / / | | | / / | | | | |
| / / | | | / / | | | | |

REMARKS NOTE: FIDELITY REQUIRES A FIVE YEAR LOSS HISTORY

ATTACHMENTS

STATE SUPPLEMENT(S) (If applicable)

ACORD 125 (2007/07)
INS125 (200707)

Page 3 of 3

... WELL AS OTHER ... PARTIES WITHOUT YOUR ... ANY INACCURACIES. A MORE ... CONTACT YOUR AGENT OR BROKER FOR ... ANY PERSON WHO KNOWINGLY AND WITH INTENT TO ... STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INSURANCE ACT ... MATERIAL THERETO, COMMITS A FRAUDULENT INSURANCE ... Not applicable in CO, FL, HI, MA, NE, OH, OK, OR, or VT; in DC, LA, ME, ... PERSON WHO KNOWINGLY AND WITH INTENT TO INJURE, DEFRAUD, OR ... COMPLETE, OR MISLEADING INFORMATION IS GUILTY OF A FELONY OR ... REPRESENTATIVE OF THE APPLICANT AND REPRESENTS THAT ... HE/SHE REPRESENTS THAT THE ANSWERS ARE TRUE, CORREC...

PRODUCER'S NAME (Please Print) ...ald & Assoc Inc - President   DATE 10/17/2013

Case 1:25-cv-07817-CM-RFT     Document 14-2     Filed 09/25/25     Page 40 of 62

# EXHIBIT

# 10



**MARKEL**

## POLICYHOLDER DISCLOSURE
## NOTICE OF TERRORISM
## INSURANCE COVERAGE

You are hereby notified that under the Terrorism Risk Insurance Act, as amended, that you have a right to purchase insurance coverage for losses resulting from acts of terrorism, as defined in Section 102(1) of the Act: The term "act of terrorism" means any act that is certified by the Secretary of the Treasury—in concurrence with the Secretary of State, and the Attorney General of the United States—to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

YOU SHOULD KNOW THAT WHERE COVERAGE IS PROVIDED BY THIS POLICY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM, SUCH LOSSES MAY BE PARTIALLY REIMBURSED BY THE UNITED STATES GOVERNMENT UNDER A FORMULA ESTABLISHED BY FEDERAL LAW. HOWEVER, YOUR POLICY MAY CONTAIN OTHER EXCLUSIONS WHICH MIGHT AFFECT YOUR COVERAGE, SUCH AS AN EXCLUSION FOR NUCLEAR EVENTS. UNDER THE FORMULA, THE UNITED STATES GOVERNMENT GENERALLY REIMBURSES 85% OF COVERED TERRORISM LOSSES EXCEEDING THE STATUTORILY ESTABLISHED DEDUCTIBLE PAID BY THE INSURANCE COMPANY PROVIDING THE COVERAGE. THE PREMIUM CHARGED FOR THIS COVERAGE IS PROVIDED BELOW AND DOES NOT INCLUDE ANY CHARGES FOR THE PORTION OF LOSS THAT MAY BE COVERED BY THE FEDERAL GOVERNMENT UNDER THE ACT.

YOU SHOULD ALSO KNOW THAT THE TERRORISM RISK INSURANCE ACT, AS AMENDED, CONTAINS A $100 BILLION CAP THAT LIMITS U.S. GOVERNMENT REIMBURSEMENT AS WELL AS INSURERS' LIABILITY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM WHEN THE AMOUNT OF SUCH LOSSES IN ANY ONE CALENDAR YEAR EXCEEDS $100 BILLION. IF THE AGGREGATE INSURED LOSSES FOR ALL INSURERS EXCEED $100 BILLION, YOUR COVERAGE MAY BE REDUCED.

**Acceptance or Rejection of Terrorism Insurance Coverage**

| | |
|---|---|
| ○ | I hereby elect to purchase terrorism coverage for a prospective premium of _$12,750.00_ |
| ✗ | I hereby decline to purchase terrorism coverage for certified acts of terrorism. I understand that I will have no coverage for losses resulting from certified acts of terrorism. |

_Michael Russell_

Policyholder/Applicant's Signature

MICHAEL RUSSELL

Print Name

10/23/2013

Date Signed

_Alterra Excess & Surplus Insurance Company_

Insurance Company

10/27/2013

Policy Number / Effective Date

MXM102 (10/10)

EXHIBIT

11

# MJR CONSTRUCTION SERVICES CORP

109 INGRAHAM ST # 308
BROOKLYN NY 11231
(718) 821-0818
Email: mjrconstructionservices@verizon.net

February 4, 2014

Re: General Liability & Excess Liability policies
Burlington # 509BW26532
Alterra # MAX3EC50000385
Navigators #NY13EXC733286IV

Attention: Leo Fitzgerald

Pursuant to our telephone conversation, please be advised that we will remit the full payment required for policy financing on Thursday. February 6, 2013.

This memo shall confirm that we have had no known or reported losses from 1/23/2014 to the present date.

I hope this memo shall be satisfactory for the reinstatement of our policies.

Thank You for your consideration.

Sincerely,

Michael Russell

Case 1:25-cv-07817-CM-RFT    Document 14-2    Filed 09/25/25    Page 44 of 62

# EXHIBIT

# 12

**Leo Fitzgerald & Associates, Inc. c/o**

**G.V. FINANCIAL SERVICES, INC.**
25 Commerce Drive   P.O. Box 1065

**PREMIUM FINANCE AGREEMENT**

Cranford, New Jersey   07016-3676

Form GVP (5/08)

(908)709-8278

**ACCOUNT NO.**

| AGENT/BROKER (Name & place of business) | INSURED/BORROWER (Name & Address) |
|---|---|
| Leo Fitzgerald & Associates, Inc. 111 Broadway - Suite 806 New York, NY 10006-1960 | MJR Construction Services Corp. 109 Ingraham Street - Suite 308 Brooklyn, NY 11237-1405 |

| POLICY NO | NAME OF INSURANCE COMPANY AND NAME AND ADDRESS OF GENERAL OR POLICY ISSUING AGENT | KIND OF INSURANCE | PREMIUM | DATE OF POLICY | EXPIRATION | DEPOSIT WITH INS. CO. |
|---|---|---|---|---|---|---|
| 509BW 26532 | Burlington Insurance Co. CRC Insurance Services (NYC) | CGL | 123,709.88 | 10/27/2013 | 10/27/2014 | 56,900.00 |
| MAX 3EC500003 85 | Alterra Excess & Surplus Insuran Partners Specialty Group, LLC | Excess CGL | 88,230.00 | 10/27/2013 | 10/27/2014 | 40,600.00 |
| NY13EXC 73328 6IV | Navigators Insurance Co. CRC Insurance Services (NYC) | Excess CGL | 67,000.00 | 10/27/2013 | 10/27/2014 | 28,100.00 |
| | | | | | | |
| | | | | | | |

If a charge which is not being financed was made for obtaining and servicing the above policies under section 2119 of the New York Insurance Law, the amount is

$ _____ . If None, so indicate.

