# EXHIBIT F

Case 1:25-cv-07817-CM-RFT Document 14-7 Filed 09/25/25 Page 2 of 18

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

|  |  |
|---|---|
| THE BURLINGTON INSURANCE COMPANY, ALTERRA AMERICA INSURANCE COMPANY, and EVANSTON INSURANCE COMPANY, as Successor by Merger to Alterra Excess & Surplus Insurance Company, | ) ) ) ) ) ) |
|  | Index No. 653129/2016 |
| Plaintiffs, | ) ) |
| v. | ) ) |
| MJR CONSTRUCTION SERVICES CORP., | ) **INTERVENOR COMPLAINT** |
|  | ) |
| Defendant. | ) ) ) |

Plaintiff-Intervenors, Alterra America Insurance Company ("Alterra America"), and

Evanston Insurance Co., as successor by merger to Alterra Excess & Surplus Insurance

Company ("Alterra Excess" and, together with Alterra America, "Alterra"), by their counsel,

Troutman Sanders LLP, as and for their complaint for relief against defendant MJR Construction

Services Corp. ("MJR"), respectfully allege as follows:

## NATURE OF THE ACTION

1.      This is an action for declaratory judgment and other relief, pursuant to CPLR

3001 and NY Insurance Law § 3105, which has been brought to rescind certain insurance

policies issued by Alterra to MJR and, alternatively, to determine the respective obligations,

relationships, and responsibilities of Alterra and MJR in connection with insurance coverage,

defense, and indemnification for three underlying actions:  (1) *Rodriguez v. 1515 Bedford

Avenue Realty LLC, et al.*, filed in Kings County Supreme Court under the Index No. 5250/13

(the "Rodriguez Action"); (2) *R.A. Luxury LLC, et al. v. The Chetrit Group LLC, et al.*, filed in

New York County Supreme Court under the Index No. 150365/2016 (the "Reem Action"); and

Active 30040585v1 249094.000001

Case 1:25-cv-07817-CM-RFT     Document 14-7     Filed 09/25/25     Page 3 of 18

(3) *Assurance Company of America, et al. v. Cornell 245-247 LLC, et al.*, filed in New York County Supreme Court under the Index No. 150020/2016 (the "Subrogation Action"). The Reem and Subrogation Actions are collectively referred to herein as the "Underlying Fire Actions." The Underlying Fire Actions and the Rodriguez Action are collectively referred to herein as the "Underlying Claims Against MJR."

2.      Upon information and belief, MJR disagrees with and disputes Alterra's position as expressed in its reservation of rights letters and as expressed below regarding the rights and obligations, if any, owed to MJR under policy nos. MAX3EC50000207, MAX3EC50000385, MAXA3EC50001169, and MAXA3EC50001358 (the "Policies") issued by Alterra to MJR.

3.      Upon information and belief, this declaratory judgment action will fully and finally resolve the issues pertaining to Alterra's alleged obligations with respect to the Policies, including with respect to any obligation to provide defense and indemnity coverage to MJR with respect to the Underlying Claims Against MJR.

## THE PARTIES

4.      At all relevant times, Alterra America was and is an insurance company incorporated in the State of Delaware with a principal place of business located in the State of Virginia. Alterra America issued two of the relevant Policies to MJR, as is set forth further below.

5.      At all relevant times, Evanston Insurance Co. was and is an insurance company incorporated in the State of Illinois with a principal place of business located in the State of Illinois. As successor by merger to Alterra Excess, it issued two of the relevant Policies to MJR, as is set forth further below.

2

Case 1:25-cv-07817-CM-RFT    Document 14-7    Filed 09/25/25    Page 4 of 18

6. At all relevant times, MJR was a corporation organized and existing pursuant to the laws of the State of New York.  Upon information and belief, MJR's corporate status is currently suspended and MJR is no longer conducting business.

7. Upon information and belief, MJR maintained its business at either 109 Ingraham Street, Suite 308, Brooklyn, NY  11237 (the "Ingraham Address") or 5201 Flushing Avenue, Maspeth, NY  11378 (the "Flushing Address").

