# EXHIBIT J

Case 1:25-cv-07817-CM-RFT    Document 14-11    Filed 09/25/25    Page 2 of 83

# EXHIBIT

# 12

FILED: NEW YORK COUNTY CLERK 08/17/2017 11:37 AM
INDEX NO. 653129/2016
NYSCEF DOC. NO. 95
RECEIVED NYSCEF: 08/17/2017

# TROUTMAN SANDERS

RICHARD J. PRATT
202.662.2077 telephone
202.654.5834 facsimile
richard.pratt@troutmansanders.com

DANIEL W. COHEN
212 704 6256 telephone
202.654.5807 facsimile
dan.cohen@troutmansanders.com

TROUTMAN SANDERS LLP
Attorneys at Law
401 9th Street, N. W., Suite 1000
Washington, D.C. 20004-2134
202.274.2950 telephone
troutmansanders.com

875 Third Avenue
New York, New York 10022
212.704.6000 telephone
troutmansanders.com

March 30, 2016

**Via Certified Mail, Return Receipt Requested**

MJR Construction Services, Corp.
109 Ingraham Street, Suite 308
Brooklyn, NY 11237

|  |  |  |
|---|---|---|
| Re: | Suits: | (1) **Assurance Co. of America, et al. v. Cornell 245-247 LLC, et al., Index No. 150020/2016 (County of New York);** |
|  |  | (2) **RA Luxury, LLC, et al. v. The Chetrit Group LLC, et al., Index No. 150365/2016 (County of New York)** |
|  | Insured: | **MJR Construction Services Corp.** |
|  | Policy: | **MAXA3EC50001169 (the "Policy")** |

Dear Sirs:

This letter will provide Alterra America Insurance Company's ("Alterra") initial analysis of coverage and reservation of rights under the Policy in connection with *Assurance Company of America, et al. v. Cornell 245-247 LLC, et al.*, No. 150020/2016 (N.Y. Cty., NY) (the "Subrogation Action") and *R.A. Luxury LLC, et al. v. The Chetrit Group LLC, et al.*, Index No. 150365/2016 (N.Y. Ct., NY) (the "Reem Action" and together with the Subrogation Action, the "Underlying Actions"). Alterra directs this letter to MJR Construction Services Corp. ("MJR") in connection with the Underlying Actions. If Alterra should communicate instead with someone else, please forward this letter to the appropriate party and let us know with whom Alterra should communicate in the future.

As described further below, the Policy largely follows-form to the terms and conditions of policy no. 509BW27687 issued by Burlington Insurance Company (the "Burlington Policy"). Based on the materials provided and the terms and conditions of the Policy and the Burlington Policy, Alterra has identified several coverage issues that may limit or entirely preclude coverage under the Policy for the Underlying Actions. In addition, and as also noted below, Alterra requests additional information both from you and the entities that are copied on this letter in order to more fully evaluate coverage. For these reasons, and pending receipt and review of the requested information, Alterra is proceeding subject to a full reservation of its rights under its Policy, at law, and in equity, including, but not limited to, the right to file a declaratory judgment action to determine coverage for the Underlying Actions. Please understand that the views set forth in this letter necessarily are based on the limited information currently available to Alterra. These views do not reflect an independent assessment of the merits of these matters or of any of the allegations therein. Moreover, these views are not intended

TROUTMAN
SANDERS

MJR Construction Services, Corp.
March 30, 2016
Page 2

to be exhaustive or exclusive, and nothing in this letter or any other correspondence from Alterra is to be construed as a waiver or estoppel of any of its rights with regard to the Underlying Actions

## I.    The Underlying Actions

MJR has not itself submitted a claim to Alterra relating to the Underlying Actions. Rather, Alterra has received copies of the two lawsuits from the plaintiffs in those cases following their filing. The Subrogation Action was filed on January 4, 2016 and the Reem Action was filed on January 14, 2016.

### A.    The Subrogation Action

The Subrogation Action is brought by Assurance Company of America ("ACA") against Cornell 245-247 LLC ("Cornell"), JCMC 245-247 LLC ("JCMC"), North True Construction Management LLC ("NTCM"), Marge NY ("Marge"), Inc. and MJR. Allegedly, on or about March 27, 2014, a fire broke out at 245 West 34th Street, Manhattan, New York (the "Demolition Site"). Reem Bridals ("Reem") allegedly was the owner or operator of a neighboring property located at 240 W. 35th Street, Manhattan, New York (the "Reem Property"). According to the Subrogation Action, Reem maintained an inventory of garments at the Reem Property, a large stock of high-end fabrics and a 2,400-piece "library" of gowns for rent. Specifically, ACA alleges that on March 27, 2014, MJR was performing "construction and/or demolition work, including, but not limited to, 'hot work' (torch operations), in the cockloft and/or roof areas" of the Demolition Site, as part of demolition operations performed by NTCM, MJR and/or Marge. During these operations, a fire occurred above the ceiling of the plenum area, in or around the cockloft space, between the roof and the ceiling of the Demolition Site. As a result of the fire "smoke and soot entered" the Reem Property. *Id.* ¶ 25. Reem allegedly suffered real and/or personal property damage, interruption of its business, loss of income and expenses including the cleaning of garments, textiles, materials and replacement of materials in excess of $2.461 million. ACA allegedly paid Reem for that amount. The Subrogation Action alleges negligence, trespass, nuisance, gross negligence, recklessness and/or willful and wanton misconduct and negligence per se.

### B.    The Reem Action

The Reem Action is brought by Reem against defendants The Chetrit Group, LLC, Cornell Realty Management LLC, JCMC, Cornell, NTCM, MJR and Marge. The action seeks damages on behalf of Reem as a result of the same smoke and soot damage described above. The Complaint alleges that the property included one-of-a-kind bridal gowns, evening wear gowns, 17,000 yards of fabric and a collection of over 2,000 luxury bridal gowns and apparel, proprietary patterns developed over a period of two decades as well as hundreds of pieces of custom embroidery, lace, leather and fur, with an aggregate cost basis of significantly in excess of $21 million. The Complaint alleges that the Reem store is on the 7th floor of the Reem Property and is adjacent to a two-story former Conway Department Store building located at the Demolition Site that was being demolished. The complaint

Active 28177933v1 249094.000001

**TROUTMAN
SANDERS**

MJR Construction Services, Corp.
March 30, 2016
Page 3

asserts that on or about March 27, 2014, MJR and Marge were engaged to serve as contractors for the demolition work with Marge engaged pursuant to a written contract between Cornell 245-247 and/or JCMC and Marge. The Complaint alleges that two MJR, Marge and/or NTCM workers used the wrong type of blow torches for the work and failed to take proper precautions, which resulted in the fire the morning of March 27. Allegedly, neither MJR nor Marge took any action to alert the New York City Fire Department (the "FDNY") of the fire before third parties notified the fire department. Allegedly, the two workers performing the demolition work told the FDNY that the fire had started before they arrived at the premises that morning. The suit alleges that the FDNY determined that the fire originated on the roof of the building from sparks generated by the cutting through of the I-beam at the location where the demolition work was being performed. The fire allegedly spread through combustible materials on the roof and also extended to the cockloft area below the roof.

The Reem Action alleges that the effects of the fire were not limited to its point of origin and that the smoke and soot from the fire was substantial and "spread" from the construction site and "entered" the adjacent Reem property necessitating the immediate evacuation of the premises and medical treatment for certain of Reem's employees. *Id.* ¶¶ 28-30. The suit alleged that the Reem design archive library was "contaminated" by smoke and soot and that such library has a value of over $15 million. *Id.* ¶¶ 29-30. The cost of professional cleaning for certain clothing allegedly totaled over $52,000.

The Reem Action alleges that on or about April 4, 2014 and again on April 16, 2014, the defendants were placed on notice that the Demolition Site should be maintained in its existing condition to allow for a full investigation of the fire. Nonetheless, the Complaint alleges that after that date, defendants removed and disposed of important and substantial evidence and carried out additional demolition work to alter the exact site of the origin of the fire. Defendants allegedly did not permit an investigation of the fire to be conducted by ACA until compelled by a court issued order requiring pre-action discovery in the proceeding captioned as *Reem Bridals, LLC v. The Chetrit Group, et al.,* Index No. 154673/2014 (the "Discovery Action"). The counts in the Reem Action mirror the Subrogation Action: negligence, trespass, private nuisance, gross negligence and negligence *per se.* The prayer for relief is for an amount to be determined at trial, not less than $21 million plus punitive damages and all other just and proper relief.

## II.    Coverage Discussion

### A.    The Policy

The Policy was issued for the policy period March 26, 2014 to October 27, 2014 and provides coverage, subject to its terms and conditions, up to $5 million per occurrence and in the aggregate. *See* Declarations; Policy Section III.2. The Policy provides coverage only excess to those limits provided by the Burlington Policy, stating that it "will pay those sums in excess of the limits shown in Item 6 of the Declarations, Schedule of Underlying Insurance, that you become legally obligated to pay as damages because of injury to which this insurance applies, provided that the 'Underlying

Active 28177933v1 249094.000001

Case 1:25-cv-07817-CM-RFT    Document 14-11    Filed 09/25/25    Page 6 of 83

**TROUTMAN SANDERS**

MJR Construction Services, Corp.
March 30, 2016
Page 4

Insurance' also applies, or would apply but for the exhaustion of its applicable Limits of Insurance."
Policy, Section 1.a. The Burlington Policy is designated as the Underlying Insurance.

The Policy is generally a "follow form" policy that provides:

This insurance is subject to the same terms, conditions, agreements, exclusions
and definitions as the "Underlying Insurance", except:
…(2) With respect to any provisions to the contrary contained in this insurance.

### B.      The Burlington Policy

The Burlington Policy provides coverage from March 26, 2014 to October 27, 2014, matching
the policy term of the Policy. The Burlington Policy's Declaration provides for a $1 million limit per
occurrence, subject to a $2 million general aggregate limit for certain designated construction projects
(or non-construction projects) and a $5 million general aggregate limit. *See* Burlington Policy,
Declarations, as modified by Designated Construction Project(s) General Aggregate Limit and General
Aggregate for All Construction Projects Endorsement. All coverage is subject to a $5,000 deductible
(which includes coverage for Defense Costs) per claim. *See* Burlington Policy, Deductible Liability
Insurance Endorsement. Subject to the deductible, the Burlington Policy provides for a defense
outside of limits.

### C.      Reservation of Rights

Based on the information presently available, Alterra has reviewed the Underlying Actions for
potential coverage under the Policy. The discussion herein is not intended to be exhaustive or
exclusive, and Alterra reserves the right to supplement or modify its views as to coverage as additional
information becomes available or as developments may warrant. Please note further that the
discussion below necessarily is based on the unsubstantiated allegations in the complaints, and Alterra
is not suggesting that the allegations have merit. Alterra requests that its insured or other interested
parties provide any additional information or documentation that they believe may be relevant to
Alterra's review of this matter. Indeed, as noted below, Alterra has specific questions that bear on
several coverage issues. In the interim, Alterra wishes to call to your attention the following
provisions.

1.      The Policy Is An Excess Policy That Has Not Been Reached.

As noted above, the Policy provides only excess coverage – "those sums in excess of" the $1
million per occurrence limit of the Burlington Policy. *See* Policy, Section 1.a. To date, Alterra has not
received any information or documentation demonstrating that the limits of the Burlington Policy have
been fully exhausted. Therefore, the Alterra Policies do not appear to have been reached, and Alterra
would have no present duty to insured for the Underlying Actions. Indeed, Alterra does not understand
its insured even to be seeking a defense from Alterra, and Alterra understands that, in any event,

TROUTMAN
SANDERS

MJR Construction Services, Corp.
March 30, 2016
Page 5

Burlington has arranged for such a defense. **However, if Alterra is incorrect in this understanding, please notify us immediately.**

Accordingly, Alterra reserves all of its rights to assert that the Underlying Actions do not trigger or reach the Policy (based on the limits of underlying insurance including any retention or deductible). Despite this point, Alterra reviewed the Underlying Actions and determined there may be additional significant issues regarding coverage related to it, which are set forth in the following sections.

> 2. The Burlington Policy's Pollution Exclusion May Bar Coverage for the Underlying Actions.

The Burlington Policy's Total Pollution Exclusion (which applies also to coverage available under the Policy) bars coverage for property damage "which would not have occurred in whole or in part but for the actual . . . dispersal . . . migration, release or escape of 'pollutants' at any time." *See* Burlington Policy, Total Pollution Exclusion Endorsement. "Pollutants" is defined by the Burlington Policy to mean "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. . . ." Burlington Policy, Section V.15.

Here, Alterra understands that smoke and soot dispersed, released, and escaped from the fire and contaminated the Reem Store, which was located in a separate building, many floors above the fire. In these circumstances, the Total Pollution Exclusion may bar coverage in whole or in part and Alterra reserves its rights accordingly.

> 3. The Burlington Policy's Notice Requirements May Bar Coverage for the Underlying Actions

The Burlington Policy (and, through it, the Policy) requires that Alterra receive notice of any occurrence "as soon as practicable," as well as other specific requirements. Burlington Policy, Section IV.2.a. Alterra understands that the fire allegedly occurred on or about March 27, 2014, and further understands that Alterra received notice only after ACA and Reem provided copies of their complaints against MJR on Alterra in January 2016 – nearly two years after the fire. In addition, Alterra understands that MJR representatives allegedly provided access to the fire location shortly after the fire but well before notice was provided to Alterra.

In order to determine whether the notice provided to Alterra was timely, Alterra requires additional information. **Specifically, Alterra requests that Reem, ACA, Marge, Cornell, Cornell Realty Management LLC, JCMC, NTCM, The Chetrit Group, LLC, MJR, and any other party alleging that MJR damaged it or is liable to it, including all entities carbon copied on this letter, please provide Alterra with information evidencing when such party first inquired as to MJR's insurance and when such party received information regarding the Policy. Alterra is concerned that the passage of nearly two years until notice was provided to it has significantly prejudiced**

Active 28177933v1 249094.000001

Case 1:25-cv-07817-CM-RFT    Document 14-11    Filed 09/25/25    Page 8 of 83

**TROUTMAN SANDERS**

MJR Construction Services, Corp.
March 30, 2016
Page 6

**its ability to adequately investigate the loss alleged in the Underlying Actions. If the property that was the source of the fire or the property that was allegedly damaged has not yet been renovated or repaired, please notify us immediately so that Alterra can arrange an inspection. In any event, Alterra requests that Reem, ACA, Marge, Cornell, Cornell Realty Management LLC, JCMC, NTCM, The Chetrit Group, LLC, MJR, and any other party alleging that MJR damaged it or is liable to it, including all entities carbon copied on this letter, please provide all reports, documents, and analyses of the fire and its source, causes and timing, any and all photographic or other documentary evidence of the fire, documents and/or other information provided by MJR to any entity, documents and/or other information gleaned from any post-fire visit to either property, any documents or other discovery responses produced or served by any party in the *Discovery* Action or any other action, the names of MJR employees on site the day of the fire, as well as all information suggesting the fire started before the arrival of the workers at the site (as alleged in paragraph 27 of the *Reem* Action Complaint).**

In these circumstances, and pending receipt and review of the requested information, Alterra must reserve its rights pursuant to the Burlington Policy's notice requirements.

4. <u>Property Damage May Not Have Occurred During the Policy Period</u>

The Burlington Policy (and, thus, the Policy) provides coverage only to the extent the "'property damage' occurs during the policy period.'" Burlington Policy, Section I, Coverage A.1.b(2), as amended by the Section I Insuring Agreement Endorsement. Here the Policy apparently incepted on March 26 and there is some suggestion that the fire may have begun at some point before the morning of March 27. *See, e.g.,* Reem Action Complaint at ¶ 22 (describing the unsafe condition as existing "on and prior to March 27, 2014) and 27 (alleging that the workers on site "originally told the New York City Fire Department that the Fire had started before they arrived . . . ."). **Alterra requests that Reem, ACA, Marge, Cornell, Cornell Realty Management LLC, JCMC, NTCM, The Chetrit Group, LLC, MJR, and any other party alleging that MJR damaged it or is liable to it, including all entities carbon copied on this letter, please provide it with any documents evidencing the time that the fire first began.** In the interim, and pending receipt and review of the requested information, Alterra must reserve its rights pursuant to these policy provisions.

5. <u>Other Insurance / Indemnification / Subcontractors</u>

The Policy and the Burlington Policies contain several provisions relating to the proper allocation and priority of insurance policies that may act to limit or preclude coverage. First, the Policy, by endorsement, requires that any subcontractor working on behalf of MJR obtain $1 million of insurance naming MJR as an additional insured and that such insurance shall be primary (*i.e.* will provide coverage before the Policy attaches). *See* Policy, Insurance Requirement All Work Performed On Behalf of Any Insured Endorsement. Thus, to the extent any entity (including but not limited to Marge) acted as MJR's subcontractor, such entity's insurance policy would provide $1 million of additional coverage for MJR before the Alterra Policy is triggered. **Alterra requests that Reem,**

Case 1:25-cv-07817-CM-RFT    Document 14-11    Filed 09/25/25    Page 9 of 83

**TROUTMAN
SANDERS**

MJR Construction Services, Corp.
March 30, 2016
Page 7

**ACA, Marge, Cornell, Cornell Realty Management LLC, JCMC, NTCM, The Chetrit Group, LLC, MJR, and any other party alleging that MJR damaged it or is liable to it, including all entities carbon copied on this letter, please provide it with information concerning the contractor/subcontractor relationships at issue among the parties, the contractual requirements agreed to by and among such entities (including with respect to indemnification and the addition of parties as additional insureds), as well as insurance policies for all such entities.**

Second, the Policy contains an other insurance provision, *see* Policy, Section IV.3., that provides for the prioritization and allocation of insurance responsibilities in certain situations and makes the Policy excess over any other valid and collectible insurance.

Pending receipt and review of the requested information, Alterra reserves the right to preclude, limit or prioritize its coverage appropriately.

> 6.    The Wrap-Up Insurance Exclusions May Preclude Coverage for the Underlying Actions.

Both the Policy and the Burlington Policy have similar exclusions barring coverage for property damage that occurred at a location that is or was to be insured under a consolidated (wrap-up) insurance program. *See* Burlington Policy, Exclusion – Designated Operations Covered by a Consolidated (Wrap-Up) Insurance Program; Policy, Contractors Limitation Endorsement.

Here, MJR allegedly was performing work at a location that may have been insured under such a policy, either through a policy issued to a policy owner (or occupier) or to a contractor or project manager. **Alterra therefore requests that Reem, ACA, Marge, Cornell, Cornell Realty Management LLC, JCMC, NTCM, The Chetrit Group, LLC, and any other party alleging that MJR damaged it or is liable to it, including all entities carbon copied on this letter, confirm whether or not they have been issued such a policy.** Pending receipt and review of the requested information, Alterra reserves the right to limit or preclude coverage under these exclusionary provisions.

> 7.    The Burlington Policy's Cooperation Clause May Limit or Preclude Coverage for the Underlying Actions

The Burlington Policy (and, thus, the Policy) requires that MJR cooperate "in the investigation or settlement of the claim or defense" and assist in enforcing any right against any person or organization that may be liable. Burlington Policy, Section IV.2.c. Alterra understands that MJR representatives knew about the fire but failed to provide notice to Alterra or otherwise permit Alterra to investigate this matter. **In addition, Alterra requests that Reem, ACA, Marge, Cornell, Cornell Realty Management LLC, JCMC, NTCM, The Chetrit Group, LLC, MJR, and any other party alleging that MJR damaged it or is liable to it, including all entities carbon copied on this letter, confirm whether some other person or company may have some liability for the matters alleged**

Active 28177933v1 249094.000001

Case 1:25-cv-07817-CM-RFT    Document 14-11    Filed 09/25/25    Page 10 of 83

**TROUTMAN
SANDERS**

MJR Construction Services, Corp.
March 30, 2016
Page 8

**to have caused damage in the Underlying Actions.** In the interim, Alterra reserves its rights pursuant to the cooperation requirements of the Burlington Policy.

        8.      Other Potential Coverage Issues

Above, Alterra has referred to coverage issues and reservations that are central to any coverage analysis either based on the language within the body of the Alterra or Burlington Policy. Immediately below, Alterra lists additional coverage issues that may be potentially relevant to coverage.

1. Alterra reserves the right to limit or deny coverage (including the right to seek rescission) to the extent its insured provided misrepresentations or material omissions with respect to the underwriting of the Policy, including but not limited to failing to provide promised materials in a timely fashion and/or the furnishing of false affidavits.

2. Alterra potentially is liable only for certain amounts that its insureds "become legally obligated to pay as damages." *See, e.g.,* Burlington Policy, Section I.1.a, as amended by the Section I Insuring Agreement Endorsement. Alterra reserves its rights to limit or deny coverage for the Underlying Actions to the extent that any damages therefrom do not constitute a legal obligation to pay damages.

3. Alterra reserves the right to limit or deny coverage for property damage arising out of certain exterior insulation and finish systems.

