UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Reem Bridals, LLC,<br><br>                Plaintiff,<br><br>v.<br><br>The Burlington Insurance Company and Alterra America Insurance Company,<br><br>                Defendants. | Case No. 1:25-cv-07817-CM |

**DEFENDANT ALTERRA AMERICA INSURANCE COMPANY N/K/A PINNACLE NATIONAL INSURANCE COMPANY'S REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT UNDER FEDERAL <u>RULE OF CIVIL PROCEDURE 12(B)(6)</u>**

TROUTMAN PEPPER LOCKE LLP
*Attorneys for Defendant Alterra America Insurance Company n/k/a Pinnacle National Insurance Company*
875 3rd Avenue
New York, NY 10022
Tel.: (212) 704-6256
Fax: (202) 654-5807

On the Brief:  Richard J. Pratt
                      Daniel W. Cohen
                      Matthew J. Griffin

## **TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................1

II. THE FRAUD/FORGERY JUDGMENT IS PRECLUSIVE, AND THE POLICY IS VOID *AB INITIO* AND RESCINDED. ........................................................................2

III. THE TPE ALREADY BARS COVERAGE FOR THE SMOKE AND SOOT ACTION WITHOUT THE NEED FOR ANY DISCOVERY. ............................................6

IV. REEM'S GBL 349 DECEPTION CLAIM STILL FAILS ...................................................9

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*2939, LLC v. Cont'l Indem. Co.*,
  No. 23-7466, 2024 WL 4553900 (2d Cir. Oct. 23, 2024) ...................................................... 4, 5

*Admiral Ins. Co. v. Joy Contractors, Inc.*,
  19 N.Y.3d 448 (2012) ................................................................................................................ 6

*Allstate Ins. Co. v. Williams*,
  29 A.D.3d 688 (2d Dep't 2006) ................................................................................................. 5

*Am. Heritage Bancorp v. U.S.*,
  56 Fed. Cl. 596, 607 (2003) ....................................................................................................... 6

*City of New York v. Smokes-Spirits.Com, Inc.*,
  12 N.Y.3d 616 (2009) .............................................................................................................. 10

*Cnty. of Erie v. Gateway-Longview, Inc.*,
  193 A.D.3d 1336 (4th Dep't 2021) ............................................................................................ 7

*Coleman v. New Amsterdam Cas. Co.*
  247 N.Y. 271 (1928) .................................................................................................................. 3

*Cont'l Cas. Co. v. Marshall Granger & Co.*,
  6 F. Supp. 3d 380 (S.D.N.Y. 2014) ........................................................................................... 5

*Cont'l Ins. Co. v. Atl. Cas. Ins. Co.*,
  603 F.3d 169 (2d Cir. 2010) ................................................................................................... 3, 6

*D'Arata v. N.Y. Cent. Mut. Fire Ins. Co.*,
  76 N.Y.2d 659 (1990) ............................................................................................................ 2, 3

*Hartford Acc. & Indem. Co. v. Transamerica Ins. Co.*,
  141 A.D.2d 423 (1st Dep't 1988) .............................................................................................. 7

*Lenox Realty Inc. v. Excelsior Ins. Co.*,
  255 A.D.2d 644 (3d Dep't 1998) ........................................................................................... 7-8

*Long Island Pine Barrens Soc'y, Inc. v. Cnty. of Suffolk*,
  237 N.Y.S.3d 351 (Sup. Ct. 2025) ............................................................................................. 5

*Michelo v. Nat'l Collegiate Student Loan Tr. 2007-2*
  419 F. Supp. 3d 668 (S.D.N.Y. 2019) ....................................................................................... 3

*M.V.B. Collision, Inc. v. Allstate Ins. Co.*,
   728 F. Supp. 2d 205 (E.D.N.Y. 2010) ...................................................................................10

*Mt. Hawley Ins. Co. v. Penn-Star Ins. Co.*,
   151 A.D.3d 528 (1st Dep't 2017) .........................................................................................3

