Troutman Pepper Locke LLP
875 Third Avenue
New York, NY 10022

troutman.com

# troutman™ pepper locke

*(handwritten: (It was, for November 6))*

**Richard J. Pratt**
D 202.662.2077
Richard.Pratt@troutman.com     *(handwritten: 5/7/2026)*

**Matthew J. Griffin**
D 202.274.2949
Matthew.Griffin@troutman.com

May 6, 2026

**VIA ECF**

The Honorable Colleen McMahon
United States District Court
Southern District of New York
500 Pearl Street, Room 2550
New York, New York 10007

*(handwritten margin note: I should have held a Rule 16 conference months ago. I do not know why one was either not scheduled or (more likely) cancelled by you. I would NEVER have allowed ANY discovery to begin in this case until the issues of former adjudication were resolved. I am sorry I was very busy motion calendar and some medical issues. Give me a bit of credit but rest assured the motions to dismiss are going to be)*

**Re:    Case No. 1:25-cv-07817-CM-RFT; Reem Bridals, LLC v. The Burlington Insurance Company, et al. – Request for Rule 16 Conference and Motion to Stay**

Dear Judge McMahon:

We represent Defendant Evanston Insurance Company as successor by merger to Alterra Excess & Surplus Insurance Company ("Evanston") and write to request a Rule 16 conference and a stay of the above-captioned action so as to spare Evanston and other parties the expense and cost of responding to Plaintiff Reem Bridals, LLC's ("Reem") voluminous discovery requests, which may, depending on the outcome of Evanston's motion to dismiss (ECF No. 14, the "Motion to Dismiss"), become entirely moot.  A Rule 16 conference can also address Reem's apparent concerns about discovery proceeding without any answer or affirmative defenses filed by the defendants.  This is Evanston's first request for a stay and first request for a Rule 16 conference.  Co-defendant The Burlington Insurance Company ("Burlington") joins in this letter-motion and Reem opposes.

## INTRODUCTION

By way of background and to orient the Court, Evanston seeks the Court's assistance in helping to bring this matter, which began nearly a decade ago and was already brought to a judicially declared conclusion well over eight years ago, to an efficient close.  Evanston first sought a judicial declaration nearly nine years ago and obtained a default judgment against its former insured, MJR Construction Services Corp. ("MJR"), on the basis of a blatant fraud and forgery (the "Fraud and Forgery Judgment").  Based on the overwhelming evidence provided, the Fraud and Forgery Judgment declared policy no. MAXA3EC50001169 issued by Evanston to MJR (the "Evanston Excess Policy") null, void *ab initio*, and rescinded, and further declared that no benefit was due and/or owing to MJR or anyone else based on the relevant policy.  Consistent with the declaration that no benefit was due or owing under the Evanston Excess Policy, the Fraud and Forgery Judgment also declared that insurance coverage *specifically was barred* for the action styled *R.A. Luxury LLC, et al. v. The Chetrit Group LLC, et al.*, Index No. 150365/2016 (N.Y. Sup. Ct. N.Y. Cnty.) (the "Smoke and Soot Action").  MJR's primary insurer, Burlington, also obtained a default

*(handwritten: top of the pile. Until they are decided ALL DISCOVERY IS STAYED)*

*(handwritten bottom margin: PS- Had you come to the conference scheduled last November instead of cancelling it by filing a case management plan you could have saved yourself a lot of trouble.)*

**troutman**
**pepper locke**

The Honorable Colleen McMahon
May 6, 2026
Page 2

---

judgment shortly thereafter in the same court that granted Evanston (an excess carrier) its judgment. More than eight years later, after finally obtaining its own default judgment against MJR in the Smoke and Soot Action, and despite the Fraud and Forgery Judgment specifically declaring that coverage was barred under the Evanston Excess Policy for the Smoke and Soot Action, Reem now seeks a declaration here that its default judgment in the Smoke and Soot Action (the "Smoke and Soot Judgment") should be satisfied and all other default judgments ignored. Specifically, Reem seeks to re-litigate coverage, and demands that Evanston satisfy the Smoke and Soot Judgment eight years after Evanston's December 21, 2017 Fraud and Forgery Judgment. This, again, despite the fact that the Fraud and Forgery Judgment in favor of Evanston is *res judicata* that specifically excluded claims arising out of the Smoke and Soot Action that Reem now brings. As Evanston explained in its pre-answer motion to dismiss (ECF No. 14) (the "Motion to Dismiss"), Reem's action is plainly barred for at least *four* reasons, all of which are purely legal issues appropriate for the Court's determination on a motion to dismiss. As Evanston explained in its pre-answer motion to dismiss (ECF No. 14) (the "Motion to Dismiss"), Reem's action is plainly barred for at least *four* reasons, all of which are purely legal issues appropriate for the Court's determination on a motion to dismiss.