*The services for which the section 2119 Insurance Law charge is imposed are in connection with obtaining and servicing the policies listed hereon.

| | | | |
|---|---|---|---|
| **TOTAL PREMIUMS** | 278,939.88 | **TOTAL DEPOSITS WITH INS. COS.** | 125,600.00 |
| **CHARGE UNDER SEC. 2119\*** | 2,000.00 | **DEPOSIT PAID TO GV WITH THIS AGREEMENT** | 0.00 |
| **TOTAL CASH PRICE** | 280,939.88 | **TOTAL DEPOSITS** | 125,600.00 |

| **AMOUNT FINANCED** The amount of credit provided to you or on your behalf. | **FINANCE CHARGE** The dollar amount the credit will cost you. | **ANNUAL PERCENTAGE RATE** The cost of your credit as a yearly rate. | **TOTAL PAYMENTS** The amount you will have paid After you have made all payments |
|---|---|---|---|
| $  155,339.88 | $    7,730.86 | | As scheduled. $ 163,070.74 |

| YOUR PAYMENT SCHEDULE WILL BE: | | WHEN PAYMENTS ARE DUE | | | | IMPORTANT – PLEASE READ REVERSE SIDE FOR IMPORTANT PROVISIONS OF THIS AGREEMENT |
|---|---|---|---|---|---|---|
| Number of Payments | Amount of Payments | Monthly | 02 | 07 | 2014 | |
| 7 | $  23,295.82 | BEGINNING | MO. | DAY | YR. | |

**SECURITY:**   You are giving a security interest in all unearned premiums, which may become payable under the policy listed.  You agree not to assign the policy, except for the interest of mortgagees and loss payees, without written consent.

**LATE CHARGES:**   If a payment is late, a late charge will be incurred.  See page 2 for details.

**PREPAYMENT:**   If you pay off early, you may be entitled to a refund of part of the Finance Charge.  Refunds of less than $1.00 will not be made.  See the reverse side for any additional information about nonpayment, default, any required repayment in full before the schedule date, and prepayment refunds and penalties.

**NOTICE (Applies to New York):** 1. DO NOT SIGN THIS AGREEMENT BEFORE YOU READ IT OR IF IT CONTAINS ANY BLANK SPACE. 2. YOU ARE ENTITLED TO A COMPLETELY FILLED IN COPY OF THIS AGREEMENT. 3. UNDER THE LAW, YOU HAVE THE RIGHT TO PAY OFF IN ADVANCE THE FULL AMOUNT DUE AND UNDER CERTAIN CONDITIONS TO OBTAIN A PARTIAL REFUND OF THE FINANCE CHARGE.

**NOTICE (Applies to New Jersey):** 1. READ THIS AGREEMENT BEFORE YOU SIGN. 2. DO NOT SIGN THIS AGREEMENT IF IT CONTAINS BLANK SPACES. 3. YOU ARE ENTITLED TO A COPY OF THIS AGREEMENT AT THE TIME YOU SIGN. 4. KEEP YOUR COPY OF THIS AGREMENT TO PROTECT YOUR LEGAL RIGHTS.

The Insured / Borrower, by signing below, acknowledges reading this agreement, understanding it clearly, and agreeing to its terms.  All insureds designated in the policy(ies) must sign. (If insured is a corporation, an officer must sign)

x _____
Signature of Insured

x _____
Title (if Corporation)

x ____2/20/14____
Date

**IMPORTANT:  THIS IS A 2 PAGE FORM.  BOTH PAGES MUST BE SIGNED BY THE INSURED.**

PAGE 1 OF 2

**Leo Fitzgerald & Associates, Inc. c/o**

**G.V. FINANCIAL SERVICES, INC.**     **PREMIUM FINANCE AGREEMENT**     Form GVP (5/08)

25 Commerce Drive   P.O. Box 1065     Cranford, New Jersey   07016-3676     **(908)709-8278**

## PREMIUM FINANCE AGREEMENT PROVISIONS

**PROMISE TO PAY:** In consideration of the premium payments to be made by **G.V.** Financial Services, Inc. (hereafter referred to as **G.V.**) to the scheduled insurance companies, general agent, wholesale broker, or the Agent-Broker named on this agreement, the insured / borrower (hereafter referred to as insured) promises to pay **G.V.** at the stated address, the monthly payments plus any other charges owed as shown on this agreement.

**ATTESTATIONS:** The insured:
1) irrevocably appoints **G.V. attorney-in-fact** of the insured with full authority upon default to cancel all insurance policies identified.
2) understands that the finance charge begins to accrue as of the earliest policy effective date.
3) agrees to all provisions set out on pages 1 and 2 of this agreement.

**LATE FEES:** In NY, if an installment is late by 5 days or more, the insured will be charged 5% of the installment amount, $1 minimum. $5 maximum personal lines only. In NJ, if an installment is late by 10 days or more, the insured will be charged: (a) Commercial Accounts - 1.5% of the installment amount, minimum $25. (b) Personal Accounts - 5% of the installment amount, $1 minimum, $5 maximum.

**LATE PAYMENTS AND DEFAULTS:** If the insured does not pay as agreed, **G.V.** is given the power and authority to cancel the insurance policy(ies) shown on this agreement, and to receive any and all unearned premiums from the insurance company(ies), which shall be applied to the loan balance. Any sums that have not been covered by the unearned premiums shall still be due and payable immediately.

(a) If the insurance coverage is cancelled because of non-payment in the time allowed by law, the insured will pay a cancellation charge of $5.00 which will include the late charge imposed on the installment in default, which resulted in the cancellation of the insurance.