## JURISDICTION AND VENUE

8. This Court has personal jurisdiction over MJR pursuant to CPLR 301.

9. Venue is proper under CPLR 503.

## FACTUAL ALLEGATIONS

**A.      The Underlying Claims Against MJR**

**The Rodriguez Action**

10. The Rodriguez Action was filed on or about March 20, 2013, by Segundo Rodriguez against Defendant 1515 Bedford Avenue Realty LLC ("Bedford").  Mr. Rodriguez alleges that he was injured while working as an MJR employee on Bedford's property on March 8, 2013, when a pipe fell on his leg due to Bedford or its agents' negligence.  The complaint asserts causes of action for negligence and for violation of the New York Labor Law.  The complaint seeks unspecified damages.

11. Mr. Rodriguez alleges in the Rodriguez Action that he was involved in the demolition of Bedford's property when the incident at issue occurred in the basement area and involved a heavy piece of metal falling on Mr. Rodriguez's foot when Mr. Rodriguez was standing in contaminated water.  As a result of the incident, Mr. Rodriguez alleges that he suffered a fracture, ulcer, cellulitis, infection, and gangrene.  Ultimately, he alleges that his foot

3

Case 1:25-cv-07817-CM-RFT    Document 14-7    Filed 09/25/25    Page 5 of 18

and leg were amputated. Mr. Rodriguez asserts damages of $475,000 in future lost earnings, $35,000 in medical expenses, $9,600 in past lost earnings, and unspecified future medical expenses.

12.     On or about June 6, 2013 Bedford named Marge NY, Inc. ("Marge") as a Third-Party Defendant and, on or about November 17, 2015, Bedford named MJR as a Second Third-Party Defendant. In the complaint, Bedford asserts that Marge contractually agreed to perform construction services at Bedford's property and agreed to indemnify Bedford for any liability arising out of such work. Bedford alleges that Marge, in turn, hired MJR to perform demolition work at the site and that Mr. Rodriguez was injured while working as an employee of MJR. The Second Third-Party Complaint asserts that MJR contractually agreed to defend and indemnify Bedford. Bedford asserts claims against MJR for contractual indemnity, for indemnity/contribution pursuant to New York's Workers' Compensation Law, for recovery of its defense costs, and for breach of contract for failing to purchase insurance to protect Bedford.

13.     On or about April 1, 2016, Marge named MJR as a Third Third-Party Defendant. In its complaint, Marge alleges that MJR – and not Marge – is liable for any injury to Mr. Rodriguez and that MJR should be liable in the amount of any judgment against Marge. Marge asserts causes of action for contribution, common law indemnification, contractual indemnification, and breach of contract for failure to obtain insurance.

### The Underlying Fire Actions

14.     The Subrogation Action was brought by Assurance Company of America ("ACA") against MJR and other entities in or about January 2016. ACA allegedly provided insurance for Reem Bridals ("Reem"), which operated a high-end bridal gown company at 240 W. 35th Street, New York (the "Reem Property").

4

Case 1:25-cv-07817-CM-RFT   Document 14-7   Filed 09/25/25   Page 6 of 18

15.     The Subrogation Action complaint alleges that on or about March 27, 2014, a fire broke out at a building near (though separate and apart from) the Reem Property, located at 245 West 34th Street, New York (the "Demolition Site").

16.     ACA alleges that on March 27, 2014, MJR was performing "hot torch" demolition work at the Demolition Site when a fire occurred between the roof and the ceiling. As a result of the fire, the Subrogation Action complaint asserts that "smoke and soot entered" the Reem Property.  As a result of the smoke and soot damage, ACA allegedly reimbursed Reem for $2.461 million in loss.

17.     Because the payment from ACA allegedly did not fully compensate Reem for its loss, Reem also filed the Reem Action against MJR and other defendants, also in or about January 2016.  In its complaint, Reem asserts that its total damages exceed $21 million and that the fire began, according to the New York City Fire Department, due to sparks generated by the cutting through of an I-beam.