4. The Policy provides coverage only for MJR and other insureds as defined by the Policy. Alterra reserves the right to limit or deny coverage with respect to any party in the Underlying Actions that is not an insured under the Policy.

5. The Policy provides coverage only for "property damage," as defined. *See* Burlington Policy, Section I.1.a, as amended by the Section I Insuring Agreement Endorsement. Alterra reserves the right to limit or deny coverage with respect to any alleged damage that does not constitute "property damage."

6. The Policy provides coverage only for an "occurrence" as that term is defined in the Burlington Policy. *See* Burlington Policy, Section I.1.b(1), as amended by the Section I Insuring Agreement Endorsement. Alterra reserves the right to limit or deny coverage to the extent the fire was not an "occurrence."

7. The Underlying Actions seek punitive damages, which are excluded from coverage pursuant to the Punitive Damages Exclusion in the Burlington Policy, as well as other unstated relief which might not constitute damages. Alterra reserves the right to limit or deny coverage to the extent that the relief sought does not constitute damages, or where any claim is not insurable under applicable state law.

Active 28177933v1 249094.000001

TROUTMAN
SANDERS

MJR Construction Services, Corp.
March 30, 2016
Page 9

8. Alterra reserves the right to limit or deny coverage for any property damage expected or intended from the standpoint of the insured.

9. Alterra reserves the right to limit or deny coverage for property damage for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.

10. Alterra reserves the right to limit or deny coverage for property damage arising out of the use of 'mobile equipment' in, or while in practice for, or while being prepared for, any prearranged demolition activity.

11. Alterra reserves the right to limit or deny coverage for property damage to impaired property or property that has not been physically injured, arising out of a dangerous condition in an insured's work.

12. Alterra reserves the right to limit or deny coverage for property damage to that particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it.

13. Alterra reserves the right to limit or deny coverage for damages, claims for any loss, cost or expense incurred by others for their loss of use, recall, inspection, repair, replacement, adjustment, removal or disposal of 'impaired property.'

14. Alterra reserves the right to limit or deny coverage for property damage arising out of shoring, underpinning or pile driving.

15. Alterra reserves the right to limit or deny coverage for injury or damage arising from, caused by or aggravated by exposure to lead.

16. Alterra reserves the right to limit or deny coverage for injury or damages caused by asbestos, silica, asbestos dust, silica dust, mixed dust or any other similar fibrous or mineral substance.

17. Alterra reserves the right to limit or deny coverage for property damage arising from its insured's work that was part of or incorporated into a condominium, townhouse, row house, or tract home project.

18. Alterra reserves the right to limit or deny coverage pursuant to the Reduced Limits of Insurance for Uninsured Independent Contractors/Subcontractors Endorsement to the Burlington Policy.

19. Alterra reserves the right to limit or deny coverage to the extent any loss or damage exceeds its limits of insurance.

Active 28177933v1 249094.000001

**TROUTMAN
SANDERS**

MJR Construction Services, Corp.
March 30, 2016
Page 10

20. Alterra reserves the right to limit or deny coverage with respect to the number of "occurrences" at issue.

21. Alterra reserves the right to limit or deny coverage to the extent that the Underlying Actions arise out of property damage that is subject to the "known loss" and/or "loss in progress" doctrines, which generally preclude coverage for loss that occurred or is occurring prior to policy inception.

22. Alterra reserves the right to limit or deny coverage to the extent its insureds are uninsured or lack adequate insurance for certain applicable periods under a proper allocation. If such is the case, the Policies do not provide coverage, and/or Alterra is or may be entitled to recover from MJR an appropriate amount for such periods of no coverage or inadequate coverage.

23. Alerra reserves the right to limit or deny coverage to the extent its insureds have failed to properly maintain the Underlying Insurance as more fully defined in the Policy.

24. Alterra reserves the right to limit or deny coverage for any loss arising out of the Underlying Actions to the extent that its insureds have breached one or more of the conditions of the Policy, whether or not specifically addressed herein.

\*    \*    \*

To reiterate, Alterra notes and reserves its rights on the policy provisions and issues above to provide guidance to its insureds and to other interested parties. Please understand that Alterra must continue to reserve all of its rights under any and all policies, at law, and in equity with respect to the Underlying Actions , including but not limited to the right to limit or deny coverage (including through the filing of a declaratory judgment action) for the Underlying Actions.

Very truly yours,

*Daniel W. Cohen*

Richard J. Pratt
Daniel W. Cohen

Case 1:25-cv-07817-CM-RFT    Document 14-11    Filed 09/25/25    Page 13 of 83

**TROUTMAN
SANDERS**

MJR Construction Services, Corp.
March 30, 2016
Page 11


cc:      Reem Bridals, Inc.
             c/o Bijan Amini, Esq.
             Storch Amini & Munves PC
             2 Grand Central Tower
             140 East 45th Street, 25th Floor
             New York, NY 10017

             Reem Bridals, Inc.
             c/o Jaime B. Leggett, Esq.
             Storch Amini & Munves PC
             2 Grand Central Tower
             140 East 45th Street, 25th Floor
             New York, NY 10017

             Assurance Company of America
             c/o Robert A. Stern, Esq.
             Clausen Miller P.C.
             28 Liberty Street, 39th Floor
             New York, NY 10005

             Assurance Company of America
             c/o Marc P. Madonia, Esq.
             Clausen Miller P.C.
             28 Liberty Street, 39th Floor
             New York, NY 10005

             The Chetrit Group, LLC
             512 7th Avenue, 15th Floor
             New York, NY 10018

             The Chetrit Group, LLC
             c/o Matthew S. Aboulafia, Esq.
             Aboulafia Law Firm LLC
             228 E. 45th Street, Suite 1700
             New York, NY 10017

             Cornell 245-247 LLC
             c/o Joseph Chetrit
             The Chetrit Group LLC
             512 7th Avenue, 15th Floor
             New York, NY 10018

Active 28177933v1 249094.000001

Case 1:25-cv-07817-CM-RFT Document 14-11 Filed 09/25/25 Page 14 of 83

TROUTMAN
SANDERS

MJR Construction Services, Corp.
March 30, 2016
Page 12

Cornell 245-247 LLC
c/o The Limited Liability Company
75 Huntington Street
Brooklyn, NY 11231

JCMC 245-247 LLC
c/o Joseph Chetrit
The Chetrit Group LLC
512 7th Avenue, 15th Floor
New York, NY 10018

Cornell Realty Management LLC
75 Huntington Street
Brooklyn, NY 11231

Cornell Realty Management LLC
209 Wallabout Street, 3d Floor
Brooklyn, NY 11206

Cornell Realty Management
c/o Matthew S. Aboulafia, Esq.
Aboulafia Law Firm LLC
228 E. 45th Street, Suite 1700
New York, NY 10017

North True Construction Management LLC
c/o Goldberg & Rimberg PLLC
115 Broadway, Suite 302
New York, NY 10006

North True Construction Management, LLC
217 Havemeyer St.
Brooklyn, NY 11211

Marge NY, Inc.
5320 16th Avenue
Brooklyn, NY 11204

Marge NY, Inc.
1644 57th Street
Brooklyn, NY 11204

TROUTMAN
SANDERS

MJR Construction Services, Corp.
March 30, 2016
Page 13


Marge NY, Inc.
c/o James A. Roth, Esq.
Hoffman, Roth & Matlin LLP
505 Eighth Avenue, Suite 1704
New York, NY  10018

Active 28177933v1 249094.000001

RICHARD J. PRATT
202.662.2077 telephone
202.654.5834 facsimile
richard.pratt@troutmansanders.com

DANIEL W. COHEN
212 704 6256 telephone
202.654.5807 facsimile
dan.cohen@troutmansanders.com

# TROUTMAN SANDERS

TROUTMAN SANDERS LLP
Attorneys at Law
401 9th Street, N. W., Suite 1000
Washington, D.C. 20004-2134
202.274.2950 telephone
troutmansanders.com

875 Third Avenue
New York, New York 10022
212.704.6000 telephone
troutmansanders.com

June 17, 2016

**Via Certified Mail, Return Receipt Requested**

MJR Construction Services Corp.
109 Ingraham Street, Suite 308
Brooklyn, NY 11237

MJR Construction Services Corp.
5201 Flushing Avenue
Maspeth, NY 11378

Mr. Michael Russell
c/o Mr. Stephen Russell
1110 William Street
Hewlett, NY 11557

|  | | |
|---|---|---|
| Re: | Suits: | (1) **Assurance Co. of America, et al. v. Cornell 245-247 LLC, et al., Index No. 150020/2016 (County of New York);** |
|  |  | (2) **RA Luxury, LLC, et al. v. The Chetrit Group LLC, et al., Index No. 150365/2016 (County of New York)** |
|  | Insured: | **MJR Construction Services Corp.** |
|  | Policy: | **MAXA3EC50001169 (the "Policy")** |

Dear Mr. Russell:

On behalf of Alterra America Insurance Company's ("Alterra"), this letter will follow-up on our March 30, 2016 letter, which provided Alterra's initial analysis of coverage and reservation of rights under the Policy in connection with *Assurance Company of America, et al. v. Cornell 245-247 LLC, et al.,* No. 150020/2016 (N.Y. Cty., NY) (the "Subrogation Action") and *R.A. Luxury LLC, et al. v. The Chetrit Group LLC, et al.,* Index No. 150365/2016 (N.Y. Ct., NY) (the "Reem Action" and together with the Subrogation Action, the "Underlying Actions").

The March 30, 2016 letter, which we incorporate herein by reference and enclose as an attachment, was sent to the 109 Ingraham Street address to the attention of MJR Construction Services Corp. ("MJR"). The letter was sent certified mail with a return receipt requested but was returned as undeliverable. After receiving back the March 30, 2016 letter, Alterra undertook further investigation.

ATLANTA   BEIJING   CHARLOTTE   CHICAGO   HONG KONG   NEW YORK   ·ORANGE COUNTY   PORTLAND   RALEIGH
RICHMOND   SAN DIEGO   SAN FRANCISCO   SHANGHAI   TYSONS CORNER   VIRGINIA BEACH   WASHINGTON, DC

Case 1:25-cv-07817-CM-RFT    Document 14-11    Filed 09/25/25    Page 17 of 83

TROUTMAN
SANDERS

MJR Construction Services, Corp.
June 17, 2016
Page 2

This included communicating with Burlington Insurance Company, which Alterra understands issued the primary general liability policy to MJR to which the Policy largely follows-form, its coverage counsel, and with the defense counsel retained by Burlington to defend MJR in the Underlying Actions. Through these discussions Alterra has received additional address information for MJR and for you, whom Alterra understands is or was MJR's principal. Therefore, in a further effort to fully inform you and MJR of Alterra's coverage position, we direct this letter to these additional addresses.

The March 30, 2016 letter requested certain information from MJR that is necessary for Alterra to more fully evaluate potential coverage under the Policy. Alterra further understands that you and MJR have refused to cooperate with Burlington in its defense of this matter, including by refusing to provide information (for example, by refusing to return phone calls and refusing to meet in person, despite several attempts by Burlington to arrange a meeting). The failure to provide notice of the fire described in the above-referenced lawsuits at or about the time of its happening, the failure to provide the information requested in the March 30, 2016 letter, and the failure to cooperate in the defense has materially prejudiced Alterra. For that reason, Alterra reiterates that the Burlington Policy (and, thus, the Policy) required and requires that MJR cooperate "in the investigation or settlement of the claim or defense" and assist in enforcing any right against any person or organization that may be liable. Burlington Policy, Section IV.2.c. Alterra reserves all rights pursuant to this cooperation provision. By referring to this cooperation provision, Alterra does not waive any of its other coverage defenses, including but not limited to those identified in the March 30, 2016 letter.

Please contact us immediately at either of the phone numbers provided above (you may call collect if you wish to do so). If we should communicate instead with some other individual please let us know immediately. Alterra continues to reserve all of its rights under the Policy and at law.

Very truly yours,

Richard J. Pratt
Daniel W. Cohen

cc:     Reem Bridals, Inc.
        c/o Bijan Amini, Esq.
        Storch Amini & Munves PC
        2 Grand Central Tower
        140 East 45th Street, 25th Floor
        New York, NY 10017

Active 28625145v1 249094.000001

TROUTMAN
SANDERS

MJR Construction Services, Corp.
June 17, 2016
Page 3

Reem Bridals, Inc.
c/o Jaime B. Leggett, Esq.
Storch Amini & Munves PC
2 Grand Central Tower
140 East 45th Street, 25th Floor
New York, NY  10017

Assurance Company of America
c/o Robert A. Stern, Esq.
Clausen Miller P.C.
28 Liberty Street, 39th Floor
New York, NY  10005

Assurance Company of America
c/o Marc P. Madonia, Esq.
Clausen Miller P.C.
28 Liberty Street, 39th Floor
New York, NY  10005

The Chetrit Group, LLC
512 7th Avenue, 15th Floor
New York, NY  10018

The Chetrit Group, LLC
c/o Matthew S. Aboulafia, Esq.
Aboulafia Law Firm LLC
228 E. 45th Street, Suite 1700
New York, NY  10017

Cornell 245-247 LLC
c/o Joseph Chetrit
The Chetrit Group LLC
512 7th Avenue, 15th Floor
New York, NY  10018

Cornell 245-247 LLC
c/o The Limited Liability Company
75 Huntington Street
Brooklyn, NY  11231

Active 28625145v1 249094.000001

TROUTMAN
SANDERS

MJR Construction Services, Corp.
June 17, 2016
Page 4

JCMC 245-247 LLC
c/o Joseph Chetrit
The Chetrit Group LLC
512 7th Avenue, 15th Floor
New York, NY 10018

Cornell Realty Management LLC
75 Huntington Street
Brooklyn, NY 11231

Cornell Realty Management LLC
209 Wallabout Street, 3d Floor
Brooklyn, NY 11206

Cornell Realty Management
c/o Matthew S. Aboulafia, Esq.
Aboulafia Law Firm LLC
228 E. 45th Street, Suite 1700
New York, NY 10017

North True Construction Management LLC
c/o Goldberg & Rimberg PLLC
115 Broadway, Suite 302
New York, NY 10006

North True Construction Management, LLC
217 Havemeyer St.
Brooklyn, NY 11211

Marge NY, Inc.
c/o James A. Roth, Esq.
Hoffman, Roth & Matlin LLP
505 Eighth Avenue, Suite 1704
New York, NY 10018

Active 28625145v1 249094.000001

RICHARD J. PRATT
202.662.2077 telephone
202.654.5834 facsimile
richard.pratt@troutmansanders.com

DANIEL W. COHEN
212 704 6256 telephone
202.654.5807 facsimile
dan.cohen@troutmansanders.com

# TROUTMAN SANDERS

TROUTMAN SANDERS LLP
Attorneys at Law
401 9th Street, N. W., Suite 1000
Washington, D.C. 20004-2134
202.274.2950 telephone
troutmansanders.com

875 Third Avenue
New York, New York 10022
212.704.6000 telephone
troutmansanders.com

March 30, 2016

**Via Certified Mail, Return Receipt Requested**

MJR Construction Services, Corp.
109 Ingraham Street, Suite 308
Brooklyn, NY 11237

Re:    Suits:        (1)  Assurance Co. of America, et al. v. Cornell 245-247 LLC, et al., Index No. 150020/2016 (County of New York);
                        (2)  RA Luxury, LLC, et al. v. The Chetrit Group LLC, et al., Index No. 150365/2016 (County of New York)

        Insured:    MJR Construction Services Corp.
        Policy:     MAXA3EC50001169 (the "Policy")

Dear Sirs:

This letter will provide Alterra America Insurance Company's ("Alterra") initial analysis of coverage and reservation of rights under the Policy in connection with *Assurance Company of America, et al. v. Cornell 245-247 LLC, et al.*, No. 150020/2016 (N.Y. Cty., NY) (the "Subrogation Action") and *R.A. Luxury LLC, et al. v. The Chetrit Group LLC, et al.*, Index No. 150365/2016 (N.Y. Ct., NY) (the "Reem Action" and together with the Subrogation Action, the "Underlying Actions"). Alterra directs this letter to MJR Construction Services Corp. ("MJR") in connection with the Underlying Actions. If Alterra should communicate instead with someone else, please forward this letter to the appropriate party and let us know with whom Alterra should communicate in the future.

As described further below, the Policy largely follows-form to the terms and conditions of policy no. 509BW27687 issued by Burlington Insurance Company (the "Burlington Policy"). Based on the materials provided and the terms and conditions of the Policy and the Burlington Policy, Alterra has identified several coverage issues that may limit or entirely preclude coverage under the Policy for the Underlying Actions. In addition, and as also noted below, Alterra requests additional information both from you and the entities that are copied on this letter in order to more fully evaluate coverage. For these reasons, and pending receipt and review of the requested information, Alterra is proceeding subject to a full reservation of its rights under its Policy, at law, and in equity, including, but not limited to, the right to file a declaratory judgment action to determine coverage for the Underlying Actions. Please understand that the views set forth in this letter necessarily are based on the limited information currently available to Alterra. These views do not reflect an independent assessment of the merits of these matters or of any of the allegations therein. Moreover, these views are not intended

TROUTMAN
SANDERS

MJR Construction Services, Corp.
March 30, 2016
Page 2

to be exhaustive or exclusive, and nothing in this letter or any other correspondence from Alterra is to be construed as a waiver or estoppel of any of its rights with regard to the Underlying Actions

## I.     The Underlying Actions

MJR has not itself submitted a claim to Alterra relating to the Underlying Actions. Rather, Alterra has received copies of the two lawsuits from the plaintiffs in those cases following their filing. The Subrogation Action was filed on January 4, 2016 and the Reem Action was filed on January 14, 2016.

### A.     The Subrogation Action

The Subrogation Action is brought by Assurance Company of America ("ACA") against Cornell 245-247 LLC ("Cornell"), JCMC 245-247 LLC ("JCMC"), North True Construction Management LLC ("NTCM"), Marge NY ("Marge"), Inc. and MJR. Allegedly, on or about March 27, 2014, a fire broke out at 245 West 34th Street, Manhattan, New York (the "Demolition Site"). Reem Bridals ("Reem") allegedly was the owner or operator of a neighboring property located at 240 W. 35th Street, Manhattan, New York (the "Reem Property"). According to the Subrogation Action, Reem maintained an inventory of garments at the Reem Property, a large stock of high-end fabrics and a 2,400-piece "library" of gowns for rent. Specifically, ACA alleges that on March 27, 2014, MJR was performing "construction and/or demolition work, including, but not limited to, 'hot work' (torch operations), in the cockloft and/or roof areas" of the Demolition Site, as part of demolition operations performed by NTCM, MJR and/or Marge. During these operations, a fire occurred above the ceiling of the plenum area, in or around the cockloft space, between the roof and the ceiling of the Demolition Site. As a result of the fire "smoke and soot entered" the Reem Property. *Id.* ¶ 25. Reem allegedly suffered real and/or personal property damage, interruption of its business, loss of income and expenses including the cleaning of garments, textiles, materials and replacement of materials in excess of $2.461 million. ACA allegedly paid Reem for that amount. The Subrogation Action alleges negligence, trespass, nuisance, gross negligence, recklessness and/or willful and wanton misconduct and negligence per se.

### B.     The Reem Action

The Reem Action is brought by Reem against defendants The Chetrit Group, LLC, Cornell Realty Management LLC, JCMC, Cornell, NTCM, MJR and Marge. The action seeks damages on behalf of Reem as a result of the same smoke and soot damage described above. The Complaint alleges that the property included one-of-a-kind bridal gowns, evening wear gowns, 17,000 yards of fabric and a collection of over 2,000 luxury bridal gowns and apparel, proprietary patterns developed over a period of two decades as well as hundreds of pieces of custom embroidery, lace, leather and fur, with an aggregate cost basis of significantly in excess of $21 million. The Complaint alleges that the Reem store is on the 7th floor of the Reem Property and is adjacent to a two-story former Conway Department Store building located at the Demolition Site that was being demolished. The complaint

Case 1:25-cv-07817-CM-RFT    Document 14-11    Filed 09/25/25    Page 22 of 83

TROUTMAN
SANDERS

MJR Construction Services, Corp.
March 30, 2016
Page 3

asserts that on or about March 27, 2014, MJR and Marge were engaged to serve as contractors for the demolition work with Marge engaged pursuant to a written contract between Cornell 245-247 and/or JCMC and Marge. The Complaint alleges that two MJR, Marge and/or NTCM workers used the wrong type of blow torches for the work and failed to take proper precautions, which resulted in the fire the morning of March 27. Allegedly, neither MJR nor Marge took any action to alert the New York City Fire Department (the "FDNY") of the fire before third parties notified the fire department. Allegedly, the two workers performing the demolition work told the FDNY that the fire had started before they arrived at the premises that morning. The suit alleges that the FDNY determined that the fire originated on the roof of the building from sparks generated by the cutting through of the I-beam at the location where the demolition work was being performed. The fire allegedly spread through combustible materials on the roof and also extended to the cockloft area below the roof.