*Nationwide Mut. Ins. Co. v. U.S. Underwriters Ins. Co.*,
   151 A.D.3d 504 (1st Dep't 2017) .....................................................................................4, 6

*Oest v. Excelsior Ins. Grp.*,
   656 N.Y.S.2d 89 (2d Dep't 1996).........................................................................................4

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*,
   85 N.Y.2d 20 (1995) .......................................................................................................9, 10

*Rojas v. Romanoff*
   186 A.D.3d 103 (1st Dep't 2020) .........................................................................................3

*Salter v. Meta Platforms, Inc.*,
   240 A.D.3d 1378 (4th Dep't 2025) .....................................................................................10

*Securitron Magnalock Corp. v. Schnabolk*,
   65 F.3d 256 (2d Cir. 1995) .................................................................................................10

*Simmons v. Trans Express Inc.*,
   355 F. Supp. 3d 165 (E.D.N.Y. 2019) ..................................................................................5

*Taylor v. Sturgell*,
   553 U.S. 880 (2008).............................................................................................................4

*UNI Storebrand Ins. Co., UK Ltd. v. Star Terminal Corp.*,
   No. 96-9556, 1997 WL 391125 (S.D.N.Y. July 11, 1997).................................................4

*Wilmington Sav. Fund Soc'y v. PHL Ins. Co.*,
   No. 13-499-RGA, 2014 WL 1389974 (D. Del. Apr. 9, 2014) .............................................6

*Zimmerman v. Tower Ins. Co. of N.Y.*,
   13 A.D.3d 137 (1st Dep't 2004) ...........................................................................................3

**Statutes**

N.Y. Ins. Law § 3420.............................................................................................................3, 4, 6, 8

N.Y. Ins. Law § 3103...........................................................................................................................9

**Other Authorities**

1 RCNY § 101-08 ...........................................................................................................................8, 9

11 NYCRR § 60-1.1 ...........................................................................................................................8

2d Cir. R. 32.1.1................................................................................................................................4

I.      **INTRODUCTION**

Eight years ago, abiding by New York law's admonition to rescind insurance policies promptly, Alterra America Insurance Company n/k/a Pinnacle National Insurance Company ("Alterra") moved accordingly and obtained a default judgment against its former insured, MJR Construction Services Corp. ("MJR"), due to MJR's blatant fraud and forgery (the "Fraud/Forgery Judgment"). The judgment in that action (the "Fraud/Forgery Action") declared that Alterra Policy MAXA3EC50001169 (the "Policy") was null, void *ab initio*, and rescinded, and it further specifically declared that no benefit was due to MJR or *anyone with a claim against MJR under the Policy*. Moreover, the Fraud/Forgery Judgment specifically declared that coverage was barred for the action styled *R.A. Luxury LLC, et al. v. The Chetrit Group LLC, et al.*, Index No. 150365/2016 (the "Smoke and Soot Action"), where Reem Bridals ("Reem"), years later, obtained a default judgment against MJR and various other parties. (*See* Compl., ¶ 32; Declaration of Daniel Cohen, Exs. G-I.)

Because Reem sues Alterra here as judgment-creditor and subrogee of MJR, Reem is barred by *res judicata* from seeking MJR's coverage all these years later. Recognizing Alterra's formidable position, Reem's Opposition throws a multitude of unfounded arguments against the wall, apparently hoping the sheer volume might convince the Court to permit Reem's action to proceed beyond the pleadings. Reem's blunderbuss volleys, however, miss the mark. New York law, despite Reem's statements to the contrary, requires that a default judgment against an insured precludes a subsequent action by the insured's subrogee. Those courts reason, as this Court should, that (1) judgment creditors have rights that are no greater than those of insured debtors; and (2) subrogors and subrogees are in privity for purposes of applying claim preclusion, a doctrine with different elements from the issue-preclusion cases on which Reem relies. Reem's complaints that a default judgment should be ignored and has no preclusive effect misunderstand claim versus

1

issue preclusion and clear precedent. Paradoxically, the upshot of Reem's position would be to void two default judgments (*but not its own default judgment*, procured under similar circumstances) and wastefully re-litigate a policy that has long since been voided and rescinded. This cannot be the law; to do as Reem demands would cause needless and expensive additional costs and would upend the certitude of final judgments. Negating the equitable rescission of the Policy would, additionally, plainly be inequitable under these circumstances.