First, the Fraud and Forgery Judgment is *res judicata* as to all claims brought by Reem in this instant action. The Fraud and Forgery Judgment against MJR rescinded and declared *void ab initio*, *inter alia*, the Evanston Excess Policy. That judgment is binding on Reem, which is in privity with MJR for purposes of application of *res judicata* under controlling law. Second, because the policy issued by Evanston is null, void *ab initio*, and rescinded with premiums refunded (as Reem acknowledges in its Complaint), there is no policy from which Reem can recover. Third, the Evanston Excess Policy's Total Pollution Exclusion very plainly excludes coverage for the Smoke and Soot Action, further barring all of Reem's claims in this action. Fourth, Reem fails to (and cannot) allege the prerequisites necessary to maintain its GBL 349 claim against Evanston.

Evanston's Motion to Dismiss has been fully briefed since November 3, 2025. In the intervening six months, discovery has proceeded at a rapid pace, with voluminous written discovery served, four depositions taken, several more depositions noticed or anticipated, and expert discovery upcoming. Specifically, Reem has (1) taken the 30(b)(6) depositions of two of Evanston's designees and two of Burlington's designees; (2) made over fifty requests for production of documents on Evanston; (3) made over sixty requests for production of documents on Burlington; (4) served thirteen interrogatories on Evanston; (5) and served thirteen interrogatories on Burlington. Still pending are (6) Reem's subpoena to a third-party retail broker who represented MJR in connection with MJR's applications for insurance; (7) Reem's deposition of Vincent Colosimo (a former Evanston employee); (8) Reem's additional document requests; and (9) most egregiously, Reem's subpoena for deposition and document production on Evanston's counsel who secured the Fraud and Forgery Judgment and is currently Evanston's counsel *in this lawsuit*. This last request was interposed to harass and has no foundation at law as the requested information is available from other sources and, more importantly, is plainly protected by the attorney work-product doctrine and attorney-client privilege. It is currently the subject of a motion to quash (ECF

The Honorable Colleen McMahon
May 6, 2026
Page 3

troutman⫪
pepper locke

No. 73), and the parties are briefing that issue before Judge Tarnofsky. Evanston has, of necessity, also served discovery on Reem. In that regard, a 30(b)(6) deposition of Reem is pending and the parties currently dispute the proper scope of interrogatories and requests for production served on Reem.

Given all of this discovery and the fact that much of it is disputed, it is no surprise that the parties have been before Magistrate Judge Tarnofsky already five times with discovery disputes, and there are many more discovery disputes anticipated in the coming weeks, including the issues noted above. As just one example, and as adverted to above, Reem has recently subpoenaed Daniel Cohen, Evanston's counsel in this litigation, for "all documents and communications" regarding his legal representation of Evanston and for deposition testimony, all of which is protected from disclosure by the attorney-client privilege and the attorney work-product doctrine. Evanston has filed a motion to quash that subpoena (and Mr. Cohen's law firm, Troutman Pepper Locke LLP, has joined in that motion). Indeed, Evanston anticipates at least *four* additional disputes that will likely need to be ruled on by Magistrate Judge Tarnofsky in the coming weeks and months (Cohen subpoena quashal, Evanston's motion to compel responses to paper discovery, Reem's motion to compel paper discovery from Evanston, and a motion regarding the scope of 30(b)(6) topics served by Evanston on Reem), bringing the total number of conferences had or currently anticipated before Judge Tarnofsky to nine. And this count does not even include potential discovery disputes between Reem and Burlington, which could bring the total number of conferences before Judge Tarnofsky higher still. The point is, unfortunately, the voluminous, expensive, and time-consuming discovery in this case (not just for the parties but for the Court) continues unabated.