(b) No payment received after **G.V.** has mailed a Notice Of Cancellation will cause the insurance to be reinstated, and such payment will only be applied to reduce the loan balance owed. **G.V.**, at its option, may enforce payment of this debt without recourse to the security given to **G.V.**

(c) If cancellation occurs, the insured agrees to pay a finance charge on the balance due, at the contract rate of interest, until the balance is paid in full, or until such other date as required by law.

**ATTORNEY'S FEES:** If **G.V.** has to refer the account for collection to an independent attorney, the insured agrees to pay an attorney's fee, but not to exceed 20% of the outstanding balance due.

**REFUNDS:** The insured has the right to prepay the entire outstanding balance in full at any time before the due date of the final installment. Upon prepayment in full or cancellation of a policy for any reason, the insured shall be entitled to receive a refund credit of the finance charge. In NY, this refund will be computed using the rule of 78's method, and the refund credit is subject to a fully earned, non-refundable service fee of $10.00. . In NJ, this refund will be computed using the actuarial method on a 360 day basis, and the refund credit is subject to a fully earned, non-refundable service fee of $12.00. No refund will be made if less than $1.00.

**ACCEPTANCE:** The Broker or Agent whose name appears on this agreement is not a representative of **G.V.**, and has no authority to promise anything on behalf of **G.V.**, and this agreement shall not be valid until accepted by **G.V.** **G.V.** may transfer this agreement to another duly licensed premium finance agency or to a financial institution.

**WARRANTY OF ACCURACY:** The insured warrants to **G.V.** that the insurance policy (ies) listed in the schedule are in full force and effect, and that the insured has not assigned any interest in the policies except for the interest of mortgage holders and loss payees.

**REPRESENTATION OF SOLVENCY:** The insured represents that he is not insolvent or presently the subject of any insolvency proceeding.

**SPECIAL INSURANCE POLICIES:** If the insurance policy issued to the insured is auditable, or is a reporting form policy, or subject to retrospective rating, then the insured promises to pay the insurance company the earned premium computed in accordance with the policy provisions, which is in excess of the amount of premium advanced to **G.V.** which the insurance company retains.

**ADDITIONAL PREMIUMS:** The money paid by **G.V.** is only for the premium as determined at the time the insurance policy is issued. The insured agrees to pay the company any additional premiums which become due for any reason. **G.V.** may assign to the insurance company any rights it has against the insured for premiums due the insurance company in excess of the premiums returned to **G.V.**

**BLANK SPACES:** The insured hereby agrees to allow **G.V.** to fill in those spaces which refer to the name of the insurer(s), the policy number(s) and the due date of the first installment if the insurance policy (ies) have not been issued at the time of the signing of this Agreement.

x _____     _____
         Signature of Insured

---

### ITEMIZATION OF AMOUNT FINANCED

$ _____ HAS BEEN PAID TO _____     $ _____ HAS BEEN PAID TO _____

_____ ON YOUR BEHALF.     _____ ON YOUR BEHALF.

$ _____ HAS BEEN PAID TO _____     $ _____ IS TOTAL PAID ON YOUR BEHALF.

_____ ON YOUR BEHALF.

PAGE 2 OF 2

IMPORTANT: THIS IS A 2 PAGE FORM. BOTH PAGES MUST BE SIGNED BY THE INSURED.

# EXHIBIT

# 13

Case 1:25-cv-07817-CM-RFT    Document 14-2    Filed 09/25/25    Page 48 of 62

# MJR CONSTRUCTION SERVICES CORP

109 INGRAHAM ST # 308
BROOKLYN NY 11231
(718) 608-7334
Email: mjrconstructionservices@verizon.net

February 20, 2014

Re: General Liability & Excess Liability policies
Burlington # 509BW26532
Alterra    # MAX3EC50000385
Navigators #NY13EXC733286IV

To Whom It May Concern:

This memo shall confirm that we have had no known or reported losses from 1/23/2014 to the present date.

I hope this memo shall be satisfactory for the reinstatement of our policies.

Thank You for your consideration.

Sincerely,

Michael Russell

INDEX NO. 653129/2016
RECEIVED NYSCEF: 08/17/2017

Case 1:25-cv-07817-CM-RFT    Document 14-2    Filed 09/25/25    Page 49 of 62

# EXHIBIT

# 14

# MJR CONSTRUCTION SERVICES CORP
109 INGRAHAM ST # 308
BROOKLYN NY 11231
(718) 608-7334
Email: mjrconstructionservices@verizon.net

March 11, 2014

Re: General Liability & Excess Liability policies
Burlington # 509BW26532
Alterra    # MAX3EC50000385
Navigators #NY13EXC733286IV

To Whom It May Concern:

This memo shall confirm that we have had no known or reported losses from 1/23/2014 to the present date.

I hope this memo shall be satisfactory for the reinstatement of our policies.

Thank You for your consideration.

Sincerely,

Michael Russell

# EXHIBIT

# 15

Case 1:25-cv-07817-CM-RFT    Document 14-2    Filed 09/25/25    Page 52 of 62



# POLICYHOLDER DISCLOSURE
## NOTICE OF TERRORISM
## INSURANCE COVERAGE

You are hereby notified that under the Terrorism Risk Insurance Act, as amended, that you have a right to purchase insurance coverage for losses resulting from acts of terrorism, as defined in Section 102(1) of the Act: The term "act of terrorism" means any act that is certified by the Secretary of the Treasury—in concurrence with the Secretary of State, and the Attorney General of the United States—to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

YOU SHOULD KNOW THAT WHERE COVERAGE IS PROVIDED BY THIS POLICY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM, SUCH LOSSES MAY BE PARTIALLY REIMBURSED BY THE UNITED STATES GOVERNMENT UNDER A FORMULA ESTABLISHED BY FEDERAL LAW. HOWEVER, YOUR POLICY MAY CONTAIN OTHER EXCLUSIONS WHICH MIGHT AFFECT YOUR COVERAGE, SUCH AS AN EXCLUSION FOR NUCLEAR EVENTS. UNDER THE FORMULA, THE UNITED STATES GOVERNMENT GENERALLY REIMBURSES 85% OF COVERED TERRORISM LOSSES EXCEEDING THE STATUTORILY ESTABLISHED DEDUCTIBLE PAID BY THE INSURANCE COMPANY PROVIDING THE COVERAGE. THE PREMIUM CHARGED FOR THIS COVERAGE IS PROVIDED BELOW AND DOES NOT INCLUDE ANY CHARGES FOR THE PORTION OF LOSS THAT MAY BE COVERED BY THE FEDERAL GOVERNMENT UNDER THE ACT.