18.     The Reem Action alleges that the smoke and soot from the fire was substantial and "spread" from the construction site and "entered" the adjacent Reem property necessitating the immediate evacuation of the premises.  The suit alleged that the Reem design archive library was "contaminated" by smoke and soot and that such library has a value of over $15 million.

19.     On information and belief, contemporaneous media reports, including photographic evidence, confirm that smoke and soot from the fire was not contained to the Demolition Site but rather was discharged, dispersed, released, and escaped from the Demolition Site into the surrounding environs.

20.     Following the fire, the Reem Action alleges that on or about April 4, 2014 and again on April 16, 2014, MJR was placed on notice that the Demolition Site should be

5

maintained in its existing condition to allow for a full investigation of the fire. Nonetheless, the Reem Action complaint alleges that after that date, MJR removed and disposed of important and substantial evidence and carried out additional demolition work to alter the exact site of the origin of the fire.

21. The Reem Action complaint refers to a pre-action discovery proceeding captioned as *Reem Bridals, LLC v. The Chetrit Group, et al.,* which was filed in the New York County Supreme Court under Index No. 154673/2014 (the "Discovery Action") on or about May 13, 2014. Allegedly, ACA was permitted to investigate the Demolition Site and the fire after the court ordered that it be allowed to do so in the Discovery Action. According to the petition filed in connection with the Discovery Action, "smoke and soot entered" the Reem Property "likely through the building's HVAC system, the Reem store's windows "facing the [Demolition Site] were covered with black soot," and the Reem store "filled with smoke and a lingering odor of smoke."

22. The Discovery Action additionally asserts that on March 31, 2014, an MJR employee "participated in investigation of the cause of the Fire, allowing a brief period of access to the [Demolition Site] for photographs, but not enough time" for a full inspection. On information and belief, through the Discovery Action, the plaintiffs in the Underlying Fire Actions did or should have timely discovered the existence of any relevant policies issued to MJR.

**B. The Alterra Excess Policies And the Underlying Burlington Primary Policies**

23. Alterra Excess Policy No. MAX3EC50000207 was issued to MJR for the policy period October 27, 2012 to October 27, 2013 (the "2012-2013 Alterra Policy") and provides

6

Case 1:25-cv-07817-CM-RFT    Document 14-7    Filed 09/25/25    Page 8 of 18

coverage, subject to its terms and conditions, excess to Policy No. 509BW23770 (the "2012-2013 Burlington Policy") issued to MJR by The Burlington Insurance Company ("Burlington").

24. Alterra Excess Policy No. MAX3EC50000385 originally was issued to MJR for the policy period October 27, 2013 to October 27, 2014, but was cancelled effective January 18, 2014 (the "2013-2014 Alterra Policy").

25. Alterra America Policy No. MAXA3EC50001169 was issued to MJR for the policy period March 26, 2014 to October 27, 2014 (the "2014 Alterra Policy") and provides coverage, subject to its terms and conditions, excess to Policy No. 509BW27687 issued to MJR by Burlington (the "2014 Burlington Policy").

26. Alterra America Policy No. MAXA3EC50001358 originally was issued to MJR for the policy period October 27, 2014 to October 27, 2015, but was cancelled effective June 4, 2015 (the "2014-2015 Alterra Policy").

**C.    MJR's Material Misrepresentations Void the Policies *Ab Initio*.**

27. MJR made material representations to Alterra in order to procure the issuance of the Policies. Specifically, although "Michael J. Russell" purported to sign certain documents provided to Alterra in connection with the Policies, these documents were not, in fact, signed by Michael J. Russell. Instead, according to Michael J. Russell himself in a sworn affidavit, the relevant signatures were forged. Alterra reasonably relied on the accuracy of such documents in deciding to issue the Policies. Alterra would not have issued the Policies had it been aware of the forgeries. As a result of the material misrepresentations, the Policies should be deemed null and void *ab initio,* rescinded, and the Court should declare that no benefit under the Policies is due and/or owing to MJR or anyone with a claim against MJR.