The Reem Action alleges that the effects of the fire were not limited to its point of origin and that the smoke and soot from the fire was substantial and "spread" from the construction site and "entered" the adjacent Reem property necessitating the immediate evacuation of the premises and medical treatment for certain of Reem's employees. *Id.* ¶¶ 28-30. The suit alleged that the Reem design archive library was "contaminated" by smoke and soot and that such library has a value of over $15 million. *Id.* ¶¶ 29-30. The cost of professional cleaning for certain clothing allegedly totaled over $52,000.

The Reem Action alleges that on or about April 4, 2014 and again on April 16, 2014, the defendants were placed on notice that the Demolition Site should be maintained in its existing condition to allow for a full investigation of the fire. Nonetheless, the Complaint alleges that after that date, defendants removed and disposed of important and substantial evidence and carried out additional demolition work to alter the exact site of the origin of the fire. Defendants allegedly did not permit an investigation of the fire to be conducted by ACA until compelled by a court issued order requiring pre-action discovery in the proceeding captioned as *Reem Bridals, LLC v. The Chetrit Group, et al.,* Index No. 154673/2014 (the "Discovery Action"). The counts in the Reem Action mirror the Subrogation Action: negligence, trespass, private nuisance, gross negligence and negligence *per se.* The prayer for relief is for an amount to be determined at trial, not less than $21 million plus punitive damages and all other just and proper relief.

## II.    Coverage Discussion

### A.    The Policy

The Policy was issued for the policy period March 26, 2014 to October 27, 2014 and provides coverage, subject to its terms and conditions, up to $5 million per occurrence and in the aggregate. *See* Declarations; Policy Section III.2. The Policy provides coverage only excess to those limits provided by the Burlington Policy, stating that it "will pay those sums in excess of the limits shown in Item 6 of the Declarations, Schedule of Underlying Insurance, that you become legally obligated to pay as damages because of injury to which this insurance applies, provided that the 'Underlying

Active 28177933v1 249094.000001

TROUTMAN
SANDERS

MJR Construction Services, Corp.
March 30, 2016
Page 4

Insurance' also applies, or would apply but for the exhaustion of its applicable Limits of Insurance."
Policy, Section 1.a. The Burlington Policy is designated as the Underlying Insurance.

The Policy is generally a "follow form" policy that provides:

This insurance is subject to the same terms, conditions, agreements, exclusions
and definitions as the "Underlying Insurance", except:
...(2) With respect to any provisions to the contrary contained in this insurance.

### B.   The Burlington Policy

The Burlington Policy provides coverage from March 26, 2014 to October 27, 2014, matching the policy term of the Policy. The Burlington Policy's Declaration provides for a $1 million limit per occurrence, subject to a $2 million general aggregate limit for certain designated construction projects (or non-construction projects) and a $5 million general aggregate limit. *See* Burlington Policy, Declarations, as modified by Designated Construction Project(s) General Aggregate Limit and General Aggregate for All Construction Projects Endorsement. All coverage is subject to a $5,000 deductible (which includes coverage for Defense Costs) per claim. *See* Burlington Policy, Deductible Liability Insurance Endorsement. Subject to the deductible, the Burlington Policy provides for a defense outside of limits.

### C.   Reservation of Rights

Based on the information presently available, Alterra has reviewed the Underlying Actions for potential coverage under the Policy. The discussion herein is not intended to be exhaustive or exclusive, and Alterra reserves the right to supplement or modify its views as to coverage as additional information becomes available or as developments may warrant. Please note further that the discussion below necessarily is based on the unsubstantiated allegations in the complaints, and Alterra is not suggesting that the allegations have merit. Alterra requests that its insured or other interested parties provide any additional information or documentation that they believe may be relevant to Alterra's review of this matter. Indeed, as noted below, Alterra has specific questions that bear on several coverage issues. In the interim, Alterra wishes to call to your attention the following provisions.

1.    The Policy Is An Excess Policy That Has Not Been Reached.

As noted above, the Policy provides only excess coverage – "those sums in excess of" the $1 million per occurrence limit of the Burlington Policy. *See* Policy, Section 1.a. To date, Alterra has not received any information or documentation demonstrating that the limits of the Burlington Policy have been fully exhausted. Therefore, the Alterra Policies do not appear to have been reached, and Alterra would have no present duty to insured for the Underlying Actions. Indeed, Alterra does not understand its insured even to be seeking a defense from Alterra, and Alterra understands that, in any event,

TROUTMAN
SANDERS

MJR Construction Services, Corp.
March 30, 2016
Page 5

Burlington has arranged for such a defense. **However, if Alterra is incorrect in this understanding, please notify us immediately.**

Accordingly, Alterra reserves all of its rights to assert that the Underlying Actions do not trigger or reach the Policy (based on the limits of underlying insurance including any retention or deductible). Despite this point, Alterra reviewed the Underlying Actions and determined there may be additional significant issues regarding coverage related to it, which are set forth in the following sections.

2.     The Burlington Policy's Pollution Exclusion May Bar Coverage for the Underlying Actions.

The Burlington Policy's Total Pollution Exclusion (which applies also to coverage available under the Policy) bars coverage for property damage "which would not have occurred in whole or in part but for the actual . . . dispersal . . . migration, release or escape of 'pollutants' at any time." *See* Burlington Policy, Total Pollution Exclusion Endorsement. "Pollutants" is defined by the Burlington Policy to mean "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. . . ." Burlington Policy, Section V.15.

Here, Alterra understands that smoke and soot dispersed, released, and escaped from the fire and contaminated the Reem Store, which was located in a separate building, many floors above the fire. In these circumstances, the Total Pollution Exclusion may bar coverage in whole or in part and Alterra reserves its rights accordingly.

3.     The Burlington Policy's Notice Requirements May Bar Coverage for the Underlying Actions

The Burlington Policy (and, through it, the Policy) requires that Alterra receive notice of any occurrence "as soon as practicable," as well as other specific requirements. Burlington Policy, Section IV.2.a. Alterra understands that the fire allegedly occurred on or about March 27, 2014, and further understands that Alterra received notice only after ACA and Reem provided copies of their complaints against MJR on Alterra in January 2016 – nearly two years after the fire. In addition, Alterra understands that MJR representatives allegedly provided access to the fire location shortly after the fire but well before notice was provided to Alterra.

In order to determine whether the notice provided to Alterra was timely, Alterra requires additional information. **Specifically, Alterra requests that Reem, ACA, Marge, Cornell, Cornell Realty Management LLC, JCMC, NTCM, The Chetrit Group, LLC, MJR, and any other party alleging that MJR damaged it or is liable to it, including all entities carbon copied on this letter, please provide Alterra with information evidencing when such party first inquired as to MJR's insurance and when such party received information regarding the Policy. Alterra is concerned that the passage of nearly two years until notice was provided to it has significantly prejudiced**

Case 1:25-cv-07817-CM-RFT   Document 14-11   Filed 09/25/25   Page 25 of 83

TROUTMAN
SANDERS

MJR Construction Services, Corp.
March 30, 2016
Page 6

its ability to adequately investigate the loss alleged in the Underlying Actions. If the property that was the source of the fire or the property that was allegedly damaged has not yet been renovated or repaired, please notify us immediately so that Alterra can arrange an inspection. In any event, Alterra requests that Reem, ACA, Marge, Cornell, Cornell Realty Management LLC, JCMC, NTCM, The Chetrit Group, LLC, MJR, and any other party alleging that MJR damaged it or is liable to it, including all entities carbon copied on this letter, please provide all reports, documents, and analyses of the fire and its source, causes and timing, any and all photographic or other documentary evidence of the fire, documents and/or other information provided by MJR to any entity, documents and/or other information gleaned from any post-fire visit to either property, any documents or other discovery responses produced or served by any party in the *Discovery* Action or any other action, the names of MJR employees on site the day of the fire, as well as all information suggesting the fire started before the arrival of the workers at the site (as alleged in paragraph 27 of the *Reem* Action Complaint).

In these circumstances, and pending receipt and review of the requested information, Alterra must reserve its rights pursuant to the Burlington Policy's notice requirements.

4.     Property Damage May Not Have Occurred During the Policy Period

The Burlington Policy (and, thus, the Policy) provides coverage only to the extent the "'property damage' occurs during the policy period.'" Burlington Policy, Section I, Coverage A.1.b(2), as amended by the Section I Insuring Agreement Endorsement. Here the Policy apparently incepted on March 26 and there is some suggestion that the fire may have begun at some point before the morning of March 27. *See, e.g.,* Reem Action Complaint at ¶ 22 (describing the unsafe condition as existing "on and prior to March 27, 2014) and 27 (alleging that the workers on site "originally told the New York City Fire Department that the Fire had started before they arrived . . . ."). **Alterra requests that Reem, ACA, Marge, Cornell, Cornell Realty Management LLC, JCMC, NTCM, The Chetrit Group, LLC, MJR, and any other party alleging that MJR damaged it or is liable to it, including all entities carbon copied on this letter, please provide it with any documents evidencing the time that the fire first began.** In the interim, and pending receipt and review of the requested information, Alterra must reserve its rights pursuant to these policy provisions.

5.     Other Insurance / Indemnification / Subcontractors

The Policy and the Burlington Policies contain several provisions relating to the proper allocation and priority of insurance policies that may act to limit or preclude coverage. First, the Policy, by endorsement, requires that any subcontractor working on behalf of MJR obtain $1 million of insurance naming MJR as an additional insured and that such insurance shall be primary (*i.e.* will provide coverage before the Policy attaches). *See* Policy, Insurance Requirement All Work Performed On Behalf of Any Insured Endorsement. Thus, to the extent any entity (including but not limited to Marge) acted as MJR's subcontractor, such entity's insurance policy would provide $1 million of additional coverage for MJR before the Alterra Policy is triggered. **Alterra requests that Reem,**

TROUTMAN
SANDERS

MJR Construction Services, Corp.
March 30, 2016
Page 7

ACA, Marge, Cornell, Cornell Realty Management LLC, JCMC, NTCM, The Chetrit Group, LLC, MJR, and any other party alleging that MJR damaged it or is liable to it, including all entities carbon copied on this letter, please provide it with information concerning the contractor/subcontractor relationships at issue among the parties, the contractual requirements agreed to by and among such entities (including with respect to indemnification and the addition of parties as additional insureds), as well as insurance policies for all such entities.

Second, the Policy contains an other insurance provision, *see* Policy, Section IV.3., that provides for the prioritization and allocation of insurance responsibilities in certain situations and makes the Policy excess over any other valid and collectible insurance.

Pending receipt and review of the requested information, Alterra reserves the right to preclude, limit or prioritize its coverage appropriately.

6. The Wrap-Up Insurance Exclusions May Preclude Coverage for the Underlying Actions.

Both the Policy and the Burlington Policy have similar exclusions barring coverage for property damage that occurred at a location that is or was to be insured under a consolidated (wrap-up) insurance program. *See* Burlington Policy, Exclusion – Designated Operations Covered by a Consolidated (Wrap-Up) Insurance Program; Policy, Contractors Limitation Endorsement.

Here, MJR allegedly was performing work at a location that may have been insured under such a policy, either through a policy issued to a policy owner (or occupier) or to a contractor or project manager. Alterra therefore requests that Reem, ACA, Marge, Cornell, Cornell Realty Management LLC, JCMC, NTCM, The Chetrit Group, LLC, and any other party alleging that MJR damaged it or is liable to it, including all entities carbon copied on this letter, confirm whether or not they have been issued such a policy. Pending receipt and review of the requested information, Alterra reserves the right to limit or preclude coverage under these exclusionary provisions.

7. The Burlington Policy's Cooperation Clause May Limit or Preclude Coverage for the Underlying Actions

The Burlington Policy (and, thus, the Policy) requires that MJR cooperate "in the investigation or settlement of the claim or defense" and assist in enforcing any right against any person or organization that may be liable. Burlington Policy, Section IV.2.c. Alterra understands that MJR representatives knew about the fire but failed to provide notice to Alterra or otherwise permit Alterra to investigate this matter. In addition, Alterra requests that Reem, ACA, Marge, Cornell, Cornell Realty Management LLC, JCMC, NTCM, The Chetrit Group, LLC, MJR, and any other party alleging that MJR damaged it or is liable to it, including all entities carbon copied on this letter, confirm whether some other person or company may have some liability for the matters alleged

Active 28177933v1 249094.000001

Case 1:25-cv-07817-CM-RFT    Document 14-11    Filed 09/25/25    Page 27 of 83

TROUTMAN
SANDERS

MJR Construction Services, Corp.
March 30, 2016
Page 8

**to have caused damage in the Underlying Actions.** In the interim, Alterra reserves its rights pursuant to the cooperation requirements of the Burlington Policy.

        8.      <u>Other Potential Coverage Issues</u>

Above, Alterra has referred to coverage issues and reservations that are central to any coverage analysis either based on the language within the body of the Alterra or Burlington Policy. Immediately below, Alterra lists additional coverage issues that may be potentially relevant to coverage.

1. Alterra reserves the right to limit or deny coverage (including the right to seek rescission) to the extent its insured provided misrepresentations or material omissions with respect to the underwriting of the Policy, including but not limited to failing to provide promised materials in a timely fashion and/or the furnishing of false affidavits.

2. Alterra potentially is liable only for certain amounts that its insureds "become legally obligated to pay as damages." *See, e.g.,* Burlington Policy, Section I.1.a, as amended by the Section I Insuring Agreement Endorsement. Alterra reserves its rights to limit or deny coverage for the Underlying Actions to the extent that any damages therefrom do not constitute a legal obligation to pay damages.

3. Alterra reserves the right to limit or deny coverage for property damage arising out of certain exterior insulation and finish systems.

4. The Policy provides coverage only for MJR and other insureds as defined by the Policy. Alterra reserves the right to limit or deny coverage with respect to any party in the Underlying Actions that is not an insured under the Policy.

5. The Policy provides coverage only for "property damage," as defined. *See* Burlington Policy, Section I.1.a, as amended by the Section I Insuring Agreement Endorsement. Alterra reserves the right to limit or deny coverage with respect to any alleged damage that does not constitute "property damage."

6. The Policy provides coverage only for an "occurrence" as that term is defined in the Burlington Policy. *See* Burlington Policy, Section I.1.b(1), as amended by the Section I Insuring Agreement Endorsement. Alterra reserves the right to limit or deny coverage to the extent the fire was not an "occurrence."

7. The Underlying Actions seek punitive damages, which are excluded from coverage pursuant to the Punitive Damages Exclusion in the Burlington Policy, as well as other unstated relief which might not constitute damages. Alterra reserves the right to limit or deny coverage to the extent that the relief sought does not constitute damages, or where any claim is not insurable under applicable state law.

Case 1:25-cv-07817-CM-RFT    Document 14-11    Filed 09/25/25    Page 28 of 83

# TROUTMAN
# SANDERS

MJR Construction Services, Corp.
March 30, 2016
Page 9

8.  Alterra reserves the right to limit or deny coverage for any property damage expected or intended from the standpoint of the insured.

9.  Alterra reserves the right to limit or deny coverage for property damage for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.

10. Alterra reserves the right to limit or deny coverage for property damage arising out of the use of 'mobile equipment' in, or while in practice for, or while being prepared for, any prearranged demolition activity.

11. Alterra reserves the right to limit or deny coverage for property damage to impaired property or property that has not been physically injured, arising out of a dangerous condition in an insured's work.

12. Alterra reserves the right to limit or deny coverage for property damage to that particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it.

13. Alterra reserves the right to limit or deny coverage for damages, claims for any loss, cost or expense incurred by others for their loss of use, recall, inspection, repair, replacement, adjustment, removal or disposal of 'impaired property.'

14. Alterra reserves the right to limit or deny coverage for property damage arising out of shoring, underpinning or pile driving.

15. Alterra reserves the right to limit or deny coverage for injury or damage arising from, caused by or aggravated by exposure to lead.

16. Alterra reserves the right to limit or deny coverage for injury or damages caused by asbestos, silica, asbestos dust, silica dust, mixed dust or any other similar fibrous or mineral substance.

17. Alterra reserves the right to limit or deny coverage for property damage arising from its insured's work that was part of or incorporated into a condominium, townhouse, row house, or tract home project.

18. Alterra reserves the right to limit or deny coverage pursuant to the Reduced Limits of Insurance for Uninsured Independent Contractors/Subcontractors Endorsement to the Burlington Policy.

19. Alterra reserves the right to limit or deny coverage to the extent any loss or damage exceeds its limits of insurance.

Active 28177933v1 249094.000001

Case 1:25-cv-07817-CM-RFT    Document 14-11    Filed 09/25/25    Page 29 of 83

## TROUTMAN SANDERS

MJR Construction Services, Corp.
March 30, 2016
Page 10

20. Alterra reserves the right to limit or deny coverage with respect to the number of "occurrences" at issue.

21. Alterra reserves the right to limit or deny coverage to the extent that the Underlying Actions arise out of property damage that is subject to the "known loss" and/or "loss in progress" doctrines, which generally preclude coverage for loss that occurred or is occurring prior to policy inception.

22. Alterra reserves the right to limit or deny coverage to the extent its insureds are uninsured or lack adequate insurance for certain applicable periods under a proper allocation. If such is the case, the Policies do not provide coverage, and/or Alterra is or may be entitled to recover from MJR an appropriate amount for such periods of no coverage or inadequate coverage.

23. Alerra reserves the right to limit or deny coverage to the extent its insureds have failed to properly maintain the Underlying Insurance as more fully defined in the Policy.

24. Alterra reserves the right to limit or deny coverage for any loss arising out of the Underlying Actions to the extent that its insureds have breached one or more of the conditions of the Policy, whether or not specifically addressed herein.

\*     \*     \*

To reiterate, Alterra notes and reserves its rights on the policy provisions and issues above to provide guidance to its insureds and to other interested parties. Please understand that Alterra must continue to reserve all of its rights under any and all policies, at law, and in equity with respect to the Underlying Actions , including but not limited to the right to limit or deny coverage (including through the filing of a declaratory judgment action) for the Underlying Actions.

Very truly yours,

Richard J. Pratt
Daniel W. Cohen

Active 28177933v1 249094.000001

Case 1:25-cv-07817-CM-RFT    Document 14-11    Filed 09/25/25    Page 30 of 83

## TROUTMAN SANDERS

MJR Construction Services, Corp.
March 30, 2016
Page 11

cc:    Reem Bridals, Inc.
       c/o Bijan Amini, Esq.
       Storch Amini & Munves PC
       2 Grand Central Tower
       140 East 45th Street, 25th Floor
       New York, NY  10017

       Reem Bridals, Inc.
       c/o Jaime B. Leggett, Esq.
       Storch Amini & Munves PC
       2 Grand Central Tower
       140 East 45th Street, 25th Floor
       New York, NY  10017

       Assurance Company of America
       c/o Robert A. Stern, Esq.
       Clausen Miller P.C.
       28 Liberty Street, 39th Floor
       New York, NY  10005

       Assurance Company of America
       c/o Marc P. Madonia, Esq.
       Clausen Miller P.C.
       28 Liberty Street, 39th Floor
       New York, NY  10005

       The Chetrit Group, LLC
       512 7th Avenue, 15th Floor
       New York, NY  10018

       The Chetrit Group, LLC
       c/o Matthew S. Aboulafia, Esq.
       Aboulafia Law Firm LLC
       228 E. 45th Street, Suite 1700
       New York, NY  10017

       Cornell 245-247 LLC
       c/o Joseph Chetrit
       The Chetrit Group LLC
       512 7th Avenue, 15th Floor
       New York, NY  10018

Active 28177933v1 249094.000001

Case 1:25-cv-07817-CM-RFT   Document 14-11   Filed 09/25/25   Page 31 of 83

TROUTMAN
SANDERS

MJR Construction Services, Corp.
March 30, 2016
Page 12

Cornell 245-247 LLC
c/o The Limited Liability Company
75 Huntington Street
Brooklyn, NY  11231

JCMC 245-247 LLC
c/o Joseph Chetrit
The Chetrit Group LLC
512 7th Avenue, 15th Floor
New York, NY  10018

Cornell Realty Management LLC
75 Huntington Street
Brooklyn, NY  11231

Cornell Realty Management LLC
209 Wallabout Street, 3d Floor
Brooklyn, NY  11206

Cornell Realty Management
c/o Matthew S. Aboulafia, Esq.
Aboulafia Law Firm LLC
228 E. 45th Street, Suite 1700
New York, NY  10017

North True Construction Management LLC
c/o Goldberg & Rimberg PLLC
115 Broadway, Suite 302
New York, NY  10006

North True Construction Management, LLC
217 Havemeyer St.
Brooklyn, NY 11211

Marge NY, Inc.
5320 16th Avenue
Brooklyn, NY  11204

Marge NY, Inc.
1644 57th Street
Brooklyn, NY  11204

Case 1:25-cv-07817-CM-RFT    Document 14-11    Filed 09/25/25    Page 32 of 83

## TROUTMAN SANDERS

MJR Construction Services, Corp.
March 30, 2016
Page 13

Marge NY, Inc.
c/o James A. Roth, Esq.
Hoffman, Roth & Matlin LLP
505 Eighth Avenue, Suite 1704
New York, NY  10018

Active 28177933v1 249094.000001

RICHARD J. PRATT
202.662.2077 telephone
202.654.5834 facsimile
richard.pratt@troutmansanders.com

DANIEL W. COHEN
212 704 6256 telephone
202.654.5807 facsimile
dan.cohen@troutmansanders.com

# TROUTMAN SANDERS

TROUTMAN SANDERS LLP
Attorneys at Law
401 9th Street, N. W., Suite 1000
Washington, D.C. 20004-2134
202.274.2950 telephone
troutmansanders.com

875 Third Avenue
New York, New York 10022
212.704.6000 telephone
troutmansanders.com

June 24, 2016

**Via Certified Mail, Return Receipt Requested**

MJR Construction Services Corp.
c/o Natasha G. Johnson
67 Courtright Avenue
Wilkes Barre, PA 18702

|      |          |                                                              |
|------|----------|--------------------------------------------------------------|
| Re:  | Suits:   | (1) **Assurance Co. of America, et al. v. Cornell 245-247 LLC, et al., Index No. 150020/2016 (County of New York);** |
|      |          | (2) **RA Luxury, LLC, et al. v. The Chetrit Group LLC, et al., Index No. 150365/2016 (County of New York)** |
|      | Insured: | **MJR Construction Services Corp.** |
|      | Policy:  | **MAXA3EC50001169 (the "Policy")** |

Dear Sir or Madam:

On behalf of Alterra America Insurance Company ("Alterra"), this letter will follow-up on our March 30, 2016 and June 17, 2016 letters, which provided Alterra's initial analysis of coverage and reservation of rights under the Policy in connection with *Assurance Company of America, et al. v. Cornell 245-247 LLC, et al.*, No. 150020/2016 (N.Y. Cty., NY) (the "Subrogation Action") and *R.A. Luxury LLC, et al. v. The Chetrit Group LLC, et al.*, Index No. 150365/2016 (N.Y. Ct., NY) (the "Reem Action" and together with the Subrogation Action, the "Underlying Actions").