Reem's arguments regarding the Total Pollution Exclusion ("TPE") fare no better. Reem absurdly posits that the relevant exclusion may not even exist in the Policy and that, even if it did, it cannot be enforced because certain certificates of insurance ("COIs") allegedly required application of a narrower pollution exclusion—never mind that they say *nothing* about *any* pollution exclusion since they are merely certificates and neither mention nor involve Reem in any way. Similarly, Reem's argument that a New York City regulation changes the language of the exclusion ignores the language of the very regulation, that other New York laws in contrast *do* change policy language, and the fact that Reem never relied on the COIs. Finally, Reem's GBL 349 claim, which is barred by *res judicata* and rescission, also fails to plead the necessary elements of deceptive conduct, consumer-oriented conduct, or causation.

## II. THE FRAUD/FORGERY JUDGMENT IS PRECLUSIVE, AND THE POLICY IS VOID *AB INITIO* AND RESCINDED.

Despite Reem's objections, New York law does not permit Reem to proceed against Alterra with greater rights than MJR. The New York Court of Appeals reiterated this principle in *D'Arata v. N.Y. Cent. Mut. Fire Ins. Co.*, holding that a subrogee like Reem "'stands in the shoes' of the insured and can have no greater rights than the insured. Plaintiff, by proceeding directly against [the insurer], does so as subrogee of the insured's rights and is subject to whatever rules of estoppel would apply to the insured." 76 N.Y.2d 659, 665 (1990). Indeed, "the inevitable consequence of

plaintiff's election to proceed against defendant under Insurance Law § 3420(b)(1) is that he is in legal privity with the claimed insured…." *Id.*  Reem complains that *D'Arata* is nothing but a "meaningless distraction in this context" (opp. at 10), apparently ignoring that it comes from the highest court in New York.  And *D'Arata's* lesson is not an outlier.  Indeed, Justice Cardozo agreed decades ago in *Coleman v. New Amsterdam Cas. Co.* that under Section 3420 "[t]he cause of action is no less but also it is no greater."  247 N.Y. 271, 275 (1928).  Thus, "the statute does not confer upon such a judgment creditor new rights against the carrier not held by the insured."  *Mt. Hawley Ins. Co. v. Penn-Star Ins. Co.*, 151 A.D.3d 528, 529 (1st Dep't 2017).  The "shoes" stepped into by Reem are the "rights" of MJR—*not* bigger shoes or better rights—and thus, there is no coverage under the Policy.  *See Cont'l Ins. Co. v. Atl. Cas. Ins. Co.*, 603 F.3d 169, 179 (2d Cir. 2010) (holding judgment creditor has rights that "are no greater … than those of the insured debtor" under the policy).

Reem's arguments to the contrary are incorrect.  First, the First Department's *Zimmerman* is inapposite.  There, the court refused to find issue preclusion (not at issue here) due to the absence of "actual litigation," which is a requirement to apply issue preclusion but *not* claim preclusion.  *Zimmerman v. Tower Ins. Co. of N.Y.*, 13 A.D.3d 137, 139-40 (1st Dep't 2004).  While Reem correctly notes that the court *references* claim preclusion, its *holding and analysis* concern issue preclusion only.  So too for *Rojas v. Romanoff*, which held that a prior default judgment barred application of issue—not claim—preclusion.  186 A.D.3d 103, 109 (1st Dep't 2020).  Indeed, this Court correctly noted in *Michelo v. National Collegiate Student Loan Trust 2007-2*, which concerned the <u>res judicata</u> effects of prior default judgments, that *Zimmerman* applied only to issue and not claim preclusion.  419 F. Supp. 3d 668, 689 n.8 (S.D.N.Y. 2019) ("*Zimmerman* … involve[s] collateral estoppel rather than *res judicata*.").  In any event, courts

applying New York law routinely hold that a judgment-creditor and the insured it had sued are in privity. *See, e.g., Oest v. Excelsior Ins. Grp.*, 656 N.Y.S.2d 89, 90-91 (2d Dep't 1996); Alterra Br. at 9.