As it has throughout this litigation, Evanston maintains that an early and efficient resolution of this matter without resort to broad, burdensome (and indeed, irrelevant and futile) discovery is appropriate. Importantly, Reem has recently communicated to Evanston its concern that once this Court decides Evanston's Motion to Dismiss, Evanston "will put Reem on notice of different defenses and then discovery on those defenses will begin anew or, if discovery is over by then, Reem will not be permitted to take discovery on the defenses pleaded in its answer." (*See* Exhibit 1, Declaration of Matthew J. Griffin, Ex. A., p. 2. (Apr. 9, 2026 Letter).) Given Reem's insistence on scorched-earth discovery while Evanston's dispositive, pleadings-based Motion to Dismiss is pending, as well as Reem's stated concern with respect to its ability to take discovery regarding all of Evanston's defenses (which have not even been pled yet if they ever are) in this lawsuit given the currently operative scheduling order, Evanston respectfully submits that a Rule 16 case management conference would assist the parties and the Court in the overall management and disposition of this case.

A Rule 16 conference is designed for situations such as this. Pursuant to Rule 16(a), the Court may order attorneys to appear for a pretrial conference in order to establish "early and continuing control" over the case and to "discourag[e] wasteful pretrial activities." Fed. R. Civ. P. 16(a). Here, a Rule 16 conference would allow the parties to update the Court on the status of the case and to discuss Evanston's request (described further below) for a stay of discovery, given the pendency of the Motion to Dismiss and the fact that its resolution may render all of the time-

The Honorable Colleen McMahon
May 6, 2026
Page 4

troutman⫟
pepper locke

---

consuming and costly discovery moot. If necessary, the parties could also suggest modifications to the current scheduling order to accommodate any needed remaining discovery in the event that this case proceeds past the pleadings stage. As explained below, each of these topics and discussions would eliminate "wasteful pretrial activities" and facilitate the "just, speedy, and inexpensive disposition" of this matter.

## I. FACTUAL BACKGROUND

### A. The Policies

The Evanston Excess Policy was issued to MJR for the policy period March 2, 2014 to October 27, 2014, and provided coverage, subject to its terms and conditions, excess of policy no. 509BW27687 issued by The Burlington Insurance Company (the "Burlington Policy" and, together with the Evanston Excess Policy, the "Policies"). *See* ECF No. 1 (Compl., Exs. 1–2). The Evanston Excess Policy generally is "subject to the same terms, conditions, agreements, exclusions and definitions" as contained in the Burlington Policy. *See id.* (Compl., Ex. 2 (Section I.1.b.; Schedule of Underlying Insurance)).

The Evanston Excess Policy's Total Pollution Exclusion, which it adopts by reference from the Burlington Policy, provides that the Evanston Excess Policy does not apply to any liability "which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants' at any time." *See, e.g.*, ECF No. 1 (Compl., Ex. 1 (Section I.2.f. (as amended by and referred to in the pertinent policy language itself and herein as the "Total Pollution Exclusion"))); *see also* ECF No. 1 (Compl., ¶ 31). The pertinent policy language defines "pollutants" to mean "any solid, liquid, gaseous or thermal irritant or contaminant, including . . . *smoke*, vapor, *soot*, fumes, acids, alkalis, chemicals and waste." *See, e.g.*, ECF No. 1 (Compl., Ex. 1 (Section V.15.) (emphasis added)).

### B. Evanston's Default Judgment Against MJR

On or about June 14, 2016, Burlington initiated an action against MJR styled *The Burlington Insurance Company, et al. v. MJR Construction Services Corp.*, Index No. 653129/2016 (N.Y. Sup. Ct. N.Y. Cnty.) (the "Fraud and Forgery Action"), seeking a declaration that the Burlington Policy did not provide coverage to MJR. *Id.* (¶ 20). Evanston intervened in the Fraud and Forgery Action and, in its intervenor complaint, sought a declaration that, *inter alia*, the Evanston Excess Policy was rescinded, null, and void *ab initio* owing to MJR's obvious fraud and forgery.

In addition to the declaration regarding the rescission of the Evanston Excess Policy, Evanston further sought a declaration that the Evanston Excess Policy did not provide coverage for the Smoke and Soot Action due to (1) the Evanston Excess Policy's Pollution Exclusion; (2) MJR's

**troutman**
**pepper locke**

The Honorable Colleen McMahon
May 6, 2026
Page 5

---

breach of the Evanston Excess Policy's Cooperation Provision; and (3) MJR's breach of the Evanston Excess Policy's Notice Provision.[1]  *See* ECF No. 14-7, ¶¶ 52-63.