YOU SHOULD ALSO KNOW THAT THE TERRORISM RISK INSURANCE ACT, AS AMENDED, CONTAINS A $100 BILLION CAP THAT LIMITS U.S. GOVERNMENT REIMBURSEMENT AS WELL AS INSURERS' LIABILITY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM WHEN THE AMOUNT OF SUCH LOSSES IN ANY ONE CALENDAR YEAR EXCEEDS $100 BILLION. IF THE AGGREGATE INSURED LOSSES FOR ALL INSURERS EXCEED $100 BILLION, YOUR COVERAGE MAY BE REDUCED.

**Acceptance or Rejection of Terrorism Insurance Coverage**

| | |
|---|---|
| ○ | I hereby elect to purchase terrorism coverage for a prospective premium of _$12,750.00_ |
| ☒ | I hereby decline to purchase terrorism coverage for certified acts of terrorism. I understand that I will have no coverage for losses resulting from certified acts of terrorism. |

X _Michael K Russell per_

Policyholder/Applicant's Signature

_Alterra Excess & Surplus Insurance Company_

Insurance Company

_Michael Russel_

Print Name

_10/27/2013_

Policy Number / Effective Date

_3/26/2014_

Date Signed

MXM102 (10/10)

10/22/2013                                                                 Page 1 / 1

Case 1:25-cv-07817-CM-RFT     Document 14-2     Filed 09/25/25     Page 53 of 62

# EXHIBIT

# 16

# UMBRELLA / EXCESS SECTION

DATE (MM/DD/YYYY) 09/17/2014

| AGENCY | | APPLICANT (First Named Insured) | MJR Construction Services Corp |
|---|---|---|---|
| PHONE (A/C, No, Ext): (212) 233-1535 | | | 109 Ingraham St |
| FAX (A/C, No): (212) 964-2509 | | | Brooklyn   NY 11237-1405 |

Leo Fitzgerald & Associates Inc
111 Broadway #806

New York      NY 10006-1956

| EFFECTIVE DATE | EXPIRATION DATE | | DIRECT BILL | PAYMENT PLAN | AUDIT |
|---|---|---|---|---|---|
| 10/27/2014 | 10/27/2015 | X | AGENCY BILL | | |

CODE:          SUBCODE:

AGENCY CUSTOMER ID:

FOR COMPANY USE ONLY

## POLICY INFORMATION

| TRANSACTION TYPE | | | | LIMIT OF LIABILITY | | RETAINED LIMIT |
|---|---|---|---|---|---|---|
| NEW | X UMBRELLA | X OCCURRENCE | RETROACTIVE DATE | $ 24,000,000   EACH OCCURRENCE | | $ 10,000 |
| X RENEWAL | EXCESS | CLAIMS MADE | PROPOSED  CURRENT $ 24,000,000 | | | |
| EXPIRING POL #: , | | | / /   / / $ | | | FIRST DOLLAR DEFENSE  YES  X NO |

## PRIMARY LOCATION & SUBSIDIARIES (ACORD 125)

| # | NAME AND LOCATION OF PRIMARY AND ALL SUBSIDIARY COMPANIES (Describe Operations) | ANNUAL PAYROLL | ANN GROSS SALES | FOREIGN GROSS SALES | # EMPL |
|---|---|---|---|---|---|
| 1 | MJR Construction Services Corp (Contracting) | 225,000 | 1,000,000 | 0 | 6 |

## UNDERLYING INSURANCE

LIST ALL LIABILITY/COMPENSATION POLICIES IN FORCE TO APPLY AS UNDERLYING INSURANCE

| TYPE | CARRIER/POLICY NUMBER | POLICY EFF DATE | POLICY EXP DATE | LIMITS | | | ANNUAL RENEWAL PREMIUM | +- RATING MOD |
|---|---|---|---|---|---|---|---|---|
| AUTOMOBILE LIABILITY | | / / | / / | CSL EA. ACC. | $ | | $ | . |
| | | | | BI EA. ACC. | $ | | $ | . |
| | | | | BI EA. PER. | $ | | $ | . |
| | | | | PD EA. ACC. | $ | | $ | . |
| GENERAL LIABILITY POLICY TYPE   X OCCUR   CLAIMS MADE | Burlington | 10/27/2014  / / | 10/27/2015  / / | EACH OCCURRENCE | $ | 1,000,000 | PREM/OPS $ | |
| | | | | GENERAL AGGR | $ | 2,000,000 | $ | |
| | | | | PROD & COMP OPS AGGREGATE | $ | 1,000,000 | PRODUCTS | |
| | | | | PERSONAL & ADV INJURY | $ | 1,000,000 | $ | . |
| | | | | DAMAGE TO RENTED PREMISES | $ | 50,000 | OTHER | |
| | | | | MEDICAL EXPENSE | $ | 5,000 | $ | . |
| EMPLOYERS LIABILITY | State Insurance Fund 21833710 | 01/11/2014 | 01/11/2015 | EACH ACCIDENT | $ | 1,000,000 | | |
| | | | | DISEASE EACH EMPLOYEE | $ | 1,000,000 | $ 63,000 | 1.0000 |
| | | | | DISEASE POLICY LIMIT | $ | 1,000,000 | | |
| | | / / | / / | | | | | . |

## UNDERLYING GENERAL LIABILITY INFORMATION (Explain all "YES" responses)

1 | ARE DEFENSE COSTS: | WITHIN AGGREGATE LIMITS? | A SEPARATE LIMIT? | UNLIMITED?