7

Case 1:25-cv-07817-CM-RFT     Document 14-7     Filed 09/25/25     Page 9 of 18

28. On September 23, 2015, Michael J. Russell executed a document addressed "To Whom It Concerns" in which he advised that he was resigning from his job at MJR effective immediately because he understood that "the company has fraudulently used my name and/or signature, without my knowledge or consent, to execute financial and operational transactions. I have never been granted, nor have I executed any financial or operational control over the company's affairs." By facsimile dated August 24, 2016, counsel for Michael J. Russell provided to counsel for Alterra a copy of a document from Michael Russell's father, Steven Russell, in which Steven Russell advises that he accepts "full responsibility for [certain of MJR's tax liabilities and that he has] always been solely responsible for the financial and operating functions of [MJR] during its entire operations from inception until the current date." The document is dated August 2, 2016 and was executed by Steven Russell before a notary public.

**D.     Alternatively, There Is No Coverage Under the Policies for Any of the Underlying Claims Against MJR.**

29. Each of the Alterra Policies states that it is "subject to the same terms, conditions, agreements, exclusions and definitions as the 'Underlying Insurance', except: . . . (2) With respect to any provisions to the contrary contained in this insurance." *See, e.g.,* 2012-2013 Alterra Policy, Section I.1.b. Burlington issued the relevant "Underlying Insurance." The Policies contain several pertinent terms, conditions, and exclusions.

**i.     The Employer's Liability Exclusion Bars Coverage for the Rodriguez Action.**

30. The 2012-2013 Alterra Policy bars coverage for "'bodily injury' to: (1) An 'employee' of the insured arising out of and in the course of: (a) Employment by the insured; or (b) Performing duties related to the conduct of the insured's business…." *See, e.g.,* 2012-2013 Burlington Policy Section 2.e.

8

31.     On information and belief, Mr. Rodriguez is or was an employee of MJR and asserts that his injury arises out of his employment with MJR.  As such the Employer's Liability Exclusion bars coverage for the Rodriguez Action.

### ii.     The Contractual Liability Exclusion Bars Coverage for the Rodriguez Action.

32.     The 2012-2013 Alterra Policy bars coverage for "'bodily injury' . . . for which [MJR] is obligated to pay damages by reason of the assumption of liability in a contract or agreement." *See, e.g.,* 2012-2013 Burlington Policy Section 2.b.

33.     On information and belief, the allegations against MJR in the Rodriguez Action include allegations that MJR contractually assumed others' liability.  As such, this exclusion bars coverage for any claim in which MJR has assumed the liability of any other entity in connection with the Rodriguez Action.

### iii.     MJR's Breach of the Policies' Cooperation Provisions Bars Coverage for the Underlying Claims Against MJR.

34.     The Policies require that MJR "must . . . [c]ooperate with us in the investigation or settlement of the claim or defense against the 'suit.'" *See, e.g.,* 2012-2013 Burlington Policy, Section IV.2.c(3).

35.     Following receipt of the complaints in the Underlying Fire Actions, Alterra confirmed with Burlington that Burlington was providing a defense to MJR with respect to the Underlying Fire Actions, subject to a reservation of Burlington's rights.

36.     Alterra subsequently sent MJR a letter dated March 30, 2016 to the Ingraham Address via certified mail, return receipt requested.  The letter noted that as an excess policy, the 2014 Alterra Policy had not yet been triggered and reserved rights on a number of other bases, including potential material misrepresentations and the other coverage issues referenced above.

9

Case 1:25-cv-07817-CM-RFT     Document 14-7     Filed 09/25/25     Page 11 of 18

The letter was returned as undeliverable. Copies of the letter also were sent to all plaintiffs and defendants in the Underlying Fire Actions.