Those earlier letters, which we incorporate herein by reference and enclose as attachments, were sent to various addresses Alterra obtained for MJR Construction Services Corp. ("MJR") and Mr. Michael Russell, whom Alterra understands is or was MJR's principal, as part of its investigation into the Underlying Actions. Through additional discussions with the attorneys for Burlington Insurance Company, Alterra has obtained this additional address and directs this letter there in a further effort to contact MJR and/or Mr. Russell.

The March 30, 2016 letter requested certain information from MJR that is necessary for Alterra to more fully evaluate potential coverage under the Policy. Alterra further understands that Mr. Russell and MJR have refused to cooperate with Burlington in its defense of this matter, including by refusing to provide information (for example, by refusing to return phone calls and refusing to meet in person, despite several attempts by Burlington to arrange a meeting). The failure to provide notice of

Case 1:25-cv-07817-CM-RFT  Document 14-11  Filed 09/25/25  Page 34 of 83

# TROUTMAN SANDERS

MJR Construction Services, Corp.
June 23, 2016
Page 2

the fire described in the above-referenced lawsuits at or about the time of its happening, the failure to provide the information requested in the March 30, 2016 letter, and the failure to cooperate in the defense has materially prejudiced Alterra. For that reason, Alterra reiterates that the Burlington Policy (and, thus, the Policy) required and requires that MJR cooperate "in the investigation or settlement of the claim or defense" and assist in enforcing any right against any person or organization that may be liable. Burlington Policy, Section IV.2.c. Alterra reserves all rights pursuant to this cooperation provision. By referring to this cooperation provision, Alterra does not waive any of its other coverage defenses, including but not limited to those identified in the March 30, 2016 letter.

Please contact us immediately at either of the phone numbers provided above (you may call collect if you wish to do so). If we should communicate instead with some other individual please let us know immediately. Alterra continues to reserve all of its rights under the Policy and at law.

Very truly yours,

Richard J. Pratt
Daniel W. Cohen

Cc (w/o attach):	MJR Construction Services Corp.
109 Ingraham Street, Suite 308
Brooklyn, NY 11237

MJR Construction Services Corp.
5201 Flushing Avenue
Maspeth, NY 11378

Mr. Michael Russell
c/o Mr. Stephen Russell
1110 William Street
Hewlett, NY 11557

Reem Bridals, Inc.
c/o Bijan Amini, Esq.
Storch Amini & Munves PC
2 Grand Central Tower
140 East 45th Street, 25th Floor

Active 28720988v1 249094.000001

Case 1:25-cv-07817-CM-RFT    Document 14-11    Filed 09/25/25    Page 35 of 83

**TROUTMAN
SANDERS**

MJR Construction Services, Corp.
June 23, 2016
Page 3

New York, NY  10017

Reem Bridals, Inc.
c/o Jaime B. Leggett, Esq.
Storch Amini & Munves PC
2 Grand Central Tower
140 East 45th Street, 25th Floor
New York, NY  10017

Assurance Company of America
c/o Robert A. Stern, Esq.
Clausen Miller P.C.
28 Liberty Street, 39th Floor
New York, NY  10005

Assurance Company of America
c/o Marc P. Madonia, Esq.
Clausen Miller P.C.
28 Liberty Street, 39th Floor
New York, NY  10005

The Chetrit Group, LLC
512 7th Avenue, 15th Floor
New York, NY  10018

The Chetrit Group, LLC
c/o Matthew S. Aboulafia, Esq.
Aboulafia Law Firm LLC
228 E. 45th Street, Suite 1700
New York, NY  10017

Cornell 245-247 LLC
c/o Joseph Chetrit
The Chetrit Group LLC
512 7th Avenue, 15th Floor
New York, NY  10018

Cornell 245-247 LLC
c/o The Limited Liability Company
75 Huntington Street
Brooklyn, NY  11231

Active 28720988v1 249094.000001

TROUTMAN
SANDERS

MJR Construction Services, Corp.
June 23, 2016
Page 4

JCMC 245-247 LLC
c/o Joseph Chetrit
The Chetrit Group LLC
512 7th Avenue, 15th Floor
New York, NY  10018

Cornell Realty Management LLC
75 Huntington Street
Brooklyn, NY  11231

Cornell Realty Management LLC
209 Wallabout Street, 3d Floor
Brooklyn, NY  11206

Cornell Realty Management
c/o Matthew S. Aboulafia, Esq.
Aboulafia Law Firm LLC
228 E. 45th Street, Suite 1700
New York, NY  10017

North True Construction Management LLC
c/o Goldberg & Rimberg PLLC
115 Broadway, Suite 302
New York, NY  10006

North True Construction Management, LLC
217 Havemeyer St.
Brooklyn, NY 11211

Marge NY, Inc.
c/o James A. Roth, Esq.
Hoffman, Roth & Matlin LLP
505 Eighth Avenue, Suite 1704
New York, NY  10018

Active 28720988v1 249094.000001

Case 1:25-cv-07817-CM-RFT   Document 14-11   Filed 09/25/25   Page 37 of 83

RICHARD J. PRATT
202.662.2077 telephone
202.654.5834 facsimile
richard.pratt@troutmansanders.com

DANIEL W. COHEN
212 704 6256 telephone
202.654.5807 facsimile
dan.cohen@troutmansanders.com

# TROUTMAN SANDERS

TROUTMAN SANDERS LLP
Attorneys at Law
401 9th Street, N. W., Suite 1000
Washington, D.C. 20004-2134
202.274.2950 telephone
troutmansanders.com

875 Third Avenue
New York, New York 10022
212.704.6000 telephone
troutmansanders.com

March 30, 2016

**Via Certified Mail, Return Receipt Requested**

MJR Construction Services, Corp.
109 Ingraham Street, Suite 308
Brooklyn, NY 11237

|  |  |  |  |
|---|---|---|---|
| Re: | Suits: | (1) | **Assurance Co. of America, et al. v. Cornell 245-247 LLC, et al., Index No. 150020/2016 (County of New York);** |
|  |  | (2) | **RA Luxury, LLC, et al. v. The Chetrit Group LLC, et al., Index No. 150365/2016 (County of New York)** |
|  | Insured: | | **MJR Construction Services Corp.** |
|  | Policy: | | **MAXA3EC50001169 (the "Policy")** |

Dear Sirs:

This letter will provide Alterra America Insurance Company's ("Alterra") initial analysis of coverage and reservation of rights under the Policy in connection with *Assurance Company of America, et al. v. Cornell 245-247 LLC, et al.*, No. 150020/2016 (N.Y. Cty., NY) (the "Subrogation Action") and *R.A. Luxury LLC, et al. v. The Chetrit Group LLC, et al.*, Index No. 150365/2016 (N.Y. Ct., NY) (the "Reem Action" and together with the Subrogation Action, the "Underlying Actions"). Alterra directs this letter to MJR Construction Services Corp. ("MJR") in connection with the Underlying Actions. If Alterra should communicate instead with someone else, please forward this letter to the appropriate party and let us know with whom Alterra should communicate in the future.

As described further below, the Policy largely follows-form to the terms and conditions of policy no. 509BW27687 issued by Burlington Insurance Company (the "Burlington Policy"). Based on the materials provided and the terms and conditions of the Policy and the Burlington Policy, Alterra has identified several coverage issues that may limit or entirely preclude coverage under the Policy for the Underlying Actions. In addition, and as also noted below, Alterra requests additional information both from you and the entities that are copied on this letter in order to more fully evaluate coverage. For these reasons, and pending receipt and review of the requested information, Alterra is proceeding subject to a full reservation of its rights under its Policy, at law, and in equity, including, but not limited to, the right to file a declaratory judgment action to determine coverage for the Underlying Actions. Please understand that the views set forth in this letter necessarily are based on the limited information currently available to Alterra. These views do not reflect an independent assessment of the merits of these matters or of any of the allegations therein. Moreover, these views are not intended

TROUTMAN
SANDERS

MJR Construction Services, Corp.
March 30, 2016
Page 2

to be exhaustive or exclusive, and nothing in this letter or any other correspondence from Alterra is to
be construed as a waiver or estoppel of any of its rights with regard to the Underlying Actions

## I.    The Underlying Actions

MJR has not itself submitted a claim to Alterra relating to the Underlying Actions. Rather,
Alterra has received copies of the two lawsuits from the plaintiffs in those cases following their filing.
The Subrogation Action was filed on January 4, 2016 and the Reem Action was filed on January 14,
2016.

### A.    The Subrogation Action

The Subrogation Action is brought by Assurance Company of America ("ACA") against
Cornell 245-247 LLC ("Cornell"), JCMC 245-247 LLC ("JCMC"), North True Construction
Management LLC ("NTCM"), Marge NY ("Marge"), Inc. and MJR. Allegedly, on or about March 27,
2014, a fire broke out at 245 West 34th Street, Manhattan, New York (the "Demolition Site"). Reem
Bridals ("Reem") allegedly was the owner or operator of a neighboring property located at 240 W. 35th
Street, Manhattan, New York (the "Reem Property"). According to the Subrogation Action, Reem
maintained an inventory of garments at the Reem Property, a large stock of high-end fabrics and a
2,400-piece "library" of gowns for rent. Specifically, ACA alleges that on March 27, 2014, MJR was
performing "construction and/or demolition work, including, but not limited to, 'hot work' (torch
operations), in the cockloft and/or roof areas" of the Demolition Site, as part of demolition operations
performed by NTCM, MJR and/or Marge. During these operations, a fire occurred above the ceiling
of the plenum area, in or around the cockloft space, between the roof and the ceiling of the Demolition
Site. As a result of the fire "smoke and soot entered" the Reem Property. *Id.* ¶ 25. Reem allegedly
suffered real and/or personal property damage, interruption of its business, loss of income and
expenses including the cleaning of garments, textiles, materials and replacement of materials in excess
of $2.461 million. ACA allegedly paid Reem for that amount. The Subrogation Action alleges
negligence, trespass, nuisance, gross negligence, recklessness and/or willful and wanton misconduct
and negligence per se.

### B.    The Reem Action

The Reem Action is brought by Reem against defendants The Chetrit Group, LLC, Cornell
Realty Management LLC, JCMC, Cornell, NTCM, MJR and Marge. The action seeks damages on
behalf of Reem as a result of the same smoke and soot damage described above. The Complaint
alleges that the property included one-of-a-kind bridal gowns, evening wear gowns, 17,000 yards of
fabric and a collection of over 2,000 luxury bridal gowns and apparel, proprietary patterns developed
over a period of two decades as well as hundreds of pieces of custom embroidery, lace, leather and fur,
with an aggregate cost basis of significantly in excess of $21 million. The Complaint alleges that the
Reem store is on the 7th floor of the Reem Property and is adjacent to a two-story former Conway
Department Store building located at the Demolition Site that was being demolished. The complaint

Active 28177933v1 249094.000001

Case 1:25-cv-07817-CM-RFT    Document 14-11    Filed 09/25/25    Page 39 of 83

TROUTMAN
SANDERS

MJR Construction Services, Corp.
March 30, 2016
Page 3

asserts that on or about March 27, 2014, MJR and Marge were engaged to serve as contractors for the demolition work with Marge engaged pursuant to a written contract between Cornell 245-247 and/or JCMC and Marge.  The Complaint alleges that two MJR, Marge and/or NTCM workers used the wrong type of blow torches for the work and failed to take proper precautions, which resulted in the fire the morning of March 27.  Allegedly, neither MJR nor Marge took any action to alert the New York City Fire Department  (the "FDNY") of the fire before third parties notified the fire department. Allegedly, the two workers performing the demolition work told the FDNY that the fire had started before they arrived at the premises that morning.  The suit alleges that the FDNY determined that the fire originated on the roof of the building from sparks generated by the cutting through of the I-beam at the location where the demolition work was being performed.  The fire allegedly spread through combustible materials on the roof and also extended to the cockloft area below the roof.

The Reem Action alleges that the effects of the fire were not limited to its point of origin and that the smoke and soot from the fire was substantial and "spread" from the construction site and "entered" the adjacent Reem property necessitating the immediate evacuation of the premises and medical treatment for certain of Reem's employees. *Id.* ¶¶ 28-30.  The suit alleged that the Reem design archive library was "contaminated" by smoke and soot and that such library has a value of over $15 million. *Id.* ¶¶ 29-30.  The cost of professional cleaning for certain clothing allegedly totaled over $52,000.

The Reem Action alleges that on or about April 4, 2014 and again on April 16, 2014, the defendants were placed on notice that the Demolition Site should be maintained in its existing condition to allow for a full investigation of the fire.  Nonetheless, the Complaint alleges that after that date, defendants removed and disposed of important and substantial evidence and carried out additional demolition work to alter the exact site of the origin of the fire.  Defendants allegedly did not permit an investigation of the fire to be conducted by ACA until compelled by a court issued order requiring pre-action discovery in the proceeding captioned as *Reem Bridals, LLC v. The Chetrit Group, et al.,* Index No. 154673/2014 (the "Discovery Action").  The counts in the Reem Action mirror the Subrogation Action:  negligence, trespass, private nuisance, gross negligence and negligence *per se*. The prayer for relief is for an amount to be determined at trial, not less than $21 million plus punitive damages and all other just and proper relief.

II.     **Coverage Discussion**

A.      **The Policy**

The Policy was issued for the policy period March 26, 2014 to October 27, 2014 and provides coverage, subject to its terms and conditions, up to  $5 million per occurrence and in the aggregate. *See* Declarations; Policy Section III.2.  The Policy provides coverage only excess to those limits provided by the Burlington Policy, stating that it "will pay those sums in excess of the limits shown in Item 6 of the Declarations, Schedule of Underlying Insurance, that you become legally obligated to pay as damages because of injury to which this insurance applies, provided that the 'Underlying

**TROUTMAN
SANDERS**

MJR Construction Services, Corp.
March 30, 2016
Page 4

Insurance' also applies, or would apply but for the exhaustion of its applicable Limits of Insurance." Policy, Section 1.a. The Burlington Policy is designated as the Underlying Insurance.

The Policy is generally a "follow form" policy that provides:

This insurance is subject to the same terms, conditions, agreements, exclusions and definitions as the "Underlying Insurance", except:
…(2) With respect to any provisions to the contrary contained in this insurance.

### B. The Burlington Policy

The Burlington Policy provides coverage from March 26, 2014 to October 27, 2014, matching the policy term of the Policy. The Burlington Policy's Declaration provides for a $1 million limit per occurrence, subject to a $2 million general aggregate limit for certain designated construction projects (or non-construction projects) and a $5 million general aggregate limit. *See* Burlington Policy, Declarations, as modified by Designated Construction Project(s) General Aggregate Limit and General Aggregate for All Construction Projects Endorsement. All coverage is subject to a $5,000 deductible (which includes coverage for Defense Costs) per claim. *See* Burlington Policy, Deductible Liability Insurance Endorsement. Subject to the deductible, the Burlington Policy provides for a defense outside of limits.

### C. Reservation of Rights

Based on the information presently available, Alterra has reviewed the Underlying Actions for potential coverage under the Policy. The discussion herein is not intended to be exhaustive or exclusive, and Alterra reserves the right to supplement or modify its views as to coverage as additional information becomes available or as developments may warrant. Please note further that the discussion below necessarily is based on the unsubstantiated allegations in the complaints, and Alterra is not suggesting that the allegations have merit. Alterra requests that its insured or other interested parties provide any additional information or documentation that they believe may be relevant to Alterra's review of this matter. Indeed, as noted below, Alterra has specific questions that bear on several coverage issues. In the interim, Alterra wishes to call to your attention the following provisions.

### 1. The Policy Is An Excess Policy That Has Not Been Reached.

As noted above, the Policy provides only excess coverage – "those sums in excess of" the $1 million per occurrence limit of the Burlington Policy. *See* Policy, Section 1.a. To date, Alterra has not received any information or documentation demonstrating that the limits of the Burlington Policy have been fully exhausted. Therefore, the Alterra Policies do not appear to have been reached, and Alterra would have no present duty to insured for the Underlying Actions. Indeed, Alterra does not understand its insured even to be seeking a defense from Alterra, and Alterra understands that, in any event,

Active 28177933v1 249094.000001

Case 1:25-cv-07817-CM-RFT    Document 14-11    Filed 09/25/25    Page 41 of 83

TROUTMAN
SANDERS

MJR Construction Services, Corp.
March 30, 2016
Page 5

Burlington has arranged for such a defense. **However, if Alterra is incorrect in this understanding, please notify us immediately.**

Accordingly, Alterra reserves all of its rights to assert that the Underlying Actions do not trigger or reach the Policy (based on the limits of underlying insurance including any retention or deductible). Despite this point, Alterra reviewed the Underlying Actions and determined there may be additional significant issues regarding coverage related to it, which are set forth in the following sections.

2.    The Burlington Policy's Pollution Exclusion May Bar Coverage for the Underlying Actions.

The Burlington Policy's Total Pollution Exclusion (which applies also to coverage available under the Policy) bars coverage for property damage "which would not have occurred in whole or in part but for the actual . . . dispersal . . . migration, release or escape of 'pollutants' at any time." *See* Burlington Policy, Total Pollution Exclusion Endorsement. "Pollutants" is defined by the Burlington Policy to mean "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. . . ." Burlington Policy, Section V.15.

Here, Alterra understands that smoke and soot dispersed, released, and escaped from the fire and contaminated the Reem Store, which was located in a separate building, many floors above the fire. In these circumstances, the Total Pollution Exclusion may bar coverage in whole or in part and Alterra reserves its rights accordingly.

3.    The Burlington Policy's Notice Requirements May Bar Coverage for the Underlying Actions

The Burlington Policy (and, through it, the Policy) requires that Alterra receive notice of any occurrence "as soon as practicable," as well as other specific requirements. Burlington Policy, Section IV.2.a. Alterra understands that the fire allegedly occurred on or about March 27, 2014, and further understands that Alterra received notice only after ACA and Reem provided copies of their complaints against MJR on Alterra in January 2016 – nearly two years after the fire. In addition, Alterra understands that MJR representatives allegedly provided access to the fire location shortly after the fire but well before notice was provided to Alterra.