Reem relies on the recent and ongoing *2939, LLC v. Cont'l Indem. Co.*, No. 23-7466, 2024 WL 4553900 (2d Cir. Oct. 23, 2024) (summary order). However, a summary order like *2939* is allowed <u>*no precedential effect*</u>. *See* 2d Cir. R. 32.1.1.[1] Second, *2939* did not involve the preclusive effect of a rescinded policy, which is a critical distinction. The court there acknowledged that recovery by the claimant "would exceed [the insured's] rights under the terms of the default judgment, but not necessarily under the terms of [the insured's] policy." *2939*, 2024 WL 4553900, at *3. Here, in contrast, recovery by Reem *would* "necessarily" have to exceed MJR's rights under the Policy because it has been rescinded and does not exist. Next, *2939* is based, in part, on its declaration that "the district court did not identify a case in which a New York court has reasoned that a default judgment against one party had preclusive effect against a different party." *2939*, 2024 WL 4553900, at *2. However, courts applying New York law have done just what the *2939* court assumed did not exist. Indeed, *Nationwide Mut. Ins. Co. v. U.S. Underwriters Ins. Co.*, 151 A.D.3d 504, 506 (1st Dep't 2017), is directly on point. There, the court held that a Section 3420 subrogee of a subrogor who failed to appear in a prior action (just like Reem's subrogor MJR) was precluded from bringing its § 3420 lawsuit against the insurer. *See also UNI Storebrand Ins. Co., UK Ltd. v. Star Terminal Corp.*, No. 96-9556, 1997 WL 391125, at *3 (S.D.N.Y. July 11, 1997) ("[B]ecause the direct-action statute places the injured party (SGE) in privity with the insured (Star Terminal), SGE would be bound by Star Terminal's default…."). Last, the *2939* court noted that

---

[1] *2939*'s repeated citation to *Taylor v. Sturgell,* 553 U.S. 880 (2008) is unpersuasive here, because *Taylor* outlined preclusion applicable only to "a judgment in a federal-question case decided by a federal court," *id.* at 904, not (as here) in an insurance rescission action.

-4-

privity would be present if a nonparty is "adequately represented by someone with the same interests who was a party." 2024 WL 4553900, at *2. Here, indeed, during the pendency of the Fraud/Forgery Action, Reem's and MJR's interests in securing coverage under the Policy were completely aligned.[2] Had MJR succeeded in proving coverage, Reem would have received the benefit from that judgment.

Finally, Reem's repeated references to the inefficacy of MJR's default are wrong. (Opp. at 6, 11.) For purposes of applying claim preclusion, default judgment is a conclusive judgment on the merits, no different than summary judgment or judgment following a jury trial. *See Simmons v. Trans Express Inc.,* 355 F. Supp. 3d 165, 173 (E.D.N.Y. 2019) ("[U]nder New York law a default judgment … has res judicata effect equal to that of a judgment on the merits."). A New York court recently succinctly summarized the issue:

> [M]axims such as … collateral estoppel serve to protect the sanctity and finality of litigated judicial orders and judgments, while the doctrine of res judicata does the same so for such orders and those issued upon default. These maxims are the root of the finality doctrine….

*Long Island Pine Barrens Soc'y, Inc. v. Cnty. of Suffolk*, 237 N.Y.S.3d 351, 358 (Sup. Ct. 2025) (citations omitted).

Alterra did precisely what New York law commands—it learned of a basis for rescission and promptly moved to rescind the Policy. Had Alterra waited until Reem obtained its judgment (as Reem seemingly demands), Alterra would be estopped from rescinding due to delay. *Cont'l Cas. Co. v. Marshall Granger & Co.*, 6 F. Supp. 3d 380, 393-94 (S.D.N.Y. 2014). Alterra should neither be denied the "finality" afforded by *res judicata*, *Allstate Ins. Co. v. Williams*, 29 A.D.3d 688, 690 (2d Dep't 2006), nor punished for MJR's nonappearance in the Fraud/Forgery

---

[2] Similarly, the law presumes that *Alterra's interests* were represented in *Reem's earlier default against MJR*.