On December 21, 2017, after granting Evanston's Motion to Intervene in the Fraud and Forgery Action (*see* ECF No. 14-6) and after MJR repeatedly failed to appear or respond, the court there entered the Fraud and Forgery Judgment against MJR in favor of Evanston declaring "that [the Evanston Excess Policy] is null, void ab initio, rescinded, and that no benefit under the [Evanston Excess Policy] is due and/or owing to [MJR] or anyone with a claim against [MJR] based on the alleged forgery of documents provided to Evanston in connection with the application and issuance of the [Evanston Excess Policy]." *See* ECF No. 1 (Compl., ¶ 32); *see also* ECF Nos. 14-8, 14-9, 14-10.  The court in the Fraud and Forgery Action went on to explicitly hold that there was no coverage under the Evanston Excess Policy for, *inter alia*, the Smoke and Soot Action.  ECF Nos. 14-8, 14-9, 14-10.

By operation of the Fraud and Forgery Judgment, the Evanston Excess Policy was null, void *ab initio*, and rescinded, and Evanston refunded the premium.  A few years later, on August 3, 2021, the court in the Fraud and Forgery Action similarly entered "a judgment on default against MJR in favor of Burlington's motion that Burlington owes no duty to defend or indemnify MJR."  ECF No. 1 (Compl., ¶ 33).  As noted below, several more years thereafter, Reem itself also secured a default judgment against MJR.

### C.  Reem's Underlying Claim

In or about January 2016, Reem and its insurance company initiated the Smoke and Soot Action against MJR and other entities, asserting property damage caused by "soot and smoke" that spread away from a fire allegedly caused by two MJR employees' negligence at a building rooftop away from the Reem property.  ECF No. 1 (Compl., ¶¶ 10–11); *see also* ECF No. 14-12 (Complaint in Smoke and Soot Action, ¶¶ 28-30 (alleging that the "smoke and soot" "spread" from the site and "entered" the nearby property of Reem)).  Reem alleged in the Smoke and Soot Action that "[t]he smoke and soot from the Fire also contaminated virtually all of Reem Bridals' . . . product on site" and further that, because of the "extreme amount of smoke and soot at the Premises, after the Fire was finally extinguished, the Premises had to remain unoccupied during the smoke remediation."  ECF No. 14-12 (Complaint in Smoke and Soot Action, ¶¶ 29, 31).  The court in the Smoke and Soot Action much later "entered a judgment on default in favor of Reem against MJR" and "awarded Reem damages, jointly and severally, against the defaulting defendants, including MJR, in the amount of $20,912,897 along with statutory interest, less credits, with costs and disbursements."  ECF No. 1 (Compl., ¶ 12).  "On June 4, 2025, a judgment was entered in favor of Reem against MJR and the other defaulting defendants in the amount of $38,666,735.94[.]"  *Id.*

---

[1] The fire occurred on March 27 2014.  Notice was *never received from the insured* and was received from Reem only about 21 months later in January of 2016.  Evanston has not yet placed the latter two defenses (failure to cooperate and late notice) at issue here but reserves the right to do so, if need be, at a later date.

Case 1:25-cv-07817-CM-RFT    Document 80    Filed 05/06/26    Page 6 of 9

The Honorable Colleen McMahon
May 6, 2026
Page 6

**troutman⫪
pepper locke**

---

### D. The Instant Lawsuit

Reem filed the instant lawsuit seeking to relitigate coverage under the rescinded and void *ab initio* Evanston Excess Policy. After removing the lawsuit to this Court on or about September 19, 2025, ECF No. 1, Evanston timely filed its Motion to Dismiss. ECF No. 14. Because the Motion to Dismiss is still pending, Evanston has not yet filed an answer or other responsive pleading.