2 | INDICATE THE EDITION DATE OF THE ISO SIMPLIFIED FORM OR SIMILAR FILING FOR THE UNDERLYING COVERAGE: / /

3 | HAS ANY PRODUCT, WORK, ACCIDENT, OR LOCATION BEEN EXCLUDED, UNINSURED OR SELF INSURED FROM ANY PREVIOUS COVERAGE? YES NO

4 | FOR CLAIMS MADE, INDICATE RETROACTIVE DATE OF CURRENT UNDERLYING POLICY: / /

5 | FOR CLAIMS MADE, INDICATE ENTRY DATE INTO UNINTERRUPTED CLAIMS MADE COVERAGE: / /

6 | FOR CLAIMS MADE, WAS "TAIL" COVERAGE PURCHASED FOR ANY PREVIOUS PRIMARY OR EXCESS POLICY? YES, EFF. DATE: / / NO

CHECK ALL COVERAGES IN UNDERLYING POLICIES. ALSO CHECK IF ANY EXPOSURES ARE PRESENT FOR EACH COVERAGE. PROVIDE AN EXPLANATION. EXPLAIN IF DIFFERENT LIMITS, EXTENSIONS, OR EXCLUSIONS. EXPLAIN ANY SPECIAL COVERAGES BEYOND STANDARD FORMS. EXPLAIN ALL EXPOSURES.

| CHECK IF APPROPRIATE | COVERAGE | EXPOSURE | COVERAGE | EXPOSURE |
|---|---|---|---|---|
| ANY AUTO (SYMBOL 1) | CARE, CUSTODY, CONTROL | | PROFESSIONAL LIABILITY (E&O) | |
| CGL - CLAIMS MADE | EMPLOYEE BENEFIT LIABILITY | | VENDORS LIABILITY | |
| X CGL - OCCURRENCE | FOREIGN LIABILITY/TRAVEL | | WATERCRAFT LIABILITY | |
| **COVERAGE**          EXPOSURE | GARAGEKEEPERS LIABILITY | | | |
| AIRCRAFT LIABILITY | INCIDENTAL MEDICAL MALPRACTICE | | | |
| AIRCRAFT PASSENGER LIABILITY | LIQUOR LIABILITY | | | |
| X ADDITIONAL INTERESTS | POLLUTION LIABILITY | | | |

UNDERLYING INSURANCE COVERAGE INFORMATION (INCLUDE ALL RESTRICTIONS; E.G. LASER ENDORSEMENTS, DISCRIMINATION, SUBROGATION WAIVERS, OR EXTENSIONS OF COVERAGE - ATTACH SEPARATE SHEET IF NECESSARY)

PREVIOUS EXPERIENCE: (GIVE DETAILS OF ALL LIABILITY CLAIMS EXCEEDING $10,000 OR OCCURRENCES THAT MAY GIVE RISE TO CLAIMS, DURING THE PAST 5 YEARS, WHETHER INSURED OR NOT. SPECIFY DATE, COVERAGE, DESCRIPTION, AMOUNT PAID, AMOUNT OUTSTANDING - ATTACH SEPARATE SHEET IF NECESSARY)

NO SUCH CLAIMS

ACORD 131 (2004/07)          ATTACH TO ACORD 125 AND ACORD 126          © ACORD CORPORATION 1991-2004

INS131 (0407).02          Page 1 of 2

| NAME AND DESCRIPTION OF PERSONAL PROPERTY | | | | | | |
|---|---|---|---|---|---|---|
| LOC | PROPERTY TYPE | NO. | VALUE | AREA | SQ FT | |
| | REAL | | | | | |
| | PERSONAL | | | | | |

*APPLICANT: [A] IS HELD HARMLESS IN THE LEASE, [B] HAS A WAIVER OF SUBROGATION, [C] IS A NAMED INSURED IN THE FIRE POLICY, [D] OTHER (specify)

## ADDITIONAL EXPOSURES

| EXPLAIN ALL "YES" RESPONSES, PROVIDE OTHER INFORMATION REQUIRED | YES | NO |
|---|---|---|
| **ADVERTISERS LIABILITY** | | |
| 1. MEDIA USED: ANNUAL COST: $ | | |
| 2. ARE SERVICES OF AN ADVERTISING AGENCY USED? | | X |
| 3. ANY COVERAGE PROVIDED UNDER AGENCY'S POLICY? | | X |
| **AIRCRAFT LIABILITY** | | |
| 4. DOES APPLICANT OWN/LEASE/OPERATE AIRCRAFT? | | X |
| **AUTO LIABILITY** | | |
| 5. ARE EXPLOSIVES, CAUSTICS, FLAMMABLES OR OTHER DANGEROUS CARGO HAULED? | | X |
| 6. ARE PASSENGERS CARRIED FOR A FEE? | | X |
| 7. ANY UNITS NOT INSURED BY UNDERLYING POLICIES? | | X |
| 8. ARE ANY VEHICLES LEASED OR RENTED TO OTHERS? | | X |
| 9. ARE HIRED AND NON/OWNED COVERAGES PROVIDED? | X | |
| **CONTRACTORS LIABILITY** | | |
| 10. IS BRIDGE, DAM, OR MARINE WORK PERFORMED? | | X |
| 11. DESCRIBE TYPICAL JOBS PERFORMED (ATTACH SEPARATE SHEETS): Demolition of Warehouse type building and/or demolition of vacant building. | | |
| 12. DESCRIBE AGREEMENT (ATTACH SEPARATE SHEETS): As required by contract | | |
| 13. DOES APPLICANT OWN, RENT, OR OTHERWISE USE CRANES? | | X |
| 14. DO SUBCONTRACTORS CARRY COVERAGES OR LIMITS LESS THAN APPLICANT? | | X |
| **EMPLOYERS LIABILITY** | | |
| 15. IS APPLICANT SELF-INSURED IN ANY STATE? | | X |
| 16. SUBJECT TO: ☐ JONES ACT ☐ FELA ☐ STOP GAP OTHER: | | |
| **INCIDENTAL MALPRACTICE LIABILITY** | | |
| 17. IS A HOSPITAL OR FIRST AID FACILITY MAINTAINED? | | X |
| 18. ARE COVERAGES PROVIDED FOR DOCTORS / NURSES? | | X |
| 19. INDICATE # OF DOCTORS: NURSES: BEDS: | | |