37.     After receiving additional information from Burlington, Alterra learned of the possibility that MJR might be contacted at the Flushing Address. Following discussions with defense counsel retained by Burlington, which had investigated the present location of MJR, Alterra contacted Mr. Michael Russell's father, Steven, who informed Alterra that Alterra could communicate with MJR by sending correspondence to Steven Russell. Thus, Alterra, sent a second letter dated June 17, 2016 to both the Ingraham and Flushing Addresses, as well as to the address provided by Steven Russell. The letter was again sent certified mail, return receipt requested. Copies of the letter were sent to all plaintiffs and defendants in the Underlying Actions. The letter requested that Mr. Russell contact Alterra immediately, and incorporated by reference the earlier correspondence.

38.     Following additional discussions with Burlington and defense counsel, which had employed an investigator in an effort to locate Mr. Michael Russell, Alterra learned that Mr. Michael Russell might be located at an address in Wilkes Barre, Pennsylvania. Therefore, by letter dated June 24, 2016, Alterra sent an additional correspondence, again certified mail with return receipt requested, which enclosed all the earlier correspondence. Copies of the letter were sent to all plaintiffs and defendants in the Underlying Actions. The letter reiterated that Mr. Russell should contact Alterra immediately, noted the prejudice that Alterra already had suffered, and incorporated by reference the earlier correspondence.

39.     Following additional discussions with Burlington and defense counsel, Alterra learned that Mr. Michael Russell might be located at an address in Glendale, New York. Therefore, by letter dated July 26, 2016, Alterra sent an additional correspondence, again

10

Case 1:25-cv-07817-CM-RFT    Document 14-7    Filed 09/25/25    Page 12 of 18

certified mail with return receipt requested, which enclosed all the earlier correspondence. Copies of the letter were sent to all plaintiffs and defendants in the Underlying Actions. The letter reiterated that Mr. Russell should contact Alterra immediately, noted the prejudice that Alterra already had suffered, and incorporated by reference the earlier correspondence.

40.    By voicemail on August 5, 2016 and facsimile dated August 9, 2016, counsel for Michael J. Russell wrote to counsel for Alterra advising that Michael Russell "has been the victim of identity theft and fraud" and advising that Steven Russell (Michael's father) established MJR "using Michael Russell's signature and social security number."

41.    On August 10, 2016, counsel for Alterra received a voicemail from Mr. Steven Russell, in which Mr. Russell advised that he was "the owner of MJR."

42.    On or about August 26, 2016, Alterra received notice of the Rodriguez Action and by letter dated November 2, 2016, Alterra reserved its rights under the 2012-2013 Policy in connection with the Rodriguez Action. Alterra sent this letter to MJR at the Ingraham and Flushing Addresses via certified mail, return receipt requested. The letter noted that as an excess policy, the 2012-2013 Policy had not yet been triggered and reserved rights on a number of other bases, including potential material misrepresentations and the other coverage issues referenced above. Copies of the letter also were sent to Michael Russell's attorney, Steven Russell, and Marge.

43.    By letter dated December 22, 2016, Alterra sent a second letter reserving its rights with respect to the Rodriguez Action under the 2012-2013 Alterra Policy to the same recipients as the November 2, 2016 letter.

44.    By letter dated December 30, 2016 Alterra also has informed MJR, counsel for Michael Russell, and Steven Russell of Alterra's intention to include a claim for rescission in the

11

instant action. By separate letter dated December 30, 2016, Alterra informed the claimants in the

Rodriguez Action of Alterra's intention to obtain a declaration as to rescission and other

grounds.

45. Through several conversations with MJR's defense counsel, Alterra has learned

that Mr. Steven Russell has not responded to requests for information and assistance with the

defense of the actions and, as such, the defense of MJR in the Underlying Claims Against MJR

has been materially prejudiced. For example, by letter dated December 15, 2016, defense

counsel reported that Steven Russell "has only sporadically responded to my inquiries and I have

not been able to respond to discovery demands as a result."

46. Thus, MJR has failed to cooperate with the investigation and defense of the

Underlying Claims Against MJR to the substantial and material prejudice of Alterra. As a result

of this breach, coverage is further barred for both the Rodriguez Action and the Underlying Fire

Actions.