In order to determine whether the notice provided to Alterra was timely, Alterra requires additional information. **Specifically, Alterra requests that Reem, ACA, Marge, Cornell, Cornell Realty Management LLC, JCMC, NTCM, The Chetrit Group, LLC, MJR, and any other party alleging that MJR damaged it or is liable to it, including all entities carbon copied on this letter, please provide Alterra with information evidencing when such party first inquired as to MJR's insurance and when such party received information regarding the Policy. Alterra is concerned that the passage of nearly two years until notice was provided to it has significantly prejudiced**

Case 1:25-cv-07817-CM-RFT   Document 14-11   Filed 09/25/25   Page 42 of 83

## TROUTMAN SANDERS

MJR Construction Services, Corp.
March 30, 2016
Page 6

its ability to adequately investigate the loss alleged in the Underlying Actions. **If the property that was the source of the fire or the property that was allegedly damaged has not yet been renovated or repaired, please notify us immediately so that Alterra can arrange an inspection. In any event, Alterra requests that Reem, ACA, Marge, Cornell, Cornell Realty Management LLC, JCMC, NTCM, The Chetrit Group, LLC, MJR, and any other party alleging that MJR damaged it or is liable to it, including all entities carbon copied on this letter, please provide all reports, documents, and analyses of the fire and its source, causes and timing, any and all photographic or other documentary evidence of the fire, documents and/or other information provided by MJR to any entity, documents and/or other information gleaned from any post-fire visit to either property, any documents or other discovery responses produced or served by any party in the *Discovery* Action or any other action, the names of MJR employees on site the day of the fire, as well as all information suggesting the fire started before the arrival of the workers at the site (as alleged in paragraph 27 of the *Reem* Action Complaint).**

In these circumstances, and pending receipt and review of the requested information, Alterra must reserve its rights pursuant to the Burlington Policy's notice requirements.

### 4.    Property Damage May Not Have Occurred During the Policy Period

The Burlington Policy (and, thus, the Policy) provides coverage only to the extent the "'property damage' occurs during the policy period.'" Burlington Policy, Section I, Coverage A.1.b(2), as amended by the Section I Insuring Agreement Endorsement. Here the Policy apparently incepted on March 26 and there is some suggestion that the fire may have begun at some point before the morning of March 27. *See, e.g.,* Reem Action Complaint at ¶ 22 (describing the unsafe condition as existing "on and prior to March 27, 2014) and 27 (alleging that the workers on site "originally told the New York City Fire Department that the Fire had started before they arrived . . . ."). **Alterra requests that Reem, ACA, Marge, Cornell, Cornell Realty Management LLC, JCMC, NTCM, The Chetrit Group, LLC, MJR, and any other party alleging that MJR damaged it or is liable to it, including all entities carbon copied on this letter, please provide it with any documents evidencing the time that the fire first began.** In the interim, and pending receipt and review of the requested information, Alterra must reserve its rights pursuant to these policy provisions.

### 5.    Other Insurance / Indemnification / Subcontractors

The Policy and the Burlington Policies contain several provisions relating to the proper allocation and priority of insurance policies that may act to limit or preclude coverage. First, the Policy, by endorsement, requires that any subcontractor working on behalf of MJR obtain $1 million of insurance naming MJR as an additional insured and that such insurance shall be primary (*i.e.* will provide coverage before the Policy attaches). *See* Policy, Insurance Requirement All Work Performed On Behalf of Any Insured Endorsement. Thus, to the extent any entity (including but not limited to Marge) acted as MJR's subcontractor, such entity's insurance policy would provide $1 million of additional coverage for MJR before the Alterra Policy is triggered. **Alterra requests that Reem,**

Case 1:25-cv-07817-CM-RFT    Document 14-11    Filed 09/25/25    Page 43 of 83

TROUTMAN
SANDERS

MJR Construction Services, Corp.
March 30, 2016
Page 7

**ACA, Marge, Cornell, Cornell Realty Management LLC, JCMC, NTCM, The Chetrit Group, LLC, MJR, and any other party alleging that MJR damaged it or is liable to it, including all entities carbon copied on this letter, please provide it with information concerning the contractor/subcontractor relationships at issue among the parties, the contractual requirements agreed to by and among such entities (including with respect to indemnification and the addition of parties as additional insureds), as well as insurance policies for all such entities.**

Second, the Policy contains an other insurance provision, *see* Policy, Section IV.3., that provides for the prioritization and allocation of insurance responsibilities in certain situations and makes the Policy excess over any other valid and collectible insurance.

Pending receipt and review of the requested information, Alterra reserves the right to preclude, limit or prioritize its coverage appropriately.

6.      The Wrap-Up Insurance Exclusions May Preclude Coverage for the Underlying Actions.

Both the Policy and the Burlington Policy have similar exclusions barring coverage for property damage that occurred at a location that is or was to be insured under a consolidated (wrap-up) insurance program. *See* Burlington Policy, Exclusion – Designated Operations Covered by a Consolidated (Wrap-Up) Insurance Program; Policy, Contractors Limitation Endorsement.

Here, MJR allegedly was performing work at a location that may have been insured under such a policy, either through a policy issued to a policy owner (or occupier) or to a contractor or project manager. **Alterra therefore requests that Reem, ACA, Marge, Cornell, Cornell Realty Management LLC, JCMC, NTCM, The Chetrit Group, LLC, and any other party alleging that MJR damaged it or is liable to it, including all entities carbon copied on this letter, confirm whether or not they have been issued such a policy.** Pending receipt and review of the requested information, Alterra reserves the right to limit or preclude coverage under these exclusionary provisions.

7.      The Burlington Policy's Cooperation Clause May Limit or Preclude Coverage for the Underlying Actions

The Burlington Policy (and, thus, the Policy) requires that MJR cooperate "in the investigation or settlement of the claim or defense" and assist in enforcing any right against any person or organization that may be liable. Burlington Policy, Section IV.2.c. Alterra understands that MJR representatives knew about the fire but failed to provide notice to Alterra or otherwise permit Alterra to investigate this matter. **In addition, Alterra requests that Reem, ACA, Marge, Cornell, Cornell Realty Management LLC, JCMC, NTCM, The Chetrit Group, LLC, MJR, and any other party alleging that MJR damaged it or is liable to it, including all entities carbon copied on this letter, confirm whether some other person or company may have some liability for the matters alleged**

Active 28177933v1 249094.000001

TROUTMAN
SANDERS

MJR Construction Services, Corp.
March 30, 2016
Page 8

**to have caused damage in the Underlying Actions.** In the interim, Alterra reserves its rights pursuant to the cooperation requirements of the Burlington Policy.

8.    Other Potential Coverage Issues

Above, Alterra has referred to coverage issues and reservations that are central to any coverage analysis either based on the language within the body of the Alterra or Burlington Policy. Immediately below, Alterra lists additional coverage issues that may be potentially relevant to coverage.

1.   Alterra reserves the right to limit or deny coverage (including the right to seek rescission) to the extent its insured provided misrepresentations or material omissions with respect to the underwriting of the Policy, including but not limited to failing to provide promised materials in a timely fashion and/or the furnishing of false affidavits.

2.   Alterra potentially is liable only for certain amounts that its insureds "become legally obligated to pay as damages." *See, e.g.,* Burlington Policy, Section I.1.a, as amended by the Section I Insuring Agreement Endorsement. Alterra reserves its rights to limit or deny coverage for the Underlying Actions to the extent that any damages therefrom do not constitute a legal obligation to pay damages.

3.   Alterra reserves the right to limit or deny coverage for property damage arising out of certain exterior insulation and finish systems.

4.   The Policy provides coverage only for MJR and other insureds as defined by the Policy. Alterra reserves the right to limit or deny coverage with respect to any party in the Underlying Actions that is not an insured under the Policy.

5.   The Policy provides coverage only for "property damage," as defined. *See* Burlington Policy, Section I.1.a, as amended by the Section I Insuring Agreement Endorsement. Alterra reserves the right to limit or deny coverage with respect to any alleged damage that does not constitute "property damage."

6.   The Policy provides coverage only for an "occurrence" as that term is defined in the Burlington Policy. *See* Burlington Policy, Section I.1.b(1), as amended by the Section I Insuring Agreement Endorsement. Alterra reserves the right to limit or deny coverage to the extent the fire was not an "occurrence."

7.   The Underlying Actions seek punitive damages, which are excluded from coverage pursuant to the Punitive Damages Exclusion in the Burlington Policy, as well as other unstated relief which might not constitute damages. Alterra reserves the right to limit or deny coverage to the extent that the relief sought does not constitute damages, or where any claim is not insurable under applicable state law.

Active 28177933v1 249094.000001

TROUTMAN
SANDERS

MJR Construction Services, Corp.
March 30, 2016
Page 9

8. Alterra reserves the right to limit or deny coverage for any property damage expected or intended from the standpoint of the insured.

9. Alterra reserves the right to limit or deny coverage for property damage for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.

10. Alterra reserves the right to limit or deny coverage for property damage arising out of the use of 'mobile equipment' in, or while in practice for, or while being prepared for, any prearranged demolition activity.

11. Alterra reserves the right to limit or deny coverage for property damage to impaired property or property that has not been physically injured, arising out of a dangerous condition in an insured's work.

12. Alterra reserves the right to limit or deny coverage for property damage to that particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it.

13. Alterra reserves the right to limit or deny coverage for damages, claims for any loss, cost or expense incurred by others for their loss of use, recall, inspection, repair, replacement, adjustment, removal or disposal of 'impaired property.'

14. Alterra reserves the right to limit or deny coverage for property damage arising out of shoring, underpinning or pile driving.

15. Alterra reserves the right to limit or deny coverage for injury or damage arising from, caused by or aggravated by exposure to lead.

16. Alterra reserves the right to limit or deny coverage for injury or damages caused by asbestos, silica, asbestos dust, silica dust, mixed dust or any other similar fibrous or mineral substance.

17. Alterra reserves the right to limit or deny coverage for property damage arising from its insured's work that was part of or incorporated into a condominium, townhouse, row house, or tract home project.

18. Alterra reserves the right to limit or deny coverage pursuant to the Reduced Limits of Insurance for Uninsured Independent Contractors/Subcontractors Endorsement to the Burlington Policy.

19. Alterra reserves the right to limit or deny coverage to the extent any loss or damage exceeds its limits of insurance.

Active 28177933v1 249094.000001

Case 1:25-cv-07817-CM-RFT    Document 14-11    Filed 09/25/25    Page 46 of 83

# TROUTMAN SANDERS

MJR Construction Services, Corp.
March 30, 2016
Page 10

20. Alterra reserves the right to limit or deny coverage with respect to the number of "occurrences" at issue.

21. Alterra reserves the right to limit or deny coverage to the extent that the Underlying Actions arise out of property damage that is subject to the "known loss" and/or "loss in progress" doctrines, which generally preclude coverage for loss that occurred or is occurring prior to policy inception.

22. Alterra reserves the right to limit or deny coverage to the extent its insureds are uninsured or lack adequate insurance for certain applicable periods under a proper allocation. If such is the case, the Policies do not provide coverage, and/or Alterra is or may be entitled to recover from MJR an appropriate amount for such periods of no coverage or inadequate coverage.

23. Alerra reserves the right to limit or deny coverage to the extent its insureds have failed to properly maintain the Underlying Insurance as more fully defined in the Policy.

24. Alterra reserves the right to limit or deny coverage for any loss arising out of the Underlying Actions to the extent that its insureds have breached one or more of the conditions of the Policy, whether or not specifically addressed herein.

\* \* \*

To reiterate, Alterra notes and reserves its rights on the policy provisions and issues above to provide guidance to its insureds and to other interested parties. Please understand that Alterra must continue to reserve all of its rights under any and all policies, at law, and in equity with respect to the Underlying Actions, including but not limited to the right to limit or deny coverage (including through the filing of a declaratory judgment action) for the Underlying Actions.

Very truly yours,

Daniel W. Cohen

Richard J. Pratt
Daniel W. Cohen

Active 28177933v1 249094.000001

TROUTMAN
SANDERS

MJR Construction Services, Corp.
March 30, 2016
Page 11


cc:     Reem Bridals, Inc.
        c/o Bijan Amini, Esq.
        Storch Amini & Munves PC
        2 Grand Central Tower
        140 East 45th Street, 25th Floor
        New York, NY  10017

        Reem Bridals, Inc.
        c/o Jaime B. Leggett, Esq.
        Storch Amini & Munves PC
        2 Grand Central Tower
        140 East 45th Street, 25th Floor
        New York, NY  10017

        Assurance Company of America
        c/o Robert A. Stern, Esq.
        Clausen Miller P.C.
        28 Liberty Street, 39th Floor
        New York, NY  10005

        Assurance Company of America
        c/o Marc P. Madonia, Esq.
        Clausen Miller P.C.
        28 Liberty Street, 39th Floor
        New York, NY  10005

        The Chetrit Group, LLC
        512 7th Avenue, 15th Floor
        New York, NY  10018

        The Chetrit Group, LLC
        c/o Matthew S. Aboulafia, Esq.
        Aboulafia Law Firm LLC
        228 E. 45th Street, Suite 1700
        New York, NY  10017

        Cornell 245-247 LLC
        c/o Joseph Chetrit
        The Chetrit Group LLC
        512 7th Avenue, 15th Floor
        New York, NY  10018

Active 28177933v1 249094.000001

INDEX NO. 653129/2016
Case 1:25-cv-07817-CM-RFT    Document 14-11    Filed 09/25/25    Page 48 of 83
RECEIVED NYSCEF: 08/17/2017

## TROUTMAN SANDERS

MJR Construction Services, Corp.
March 30, 2016
Page 12

Cornell 245-247 LLC
c/o The Limited Liability Company
75 Huntington Street
Brooklyn, NY  11231

JCMC 245-247 LLC
c/o Joseph Chetrit
The Chetrit Group LLC
512 7th Avenue, 15th Floor
New York, NY  10018

Cornell Realty Management LLC
75 Huntington Street
Brooklyn, NY  11231

Cornell Realty Management LLC
209 Wallabout Street, 3d Floor
Brooklyn, NY  11206

Cornell Realty Management
c/o Matthew S. Aboulafia, Esq.
Aboulafia Law Firm LLC
228 E. 45th Street, Suite 1700
New York, NY  10017

North True Construction Management LLC
c/o Goldberg & Rimberg PLLC
115 Broadway, Suite 302
New York, NY  10006

North True Construction Management, LLC
217 Havemeyer St.
Brooklyn, NY 11211

Marge NY, Inc.
5320 16th Avenue
Brooklyn, NY  11204

Marge NY, Inc.
1644 57th Street
Brooklyn, NY  11204

Active 28177933v1 249094.000001

## TROUTMAN SANDERS

MJR Construction Services, Corp.
March 30, 2016
Page 13

> Marge NY, Inc.
> c/o James A. Roth, Esq.
> Hoffman, Roth & Matlin LLP
> 505 Eighth Avenue, Suite 1704
> New York, NY  10018

Active 28177933v1 249094.000001

RICHARD J. PRATT
202.662.2077 telephone
202.654.5834 facsimile
richard.pratt@troutmansanders.com

DANIEL W. COHEN
212 704 6256 telephone
202.654.5807 facsimile
dan.cohen@troutmansanders.com

# TROUTMAN SANDERS

TROUTMAN SANDERS LLP
Attorneys at Law
401 9th Street, N. W., Suite 1000
Washington, D.C. 20004-2134
202.274.2950 telephone
troutmansanders.com

875 Third Avenue
New York, New York 10022
212.704.6000 telephone
troutmansanders.com

June 17, 2016

**Via Certified Mail, Return Receipt Requested**

MJR Construction Services Corp.
109 Ingraham Street, Suite 308
Brooklyn, NY 11237

MJR Construction Services Corp.
5201 Flushing Avenue
Maspeth, NY 11378

Mr. Michael Russell
c/o Mr. Stephen Russell
1110 William Street
Hewlett, NY 11557

|  |  |  |
|---|---|---|
| Re: | Suits: | (1) **Assurance Co. of America, et al. v. Cornell 245-247 LLC, et al.**, Index No. 150020/2016 (County of New York); |
|  |  | (2) **RA Luxury, LLC, et al. v. The Chetrit Group LLC, et al.**, Index No. 150365/2016 (County of New York) |
|  | Insured: | **MJR Construction Services Corp.** |
|  | Policy: | **MAXA3EC50001169 (the "Policy")** |

Dear Mr. Russell:

On behalf of Alterra America Insurance Company's ("Alterra"), this letter will follow-up on our March 30, 2016 letter, which provided Alterra's initial analysis of coverage and reservation of rights under the Policy in connection with *Assurance Company of America, et al. v. Cornell 245-247 LLC, et al.*, No. 150020/2016 (N.Y. Cty., NY) (the "Subrogation Action") and *R.A. Luxury LLC, et al. v. The Chetrit Group LLC, et al.*, Index No. 150365/2016 (N.Y. Ct., NY) (the "Reem Action" and together with the Subrogation Action, the "Underlying Actions").

The March 30, 2016 letter, which we incorporate herein by reference and enclose as an attachment, was sent to the 109 Ingraham Street address to the attention of MJR Construction Services Corp. ("MJR"). The letter was sent certified mail with a return receipt requested but was returned as undeliverable. After receiving back the March 30, 2016 letter, Alterra undertook further investigation.

ATLANTA   BEIJING   CHARLOTTE   CHICAGO   HONG KONG   NEW YORK   ORANGE COUNTY   PORTLAND   RALEIGH
RICHMOND   SAN DIEGO   SAN FRANCISCO   SHANGHAI   TYSONS CORNER   VIRGINIA BEACH   WASHINGTON, DC

Case 1:25-cv-07817-CM-RFT   Document 14-11   Filed 09/25/25   Page 51 of 83

## TROUTMAN
## SANDERS

MJR Construction Services, Corp.
June 17, 2016
Page 2

This included communicating with Burlington Insurance Company, which Alterra understands issued the primary general liability policy to MJR to which the Policy largely follows-form, its coverage counsel, and with the defense counsel retained by Burlington to defend MJR in the Underlying Actions. Through these discussions Alterra has received additional address information for MJR and for you, whom Alterra understands is or was MJR's principal. Therefore, in a further effort to fully inform you and MJR of Alterra's coverage position, we direct this letter to these additional addresses.

The March 30, 2016 letter requested certain information from MJR that is necessary for Alterra to more fully evaluate potential coverage under the Policy. Alterra further understands that you and MJR have refused to cooperate with Burlington in its defense of this matter, including by refusing to provide information (for example, by refusing to return phone calls and refusing to meet in person, despite several attempts by Burlington to arrange a meeting). The failure to provide notice of the fire described in the above-referenced lawsuits at or about the time of its happening, the failure to provide the information requested in the March 30, 2016 letter, and the failure to cooperate in the defense has materially prejudiced Alterra. For that reason, Alterra reiterates that the Burlington Policy (and, thus, the Policy) required and requires that MJR cooperate "in the investigation or settlement of the claim or defense" and assist in enforcing any right against any person or organization that may be liable. Burlington Policy, Section IV.2.c. Alterra reserves all rights pursuant to this cooperation provision. By referring to this cooperation provision, Alterra does not waive any of its other coverage defenses, including but not limited to those identified in the March 30, 2016 letter.

Please contact us immediately at either of the phone numbers provided above (you may call collect if you wish to do so). If we should communicate instead with some other individual please let us know immediately. Alterra continues to reserve all of its rights under the Policy and at law.