-5-

Action. MJR defaulted in Reem's Smoke and Soot Action just like it did in the Fraud/Forgery Action, and Reem, "as subrogee of [MJR]," is subject to whatever rules of preclusion would be applicable to MJR. *Nationwide*, 151 A.D.3d at 505.[3]

### III. THE TPE ALREADY BARS COVERAGE FOR THE SMOKE AND SOOT ACTION WITHOUT THE NEED FOR DISCOVERY.

Reem's arguments against the Policy's broad TPE do not withstand even cursory scrutiny. Initially, note that Reem *never* argues against application of the TPE on the merits. And for good reason—Reem knows it plainly bars coverage for the contamination caused by MJR's activities.

Knowing the exclusion is fatal here, Reem is left to argue that there is somehow doubt about the Policy's contents. The Court should easily reject this manufactured doubt. First, Reem baselessly posits that perhaps the exclusion was not "in fact part of the … Policy … when the Policies were issued and in force in 2014" (opp. at 12), but admits that the policy it attached to its own complaint was obtained from exhibits filed by Alterra, which were authenticated and accepted

---

[3] There are practical considerations as well. In addition to discouraging insurers from timely protecting their rights, Reem would require that insurers sue any and all potential section 3420 claimants to be able to rely on a valid judgment against an insured. But that would blatantly contravene the intended mechanism of Section 3420, which requires a claimant to first obtain judgment against the insured, at which point rights to coverage are "no greater or less" than the insured's. *Cont'l Ins. Co.*, 603 F.3d at 179. Moreover, Reem would have Alterra exhaust its limits on a fraudulently procured policy that was judicially determined to have *never* existed and for which Alterra retained *no* premium. *Admiral Ins. Co. v. Joy Contractors, Inc.*, 19 N.Y.3d 448, 461 (2012) (policy rescinded is "deemed never to have existed to create coverage in the first place"); *Am. Heritage Bancorp v. U.S.*, 56 Fed. Cl. 596, 607 (2003) (agreeing with government that rescinded contract "never existed and thus could not have been breached and given rise to a right to damage"). Respectfully, given "[a] Court's inability to breathe life into a void contract," it is not even clear how a Court would fashion a remedy under such facts. *Wilmington Sav. Fund Soc'y v. PHL Ins. Co.*, No. 13-499-RGA, 2014 WL 1389974, at *12 n.1 (D. Del. Apr. 9, 2014) (collecting cases from numerous jurisdictions).

as evidence in the Fraud/Forgery Action and contained the TPE. (*Id.* at 12 fn.8.) Reem cannot spin a fact issue out of whole cloth.

Second, Reem argues that even if the TPE were in the Policy, COIs show broader coverage and thus create a fact issue. (Declaration of John Brewer ("Brewer Decl."), Ex. 4 at 5-19.) But the COI does no such thing. It merely shows facts not in dispute here—the limits of liability and that the City (no mention of Reem) is an additional insured. (*See id.* at 13.) That is, it does not make a representation of any kind about the breadth or narrowness of any exclusions or endorsements. (*Id.*) Indeed, the COIs contain broad disclaimers, in majuscule on the top of the first page, that they are "ISSUED AS A MATTER OF INFORMATION ONLY AND CONFER[] NO RIGHTS UPON THE CERTIFICATE HOLDER," do "NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW," and are not replacements for the actual policies. (*Id.* at 13.)[4] Similarly, the PGL1 cover note to the COIs nowhere requires certain insurance forms and does not itself note the scope of coverage required. (*Id.*) The COI and their cover notes are completely irrelevant here. Thus, the cases regarding COIs that conflict with policies cited by Reem (opp. at 13-15) also are irrelevant.[5] Reem's argument only grows more puzzling considering that, under its own argument, <u>reliance is specifically required</u>. *Lenox Realty*

---

[4] The back of the COI contains a bold, majuscule "**DISCLAIMER**," that it "does not constitute a contract …, nor does it affirmatively or negatively amend, extend or alter the coverage afforded by the policies listed thereon." (Brewer Decl., Ex. 4 at 9.) This reinforces New York law that a COI "by itself, does not confer insurance coverage…." *Cnty. of Erie v. Gateway-Longview, Inc.*, 193 A.D.3d 1336, 1337 (4th Dep't 2021).