### E. Discovery

Over the past several months, the parties have served and responded to written discovery, produced thousands of pages of documents, subpoenaed multiple third parties, and taken several depositions of party representatives. Discovery issues have been assigned to Magistrate Judge Tarnofsky (ECF No. 39), and the parties have already briefed several rounds of motions and appeared before her for conferences/hearings regarding discovery disputes five times. Discovery deadlines have been extended twice. As described above, additional fact discovery and expert discovery are pending and additional discovery disputes are anticipated, as Reem continues to seek even more documents and files—including Evanston's outside counsel's deposition and privileged internal law firm files. Evanston anticipates that Reem will notice additional depositions of Evanston employees and/or of third-parties. Evanston, for its part, has served paper discovery on Reem, noticed the 30(b)(6) deposition of Reem, and subpoenaed two third-parties for deposition as fact witnesses. Additionally and, as noted above, several additional discovery disputes are anticipated to come before Judge Tarnofsky in the coming weeks and months. Burlington may have discovery disputes with Reem as well. In short, discovery to date has been expansive and much, much more remains.

## II. ARGUMENT

### A. Rule 16 Conference

Federal Rule of Civil Procedure 16(a) provides, in relevant part, that

[i]n any action, the court may order the attorneys and any unrepresented parties to appear for one or more pretrial conferences for such purposes as:

(1)    expediting disposition of the action;
(2)    establishing early and continuing control so that the case will not be protracted because of lack of management; [and]
(3)    discouraging wasteful pretrial activities . . . .

Fed. R. Civ. P. 16(a). Further, Rule 16(c) provides that a pre-trial conference may be used as a means of "controlling and scheduling discovery, including orders affecting disclosures and discovery under Rule 26 and Rules 29 through 37" as well as "disposing of pending motions" and "facilitating in other ways the just, speedy, and inexpensive disposition of the action." Fed. R. Civ. P. 16(c). In addition, and as always, this Court maintains the inherent authority to manage its docket and effectuate the speedy and efficient resolution of cases before it. *See, e.g., Kowalchuck*

The Honorable Colleen McMahon
May 6, 2026
Page 7

**troutman⫟**
**pepper locke**

*v. Metro. Transp. Auth.*, 94 F.4th 210, 214 (2d Cir. 2024) ("District courts have the 'inherent authority to manage their dockets' to promote 'the efficient and expedient resolution of cases.'"). Evanston respectfully submits that a Rule 16 conference here would serve these goals in at least two ways.

First, as noted, a Rule 16 conference is warranted in this case for the purposes of "expediting disposition of the action" and, pursuant to Rule 16(c), "disposing of pending motions" to facilitate the "just, speedy, and inexpensive disposition of the action." Fed. R. Civ. P. 16(a), (c). Here, Evanston has filed its Motion to Dismiss (ECF No. 14) on purely legal issues. As Evanston noted in its Motion to Dismiss, "[t]o relitigate these issues and to suggest that the parties will again have to demonstrate that the forgery and the Total Pollution Exclusion preclude coverage would constitute a monumental waste of the parties' and this Court's energies and resources." ECF No. 14, p. 24. Accordingly, Evanston continues to maintain that this case can be resolved most speedily and efficiently through disposition of the Motion to Dismiss.

Second, and relatedly, a Rule 16 conference would enable the parties and this Court to discuss an efficient discovery process that would be proportional to the needs of this case and responsive to its current posture should the Court not grant the Motion to Dismiss. Because Evanston's Motion to Dismiss is pending, Evanston has not filed an answer or interposed any affirmative defenses at this time. As such, Reem has complained that it has not had the opportunity to analyze any defenses that Evanston may assert or take discovery regarding them as appropriate. Most important, Evanston may *never* assert any affirmative defenses, and all discovery would be rendered moot, should the Court rule for Evanston on the Motion to Dismiss. In light of these issues, a Rule 16 Conference will also enable the parties and this Court to address Evanston's request to stay this action so that the parties can avoid additional burdensome discovery pending the outcome of Evanston's Motion to Dismiss.

In sum, a Rule 16 conference would fully advance the purpose of Rule 16 and promote the "just, speedy, and inexpensive disposition of the action." Fed. R. Civ. P. 16(c).