| EXPLAIN ALL "YES" RESPONSES, PROVIDE OTHER INFORMATION REQUIRED | YES | NO |
|---|---|---|
| **POLLUTION LIABILITY** EPA#: | | |
| 20. DO CURRENT OR PAST PRODUCTS, OR THEIR COMPONENTS, CONTAIN HAZARDOUS MATERIALS THAT MAY REQUIRE SPECIAL DISPOSAL METHODS? | | X |
| 21. INDICATE THE COVERAGES CARRIED: | | |
| ☒ GL WITH STANDARD ISO POLLUTION EXCLUSION | | |
| ☐ GL WITH STANDARD SUDDEN & ACCIDENTAL ONLY | | |
| ☐ GL WITH POLLUTION COVERAGE ENDORSEMENT | | |
| ☐ SEPARATE POLLUTION COVERAGE | | |
| **PRODUCT LIABILITY** | | |
| 22. ARE MISSILES, ENGINES, GUIDANCE SYSTEMS, FRAMES OR ANY OTHER PRODUCT USED / INSTALLED IN AIRCRAFT? | | X |
| 23. ARE FOREIGN PRODUCTS DISTRIBUTED IN U.S.? | | X |
| 24. ARE U.S. PRODUCTS SOLD/DISTRIB'D IN FOREIGN COUNTRIES? | | X |
| 25. PRODUCT LIABILITY LOSS IN PAST 3 YEARS? (SPECIFY) | | X |
| 26. GROSS SALES FROM EACH OF LAST 3 YEARS: $ 1,000,000   $ 1,000,000   $ 1,000,000 | | |
| **PROTECTIVE LIABILITY** | | |
| 27. DESCRIBE INDEPENDENT CONTRACTORS (ATTACH SEPARATE SHEETS): As required to complete the job. | | |
| **WATERCRAFT LIABILITY** | | |
| 28. DOES APPLICANT OWN OR LEASE WATERCRAFT? | | X |
| # OWNED   LENGTH   HORSEPOWER | | |

| APARTMENTS / CONDOMINIUMS / HOTELS / MOTELS | | | |
|---|---|---|---|
| # STORIES | # UNITS | # SWIMMING POOLS | # DIVING BOARDS |
| | | | |

## REMARKS

## VEHICLES

| TYPE | | # OWNED | # NON-OWNED | # LEASED | PROPERTY HAULED | 0-50 MI | 50-200 MI | OVER 200 MI |
|---|---|---|---|---|---|---|---|---|
| PRIVATE PASSENGER | | | | | | | | |
| TRUCKS | LIGHT | | | | | | | |
| | MEDIUM | | | | | | | |
| | HEAVY | | | | | | | |
| | EX. HEAVY | | | | | | | |
| TRUCKS/ TRACTORS | HEAVY | | | | | | | |
| | EX. HEAVY | | | | | | | |
| BUSES | | | | | | | | |

ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR ANOTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION, OR CONCEALS FOR THE PURPOSE OF MISLEADING INFORMATION CONCERNING ANY FACT MATERIAL THERETO, COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME AND SUBJECTS THE PERSON TO CRIMINAL AND [NY: SUBSTANTIAL] CIVIL PENALTIES. (Not applicable in CO, HI, NE, OH, OK, OR or VT; in DC, LA, ME, TN and VA insurance benefits may also be denied).

APPLICABLE ONLY IN INDIANA, LOUISIANA AND NEW HAMPSHIRE:                OTHER STATE:
IF THE COMPANY TO WHICH I AM APPLYING OFFERS UNINSURED MOTORISTS (UM) [AND UNDERINSURED MOTORISTS (UIM) IN INDIANA] COVERAGE IN MY STATE, I ACKNOWLEDGE THAT (UM) [AND UIM IN INDIANA] COVERAGE HAS BEEN EXPLAINED TO ME, AND I HAVE BEEN OFFERED THE OPTION OF SELECTING UM OR UIM [IN] LIMITS EQUAL TO MY LIABILITY LIMITS, UM OR UIM [IN] LIMITS LOWER THAN MY LIABILITY LIMITS, OR TO REJECT UM OR UIM [IN] COVERAGE ENTIRELY.
1. I SELECT UM LIMITS INDICATED IN THIS APPLICATION. [        ] (INITIALS)   OR   2. I REJECT UM COVERAGE IN ITS ENTIRETY. [        ] (INITIALS)

APPLICABLE ONLY IN INDIANA:
1. I SELECT UIM LIMITS INDICATED IN THIS APPLICATION. [        ] (INITIALS)   OR   2. I REJECT UIM COVERAGE IN ITS ENTIRETY. [        ] (INITIALS)

APPLICABLE ONLY IN VERMONT: IF THE COMPANY TO WHICH I AM APPLYING OFFERS UM COVERAGE, I ACKNOWLEDGE THAT I HAVE BEEN OFFERED UM COVERAGE EQUAL TO MY LIABILITY LIMITS. I HAVE SELECTED THE LIMITS INDICATED IN THIS APPLICATION.

IMPORTANT - THE STATEMENTS (ANSWERS) GIVEN ABOVE ARE TRUE AND ACCURATE. THE APPLICANT HAS NOT WILLFULLY CONCEALED OR MISREPRESENTED ANY MATERIAL FACT OR CIRCUMSTANCE CONCERNING THIS APPLICATION. THIS APPLICATION DOES NOT CONSTITUTE A BINDER.

| APPLICANT'S SIGNATURE | DATE 09/17/2014 |
|---|---|

ACORD 131 (2004/07)
INS131 (0407).02   AMS

INDEX NO. 653129/2016
RECEIVED NYSCEF: 08/17/2017

Case 1:25-cv-07817-CM-RFT    Document 14-2    Filed 09/25/25    Page 56 of 62

# EXHIBIT

# 17



# POLICYHOLDER DISCLOSURE
# NOTICE OF TERRORISM
# INSURANCE COVERAGE

You are hereby notified that under the Terrorism Risk Insurance Act, as amended, that you have a right to purchase insurance coverage for losses resulting from acts of terrorism, as defined in Section 102(1) of the Act: The term "act of terrorism" means any act that is certified by the Secretary of the Treasury—in concurrence with the Secretary of State, and the Attorney General of the United States—to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

YOU SHOULD KNOW THAT WHERE COVERAGE IS PROVIDED BY THIS POLICY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM, SUCH LOSSES MAY BE PARTIALLY REIMBURSED BY THE UNITED STATES GOVERNMENT UNDER A FORMULA ESTABLISHED BY FEDERAL LAW. HOWEVER, YOUR POLICY MAY CONTAIN OTHER EXCLUSIONS WHICH MIGHT AFFECT YOUR COVERAGE, SUCH AS AN EXCLUSION FOR NUCLEAR EVENTS. UNDER THE FORMULA, THE UNITED STATES GOVERNMENT GENERALLY REIMBURSES 85% OF COVERED TERRORISM LOSSES EXCEEDING THE STATUTORILY ESTABLISHED DEDUCTIBLE PAID BY THE INSURANCE COMPANY PROVIDING THE COVERAGE. THE PREMIUM CHARGED FOR THIS COVERAGE IS PROVIDED BELOW AND DOES NOT INCLUDE ANY CHARGES FOR THE PORTION OF LOSS THAT MAY BE COVERED BY THE FEDERAL GOVERNMENT UNDER THE ACT.