        **iv.**      **The Policies' Pollution Exclusions Bar Coverage for the Underlying
               Claims Against MJR.**

47. The Policies' "Pollution Exclusion Endorsement – Total" provides that the

Policies do not apply to any liability arising out of "any liability which would not have occurred

in whole or part but for the actual, alleged, or threatened discharge, dispersal, seepage, migration,

release or escape of 'pollutants' at any time." The Policies define "pollutants" to mean "any

solid, liquid, gaseous or thermal irritant or contaminant, including without limitation, smoke,

vapor, soot, fumes, acids, alkalis, chemicals and waste." *See, e.g.*, 2012-2013 Alterra Policy.

48. The underlying Burlington policies contain a similar pollution exclusion. *See,
e.g.*, 2012-2013 Burlington Policy, Total Pollution Exclusion Endorsement. Notably, the Total

Pollution Exclusion Endorsement deleted by endorsement the Burlington policies' standard

12

Case 1:25-cv-07817-CM-RFT    Document 14-7    Filed 09/25/25    Page 14 of 18

pollution exclusion, which otherwise would have permitted coverage for property damage "arising out of heat, smoke or fumes from a 'hostile fire,'" notwithstanding the language of the standard pollution exclusion. *See, e.g.*, 2014 Burlington Policy, Section I.2.f(1)(d)(iii).

49. The Rodriguez Action asserts that Mr. Rodriguez stood in contaminated water (water, on information and belief, contaminated with diesel fuel) when the accident occurred. The Underlying Fire Actions alleged that the property damage at issue in the Underlying Fire Actions arose from the discharge, dispersal, migration, release or escape of smoke and fumes from the Demolition Site to the Reem Property. As such, the pollution exclusions bar coverage for both the Rodriguez Action and the Underlying Fire Actions.

> **v. The Breach of the 2014 Policy's Notice Provision Bars Coverage for the Underlying Fire Actions.**

50. The 2014 Alterra Policy requires that Alterra receive notice of any occurrence "as soon as practicable." *See* 2014 Burlington Policy, Section IV.2.a.

51. MJR has never provided notice of any occurrence related to the Underlying Fire Actions to Alterra despite allegedly both taking part in an on-site investigation as to its cause and being named in the Discovery Action in 2014. Instead, Alterra first learned about the fire in January 2016, when it was provided with copies of the complaints filed by ACA and Reem, the plaintiffs in the Subrogation and Reem Actions, respectively. In the intervening twenty-two months between the fire and January 2016, MJR allegedly removed and disposed of important and substantial evidence at the Demolition Site, carried out additional demolition work and altered the exact site of the origin of the fire, and provided ACA and/or Reem access to the Demolition Site so that one or both could take photographs and/or otherwise investigate the Demolition Site and the cause(s) of the fire. ACA and/or Reem also obtained additional information through the Discovery Action. These actions and inactions by MJR prejudiced

13

Alterra's ability to analyze potential liability and exposure all while ACA and/or Reem was able to assess the Demolition Site, crystallize its alleged damages and seek them in the Underlying Actions against various parties, including Alterra's insured. As such, this breach of notice as soon as practicable bars coverage for the Underlying Fire Actions.

## FIRST CAUSE OF ACTION
### (Declaratory Judgment -- Rescission)

52. Alterra repeats and re-alleges each allegation in Paragraphs 1 through 28 as though fully set forth herein.

53. There is an actual and justiciable controversy existing between the parties concerning the status of the Policies and any coverage available thereunder.

54. As set forth above, MJR made many material representations to Alterra in order to procure the issuance of all of the Policies issued by Alterra to MJR. Specifically, although "Michael J. Russell" purported to sign certain documents provided to Alterra in connection with the Policies, these documents were not, in fact, signed by Michael J. Russell. Instead, according to Michael J. Russell himself in a sworn affidavit, the relevant signatures were forged. Alterra reasonably relied on the accuracy of such documents in deciding to issue the Policies. Alterra would not have issued the Policies if it had been aware of the forgeries. MJR knew or should have known that the forged signatures constituted false and misleading representations that were material to Alterra's acceptance of the risk and issuance of the Policies because MJR knew or should have known that Alterra relied on receipt of information with non-forged signatures.