Very truly yours,

Richard J. Pratt
Daniel W. Cohen

cc:     Reem Bridals, Inc.
        c/o Bijan Amini, Esq.
        Storch Amini & Munves PC
        2 Grand Central Tower
        140 East 45th Street, 25th Floor
        New York, NY 10017

Active 28625145v1 249094.000001

Case 1:25-cv-07817-CM-RFT   Document 14-11   Filed 09/25/25   Page 52 of 83

TROUTMAN
SANDERS

MJR Construction Services, Corp.
June 17, 2016
Page 3

Reem Bridals, Inc.
c/o Jaime B. Leggett, Esq.
Storch Amini & Munves PC
2 Grand Central Tower
140 East 45th Street, 25th Floor
New York, NY  10017

Assurance Company of America
c/o Robert A. Stern, Esq.
Clausen Miller P.C.
28 Liberty Street, 39th Floor
New York, NY  10005

Assurance Company of America
c/o Marc P. Madonia, Esq.
Clausen Miller P.C.
28 Liberty Street, 39th Floor
New York, NY  10005

The Chetrit Group, LLC
512 7th Avenue, 15th Floor
New York, NY  10018

The Chetrit Group, LLC
c/o Matthew S. Aboulafia, Esq.
Aboulafia Law Firm LLC
228 E. 45th Street, Suite 1700
New York, NY  10017

Cornell 245-247 LLC
c/o Joseph Chetrit
The Chetrit Group LLC
512 7th Avenue, 15th Floor
New York, NY  10018

Cornell 245-247 LLC
c/o The Limited Liability Company
75 Huntington Street
Brooklyn, NY  11231

Case 1:25-cv-07817-CM-RFT    Document 14-11    Filed 09/25/25    Page 53 of 83

TROUTMAN
SANDERS

MJR Construction Services, Corp.
June 17, 2016
Page 4

JCMC 245-247 LLC
c/o Joseph Chetrit
The Chetrit Group LLC
512 7th Avenue, 15th Floor
New York, NY  10018

Cornell Realty Management LLC
75 Huntington Street
Brooklyn, NY  11231

Cornell Realty Management LLC
209 Wallabout Street, 3d Floor
Brooklyn, NY  11206

Cornell Realty Management
c/o Matthew S. Aboulafia, Esq.
Aboulafia Law Firm LLC
228 E. 45th Street, Suite 1700
New York, NY  10017

North True Construction Management LLC
c/o Goldberg & Rimberg PLLC
115 Broadway, Suite 302
New York, NY  10006

North True Construction Management, LLC
217 Havemeyer St.
Brooklyn, NY 11211

Marge NY, Inc.
c/o James A. Roth, Esq.
Hoffman, Roth & Matlin LLP
505 Eighth Avenue, Suite 1704
New York, NY  10018

RICHARD J. PRATT
202.662.2077 telephone
202.654.5834 facsimile
richard.pratt@troutmansanders.com

DANIEL W. COHEN
212 704 6256 telephone
202.654.5807 facsimile
dan.cohen@troutmansanders.com

# TROUTMAN SANDERS

TROUTMAN SANDERS LLP
Attorneys at Law
401 9th Street, N. W., Suite 1000
Washington, D.C. 20004-2134
202.274.2950 telephone
troutmansanders.com

875 Third Avenue
New York, New York 10022
212.704.6000 telephone
troutmansanders.com

March 30, 2016

<u>Via Certified Mail, Return Receipt Requested</u>

MJR Construction Services, Corp.
109 Ingraham Street, Suite 308
Brooklyn, NY 11237

Re:  Suits:    (1) Assurance Co. of America, et al. v. Cornell 245-247 LLC, et al., Index No. 150020/2016 (County of New York);
(2) RA Luxury, LLC, et al. v. The Chetrit Group LLC, et al., Index No. 150365/2016 (County of New York)

Insured:  MJR Construction Services Corp.
Policy:  MAXA3EC50001169 (the "Policy")

Dear Sirs:

This letter will provide Alterra America Insurance Company's ("Alterra") initial analysis of coverage and reservation of rights under the Policy in connection with *Assurance Company of America, et al. v. Cornell 245-247 LLC, et al.*, No. 150020/2016 (N.Y. Cty., NY) (the "Subrogation Action") and *R.A. Luxury LLC, et al. v. The Chetrit Group LLC, et al.,* Index No. 150365/2016 (N.Y. Ct., NY) (the "Reem Action" and together with the Subrogation Action, the "Underlying Actions"). Alterra directs this letter to MJR Construction Services Corp. ("MJR") in connection with the Underlying Actions. If Alterra should communicate instead with someone else, please forward this letter to the appropriate party and let us know with whom Alterra should communicate in the future.

As described further below, the Policy largely follows-form to the terms and conditions of policy no. 509BW27687 issued by Burlington Insurance Company (the "Burlington Policy"). Based on the materials provided and the terms and conditions of the Policy and the Burlington Policy, Alterra has identified several coverage issues that may limit or entirely preclude coverage under the Policy for the Underlying Actions. In addition, and as also noted below, Alterra requests additional information both from you and the entities that are copied on this letter in order to more fully evaluate coverage. For these reasons, and pending receipt and review of the requested information, Alterra is proceeding subject to a full reservation of its rights under its Policy, at law, and in equity, including, but not limited to, the right to file a declaratory judgment action to determine coverage for the Underlying Actions. Please understand that the views set forth in this letter necessarily are based on the limited information currently available to Alterra. These views do not reflect an independent assessment of the merits of these matters or of any of the allegations therein. Moreover, these views are not intended

Case 1:25-cv-07817-CM-RFT    Document 14-11    Filed 09/25/25    Page 55 of 83

## TROUTMAN
## SANDERS

MJR Construction Services, Corp.
March 30, 2016
Page 2

to be exhaustive or exclusive, and nothing in this letter or any other correspondence from Alterra is to be construed as a waiver or estoppel of any of its rights with regard to the Underlying Actions

I.      **The Underlying Actions**

MJR has not itself submitted a claim to Alterra relating to the Underlying Actions. Rather, Alterra has received copies of the two lawsuits from the plaintiffs in those cases following their filing. The Subrogation Action was filed on January 4, 2016 and the Reem Action was filed on January 14, 2016.

A.      **The Subrogation Action**

The Subrogation Action is brought by Assurance Company of America ("ACA") against Cornell 245-247 LLC ("Cornell"), JCMC 245-247 LLC ("JCMC"), North True Construction Management LLC ("NTCM"), Marge NY ("Marge"), Inc. and MJR. Allegedly, on or about March 27, 2014, a fire broke out at 245 West 34th Street, Manhattan, New York (the "Demolition Site"). Reem Bridals ("Reem") allegedly was the owner or operator of a neighboring property located at 240 W. 35th Street, Manhattan, New York (the "Reem Property"). According to the Subrogation Action, Reem maintained an inventory of garments at the Reem Property, a large stock of high-end fabrics and a 2,400-piece "library" of gowns for rent. Specifically, ACA alleges that on March 27, 2014, MJR was performing "construction and/or demolition work, including, but not limited to, 'hot work' (torch operations), in the cockloft and/or roof areas" of the Demolition Site, as part of demolition operations performed by NTCM, MJR and/or Marge. During these operations, a fire occurred above the ceiling of the plenum area, in or around the cockloft space, between the roof and the ceiling of the Demolition Site. As a result of the fire "smoke and soot entered" the Reem Property. *Id.* ¶ 25. Reem allegedly suffered real and/or personal property damage, interruption of its business, loss of income and expenses including the cleaning of garments, textiles, materials and replacement of materials in excess of $2.461 million. ACA allegedly paid Reem for that amount. The Subrogation Action alleges negligence, trespass, nuisance, gross negligence, recklessness and/or willful and wanton misconduct and negligence per se.

B.      **The Reem Action**

The Reem Action is brought by Reem against defendants The Chetrit Group, LLC, Cornell Realty Management LLC, JCMC, Cornell, NTCM, MJR and Marge. The action seeks damages on behalf of Reem as a result of the same smoke and soot damage described above. The Complaint alleges that the property included one-of-a-kind bridal gowns, evening wear gowns, 17,000 yards of fabric and a collection of over 2,000 luxury bridal gowns and apparel, proprietary patterns developed over a period of two decades as well as hundreds of pieces of custom embroidery, lace, leather and fur, with an aggregate cost basis of significantly in excess of $21 million. The Complaint alleges that the Reem store is on the 7th floor of the Reem Property and is adjacent to a two-story former Conway Department Store building located at the Demolition Site that was being demolished. The complaint

Case 1:25-cv-07817-CM-RFT    Document 14-11    Filed 09/25/25    Page 56 of 83

TROUTMAN
SANDERS

MJR Construction Services, Corp.
March 30, 2016
Page 3

asserts that on or about March 27, 2014, MJR and Marge were engaged to serve as contractors for the demolition work with Marge engaged pursuant to a written contract between Cornell 245-247 and/or JCMC and Marge. The Complaint alleges that two MJR, Marge and/or NTCM workers used the wrong type of blow torches for the work and failed to take proper precautions, which resulted in the fire the morning of March 27. Allegedly, neither MJR nor Marge took any action to alert the New York City Fire Department (the "FDNY") of the fire before third parties notified the fire department. Allegedly, the two workers performing the demolition work told the FDNY that the fire had started before they arrived at the premises that morning. The suit alleges that the FDNY determined that the fire originated on the roof of the building from sparks generated by the cutting through of the I-beam at the location where the demolition work was being performed. The fire allegedly spread through combustible materials on the roof and also extended to the cockloft area below the roof.

The Reem Action alleges that the effects of the fire were not limited to its point of origin and that the smoke and soot from the fire was substantial and "spread" from the construction site and "entered" the adjacent Reem property necessitating the immediate evacuation of the premises and medical treatment for certain of Reem's employees. *Id.* ¶¶ 28-30. The suit alleged that the Reem design archive library was "contaminated" by smoke and soot and that such library has a value of over $15 million. *Id.* ¶¶ 29-30. The cost of professional cleaning for certain clothing allegedly totaled over $52,000.

The Reem Action alleges that on or about April 4, 2014 and again on April 16, 2014, the defendants were placed on notice that the Demolition Site should be maintained in its existing condition to allow for a full investigation of the fire. Nonetheless, the Complaint alleges that after that date, defendants removed and disposed of important and substantial evidence and carried out additional demolition work to alter the exact site of the origin of the fire. Defendants allegedly did not permit an investigation of the fire to be conducted by ACA until compelled by a court issued order requiring pre-action discovery in the proceeding captioned as *Reem Bridals, LLC v. The Chetrit Group, et al.,* Index No. 154673/2014 (the "Discovery Action"). The counts in the Reem Action mirror the Subrogation Action: negligence, trespass, private nuisance, gross negligence and negligence *per se.* The prayer for relief is for an amount to be determined at trial, not less than $21 million plus punitive damages and all other just and proper relief.

## II.    Coverage Discussion

### A.    The Policy

The Policy was issued for the policy period March 26, 2014 to October 27, 2014 and provides coverage, subject to its terms and conditions, up to $5 million per occurrence and in the aggregate. *See* Declarations; Policy Section III.2. The Policy provides coverage only excess to those limits provided by the Burlington Policy, stating that it "will pay those sums in excess of the limits shown in Item 6 of the Declarations, Schedule of Underlying Insurance, that you become legally obligated to pay as damages because of injury to which this insurance applies, provided that the 'Underlying

**TROUTMAN
SANDERS**

MJR Construction Services, Corp.
March 30, 2016
Page 4

Insurance' also applies, or would apply but for the exhaustion of its applicable Limits of Insurance."
Policy, Section 1.a. The Burlington Policy is designated as the Underlying Insurance.

The Policy is generally a "follow form" policy that provides:

This insurance is subject to the same terms, conditions, agreements, exclusions
and definitions as the "Underlying Insurance", except:
...(2) With respect to any provisions to the contrary contained in this insurance.

B.    **The Burlington Policy**

The Burlington Policy provides coverage from March 26, 2014 to October 27, 2014, matching
the policy term of the Policy. The Burlington Policy's Declaration provides for a $1 million limit per
occurrence, subject to a $2 million general aggregate limit for certain designated construction projects
(or non-construction projects) and a $5 million general aggregate limit. *See* Burlington Policy,
Declarations, as modified by Designated Construction Project(s) General Aggregate Limit and General
Aggregate for All Construction Projects Endorsement. All coverage is subject to a $5,000 deductible
(which includes coverage for Defense Costs) per claim. *See* Burlington Policy, Deductible Liability
Insurance Endorsement. Subject to the deductible, the Burlington Policy provides for a defense
outside of limits.

C.    **Reservation of Rights**

Based on the information presently available, Alterra has reviewed the Underlying Actions for
potential coverage under the Policy. The discussion herein is not intended to be exhaustive or
exclusive, and Alterra reserves the right to supplement or modify its views as to coverage as additional
information becomes available or as developments may warrant. Please note further that the
discussion below necessarily is based on the unsubstantiated allegations in the complaints, and Alterra
is not suggesting that the allegations have merit. Alterra requests that its insured or other interested
parties provide any additional information or documentation that they believe may be relevant to
Alterra's review of this matter. Indeed, as noted below, Alterra has specific questions that bear on
several coverage issues. In the interim, Alterra wishes to call to your attention the following
provisions.

1.    <u>The Policy Is An Excess Policy That Has Not Been Reached.</u>

As noted above, the Policy provides only excess coverage – "those sums in excess of" the $1
million per occurrence limit of the Burlington Policy. *See* Policy, Section 1.a. To date, Alterra has not
received any information or documentation demonstrating that the limits of the Burlington Policy have
been fully exhausted. Therefore, the Alterra Policies do not appear to have been reached, and Alterra
would have no present duty to insured for the Underlying Actions. Indeed, Alterra does not understand
its insured even to be seeking a defense from Alterra, and Alterra understands that, in any event,

Case 1:25-cv-07817-CM-RFT    Document 14-11    Filed 09/25/25    Page 58 of 83

## TROUTMAN
## SANDERS

MJR Construction Services, Corp.
March 30, 2016
Page 5

Burlington has arranged for such a defense. **However, if Alterra is incorrect in this understanding, please notify us immediately.**

Accordingly, Alterra reserves all of its rights to assert that the Underlying Actions do not trigger or reach the Policy (based on the limits of underlying insurance including any retention or deductible). Despite this point, Alterra reviewed the Underlying Actions and determined there may be additional significant issues regarding coverage related to it, which are set forth in the following sections.

2.    The Burlington Policy's Pollution Exclusion May Bar Coverage for the Underlying Actions.

The Burlington Policy's Total Pollution Exclusion (which applies also to coverage available under the Policy) bars coverage for property damage "which would not have occurred in whole or in part but for the actual . . . dispersal . . . migration, release or escape of 'pollutants' at any time." *See* Burlington Policy, Total Pollution Exclusion Endorsement. "Pollutants" is defined by the Burlington Policy to mean "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. . . ." Burlington Policy, Section V.15.

Here, Alterra understands that smoke and soot dispersed, released, and escaped from the fire and contaminated the Reem Store, which was located in a separate building, many floors above the fire. In these circumstances, the Total Pollution Exclusion may bar coverage in whole or in part and Alterra reserves its rights accordingly.

3.    The Burlington Policy's Notice Requirements May Bar Coverage for the Underlying Actions

The Burlington Policy (and, through it, the Policy) requires that Alterra receive notice of any occurrence "as soon as practicable," as well as other specific requirements. Burlington Policy, Section IV.2.a. Alterra understands that the fire allegedly occurred on or about March 27, 2014, and further understands that Alterra received notice only after ACA and Reem provided copies of their complaints against MJR on Alterra in January 2016 — nearly two years after the fire. In addition, Alterra understands that MJR representatives allegedly provided access to the fire location shortly after the fire but well before notice was provided to Alterra.

In order to determine whether the notice provided to Alterra was timely, Alterra requires additional information. **Specifically, Alterra requests that Reem, ACA, Marge, Cornell, Cornell Realty Management LLC, JCMC, NTCM, The Chetrit Group, LLC, MJR, and any other party alleging that MJR damaged it or is liable to it, including all entities carbon copied on this letter, please provide Alterra with information evidencing when such party first inquired as to MJR's insurance and when such party received information regarding the Policy. Alterra is concerned that the passage of nearly two years until notice was provided to it has significantly prejudiced**

TROUTMAN
SANDERS

MJR Construction Services, Corp.
March 30, 2016
Page 6

its ability to adequately investigate the loss alleged in the Underlying Actions. If the property that was the source of the fire or the property that was allegedly damaged has not yet been renovated or repaired, please notify us immediately so that Alterra can arrange an inspection. In any event, Alterra requests that Reem, ACA, Marge, Cornell, Cornell Realty Management LLC, JCMC, NTCM, The Chetrit Group, LLC, MJR, and any other party alleging that MJR damaged it or is liable to it, including all entities carbon copied on this letter, please provide all reports, documents, and analyses of the fire and its source, causes and timing, any and all photographic or other documentary evidence of the fire, documents and/or other information provided by MJR to any entity, documents and/or other information gleaned from any post-fire visit to either property, any documents or other discovery responses produced or served by any party in the *Discovery* Action or any other action, the names of MJR employees on site the day of the fire, as well as all information suggesting the fire started before the arrival of the workers at the site (as alleged in paragraph 27 of the *Reem* Action Complaint).

In these circumstances, and pending receipt and review of the requested information, Alterra must reserve its rights pursuant to the Burlington Policy's notice requirements.

4.    Property Damage May Not Have Occurred During the Policy Period

The Burlington Policy (and, thus, the Policy) provides coverage only to the extent the "'property damage' occurs during the policy period.'" Burlington Policy, Section I, Coverage A.1.b(2), as amended by the Section I Insuring Agreement Endorsement. Here the Policy apparently incepted on March 26 and there is some suggestion that the fire may have begun at some point before the morning of March 27. *See, e.g.,* Reem Action Complaint at ¶ 22 (describing the unsafe condition as existing "on and prior to March 27, 2014) and 27 (alleging that the workers on site "originally told the New York City Fire Department that the Fire had started before they arrived . . . ."). Alterra requests that Reem, ACA, Marge, Cornell, Cornell Realty Management LLC, JCMC, NTCM, The Chetrit Group, LLC, MJR, and any other party alleging that MJR damaged it or is liable to it, including all entities carbon copied on this letter, please provide it with any documents evidencing the time that the fire first began. In the interim, and pending receipt and review of the requested information, Alterra must reserve its rights pursuant to these policy provisions.

5.    Other Insurance / Indemnification / Subcontractors

The Policy and the Burlington Policies contain several provisions relating to the proper allocation and priority of insurance policies that may act to limit or preclude coverage. First, the Policy, by endorsement, requires that any subcontractor working on behalf of MJR obtain $1 million of insurance naming MJR as an additional insured and that such insurance shall be primary (*i.e.* will provide coverage before the Policy attaches). *See* Policy, Insurance Requirement All Work Performed On Behalf of Any Insured Endorsement. Thus, to the extent any entity (including but not limited to Marge) acted as MJR's subcontractor, such entity's insurance policy would provide $1 million of additional coverage for MJR before the Alterra Policy is triggered. **Alterra requests that Reem,**

Case 1:25-cv-07817-CM-RFT    Document 14-11    Filed 09/25/25    Page 60 of 83

TROUTMAN
SANDERS

MJR Construction Services, Corp.
March 30, 2016
Page 7

**ACA, Marge, Cornell, Cornell Realty Management LLC, JCMC, NTCM, The Chetrit Group, LLC, MJR, and any other party alleging that MJR damaged it or is liable to it, including all entities carbon copied on this letter, please provide it with information concerning the contractor/subcontractor relationships at issue among the parties, the contractual requirements agreed to by and among such entities (including with respect to indemnification and the addition of parties as additional insureds), as well as insurance policies for all such entities.**

Second, the Policy contains an other insurance provision, *see* Policy, Section IV.3., that provides for the prioritization and allocation of insurance responsibilities in certain situations and makes the Policy excess over any other valid and collectible insurance.

Pending receipt and review of the requested information, Alterra reserves the right to preclude, limit or prioritize its coverage appropriately.

6.    <u>The Wrap-Up Insurance Exclusions May Preclude Coverage for the Underlying Actions.</u>

Both the Policy and the Burlington Policy have similar exclusions barring coverage for property damage that occurred at a location that is or was to be insured under a consolidated (wrap-up) insurance program. *See* Burlington Policy, Exclusion – Designated Operations Covered by a Consolidated (Wrap-Up) Insurance Program; Policy, Contractors Limitation Endorsement.

Here, MJR allegedly was performing work at a location that may have been insured under such a policy, either through a policy issued to a policy owner (or occupier) or to a contractor or project manager. **Alterra therefore requests that Reem, ACA, Marge, Cornell, Cornell Realty Management LLC, JCMC, NTCM, The Chetrit Group, LLC, and any other party alleging that MJR damaged it or is liable to it, including all entities carbon copied on this letter, confirm whether or not they have been issued such a policy.** Pending receipt and review of the requested information, Alterra reserves the right to limit or preclude coverage under these exclusionary provisions.

7.    <u>The Burlington Policy's Cooperation Clause May Limit or Preclude Coverage for the Underlying Actions</u>

The Burlington Policy (and, thus, the Policy) requires that MJR cooperate "in the investigation or settlement of the claim or defense" and assist in enforcing any right against any person or organization that may be liable. Burlington Policy, Section IV.2.c. Alterra understands that MJR representatives knew about the fire but failed to provide notice to Alterra or otherwise permit Alterra to investigate this matter. **In addition, Alterra requests that Reem, ACA, Marge, Cornell, Cornell Realty Management LLC, JCMC, NTCM, The Chetrit Group, LLC, MJR, and any other party alleging that MJR damaged it or is liable to it, including all entities carbon copied on this letter, confirm whether some other person or company may have some liability for the matters alleged**

Active 28177933v1 249094.000001

Case 1:25-cv-07817-CM-RFT    Document 14-11    Filed 09/25/25    Page 61 of 83

TROUTMAN
SANDERS

MJR Construction Services, Corp.
March 30, 2016
Page 8

**to have caused damage in the Underlying Actions.** In the interim, Alterra reserves its rights pursuant to the cooperation requirements of the Burlington Policy.

8.    Other Potential Coverage Issues

Above, Alterra has referred to coverage issues and reservations that are central to any coverage analysis either based on the language within the body of the Alterra or Burlington Policy. Immediately below, Alterra lists additional coverage issues that may be potentially relevant to coverage.

1.  Alterra reserves the right to limit or deny coverage (including the right to seek rescission) to the extent its insured provided misrepresentations or material omissions with respect to the underwriting of the Policy, including but not limited to failing to provide promised materials in a timely fashion and/or the furnishing of false affidavits.

2.  Alterra potentially is liable only for certain amounts that its insureds "become legally obligated to pay as damages." *See, e.g.,* Burlington Policy, Section I.1.a, as amended by the Section I Insuring Agreement Endorsement. Alterra reserves its rights to limit or deny coverage for the Underlying Actions to the extent that any damages therefrom do not constitute a legal obligation to pay damages.