[5] Consistent with the purpose of COIs, virtually every case Reem cites involves the *identity* of additional insureds according to certificates, *not* exclusions contained in the policies. The one case in a different context, *Hartford Acc. & Indem. Co. v. Transamerica Ins. Co.*, involved a certificate that "purport[ed] to certify that Transamerica had issued … policies *covering all of Ronel's operations in New York*." 141 A.D.2d 423, 424 (1st Dep't 1988). The pertinent COI here makes no such representations. (*See* Brewer Decl., Ex. 4, at 13.)

*Inc. v. Excelsior Ins. Co.*, 255 A.D.2d 644, 645 (3d Dep't 1998).  The COIs nowhere name Reem, Reem was not contemporaneously supplied with them, and Reem cannot assert that it "relied upon the provisions of an insurance certificate to [its] detriment."  *Id.*  Regardless of who signed the PGL1 and the COIs,[6] neither, in any way, conflicts with Alterra's position here and, thus, there is no fact issue to determine.

Reem next argues, without any authority, that a New York City regulation ("§ 101-08") applies to somehow reform the Policy.  That is, even though the Policy contains the TPE, Reem says that § 101-08 erases it.  Reem is wrong.  As Alterra explained in its opening brief and Reem does not contest, § 101-08 promulgates requirements on permittees (such as MJR) as to the insurance "the permittee shall procure and maintain" and not insurance companies.  (*See* § 101-08(d)(1)(i); Br. at 15.)  If the permittee fails to obtain the requisite insurance, the remedy is against the permittee (here MJR) by the entity to be indemnified (here, the non-party City), not reformation of the insurance contract.  *See* § 101-08(k) ("In the event a permittee fails to secure or maintain insurance in full compliance with this section, such permittee shall be obligated to indemnify the city….").  If § 101-08 forced *an insurance company* to include (or omit) certain provisions, the regulation would expressly so direct, just as other New York insurance laws and regulations do.  For example, Insurance Law Section 3420(a) provides that certain policies issued in New York must contain specific provisions.  So do §§ 3420(e), (f)(1), (g)(1)-(2), (j)(1), and 11 NYCRR § 60-1.1.  Unlike § 101-08, *all* of those provisions *require insurers* (not insureds) to include specified language.  And if the policies do not include those provisions, New York law expressly reforms

---

[6] It is immaterial to Alterra's motion who issued the COIs as they are accurate and appropriate. Alterra, however, reserves its rights regarding the agency of the broker.

them as though they did. *See* N.Y. Ins. Law § 3103(a). Some laws reform insurance contracts; § 101-08 simply does not.[7]

## IV. REEM'S GBL 349 DECEPTION CLAIM STILL FAILS

Reem's GBL 349 claim is precisely the sort of "[p]rivate contract dispute[ ]" that does "not fall within the ambit of the statute." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 24 (1995). Reem attempts to avoid this conclusion and *res judicata*, arguing that Alterra "sold MJR inadequate coverage that did not comply with the governing New York City regulations for demolition contractors" and "may have done so repeatedly." (Opp. at 16.) Similarly, Reem argues that Alterra misrepresented coverage "over and over again" through the COIs. (*Id.*) The problem for Reem, apart from its unfounded inuendo and speculation,[8] is explained above: § 101-08 does not apply to Alterra, thus Reem cannot allege that Alterra failed to comply with applicable law; and the COI, in any event, accurately identifies limits and additional insureds. Alterra simply did nothing deceptive or misleading here. Nor does Reem's caselaw show that consumer-oriented conduct obtains here. *Securitron Magnalock Corp. v. Schnabolk*, for example, involved a fraudster arguing to numerous public entities that their locks

---

[7] Moreover, it is doubtful that § 101-08 even requires *the permittee* to carry insurance with a hostile fire exception—a lynchpin of Reem's argument. § 101-08(d)(1)(i)(E) specifies only six specific disallowed exclusions and none is any sort of pollution exclusion.