### B. Request for Stay

Courts within this district routinely stay discovery in actions postured just as here. Indeed, this common-sense rule was recently reiterated by the Southern District of New York in *MediaCap Partners, LLC v. Screenvision Direct, Inc.*, No. 25-cv-7129 (LJL), 2026 WL 607692 (S.D.N.Y. Mar. 3, 2026). There, Judge Liman held that, upon a showing of "good cause," the Court may grant a motion to stay discovery pending decision on a motion to dismiss. *MediaCap Partners*, 2026 WL 607692, at *1 (*citing* Fed. R. Civ. P. 16(b)(4); Fed. R. Civ. P. 26(c)-(d)); *see also Ass'n Fe Y Allegria v. Republic of Ecuador*, 1999 WL 147716, at *1 (S.D.N.Y. Mar. 16, 1999) ("Together, these provisions enable the district court to stay discovery where resolution of a preliminary motion may dispose of the entire action."). In determining whether to grant a request for stay, "[c]ourts consider: (1) [the] breadth of discovery sought, (2) any prejudice that would

The Honorable Colleen McMahon
May 6, 2026
Page 8

**troutman⫟**
**pepper locke**

result, and (3) the strength of the motion." *Hong Leong Fin. Ltd. (Singapore) v. Pinnacle Performance Ltd.*, 297 F.R.D. 69, 72 (S.D.N.Y. 2013) (internal quotations omitted).

As to the first factor, the discovery sought in this case has been, as noted above, voluminous and much of it remains pending or is otherwise anticipated. In addition to the substantial discovery already completed, Reem has served a harassing and overreaching subpoena directed to Evanston's counsel in this litigation despite attorney-client and work-product privileges plainly applicable to the matter. All parties likely will engage and seek discovery from experts and, perhaps, additional fact witnesses. In toto, much discovery plainly remains.[2]

With respect to the second factor, Reem's complaint seeks compensation for damages it alleges it is owed because of pollution released by a fire over 12 years ago. *See* ECF No. 1 (Complaint, ¶¶ 42, 46). These damages are fixed. As such, there is no allegation of continuing conduct or the threat of continuing conduct directed to Reem. *See MediaCap Partners*, 2026 WL 607692, at *1 (*quoting Camara v. Alltran Fin. LLP*, No. 21-cv-1713 (LJL), 2021 WL 8531660, at *2 (S.D.N.Y. Sept. 22, 2021)). Moreover, there can be no significant prejudice caused by holding discovery in abeyance pending the Motion to Dismiss because any available evidence, to the extent it exists in 2026, already is a decade old.

Finally, with respect to the third factor, Evanston's Motion to Dismiss is strong and identifies several purely legal bases for dismissing Reem's complaint and fully disposing of this lawsuit. Accordingly, all three of the factors identified in *Hong Leong* weigh in favor of granting Evanston's request for stay pending the Court's decision on the Motion to Dismiss.

### III. <u>CONCLUSION</u>

For the foregoing reasons, Evanston respectfully requests that this Court grant Evanston's Motion and schedule a Rule 16 case management conference and grant Evanston's Motion to Stay pending the Court's decision on the Motion to Dismiss.

---

[2] As Judge Liman recently noted in granting a motion to stay discovery pending resolution of a motion to dismiss: "[t]o the extent the motion to dismiss does not result in the dismissal of all counts, it may nevertheless serve to narrow the issues that will remain, thereby streamlining future discovery." *MediaCap Partners*, 2026 WL 607692, at *1. Evanston, respectfully, is confident that its Motion to Dismiss will result in a dismissal of all counts, but even were the Court to dismiss some of Reem's complaint, that dismissal likely would greatly streamline the scope of future discovery.

The Honorable Colleen McMahon
May 6, 2026
Page 9

**troutman⫟
pepper locke**

---

Respectfully submitted,

**TROUTMAN PEPPER LOCKE LLP**

By_____
Richard J. Pratt
Matthew J. Griffin

Cc:    All counsel of record via ECF

**INDEX OF EXHIBITS TO EVANSTON INSURANCE COMPANY AS SUCCESSOR BY MERGER TO ALTERRA EXCESS & SURPLUS INSURANCE COMPANY'S MOTION FOR A RULE 16 CONFERENCE AND A STAY PENDING THE COURT'S DECISION ON EVANSTON'S MOTION TO DISMISS**

| Exhibit Number/ Letter | Brief Description |
|---|---|
| 1 | Declaration of Matthew J. Griffin in Support of Motion for a Rule 16 Conference and a Stay Pending the Court's Decision on Evanston's Motion to Dismiss |
| A | April 9, 2026 Letter from Lita Beth Wright to Matthew Griffin |

# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Reem Bridals, LLC, | Case No.  1:25-cv-07817-CM-RFT |
| Plaintiff, | |
| v. | |
| The Burlington Insurance Company and Alterra America Insurance Company, | |
| Defendants. | |

**DECLARATION OF MATTHEW J. GRIFFIN IN SUPPORT OF MOTION FOR A RULE 16 CONFERENCE AND A STAY PENDING THE COURT'S DECISION ON EVANSTON'S MOTION TO DISMISS**

I, Matthew J. Griffin, declare as follows:

1.      I am an Associate in the law firm of Troutman Pepper Locke LLP ("Troutman"), attorneys for Defendant, Evanston Insurance Company as successor by merger to Alterra Excess & Surplus Insurance Company, in the above-captioned action.  As such, I am fully familiar with the document identified below and am competent to testify, as necessary, about it.