YOU SHOULD ALSO KNOW THAT THE TERRORISM RISK INSURANCE ACT, AS AMENDED, CONTAINS A $100 BILLION CAP THAT LIMITS U.S. GOVERNMENT REIMBURSEMENT AS WELL AS INSURERS' LIABILITY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM WHEN THE AMOUNT OF SUCH LOSSES IN ANY ONE CALENDAR YEAR EXCEEDS $100 BILLION. IF THE AGGREGATE INSURED LOSSES FOR ALL INSURERS EXCEED $100 BILLION, YOUR COVERAGE MAY BE REDUCED.

**Acceptance or Rejection of Terrorism Insurance Coverage**

| | |
|---|---|
| ☐ | I hereby elect to purchase terrorism coverage for a prospective premium of $_____ |
| ☒ | I hereby decline to purchase terrorism coverage for certified acts of terrorism. I understand that I will have no coverage for losses resulting from certified acts of terrorism. |

X _Michael Russell_ (signature)

Policyholder/Applicant's Signature

Michael Russell - President
MJR Construction Services Corp

Print Name

_10/27/2014_

Date Signed

_Alterra America Insurance Company_

Insurance Company

_10/27/2014_

Policy Number / Effective Date

MXM102 (10/10)

Case 1:25-cv-07817-CM-RFT    Document 14-2    Filed 09/25/25    Page 58 of 62

# EXHIBIT

# 18

**Leo Fitzgerald & Associates, Inc. c/o**

**G.V. FINANCIAL SERVICES, INC.**              **PREMIUM FINANCE AGREEMENT**                     Form GVP (5/08)

25 Commerce Drive   P.O. Box 1065             Cranford, New Jersey    07016-3676          (908)709-8278

ACCOUNT NO.  19999

| AGENT/BROKER (Name & place of business) | INSURED/BORROWER (Name & Address) |
|---|---|
| Leo Fitzgerald & Associates, Inc.<br>111 Broadway - Suite 806<br><br>New York, NY 10006-1960 | MJR Construction Services Corp.<br>109 Ingraham Street - Suite 308<br><br>Brooklyn, NY 11237-1405 |

| POLICY NO | NAME OF INSURANCE COMPANY AND NAME AND ADDRESS OF GENERAL OR POLICY ISSUING AGENT | KIND OF INSURANCE | PREMIUM | DATE OF POLICY | EXPIRATION | DEPOSIT WITH INS. CO. |
|---|---|---|---|---|---|---|
| RENEWAL OF 509 BW 27687 | Burlington Insurance Co.<br>CRC Insurance Services (NYC) | CGL | 116,256.00 | 10/27/2014 | 10/27/2015 | 34,550.00 |
| RENEWAL OF MXXA4E3C5000169 | Alterra America Insurance Co.<br>Partners Specialty Group, LLC | Excess CGL | 115,000.00 | 10/27/2014 | 10/27/2015 | 26,450.00 |
| | | | | | | |

| | | |
|---|---|---|
| If a charge which is not being financed was made for obtaining and servicing the above policies under section 2119 of the New York Insurance Law, the amount is<br><br>$ NONE . If None, so indicate.<br><br>*The services for which the section 2119 Insurance Law charge is imposed are in connection with obtaining and servicing the policies listed hereon. | **TOTAL PREMIUMS** | 231,256.00 | **TOTAL DEPOSITS WITH INS. COS.** | 61,000.00 |
| | **CHARGE UNDER SEC. 2119*** | 2,000.00 | **DEPOSIT PAID TO GV WITH THIS AGREEMENT** | 0.00 |
| | **TOTAL CASH PRICE** | 233,256.00 | **TOTAL DEPOSITS** | 61,000.00 |

| AMOUNT FINANCED<br>The amount of credit provided to you or on your behalf.<br><br>$  172,256.00 | FINANCE CHARGE<br>The dollar amount the credit will cost you.<br><br>$     9,280.03 | ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | TOTAL PAYMENTS<br>The amount you will have paid After you have made all payments<br><br>As scheduled. $ 181,536.03 |
|---|---|---|---|

| YOUR PAYMENT SCHEDULE WILL BE: | | WHEN PAYMENTS ARE DUE | | | | IMPORTANT – PLEASE READ REVERSE SIDE FOR IMPORTANT PROVISIONS OF THIS AGREEMENT |
|---|---|---|---|---|---|---|
| Number of Payments | Amount of Payments | Monthly | 11 | 27 | 2014 | |
| 9 | $  20,170.67 | BEGINNING | MO. | DAY | YR. | |

**SECURITY:**   You are giving a security interest in all unearned premiums, which may become payable under the policy listed.  You agree not to assign the policy, except for the interest of mortgagees and loss payees, without written consent.

**LATE CHARGES:**   If a payment is late, a late charge will be incurred.  See page 2 for details.

**PREPAYMENT:**   If you pay off early, you may be entitled to a refund of part of the Finance Charge.  Refunds of less than $1.00 will not be made.  See the reverse side for any additional information about nonpayment, default, any required repayment in full before the schedule date, and prepayment refunds and penalties.

**NOTICE (Applies to New York): 1.** DO NOT SIGN THIS AGREEMENT BEFORE YOU READ IT OR IF IT CONTAINS ANY BLANK SPACE. **2.** YOU ARE ENTITLED TO A COMPLETELY FILLED IN COPY OF THIS AGREEMENT. **3.** UNDER THE LAW, YOU HAVE THE RIGHT TO PAY OFF IN ADVANCE THE FULL AMOUNT DUE AND UNDER CERTAIN CONDITIONS TO OBTAIN A PARTIAL REFUND OF THE FINANCE CHARGE.

**NOTICE (Applies to New Jersey): 1.** READ THIS AGREEMENT BEFORE YOU SIGN. **2.** DO NOT SIGN THIS AGREEMENT IF IT CONTAINS BLANK SPACES. **3.** YOU ARE ENTITLED TO A COPY OF THIS AGREEMENT AT THE TIME YOU SIGN. **4.** KEEP YOUR COPY OF THIS AGREMENT TO PROTECT YOUR LEGAL RIGHTS.