55. Under the law of New York, a forged signature renders a contract void *ab initio* because there can be no meeting of the minds when a forgery has been perpetrated.

14

56.     Alterra represents that it will refund the premium paid under the Policies following the Court's declaration of rescission and following direction from the Court concerning the entity or individual entitled to such refund.

57.     As a result of the material misrepresentations, the Policies should be declared null, void *ab initio,* and rescinded.

58.     Alterra has no adequate remedy at law.

## SECOND CAUSE OF ACTION
### (Declaratory Judgment – No Coverage)

59.     Alterra repeats and re-alleges each allegation in Paragraphs 1 through 26 and 29 through 51 as though fully set forth herein.

60.     There is an actual and justiciable controversy existing between the parties concerning the status of the Policies and any coverage available thereunder.

61.     With respect to the Rodriguez Action, Alterra is entitled to a declaration that:

    a.   The 2012-2013 Alterra Policy's Employer's Liability Exclusion bars coverage;

    b.   The 2012-2013 Alterra Policy's Contract Exclusion bars coverage;

    c.   MJR's breach of the 2012-2013 Alterra Policy Cooperation provision bars coverage; and

    d.   The 2012-2013 Alterra Policy's Pollution Exclusion bars coverage.

62.     With respect to the Underlying Fire Actions, Alterra is entitled to a declaration that:

    a.   The 2014 Alterra Policy's Pollution Exclusion bars coverage;

    b.   MJR's breach of the 2014 Alterra Policy's Cooperation Provision bars coverage; and

    c.   MJR's breach of the 2014 Alterra Policy's Notice Provisions bar coverage.

15

Case 1:25-cv-07817-CM-RFT    Document 14-7    Filed 09/25/25    Page 17 of 18

63.     Alterra has no adequate remedy at law.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff-Intervenors Alterra America Insurance Company and Evanston Insurance Company, as successor by merger to Alterra Excess & Surplus Insurance Company, respectfully request judgment:

A.      Declaring that the Policies are null and void *ab initio*, rescinded, and that no benefit under the Policies is due and/or owing to MJR or anyone with a claim against MJR.

B.      Declaring that coverage is not owed under the 2012-2013 Alterra Policy with respect to the Rodriguez Action based on: (1) the 2012-2013 Alterra Policy's Employer's Liability Exclusion; (2) the 2012-2013 Alterra Policy's Contract Exclusion; (3) MJR's breach of the 2012-2013 Alterra Policy Cooperation provision; and (4) the 2012-2013 Alterra Policy's Pollution Exclusion.

C.      Declaring that coverage is not owed under the 2014 Alterra Policy with respect to the Underlying Fire Actions based on: (1) The 2014 Alterra Policy's Pollution Exclusion; (2) MJR's breach of the 2014 Alterra Policy's Cooperation provision; and (3) MJR's breach of the 2014 Alterra Policy's Notice provisions.

D.      Awarding Alterra attorneys' fees, costs and expenses of this action, and any other further relief as this Court deems proper.

16

Case 1:25-cv-07817-CM-RFT    Document 14-7    Filed 09/25/25    Page 18 of 18

Dated:  New York, New York

       March 28, 2017

Respectfully submitted,

TROUTMAN SANDERS LLP


By:  *s/Matthew J. Aaronson*
      Matthew J. Aaronson, Esq.
      Daniel W. Cohen, Esq.
      875 Third Avenue
      New York, NY 10022
      (212) 704-6000

Of counsel:

Richard J. Pratt, Esq.
Troutman Sanders LLP
401 Ninth Street, NW
Suite 1000
Washington, DC 20004
(202) 662-2077

*Attorneys for Plaintiffs Alterra America Insurance Company and Evanston Insurance Company, as Successor by Merger to Alterra Excess & Surplus Insurance Company*

17