3.  Alterra reserves the right to limit or deny coverage for property damage arising out of certain exterior insulation and finish systems.

4.  The Policy provides coverage only for MJR and other insureds as defined by the Policy. Alterra reserves the right to limit or deny coverage with respect to any party in the Underlying Actions that is not an insured under the Policy.

5.  The Policy provides coverage only for "property damage," as defined. *See* Burlington Policy, Section I.1.a, as amended by the Section I Insuring Agreement Endorsement. Alterra reserves the right to limit or deny coverage with respect to any alleged damage that does not constitute "property damage."

6.  The Policy provides coverage only for an "occurrence" as that term is defined in the Burlington Policy. *See* Burlington Policy, Section I.1.b(1), as amended by the Section I Insuring Agreement Endorsement. Alterra reserves the right to limit or deny coverage to the extent the fire was not an "occurrence."

7.  The Underlying Actions seek punitive damages, which are excluded from coverage pursuant to the Punitive Damages Exclusion in the Burlington Policy, as well as other unstated relief which might not constitute damages. Alterra reserves the right to limit or deny coverage to the extent that the relief sought does not constitute damages, or where any claim is not insurable under applicable state law.

Active 28177933v1 249094.000001

## TROUTMAN SANDERS

MJR Construction Services, Corp.
March 30, 2016
Page 9

8. Alterra reserves the right to limit or deny coverage for any property damage expected or intended from the standpoint of the insured.

9. Alterra reserves the right to limit or deny coverage for property damage for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.

10. Alterra reserves the right to limit or deny coverage for property damage arising out of the use of 'mobile equipment' in, or while in practice for, or while being prepared for, any prearranged demolition activity.

11. Alterra reserves the right to limit or deny coverage for property damage to impaired property or property that has not been physically injured, arising out of a dangerous condition in an insured's work.

12. Alterra reserves the right to limit or deny coverage for property damage to that particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it.

13. Alterra reserves the right to limit or deny coverage for damages, claims for any loss, cost or expense incurred by others for their loss of use, recall, inspection, repair, replacement, adjustment, removal or disposal of 'impaired property.'

14. Alterra reserves the right to limit or deny coverage for property damage arising out of shoring, underpinning or pile driving.

15. Alterra reserves the right to limit or deny coverage for injury or damage arising from, caused by or aggravated by exposure to lead.

16. Alterra reserves the right to limit or deny coverage for injury or damages caused by asbestos, silica, asbestos dust, silica dust, mixed dust or any other similar fibrous or mineral substance.

17. Alterra reserves the right to limit or deny coverage for property damage arising from its insured's work that was part of or incorporated into a condominium, townhouse, row house, or tract home project.

18. Alterra reserves the right to limit or deny coverage pursuant to the Reduced Limits of Insurance for Uninsured Independent Contractors/Subcontractors Endorsement to the Burlington Policy.

19. Alterra reserves the right to limit or deny coverage to the extent any loss or damage exceeds its limits of insurance.

Case 1:25-cv-07817-CM-RFT   Document 14-11   Filed 09/25/25   Page 63 of 83

TROUTMAN
SANDERS

MJR Construction Services, Corp.
March 30, 2016
Page 10

20. Alterra reserves the right to limit or deny coverage with respect to the number of "occurrences" at issue.

21. Alterra reserves the right to limit or deny coverage to the extent that the Underlying Actions arise out of property damage that is subject to the "known loss" and/or "loss in progress" doctrines, which generally preclude coverage for loss that occurred or is occurring prior to policy inception.

22. Alterra reserves the right to limit or deny coverage to the extent its insureds are uninsured or lack adequate insurance for certain applicable periods under a proper allocation. If such is the case, the Policies do not provide coverage, and/or Alterra is or may be entitled to recover from MJR an appropriate amount for such periods of no coverage or inadequate coverage.

23. Alerra reserves the right to limit or deny coverage to the extent its insureds have failed to properly maintain the Underlying Insurance as more fully defined in the Policy.

24. Alterra reserves the right to limit or deny coverage for any loss arising out of the Underlying Actions to the extent that its insureds have breached one or more of the conditions of the Policy, whether or not specifically addressed herein.

\*       \*       \*

To reiterate, Alterra notes and reserves its rights on the policy provisions and issues above to provide guidance to its insureds and to other interested parties. Please understand that Alterra must continue to reserve all of its rights under any and all policies, at law, and in equity with respect to the Underlying Actions , including but not limited to the right to limit or deny coverage (including through the filing of a declaratory judgment action) for the Underlying Actions.

Very truly yours,

Richard J. Pratt
Daniel W. Cohen

Case 1:25-cv-07817-CM-RFT     Document 14-11     Filed 09/25/25     Page 64 of 83

TROUTMAN
SANDERS

MJR Construction Services, Corp.
March 30, 2016
Page 11


cc:     Reem Bridals, Inc.
        c/o Bijan Amini, Esq.
        Storch Amini & Munves PC
        2 Grand Central Tower
        140 East 45th Street, 25th Floor
        New York, NY  10017

        Reem Bridals, Inc.
        c/o Jaime B. Leggett, Esq.
        Storch Amini & Munves PC
        2 Grand Central Tower
        140 East 45th Street, 25th Floor
        New York, NY  10017

        Assurance Company of America
        c/o Robert A. Stern, Esq.
        Clausen Miller P.C.
        28 Liberty Street, 39th Floor
        New York, NY  10005

        Assurance Company of America
        c/o Marc P. Madonia, Esq.
        Clausen Miller P.C.
        28 Liberty Street, 39th Floor
        New York, NY  10005

        The Chetrit Group, LLC
        512 7th Avenue, 15th Floor
        New York, NY  10018

        The Chetrit Group, LLC
        c/o Matthew S. Aboulafia, Esq.
        Aboulafia Law Firm LLC
        228 E. 45th Street, Suite 1700
        New York, NY  10017

        Cornell 245-247 LLC
        c/o Joseph Chetrit
        The Chetrit Group LLC
        512 7th Avenue, 15th Floor
        New York, NY  10018

Active 28177933v1 249094.000001

Case 1:25-cv-07817-CM-RFT     Document 14-11     Filed 09/25/25     Page 65 of 83

TROUTMAN
SANDERS

MJR Construction Services, Corp.
March 30, 2016
Page 12


Cornell 245-247 LLC
c/o The Limited Liability Company
75 Huntington Street
Brooklyn, NY  11231

JCMC 245-247 LLC
c/o Joseph Chetrit
The Chetrit Group LLC
512 7th Avenue, 15th Floor
New York, NY  10018

Cornell Realty Management LLC
75 Huntington Street
Brooklyn, NY  11231

Cornell Realty Management LLC
209 Wallabout Street, 3d Floor
Brooklyn, NY  11206

Cornell Realty Management
c/o Matthew S. Aboulafia, Esq.
Aboulafia Law Firm LLC
228 E. 45th Street, Suite 1700
New York, NY  10017

North True Construction Management LLC
c/o Goldberg & Rimberg PLLC
115 Broadway, Suite 302
New York, NY  10006

North True Construction Management, LLC
217 Havemeyer St.
Brooklyn, NY 11211

Marge NY, Inc.
5320 16th Avenue
Brooklyn, NY  11204

Marge NY, Inc.
1644 57th Street
Brooklyn, NY  11204

Case 1:25-cv-07817-CM-RFT    Document 14-11    Filed 09/25/25    Page 66 of 83

# TROUTMAN
# SANDERS

MJR Construction Services, Corp.
March 30, 2016
Page 13


Marge NY, Inc.
c/o James A. Roth, Esq.
Hoffman, Roth & Matlin LLP
505 Eighth Avenue, Suite 1704
New York, NY  10018

Active 28177933v1 249094.000001

Case 1:25-cv-07817-CM-RFT    Document 14-11    Filed 09/25/25    Page 67 of 83

RICHARD J. PRATT
202.662.2077 telephone
202.654.5834 facsimile
richard.pratt@troutmansanders.com

DANIEL W. COHEN
212 704 6256 telephone
202.654.5807 facsimile
dan.cohen@troutmansanders.com

# TROUTMAN SANDERS

TROUTMAN SANDERS LLP
Attorneys at Law
401 9th Street, N. W., Suite 1000
Washington, D.C.  20004-2134
202.274.2950 telephone
troutmansanders.com

875 Third Avenue
New York, New York  10022
212.704.6000 telephone
troutmansanders.com

July 26, 2016

**<u>Via Certified Mail, Return Receipt Requested</u>**

MJR Construction Services Corp.
c/o Mr. Michael Russell
88-46 Aubrey Avenue
Glendale, NY  11385

|  |  |  |
|---|---|---|
| Re: | Suits: | **(1) Assurance Co. of America, et al. v. Cornell 245-247 LLC, et al., Index No. 150020/2016 (County of New York);** |
|  |  | **(2) RA Luxury, LLC, et al. v. The Chetrit Group LLC, et al., Index No. 150365/2016 (County of New York)** |
|  | Insured: | **MJR Construction Services Corp.** |
|  | Policy: | **MAXA3EC50001169 (the "Policy")** |

Dear Mr. Russell:

On behalf of Alterra America Insurance Company ("Alterra"), this letter will follow-up on our March 30, 2016 , June 17, 2016 and June 24, 2016 letters, which provided Alterra's initial analysis of coverage and reservation of rights under the Policy in connection with *Assurance Company of America, et al. v. Cornell 245-247 LLC, et al.*, No. 150020/2016 (N.Y. Cty., NY) (the "Subrogation Action") and *R.A. Luxury LLC, et al. v. The Chetrit Group LLC, et al.,* Index No. 150365/2016 (N.Y. Ct., NY) (the "Reem Action" and together with the Subrogation Action, the "Underlying Actions").

Those earlier letters, which we incorporate herein by reference and enclose as attachments, were sent to various addresses Alterra obtained for MJR Construction Services Corp. ("MJR") and for you, whom Alterra understands is or was MJR's principal, as part of its investigation into the Underlying Actions.  Through additional discussions with the attorneys for Burlington Insurance Company, Alterra has obtained this additional address and directs this letter there in a further effort to contact MJR and/or you.

The March 30, 2016 letter requested certain information from MJR that is necessary for Alterra to more fully evaluate potential coverage under the Policy.  Alterra further understands that MJR and/or you have refused to cooperate with Burlington in its defense of this matter, including by refusing to provide information (for example, by refusing to return phone calls and refusing to meet in person, despite several attempts by Burlington to arrange a meeting).  The failure to provide notice of

Case 1:25-cv-07817-CM-RFT    Document 14-11    Filed 09/25/25    Page 68 of 83

TROUTMAN
SANDERS

MJR Construction Services, Corp.
July 26, 2016
Page 2

the fire described in the above-referenced lawsuits at or about the time of its happening, the failure to provide the information requested in the March 30, 2016 letter, and the failure to cooperate in the defense has materially prejudiced Alterra. For that reason, Alterra reiterates that the Burlington Policy (and, thus, the Policy) required and requires that MJR cooperate "in the investigation or settlement of the claim or defense" and assist in enforcing any right against any person or organization that may be liable. Burlington Policy, Section IV.2.c. Alterra reserves all rights pursuant to this cooperation provision. By referring to this cooperation provision, Alterra does not waive any of its other coverage defenses, including but not limited to those identified in the March 30, 2016 letter.

Please contact us immediately at either of the phone numbers provided above (you may call collect if you wish to do so). If we should communicate instead with some other individual please let us know immediately. Alterra continues to reserve all of its rights under the Policy and at law.

Very truly yours,

_____/s/ Daniel Cohen_____

Richard J. Pratt
Daniel W. Cohen

Cc (w/o attach):        MJR Construction Services Corp.
                        109 Ingraham Street, Suite 308
                        Brooklyn, NY  11237

                        MJR Construction Services Corp.
                        5201 Flushing Avenue
                        Maspeth, NY  11378

                        Mr. Michael Russell
                        c/o Mr. Stephen Russell
                        1110 William Street
                        Hewlett, NY  11557

                        Reem Bridals, Inc.
                        c/o Bijan Amini, Esq.
                        Storch Amini & Munves PC
                        2 Grand Central Tower
                        140 East 45th Street, 25th Floor

Active 28858503v1 249094.000001

Case 1:25-cv-07817-CM-RFT    Document 14-11    Filed 09/25/25    Page 69 of 83

**TROUTMAN SANDERS**

MJR Construction Services, Corp.
July 26, 2016
Page 3

New York, NY  10017

Reem Bridals, Inc.
c/o Jaime B. Leggett, Esq.
Storch Amini & Munves PC
2 Grand Central Tower
140 East 45th Street, 25th Floor
New York, NY  10017

Assurance Company of America
c/o Robert A. Stern, Esq.
Clausen Miller P.C.
28 Liberty Street, 39th Floor
New York, NY  10005

Assurance Company of America
c/o Marc P. Madonia, Esq.
Clausen Miller P.C.
28 Liberty Street, 39th Floor
New York, NY  10005

The Chetrit Group, LLC
512 7th Avenue, 15th Floor
New York, NY  10018

The Chetrit Group, LLC
c/o Matthew S. Aboulafia, Esq.
Aboulafia Law Firm LLC
228 E. 45th Street, Suite 1700
New York, NY  10017

Cornell 245-247 LLC
c/o Joseph Chetrit
The Chetrit Group LLC
512 7th Avenue, 15th Floor
New York, NY  10018

Cornell 245-247 LLC
c/o The Limited Liability Company
75 Huntington Street
Brooklyn, NY  11231

Active 28858503v1 249094.000001

TROUTMAN
SANDERS

MJR Construction Services, Corp.
July 26, 2016
Page 4

JCMC 245-247 LLC
c/o Joseph Chetrit
The Chetrit Group LLC
512 7th Avenue, 15th Floor
New York, NY  10018

Cornell Realty Management LLC
75 Huntington Street
Brooklyn, NY  11231

Cornell Realty Management LLC
209 Wallabout Street, 3d Floor
Brooklyn, NY  11206

Cornell Realty Management
c/o Matthew S. Aboulafia, Esq.
Aboulafia Law Firm LLC
228 E. 45th Street, Suite 1700
New York, NY  10017

North True Construction Management LLC
c/o Goldberg & Rimberg PLLC
115 Broadway, Suite 302
New York, NY  10006

North True Construction Management, LLC
217 Havemeyer St.
Brooklyn, NY 11211

Marge NY, Inc.
c/o James A. Roth, Esq.
Hoffman, Roth & Matlin LLP
505 Eighth Avenue, Suite 1704
New York, NY  10018

Active 28858503v1 249094.000001

Case 1:25-cv-07817-CM-RFT    Document 14-11    Filed 09/25/25    Page 71 of 83

RICHARD J. PRATT
202.662.2077 telephone
202.654.5834 facsimile
richard.pratt@troutmansanders.com

DANIEL W. COHEN
212 704 6256 telephone
202.654.5807 facsimile
dan.cohen@troutmansanders.com

# TROUTMAN SANDERS

TROUTMAN SANDERS LLP
Attorneys at Law
401 9th Street, N. W., Suite 1000
Washington, D.C.  20004-2134
202.274.2950 telephone
troutmansanders.com

875 Third Avenue
New York, New York  10022
212.704.6000 telephone
troutmansanders.com

November 2, 2016

**Via Certified Mail, Return Receipt Requested**

**RESERVATION OF RIGHTS**

MJR Construction Services, Corp.
109 Ingraham Street, Suite 308
Brooklyn, NY  11237

>      Re:     **Suit:**     *Rodriguez v. 1515 Bedford Avenue Realty LLC*
>              **Insured:**   **MJR Construction Services Corp.**
>              **Policy:**    **MAXA3EC50000207 (the "Policy")**

Dear Sirs:

      This letter will provide you with the Evanston Insurance Company, as successor by merger with Alterra Excess & Surplus Insurance Company ("Evanston"), initial analysis of coverage and reservation of rights under the above-referenced Policy in connection with *Rodriguez v. 1515 Bedford Avenue Realty LLC, et al.*, Index No. 5250/13 (Supreme Court of New York County of Kings) (the "*Rodriguez* Action"). Evanston directs this letter to MJR Construction Services Corp. ("MJR") in connection with the *Rodriguez* Action. If Evanston should communicate instead with someone else, please forward this letter to the appropriate party and let us know with whom Evanston should communicate in the future.

      As described further below, the Policy largely follows-form to the terms and conditions of policy no. 509BW23770 issued by Burlington Insurance Company (the "Burlington Policy"). Based on the materials provided and the terms and conditions of the Policy and the Burlington Policy, Evanston has identified several coverage issues that may limit or entirely preclude coverage under the Policy for the *Rodriguez* Action. In addition, and as also noted below, Evanston requests additional information both from you and the entities that are copied on this letter in order to more fully evaluate coverage. For these reasons, and pending receipt and review of the requested information, Evanston is proceeding subject to a full reservation of its rights under its Policy, at law, and in equity, including, but not limited to, the right to file a declaratory judgment action to determine coverage for the *Rodriguez* Action. Please understand that the views set forth in this letter necessarily are based on the limited information currently available to Evanston. These views do not reflect an independent assessment of the merits of these matters or of any of the allegations therein. Moreover, these views

Case 1:25-cv-07817-CM-RFT Document 14-11 Filed 09/25/25 Page 72 of 83

**TROUTMAN
SANDERS**

MJR Construction Services, Corp.
November 2, 2016
Page 2

are not intended to be exhaustive or exclusive, and nothing in this letter or any other correspondence from Evanston is to be construed as a waiver or estoppel of any of its rights with regard to the *Rodriguez* Action.

## I.        The *Rodriguez* Action

MJR has not itself submitted a claim to Evanston relating to the *Rodriguez* Action. Rather, Evanston has received a copy of the lawsuit from David Gomes of Rockville Risk Management Associates. Mr. Gomes tendered the action for coverage to Burlington on or about February 16, 2016 and Burlington notified Evanston of the action on or about August 26, 2016.

The *Rodriguez* Action was filed on or about March 20, 2013 by Segundo Rodriguez against Defendant 1515 Bedford Avenue Realty LLC ("Bedford"). Mr. Rodriguez alleges that he was injured while working on Bedford's property on March 8, 2013 when a pipe fell on his leg due to Bedford or its agents' negligence. The Complaint further alleges that Bedford failed to provide Mr. Rodriguez with a safe place to work, failed to provide proper safety devices, footwear, and equipment, and violated provisions of the New York Labor Law and of OSHA. Mr. Rodriguez asserts that he suffered injury requiring medical attention as a result of this incident, and that he is maimed and disabled. The Complaint asserts causes of action for negligence and for violation of the New York Labor Law. The Complaint seeks unspecified damages.

Based on the Bill of Particulars that accompanies the Complaint, Evanston understands that Mr. Rodriguez was involved in the demolition of Bedford's property when the incident at issue occurred in the basement area and involved a heavy piece of metal falling on Mr. Rodriguez's foot. The Bill of Particulars further asserts that Mr. Rodriguez's injury was subjected to dirty water following the incident. As a result of the incident, Mr. Rodriguez alleges that he suffered a fracture, ulcer, cellulitis, infection, and gangrene as a result of the incident. Ultimately, he alleges that his foot and leg were amputated. Mr. Rodriguez asserts damages made up of $475,000 in future lost earnings, $35,000 in medical expenses, $9,600 in past lost earnings, and unspecified future medical expenses. On or about December 11, 2013, Mr. Rodriguez filed an Amended Complaint, in which he adds as a Defendant Happy HK Construction, Inc., which he alleges engaged in construction at the Bedford property. The Amended Complaint asserts that Bedford hired MJR to perform construction services at the property.

On or about June 6, 2013 Bedford named Marge NY, Inc. ("Marge") as a Third-Party Defendant and on or about November 17, 2015 Bedford named MJR as a Second Third-Party Defendant. In the Second Third-Party Complaint, Bedford alleges that it previously served Marge with a Third-Party Complaint but that Marge never answered and was subject to a default judgment. Bedford asserts that Marge contractually agreed to perform construction services at Bedford's property and agreed to indemnify Bedford for any liability arising out of such work. Bedford alleges that Marge, in turn, hired MJR to perform demolition work at the site and that Mr. Rodriguez was injured while working as an employee of MJR. The Second Third-Party Complaint asserts that MJR contractually agreed to defend and indemnify Bedford. Bedford asserts claims against MJR for

Case 1:25-cv-07817-CM-RFT    Document 14-11    Filed 09/25/25    Page 73 of 83

TROUTMAN
SANDERS

MJR Construction Services, Corp.
November 2, 2016
Page 3

contractual indemnity, for indemnity/contribution pursuant to New York's Workers' Compensation Law, for recovery of its defense costs, and for breach of contract for failing to purchase insurance to protect Bedford.