[8] Reem asserts numerous conspiracy theories and falsehoods. For example, Reem asserts that "Alterra obtained sworn statements from both Michael Russell and Steven Russell" (opp. at 6) and argues that this somehow shows that MJR cooperated with Alterra. Nonsense. First, that *Michael* cooperated with Alterra by executing an affidavit regarding his father's forgeries is neither remarkable nor untoward. Second, regarding Steven, although Alterra is not certain of Reem's reference, Alterra received from Michael's attorney a sworn statement from Steven dated August 2, 2016. If anything, the fact that Alterra (with no assistance from Steven) had to go through Michael's attorney to get information regarding MJR demonstrates MJR's non-cooperation. Most important, none of these conspiracy theories is in the present record and the Court should not permit Reem's *ad hominems* and inaccuracies to cloud the issues.

were illegal. 65 F.3d 256, 258-60 (2d Cir. 1995). Here, Alterra wasn't trying to influence others—it simply issued one policy to one insured in a private contract. Reem's other cases are similarly unpersuasive as they involve the public's interest in safety or in deterring conduct that specifically steers business away from a plaintiff as a repeated business practice. *See Salter v. Meta Platforms, Inc.*, 240 A.D.3d 1378 (4th Dep't 2025) (misrepresentations by gun manufacturer regarding ammunition capacity); *M.V.B. Collision, Inc. v. Allstate Ins. Co.*, 728 F. Supp. 2d 205, 221 (E.D.N.Y. 2010) (deceptive practices used to dissuade insureds from having cars repaired by auto repair shop).

The Court of Appeals, furthermore, cautions that it is "mindful of the potential for a tidal wave of litigation against businesses that was not intended by the Legislature" if plaintiffs are permitted to use this statute indiscriminately. *Oswego*, 85 N.Y.2d at 26. Finding that Reem has standing here because of some purported threat to "thousands living or working near demolition sites" (opp. at 18-19) implicates precisely the "tidal wave" concerns noted by the Court of Appeals in *Oswego*. In short, this is a single insurance policy between two private companies involving no deceptive practices (private or public) and should be adjudicated as such.

Reem "must also plead that [it has] suffered actual injury caused by a materially misleading or deceptive act or practice." *City of New York v. Smokes-Spirits.Com, Inc.*, 12 N.Y.3d 616, 623 (2009). It cannot. As discussed above, there were no misrepresentations here to MJR and certainly no representations at all to Reem. Reem's damages may have been caused by MJR's negligence (just as Alterra was harmed by MJR), but Reem's damages are not a result of anything Alterra has done.

Dated: November 3, 2025

                                          Respectfully Submitted,

                                          **TROUTMAN PEPPER LOCKE LLP**

By: *s/ Daniel W. Cohen*
   Daniel W. Cohen
   875 3rd Ave
   New York, NY 10022
   (212) 704-6256
   Dan.Cohen@troutman.com

   Richard J. Pratt (admitted *pro hac vice*)
   Matthew J. Griffin (admitted *pro hac vice*)
   401 9th Street NW
   #1000
   Washington, DC 20004
   (202) 662-2077
   (202) 274-2949
   Richard.Pratt@troutman.com
   Matthew.Griffin@troutman.com

   *Attorneys for Defendant Alterra America Insurance Company n/k/a Pinnacle National Insurance Company*

-12-

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Local Civil Rule 7.1, I hereby certify that this Memorandum of Law complies with the formatting rules, and the total number of words in this Memorandum of Law, excluding the caption, certification of compliance, table of contents, table of authorities, and signature blocks, is 3,484 words.

Dated: November 3, 2025

*s/ Daniel W. Cohen*
Daniel W. Cohen