2.      On April 9, 2026, counsel for Plaintiff Reem Bridals, LLC, Lita Beth Wright, sent me a letter (the "April 9 Letter").  Attached hereto as **Exhibit A** is a true and correct copy of the April 9 Letter.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: May 6, 2026

Matthew J. Griffin

1

# EXHIBIT A

# A M I N I ᴸᴸᶜ

**Lita Beth Wright**
MEMBER NY & NJ BARS

212.497.8207
lbwright@aminillc.com

April 9, 2026

**BY EMAIL** (Matthew.Griffin@troutman.com)

Matthew J. Griffin
Troutman Pepper Locke LLP
401 9th Street, N.W., Suite 1000
Washington, D.C. 20004

**Re:**    ***Reem Bridals, LLC v. The Burlington Insurance Company and Alterra America Insurance Company*, No. 1:25-cv-07817-CM**

Dear Matthew:

We write in response to your letters dated March 27, 2026 and April 3, 2026 (the "March 27 Letter" and the "April 3, 2026 Letter," respectively, and together, the "Alterra Letters"). In the Alterra Letters, you continue to insist that Reem engage in broad discovery into irrelevant topics already decided in the Underlying Action. For the reasons set forth in Reem's correspondence to you dated March 12, 2026 (the "Reem Letter") and reiterated below, Reem will not amend its objections and responses or its production of documents.

**RFPs Regarding Reem's Damages (RFPs Nos. 4-9, 11, 16)**
The March 27 Letter continues to press for discovery into Reem's damages in the Underlying Action[1], this time arguing that its requests are not directed at the "merits" of the underlying claim but rather at preventing a supposed "double recovery." *See* March 27 Letter at 2. As explained more fully in the Reem Letter, all Reem's previous recoveries are reflected in the Judgment and were already analyzed and accounted for by Judge Marin during the JHO hearing. Both the Judgment (produced at REEM_004424) and Judge Marin's Decision After Inquest (produced at REEM_004416) answer Alterra's inquiries. The March 27 Letter does not articulate how additional discovery into the bases for the damages awarded in the Underlying Action could possibly bear on the question of double recovery. The Judgment speaks for itself, and explicitly identifies what was recovered by Reem when it was entered on June 4, 2025. As we previously represented in the Reem Letter, Reem has not made any additional recoveries since the Judgment was entered. There is simply nothing more that could be learned from the discovery requested in the March 27 Letter.

As to Reem's response to RFP No. 5, Reem's recovery from Assurance Company of America was made before the initiation of the Smoke and Soot Action (as defined by Alterra in its own request for production). *See* REEM_004422 ("Assurance paid Reem Bridals the $2,461,600 policy in four checks; one for $25,000 (dated April 1, 2014) and three $812,200 checks, dated May 14, 2014"). Reem's response is therefore correct because that recovery was not made in conjunction with the Smoke and Soot Action.

---

[1] Capitalized terms have the same meaning as in the Reem Letter unless indicated otherwise.

131 WEST 35TH STREET, 12TH FLOOR • NEW YORK, NY 10001
P 212.490.4700 • F 212.497.8222 • www.aminillc.com

Matthew J. Griffin
April 9, 2026
Page 2

**RFPs Regarding Specific Persons and Entities (RFPs Nos. 12-15, 17); RFPs Regarding the Demolition Work and the "Alleged" Forgery (RFPs Nos. 20, 22-28, 38); RFP Regarding MJR's Lack of Cooperation with Alterra (RFP No. 36); RFPs Regarding Documents Produced in the Smoke and Soot Action (RFP No. 37); RFPs Regarding Other Coverage Issues and Reem's GBL § 349 Claim (RFPs Nos. 39-42,43) and RFP Regarding Lowenthal P.C. (RFP No. 45)**