The Insured / Borrower, by signing below, acknowledges reading this agreement, understanding it clearly, and agreeing to its terms.  All insureds designated in the policy(ies) must sign. (If insured is a corporation, an officer must sign)

x _____        x _____        x _____ Oct 30/2014 _____
Signature of Insured                    Title (if Corporation)                    Date

PAGE 1 OF 2

IMPORTANT:  THIS IS A 2 PAGE FORM.  BOTH PAGES MUST BE SIGNED BY THE INSURED.

**G.V. FINANCIAL SERVICES, INC.**      **PREMIUM FINANCE AGREEMENT**      . Form GVP (5/08)

25 Commerce Drive  P.O. Box 1065      Cranford, New Jersey    07016-3676      (908)709-3278

## PREMIUM FINANCE AGREEMENT PROVISIONS

**PROMISE TO PAY:**   In consideration of the premium payments to be made by G.V.Financial Services, Inc. (hereafter referred to as G.V.) to the scheduled insurance companies, general agent, wholesale broker, or the Agent-Broker named on this agreement, the insured / borrower (hereafter referred to as insured) promises to pay G.V. at the stated address, the monthly payments plus any other charges owed as shown on this agreement.

**ATTESTATIONS:**  The insured:
   1)   irrevocably appoints G.V. attorney-in-fact of the insured with full authority upon default to cancel all insurance policies identified.
   2)   understands that the finance charge begins to accrue as of the earliest policy effective date.
   3)   agrees to all provisions set out on pages 1 and 2 of this agreement.

**LATE FEES:**   In NY, if an installment is late by 5 days or more, the insured will be charged 5% of the installment amount, $1 minimum. $5 maximum personal lines only.  In NJ, if an installment is late by 10 days or more, the insured will be charged: (a) Commercial Accounts - 1.5% of the installment amount, minimum $25.  (b) Personal Accounts - 5% of the installment amount, $1 minimum, $5 maximum.

**LATE PAYMENTS AND DEFAULTS:**   If the insured does not pay as agreed, G.V. is given the power and authority to cancel the insurance policy(ies) shown on this agreement, and to receive any and all unearned premiums from the insurance company(ies), which shall be applied to the loan balance. Any sums that have not been covered by the unearned premiums shall still be due and payable immediately.

(a)If the insurance coverage is cancelled because of non-payment in the time allowed by law, the insured will pay a cancellation charge of $5.00 which will include the late charge imposed on the installment in default, which resulted in the cancellation of the insurance.

(b)No payment received after G.V. has mailed a Notice Of Cancellation will cause the insurance to be reinstated, and such payment will only be applied to reduce the loan balance owed.  G.V., at its option, may enforce payment of this debt without recourse to the security given to G.V.

(c)If cancellation occurs, the insured agrees to pay a finance charge on the balance due, at the contract rate of interest, until the balance is paid in full, or until such other date as required by law.

**ATTORNEY'S FEES:**   If G.V. has to refer the account for collection to an independent attorney, the insured agrees to pay an attorney's fee , but not to exceed 20% of the outstanding balance due.

**REFUNDS:**    The insured has the right to prepay the entire outstanding balance in full at any time before the due date of the final installment.  Upon prepayment in full or cancellation of a policy for any reason, the insured shall be entitled to receive a refund credit of the finance charge.  In NY, this refund will be computed using the rule of 78's method, and the refund credit is subject to a fully earned, non-refundable service fee of $10.00. .  In NJ, this refund will be computed using the actuarial method on a 360 day basis, and the refund credit is subject to a fully earned, non-refundable service fee of $12.00.  No refund will be made if less than $1.00.

**ACCEPTANCE:**   The Broker or Agent whose name appears on this agreement is not a representative of G.V., and has no authority to promise anything on behalf of G.V., and this agreement shall not be valid until accepted by G.V.  G.V. may transfer this agreement to another duly licensed premium finance agency or to a financial institution.

**WARRANTY OF ACCURACY:** The insured warrants to G.V. that the insurance policy (ies) listed in the schedule are in full force and effect, and that the insured has not assigned any interest in the policies except for the interest of mortgage holders and loss payees.

**REPRESENTATION OF SOLVENCY:**   The insured represents that he is not insolvent or presently the subject of any insolvency proceeding.

**SPECIAL INSURANCE POLICIES:**    If the insurance policy issued to the insured is auditable, or is a reporting form policy, or subject to retrospective rating, then the insured promises to pay the insurance company the earned premium computed in accordance with the policy provisions, which is in excess of the amount of premium advanced to G.V. which the insurance company retains.

**ADDITIONAL PREMIUMS:**  The money paid by G.V. is only for the premium as determined at the time the insurance policy is issued.  The insured agrees to pay the company any additional premiums which become due for any reason.  G.V. may assign to the insurance company any rights it has against the insured for premiums due the insurance company in excess of the premiums returned to G.V.

**BLANK SPACES:**  The insured hereby agrees to allow G.V. to fill in those spaces which refer to the name of the insurer(s), the policy number(s) and the due date of the first installment if the insurance policy (ies) have not been issued at the time of the signing of this Agreement.

x _____
                    Signature of Insured

---

**ITEMIZATION OF AMOUNT FINANCED**

$_____ HAS BEEN PAID TO _____   $_____ HAS BEEN PAID TO _____

_____ ON YOUR BEHALF. _____ ON YOUR BEHALF.

$_____ HAS BEEN PAID TO _____   $_____ IS TOTAL PAID ON YOUR BEHALF.

_____ ON YOUR BEHALF.

---

PAGE 2 OF 2

IMPORTANT: THIS IS A 2 PAGE FORM.  BOTH PAGES MUST BE SIGNED BY THE INSURED.

INDEX NO. 653129/2016

Case 1:25-cv-07817-CM-RFT    Document 14-2    Filed 09/25/25    Page 61 of 62

# EXHIBIT

# 19

# MJR Construction Services Corp

109 Ingraham St

Brooklyn NY 11237

(718)821-0818

Noyember 4, 2014

To Whom It May Concern:

This memo shall verify that we have had no known or reported losses from October 27th, 2014 to the present date.

Thank You for your kind consideration,

Michael Russell - President