On or about April 1, 2016, Marge named MJR as a Third Third-Party Defendant. In its Complaint, Marge asserts that it entered into a contract with MJR on or about February 28, 2013 to perform work at Bedford's property and that the contract included an obligation for MJR to indemnify Marge and obtain general liability coverage listing Marge as an additional insured. On this basis, Marge alleges that MJR – and not Marge -- is liable for any injury to Mr. Rodriguez and that MJR should be liable in the amount of any judgment against Marge. Marge asserts causes of action for contribution, common law indemnification, contractual indemnification, and breach of contract for failure to obtain insurance.

## II.    **Coverage Discussion**

### A.    **The Policy**

The Policy was issued for the policy period October 27, 2012 to October 27, 2013 and provides coverage, subject to its terms and conditions, up to $5 million per occurrence and in the aggregate. *See* Declarations; Policy Section III.2. The Policy provides coverage only excess to those limits provided by the Burlington Policy, stating that it "will pay those sums in excess of the limits shown in Item 6 of the Declarations, Schedule of Underlying Insurance, that you become legally obligated to pay as damages because of injury to which this insurance applies, provided that the 'Underlying Insurance' also applies, or would apply but for the exhaustion of its applicable Limits of Insurance." Policy, Section 1.1.a. The Burlington Policy is designated as the Underlying Insurance.

The Policy is generally a "follow form" policy that provides:

This insurance is subject to the same terms, conditions, agreements, exclusions
and definitions as the "Underlying Insurance", except:
…(2) With respect to any provisions to the contrary contained in this insurance.

Policy, Section I.1.b.

### B.    **The Burlington Policy**

The Burlington Policy provides coverage from October 27, 2012 to October 27, 2013, matching the policy term of the Policy. The Burlington Policy's Declarations provide for a $1 million limit per occurrence, subject to a $2 million general aggregate limit for certain designated construction projects (or non-construction projects) and a $5 million general aggregate limit. *See* Burlington Policy, Declarations, as modified by Designated Construction Project(s) General Aggregate Limit and General Aggregate for All Construction Projects Endorsement. All coverage is subject to a $5,000 deductible

Case 1:25-cv-07817-CM-RFT    Document 14-11    Filed 09/25/25    Page 74 of 83

**TROUTMAN
SANDERS**

MJR Construction Services, Corp.
November 2, 2016
Page 4

(which includes coverage for Defense Costs) per claim.  *See* Burlington Policy, Deductible Liability Insurance Endorsement.  Subject to the deductible, the Burlington Policy provides for a defense outside of limits.

### C.    Reservation of Rights

Based on the information presently available, Evanston has reviewed the *Rodriguez* Action for potential coverage under the Policy.  The discussion herein is not intended to be exhaustive or exclusive, and Evanston reserves the right to supplement or modify its views as to coverage as additional information becomes available or as developments may warrant.  Please note further that the discussion below necessarily is based on the unsubstantiated allegations in the complaints, and Evanston is not suggesting that the allegations have merit.  Evanston requests that its insured and other interested parties provide any additional information or documentation that they believe may be relevant to Evanston's review of this matter.  Indeed, as noted below, Evanston has specific questions that bear on several coverage issues.  In the interim, Evanston wishes to call to your attention the following provisions.

### 1.    The Policy Is An Excess Policy That Has Not Been Reached.

As noted above, the Policy provides only excess coverage – "those sums in excess of" the $1 million per occurrence limit of the Burlington Policy.  *See* Policy, Section 1.a.  To date, Evanston has not received any information or documentation demonstrating that the limits of the Burlington Policy have been fully exhausted.  Therefore, the Policy does not appear to have been reached, and Evanston would have no present duty to insured for the *Rodriguez* Action.  Indeed, Evanston does not understand any entity even to be seeking a defense from Evanston, **and Evanston understands that, in any event, Burlington has arranged for such a defense.  However, if Evanston is incorrect in this understanding, please notify us immediately.**

Accordingly, Evanston reserves all of its rights to assert that the Underlying Actions do not trigger or reach the Policy (based on the limits of underlying insurance including the deductible).  Despite this point, Evanston reviewed the *Rodriguez* Action and determined that there may be additional significant issues regarding coverage related to it, which are set forth in the following sections.

### 2.    The Policy Does Not Potentially Provide Coverage for Any Entity Other Than MJR.

The Burlington Policy (and through it, the Policy) provides coverage to additional insureds only under certain, specified situations.  Pursuant to the Automatic Additional Insured by Written Contract, Written Agreement or Permit Endorsement, the Burlington Policy adds as additional insureds any organization with whom MJR agreed by "written contract . . . to provide insurance" but only for "bodily injury" caused by MJR's work and only when the written contract is fully executed prior to the

Case 1:25-cv-07817-CM-RFT    Document 14-11    Filed 09/25/25    Page 75 of 83

**TROUTMAN
SANDERS**

MJR Construction Services, Corp.
November 2, 2016
Page 5

"occurrence" at issue. Evanston has been provided with a copy of Subcontractor Agreement No. 6735, which was allegedly executed by MJR. The Agreement, however, does not appear to be cross-executed by Marge, there is no date on the signature line of the Agreement, and indeed Marge is suing, in part, based on MJR's alleged failure to purchase additional insured insurance. In addition, Evanston has questions with regard to whether Michael J. Russell actually executed the Agreement. **To the extent you or any of the entities carbon copied on this letter possess contracts relevant to this analysis, please provide them to us immediately.** Under these circumstances, Evanston reserves all rights with respect to whether any entity but MJR qualifies as an insured under the Policy.

>        3.       The Policy Does Not Apply to Bodily Injury Arising out of Employment.

The Burlington Policy (and through it, the Policy) bars coverage for bodily injury to an employee of the insured arising out of and in the course of employment by the insured or performing duties related to the conduct of the insured's business. *See* Burlington Policy, Section 2.e. Here, Evanston understands that Mr. Rodriguez was allegedly injured while an employee of MJR and while performing duties related to the conduct of MJR's and others' business. For this reason, Evanston reserves the right to limit or preclude coverage pursuant to this exclusion.

>        4.       The Policy's Notice Requirements May Bar Coverage for the *Rodriguez* Action.

The Burlington Policy (and, through it, the Policy) requires that Evanston receive notice of any occurrence "as soon as practicable," as well as other specific requirements. Burlington Policy, Section IV.2.a. Evanston understands that the incident occurred on March 8, 2013, that Marge was added to the action on or about June 6, 2013 and that MJR was added on or about November 17, 2015. Evanston, however, received notice of this action only on August 26, 2016.

In order to determine whether the notice provided to Evanston was timely, Evanston requires additional information. **Specifically, Evanston requests that you, and any party alleging that MJR damaged it or is liable to it, including all entities carbon copied on this letter, please provide Evanston with information evidencing when such party first inquired as to MJR's insurance and when such party received information regarding the Policy. Evanston is concerned that its receipt of notice three-and-a-half years after the incident and initial filing of the *Rodriguez* Action, three years after Marge was added to the litigation, and nine months after MJR was added to the litigation has significantly prejudiced its ability to adequately investigate the loss alleged in the *Rodriguez* Action.**

Under these circumstances, and pending receipt and review of the requested information, Evanston must reserve its rights accordingly pursuant to the Burlington Policy's notice requirements.

Case 1:25-cv-07817-CM-RFT    Document 14-11    Filed 09/25/25    Page 76 of 83

**TROUTMAN
SANDERS**

MJR Construction Services, Corp.
November 2, 2016
Page 6

5.      The Residential Work Exclusions May Preclude Coverage for the *Rodriguez* Action.

The Policy bars coverage for liability arising out of MJR's operations or "your work" on any "residential project," which is defined to mean apartments, single and multi family dwellings, townhouses, duplexes, condominiums or cooperatives, 'mixed use building,' timeshares or any other place of domicile, and shall include appurtenant structures and common areas. Residential property also includes "any building converted or being converted for individual or collective residential ownership." *See* Policy, Exclusion – Residential Work With Exception Endorsement. In addition, the Burlington Policy (and through it, the Policy) bars coverage for bodily injury arising from work that is part of a condominium, townhouse, row house or tract home project, as more fully defined in the Exclusion – Condominium, Townhouse, Row House, Or Tract Home Construction Projects Endorsement to the Burlington Policy. Here, MJR's work allegedly was performed at the Bedford property, at which Evanston understands work was performed with respect to a residential building. Therefore, Evanston reserves its rights to limit or preclude coverage pursuant to these exclusions.

6.      The Wrap-Up Insurance Exclusion May Preclude Coverage for the *Rodriguez* Action.

The Policy bars coverage for bodily injury that occurred at a location that is or was to be insured under a consolidated (wrap-up) insurance program. *See* Policy, Contractors Limitation Endorsement.

Here, MJR allegedly was performing work at a location that may have been insured under such a policy, either through a policy issued to a policy owner (or occupier) or to a contractor or project manager. **Evanston therefore requests that any party alleging that MJR damaged it or is liable to it, including all entities carbon copied on this letter, confirm whether or not they have been issued such a policy.** Pending receipt and review of the requested information, Evanston reserves the right to limit or preclude coverage under this exclusion.

7.      The Burlington Policy's Cooperation Clause May Limit or Preclude Coverage for the Underlying Actions

The Burlington Policy (and, thus, the Policy) requires that MJR cooperate "in the investigation or settlement of the claim or defense" and assist in enforcing any right against any person or organization that may be liable. Burlington Policy, Section IV.2.c. Evanston reserves its rights pursuant to the cooperation requirements of the Burlington Policy and notes that MJR has failed to provide notice of the *Rodriguez* Action or, to date, participate meaningfully in its defense.

**TROUTMAN
SANDERS**

MJR Construction Services, Corp.
November 2, 2016
Page 7

### D.    Other Potential Coverage Issues

Above, Evanston has referred to coverage issues and reservations that are central to any coverage analysis either based on the language within the body of the Evanston or Burlington Policy. Immediately below, Evanston lists additional coverage issues that may be potentially relevant to coverage.

1. Evanston potentially is liable only for certain amounts that its insureds "become legally obligated to pay as damages." *See, e.g.,* Burlington Policy, Section I.1.a, as amended by the Section I Insuring Agreement Endorsement. Evanston reserves its rights to limit or deny coverage for the *Rodriguez* Action to the extent that any damages therefrom do not constitute a legal obligation to pay damages.

2. The Policy provides coverage only for "bodily injury," as defined. *See* Burlington Policy, Section I.1.a, as amended by the Section I Insuring Agreement Endorsement. Evanston reserves the right to limit or deny coverage with respect to any alleged damage that does not constitute "bodily injury."

3. The Policy provides coverage only for an "occurrence" as that term is defined in the Burlington Policy. *See* Burlington Policy, Section I.1.b(1), as amended by the Section I Insuring Agreement Endorsement. Evanston reserves the right to limit or deny coverage to the extent the alleged incident is not an "occurrence."

4. The *Rodriguez* Action seeks unstated relief that may not constitute damages. In addition, Evanston notes that punitive damages are excluded from coverage pursuant to the Punitive Damages Exclusion in the Burlington Policy. Evanston reserves the right to limit or deny coverage to the extent that the relief sought does not constitute damages, or where any claim is not insurable under applicable state law.

5. Evanston reserves the right to limit or deny coverage for any bodily injury expected or intended from the standpoint of the insured.

6. Evanston is investigating MJR's procurement of the Policy and the application process. Evanston reserves the right to limit or deny coverage (including the right to seek rescission) if it develops that its insured provided misrepresentations or material omissions with respect to the application and underwriting of the Policy.

7. Evanston reserves the right to limit or deny coverage for bodily injury for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.

Active 29398137v1 249094.000004

TROUTMAN
SANDERS

MJR Construction Services, Corp.
November 2, 2016
Page 8

8. Evanston reserves the right to limit or deny coverage for bodily injury arising out of the use of 'mobile equipment' in, or while in practice for, or while being prepared for, any prearranged demolition activity.

9. Evanston reserves the right to limit or deny coverage for bodily injury arising out of shoring, underpinning or pile driving.

10. Evanston reserves the right to limit or deny coverage for bodily injury arising out of certain subway, sewer, tunnel, bridge, levee, dike or dam operations, as more fully stated in the Certain Operations In Connection With Subway, Sewer, Tunnel, Bridge, Levee, Dike Or Dam Construction Or Operation Endorsement to the Burlington Policy.

11. Evanston reserves the right to limit or deny coverage for bodily injury arising out of land subsidence.

12. Evanston reserves the right to limit or deny coverage for bodily injury arising out of any professional service performed by or for any insured.

13. Evanston reserves the right to limit or deny coverage based on the Policy's or Burlington Policy's "other insurance" provisions, including the Insurance Requirement All Work Performed On Behalf of Any Insured Endorsement to the Policy, which provides that sub-contractors working on MJR's behalf maintain primary insurance naming MJR as an additional insured that is primary to the Policy, and the Amendatory Endorsement – Other Insurance Provision Endorsement to the Burlington Policy.

14. Evanston reserves the right to limit or deny coverage pursuant to the Reduced Limits of Insurance for Uninsured Independent Contractors/Subcontractors Endorsement to the Burlington Policy.

15. Evanston reserves the right to deny coverage to the extent any loss or damage exceeds its limits of insurance.

16. Evanston reserves the right to limit or deny coverage to the extent its insureds are uninsured or lack adequate insurance for certain applicable periods under a proper allocation. If such is the case, the Policies do not provide coverage, and/or Evanston is or may be entitled to recover from MJR an appropriate amount for such periods of no coverage or inadequate coverage.

17. Evanston reserves the right to limit or deny coverage to the extent its insureds have failed to properly maintain the Underlying Insurance as more fully defined in the Policy.

Active 29398137v1 249094.000004

Case 1:25-cv-07817-CM-RFT    Document 14-11    Filed 09/25/25    Page 79 of 83

TROUTMAN
SANDERS

MJR Construction Services, Corp.
November 2, 2016
Page 9

18. Evanston reserves the right to limit or deny coverage to the extent its insureds have failed to comply with the Premium Audit Condition Endorsement to the Burlington Policy.

19. Evanston reserves the right to limit or deny coverage for any loss arising out of the *Rodriguez* Action to the extent that its insureds have breached one or more of the conditions of the Policy, whether or not specifically addressed herein.

\*    \*    \*

To reiterate, Evanston notes and fully reserves all of its rights under the Policy provisions and issues noted above to provide guidance to its insureds and to other interested parties. Please understand that Evanston must continue to reserve all of its rights under any and all policies, at law, and in equity with respect to the *Rodriguez* Action, including but not limited to the right to limit or deny coverage (including through the filing of a declaratory judgment action) for the *Rodriguez* Action.

If you believe this determination was made in error, or that further review of this claim is warranted, you have the right to contact the New York Department of Insurance by writing to it at the following address:

New York State Department of Financial Services
One Commerce Plaza
Albany, NY 12257
(518) 474-6600
http://www.dfs.ny.gov/consumer/fileacomplaint.htm

Very truly yours,

Richard J. Pratt
Daniel W. Cohen

cc:    Mr. Stephen Russell
       1110 William Street
       Hewlett, NY 11516

Case 1:25-cv-07817-CM-RFT   Document 14-11   Filed 09/25/25   Page 80 of 83

# TROUTMAN
# SANDERS

MJR Construction Services, Corp.
November 2, 2016
Page 10

Mr. Michael J. Russell
c/o Audrey J. Lutz, Esq.
8 John Walsh Blvd., Suite 406B
Peekskill, NY  10566

MJR Construction Services Corp.
5201 Flushing Avenue
Maspeth, NY  11378

Marge NY Inc.
c/o Meghan A. Cavalieri
Lewis Brisbois Bisgaaard & Smith, LLP
77 Water Street, Suite 2100
New York, NY  10005

David Gomes (*via* email only)
Assistant Vice President
Rockville Risk Management Associates
119 North Park Avenue, Suite 407
Rockville Centre, NY  11570
David.gomes@rqm.us.com

Bill Collins (*via* email only)
Senior Technical Specialist
IFG Companies
WLCollins@ifgcompanies.com

Active 29398137v1 249094.000004

RICHARD J. PRATT
202.662.2077 telephone
202.654.5834 facsimile
richard.pratt@troutmansanders.com

DANIEL W. COHEN
212 704 6256 telephone
202.654.5807 facsimile
dan.cohen@troutmansanders.com

# TROUTMAN SANDERS

TROUTMAN SANDERS LLP
Attorneys at Law
401 9th Street, N. W., Suite 1000
Washington, D.C. 20004-2134
202.274.2950 telephone
troutmansanders.com

875 Third Avenue
New York, New York 10022
212.704.6000 telephone
troutmansanders.com

December 22, 2016

**Via Certified Mail, Return Receipt Requested**

**RESERVATION OF RIGHTS**

MJR Construction Services, Corp.
109 Ingraham Street, Suite 308
Brooklyn, NY 11237

|   |   |   |
|---|---|---|
| Re: | Suit: | *Rodriguez v. 1515 Bedford Avenue Realty LLC* |
|  | Insured: | **MJR Construction Services Corp.** |
|  | Policy: | **MAXA3EC50000207 (the "Policy")** |

Dear Sirs:

This letter will supplement the coverage position provided to you on behalf of the Evanston Insurance Company, as successor by merger with Alterra Excess & Surplus Insurance Company ("Evanston"), by letter dated November 2, 2016 under the above-referenced Policy in connection with *Rodriguez v. 1515 Bedford Avenue Realty LLC, et al.*, Index No. 5250/13 (Supreme Court of New York County of Kings) (the "*Rodriguez* Action"). Evanston directs this letter to MJR Construction Services Corp. ("MJR") in connection with the *Rodriguez* Action. If Evanston should communicate instead with someone else, please forward this letter to the appropriate party and let us know with whom Evanston should communicate in the future.

As Evanston explained in its November 2 letter, Evanston's views were based on the limited information available and contingent on the receipt of additional information from you and the entities copied on that letter. Under those circumstances, Evanston noted that the coverage issues identified were not intended to be exhaustive or exclusive and reserved the right "to supplement or modify its views as to coverage as additional information becomes available or as developments may warrant."

On December 15, 2016, Evanston received a summary of plaintiff's 2014 deposition in the *Rodriguez* Action. According to the summary, plaintiff testified that at the time he was injured he was standing in water contaminated with heater fluid and diesel.

The Policy's "Pollution Exclusion Endorsement – Total" provides that the Policy does not apply to any liability arising out of "any liability which would not have occurred in whole or part but

Case 1:25-cv-07817-CM-RFT   Document 14-11   Filed 09/25/25   Page 82 of 83

**TROUTMAN
SANDERS**

MJR Construction Services, Corp.
December 22, 2016
Page 2

for the actual, alleged, or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants' at any time." The Policy defines "pollutants" to mean "any solid, liquid, gaseous or thermal irritant or contaminant, including without limitation, smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed." As the November 2 letter noted, the Policy also follows-form to the exclusions contained in policy no. 509BW23770 issued by Burlington Insurance Company (the "Burlington Policy"). The Burlington Policy contains a similar pollution exclusion. *See* Burlington Policy, Total Pollution Exclusion Endorsement.

Under these circumstances, Evanston must reserve its right to deny coverage for the *Rodriguez* Action based on the pollution exclusions in the Policy. Evanston continues to proceed subject to a full reservation of its rights under its Policy, at law, and in equity, including, but not limited to, the right to file a declaratory judgment action to determine coverage for the *Rodriguez* Action. Nothing in this letter or any other correspondence from Evanston is to be construed as a waiver or estoppel of any of its rights with regard to the *Rodriguez* Action. To the contrary, this letter reserves Evanston's rights without either prejudice or limitation and expressly incorporates those reservations identified in its November 2 letter.

If you believe this determination was made in error, or that further review of this claim is warranted, you have the right to contact the New York Department of Insurance by writing to it at the following address:

New York State Department of Financial Services
One Commerce Plaza
Albany, NY 12257
(518) 474-6600
http://www.dfs.ny.gov/consumer/fileacomplaint.htm

Very truly yours,

Richard J. Pratt
Daniel W. Cohen

cc:     Mr. Stephen Russell
        1110 William Street

Active 29991154v1 249094.000004

Case 1:25-cv-07817-CM-RFT    Document 14-11    Filed 09/25/25    Page 83 of 83

# TROUTMAN SANDERS

MJR Construction Services, Corp.
December 22, 2016
Page 3

Hewlett, NY  11516

Mr. Michael J. Russell
c/o Audrey J. Lutz, Esq.
8 John Walsh Blvd., Suite 406B
Peekskill, NY  10566

MJR Construction Services Corp.
5201 Flushing Avenue
Maspeth, NY  11378

Marge NY Inc.
c/o Meghan A. Cavalieri
Lewis Brisbois Bisgaard & Smith, LLP
77 Water Street, Suite 2100
New York, NY  10005

David Gomes (*via* email only)
Assistant Vice President
Rockville Risk Management Associates
119 North Park Avenue, Suite 407
Rockville Centre, NY  11570
David.gomes@rqm.us.com

Bill Collins (*via* email only)
Senior Technical Specialist
IFG Companies
WLCollins@ifgcompanies.com

Active 29991154v1 249094.000004