The discovery Alterra complains is missing in connection with the Underlying Action is irrelevant. Although it is true the relevance standard is construed broadly, this broad standard does not equate to unlimited access. The party seeking discovery must be able to "articulate a concrete linkage between the discovery sought and the claims or defenses asserted in the case." *Yusupov-Millevoi v. Kingyum Transports LLC*, 349 F.R.D. 491 (S.D.N.Y. 2025). Alterra cannot do this in connection with its requests for discovery into liability of other defendants in the Underlying Action (RFP Nos. 22-27, 37), since there is no link between the liability of the defendants in *that* case and the defendants' liability in *this* case.

The March 27 Letter does not articulate why Alterra needs anything additional to be produced to prove their defenses here. If Alterra contends that the defenses raised in its motion to dismiss will not be asserted in its answer to the complaint, please advise. You seem to be suggesting that once the Court decides Alterra's motion, Alterra will put Reem on notice of different defenses and then discovery on those defenses will begin anew or, if discovery is over by then, Reem will not be permitted to take discovery on the defenses pleaded in its answer.

Alterra's complaint that Reem must amend its responses to RFP Nos. 12-15, 17, 20, 30-31, and 33 to explicitly state that it has produced all responsive documents in its custody and/or control is unfounded in the language of the federal rules. Fed. R. Civ. P 34 has no requirement that a party must affirmatively state that it has produced all responsive documents. We previously represented in the Reem Letter that our production is complete, and nothing more is required.

The March 27 Letter does not set forth arguments concerning RFP Nos. 39-42 and 43, so Reem will not address those here.

**Alterra's Document Production**

As an initial matter, the April 3 Letter is wrong that Reem had not "argued for any sort of waiver of privilege triggering additional discovery" before the Reem Letter. In prior correspondence and meet and confers, Reem has raised the issue that any communications or documents with counsel involving facts at issue in the fraud and forgery defense must be produced. In Reem's January 27, 2026 letter addressed to Daniel Cohen, Reem called for the production of any "communications with counsel for Alterra that include underlying facts relevant to this case". Troutman's investigation into Alterra's fraud and forgery is directly relevant here and is not protected by the attorney-client privilege, as it relates to factual development.

Either way, Alterra has not articulated why Reem raising its argument of waiver of privilege now is relevant—the parties are in the midst of discovery, and Reem continues to learn of Troutman's involvement in the development of Alterra's fraud and forgery defense. For example, through

Matthew J. Griffin
April 9, 2026
Page 3

discovery it has become apparent that Troutman (presumably Mr. Cohen and/or Mr. Pratt) drafted Michael Russell's affidavit. Based on the documents produced to date, it is clear that neither Mr. Russell nor his counsel draft it. We are entitled to discovery into how that affidavit came to be, including whether anyone from Troutman spoke to Michael Russell in connection with the drafting of the affidavit, what efforts Troutman made to confirm Michael Russell's identity and what, if anything, was done to test the veracity of the affidavit. Alterra is employing a classic sword and shield tactic to hide relevant, discoverable evidence. If Troutman intends to withhold documents responsive to the subpoena on the basis of privilege, it must produce a privilege log in compliance with Local Civil Rule 26.2, which it has not yet done with respect to these documents.

Additionally, on March 30, 2026, we asked Alterra to produce the following:

- Any documents, communications, or reports maintained by the SIU regarding MJR and investigations into the same;
- Any portions of Markel Online or other underwriting guidelines that would be relevant to underwriting excess and surplus lines coverage for a contractor in NYC in effect in 2012-2015;
- The Alterra and/or Markel document retention policy in effect in 2012-2015; and
- MSI claims handing procedures and manuals that were in effect in 2012-2015.

Please either promptly produce this material or explain your objection to its production.

We are available for a meet and confer on Monday, April 13, 2026 after 10:30 a.m. Please let us know what time works for your team.

Very truly yours,

*/s/ Lita Beth Wright*
Lita Beth Wright

(By Email)
cc:    Daniel W. Cohen (dan.cohen@troutman.com)
       Richard J. Pratt (richard.pratt@troutman.com)
       James Adrian (jim@adriancassidy.com)
       Onid Larosiliere (onid@adriancassidy.com)
       Bijan Amini
       Ariel Moore