USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 11/24/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
x

REEM BRIDALS, LLC.,

Plaintiff,

-against-

25 Civ. 7817 (CM)(RFT)

THE BURLINGTON INSURANCE COMPANY AND ALTERRA AMERICA INSURANCE COMPANY,

Defendants.

x

MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS FOLLOWING *DE NOVO* REVIEW OF THE REPORT & RECOMMENDATION OF THE HON. ROBYN F. TARNOFSKY, UNITED STATES MAGISTRATE JUDGE,

McMahon, J.:

The Court has received and reviewed the comprehensive Report of The Hon. Robyn Tarnofsky, U.S.M.J. in which the learned Magistrate Judge makes three recommendations:

First, that the court GRANT the letter motion by defendant Burlington Insurance Company to join in the pending motion by Burlington's co-defendant, Alterra America Insurance Company, to dismiss the complaint (Dkt. # 22);

Second, that the court DENY the motion by Plaintiff to strike Burlington's Reply Brief in support of the motion to dismiss (Dkt. # 33); and

Third, that the court GRANT the motions by both defendants (made originally by Alterra and subsequently joined by Burlington) to dismiss the complaint in this action with prejudice and without leave to amend, principally on the ground that Reem is barred by res judicata from suing the insurers on this claim. (Dkt. # 13).

The court has also reviewed the objections to Judge Tarnofsky's Report and Recommendations that were timely filed by Plaintiff, and the response to the objections that were filed by Defendants. See Dkt. ## 102, 106, 108.

Reem's objections are limited to so much of the Report as recommended that the insurance companies' motions to dismiss be granted. There being no objection to so much of the Report as recommended that Burlington be allowed to join in Alterra's motion to dismiss, or to file a Reply Brief, the joinder motion is GRANTED and the motion to strike the Reply Brief is DENIED. Insofar as the Report makes those recommendations, the court adopts the Report as its opinion.

The real meat of the Report addresses the two insurers' motions to dismiss Reem's complaint – principally on former adjudication grounds, but also on the ground that the policy does not by its terms cover the loss.

The learned Magistrate Judge's report explains the case and articulates the reasons for her recommendations in copious detail. I fully understand the reasons why she recommended that this court grant the dismissal motions filed by the two defendant insurance companies. However, after conducting the *de novo* review required by Fed. R. Civ. P. 72(b)(3), I am constrained to disagree with her conclusion that *res judicata* bars Reem from maintaining this lawsuit to the extent that Reem seeks a declaration that the policies cover its loss. I do, however, agree with her conclusions that the insurers are entitled to dismissal of Reem's declaratory judgment action because the terms of the policy exclude the type of damage suffered by Reem from the scope of coverage. I also agree with her recommendation that the plaintiff's cause of action under N.Y. Gen. Bus. Law § 349 should be dismissed. I adopt so much of the Report as my opinion as discusses those issues.

Insofar as the *res judicata* effect of the default judgment in the Insurers Coverage Action is concerned – the only issue on which the learned Magistrate Judge and I disagree – the case turns

on a pure question of law as to which, as it turns out, there is no binding precedent precisely on point. However, persuasive precedent that is factually apposite to this case – including both opinions from the New York Appellate Divisions: First and Third Departments and a recent non-precedential "summary order" from the United States Court of Appeals for the Second Circuit,[1] whose reading of applicable New York case law accords with my own – leads me to conclude that New York would not accord *res judicata*/claim preclusion in this lawsuit to the default judgment obtained by the two insurance companies against the tortfeasor-insured. The reason is that the defaulting party (the tortfeasor MJR) did not protect the interests of the injured party (Reem), and the injured party could not protect its interests by stepping in to litigate the coverage issue – indeed, was statutorily barred from doing so – until long after the default judgment against the tortfeasor was entered.

I realize that, because I reach the same ultimate result as does the Magistrate Judge, it is probably not necessary to deal in great detail with the former adjudication issue. However, because so much of her Report (and her hard work, for which I am very grateful) addresses that very issue – and because I confidently expect that this court's disposition will be appealed – I am taking the time to explain in some detail the reasons why I reject her recommendation in this one respect.

***The Relevant Facts***

There is no reason for me to rewrite Judge Tarnofsky's extensive report.

Briefly, Reem's premises were damaged by soot and smoke from a two-alarm fire that was caused by employees of MJR, a sub-contractor doing work on the premises. MJR carried $2

[1] There is nothing "summary" about the Second Circuit's nonprecedential "summary order" in the case of 2392 LLC v. Continental Indemnity Co., 2024 WL 4553900 (2d Cir. Oct. 23, 2024), and the order addresses a difficult issue of New York law that is not entirely settled. It would have been helpful if the Second Circuit's well-reasoned decision had been issued as a precedential opinion – or if the Circuit had certified the question of law it raised to the New York Court of Appeals, something this court is unable to do.

million in primary insurance from Defendant Burlington and $5 million in excess "follow the form" coverage from Defendant Alterra. Insofar as is relevant to this decision, the following events took place in the following order:

1. The fire occurred on March 27, 2014.

2. Burlington received notice of the fire on August 18, 2015[2] and was informed that Plaintiff was claiming coverage under the policies on October 9, 2015.

3. On January 4, 2016, Reem and its insurer filed suit in the New York State Supreme Court against MJR and several other defendants relating to the property damage resulting from the fire. (the "Underlying Action").

4. On June 14, 2016, Burlington sued MJR in the New York State Supreme Court, seeking a declaration that it did not owe coverage under its policy, for two reasons: (i) fraud in the inducement of the policy, and (ii) the loss was not covered under the terms of the policy's "Total Pollution Exclusion Enforcement" clause. (The Magistrate Judge referred to this lawsuit as the "Insurers' Default Action" but I prefer to call it the "Insurers' Coverage Action").

5. One month later, Alterra intervened in the Insurers' Coverage Action.

6. MJR, the only defendant in the Insurers' Coverage Action, defaulted.

7. On December 21, 2017, judgment of default against MJR and in favor of Alterra, declaring that Alterra had no duty to defend or indemnify MJR "or anyone with a claim against MJR" because the policy was "null, void ab initio and rescinded." (Dkt. 14, Ex. G).

8. Judgment of default against MJR and in favor of Burlington, declaring that there was no duty to defend or indemnity under Burlington's primary policy was not entered until August 3, 2021 (for reasons unknown to this court). However, because Alterra's policy was a follow the form policy – meaning that its terms were identical to the terms of the Burlington policy – the 2017 Alterra default judgment effectively disposed of MJR's claim that the Burlington policy covered its loss.

9. At all relevant times, from prior to the entry of the default judgments in the Insurers Coverage Action and until March 2024, Reem was barred by New York law from bringing a direct action against MJR's insurers, Burlington and Alterra. N.Y. Ins. L. § 3420.

10. MJR defaulted in the Underlying Action after it lost the Insurers Coverage Action.

[2] The Report says "2025," but that is obviously a typographical error.

11. In March 2024, the New York State Supreme Court granted a motion for default judgment in favor of Reem and against MJR in the Underlying Action.

12. On June 4, 2025, after an inquest at which MJR failed to appear, a judgment in favor of Reem and against MJR was entered in the New York State Supreme Court in the Underlying Action in the amount of $38,666,735.94.

13. On June 11, 2025. Reem served notice of entry of its judgment against the tortfeasor MJR on Burlington and Alterra and demanded that they pay in the full value of the policies to cover the judgment. Both insurers declined.

14. On August 19, 2025, Reem filed a complaint against Burlington and Alterra in this court, seeking a declaration that the Burlington and Alterra policies were answerable for its loss pursuant to N.Y. Ins. L. § 3420 and also alleging violations of New York's General Business Law, N.Y. Gen. Bus. Law § 349.

With these undisputed facts in mind, I turn to the legal question presented.

***Ruling on Reem's Objection to the Recommendation Based on Claim Preclusion***

A. Relevant New York's Law on Claim versus Issue Preclusion and Its Applicability to Third Parties

New York law, which governs here, affords different preclusive effect to claims and issues.

Under New York law, a final judgment on the merits in an action precludes (1) the parties to that lawsuit, or (2) their privies from relitigating issues that (1) were, or (2) could have been raised in the action in which judgment was entered. This is claim preclusion, otherwise known as *res judicata*.

Under New York law. *res judicata* precludes subsequent litigation of a claim when the previous action involved an adjudication on the merits, the previous action involved the plaintiff or someone in privity with the plaintiff, and the claims asserted in the subsequent action were, or could have been, raised in the prior action. *Monahan v. N.Y.C. Dept. of Corrections*, 214 F.3d 275, 285 (2d Cir. 2000).

Under New York law, *res judicata* applies to any order or judgment taken by default that has not been vacated, as long as the defaulting party (in this case, the insured/tortfeasor MJR) was

able to anticipate the consequences of his default and had a full and fair opportunity to defend rather than default. *Curiale v. Ardra Ins.*, 202 A.D.2d 252, 253 (1st Dep't 1994); *see also Lazides v. P&G Enters.*, 58 A.D.3d 607, 609 (2d Dep't 2009); *Eagle Ins. Co. v. Facey*, 272 A.D.2d 399, 400 (2d Dep't 2000). The Second Circuit has recognized as much. *Yoon v. Fordham Univ. Faculty & Admin. Ret. Plan*, 263 F.3d 196, 200-01 (2d Cir. 2001); *see also N. Am. Foreign Trading Corp. v. Chiao Tung Bank*, 95-cv-5189, 1997 WL 193197, at *5 (S.D.N.Y. Apr. 18, 1997).

However, the rule that default judgments are preclusive as against parties "and their privies" does not apply to a non-party to the original suit who did not have a full and fair opportunity to litigate the claims and issues that were settled in a prior lawsuit. *Taylor v. Sturgell,* 553 U.S. 880, 892 (2008). Default judgments preclude the litigation of claims by a non-party to a prior lawsuit only if there was a substantive legal relationship between the non-party and a party that pre-existed the lawsuit, such that the non-party's interests were adequately represented by someone who actually was a party to the original lawsuit. *Id.* at 893–94.

By contrast, under New York law, discrete issues (as opposed to entire claims) that were resolved in a prior lawsuit are given preclusive effect only if those issues were actually litigated. Issue preclusion, otherwise known as collateral estoppel, does not extend to issues that could have been litigated in a prior lawsuit; it only applies to issues that were "actually litigated." *Kaufman v. Eli Lilly & Co.*, 65 N.Y.2d 449, 456 (N.Y. 1985).

Because of the "actual litigation of issues" rule, issue preclusion (collateral estoppel) is generally not available under New York law where the judgment in the prior action was obtained on default, because there was no actual adjudication of the issue. *Id.* at 456–57.

B. The Law Relating to New York Insurance Law Section 3420 and Preclusion

Historically at common law, a party injured by an insured tortfeasor only had a direct right of action as against the tortfeasor – not as against the tortfeasor's insurer.

However, in N.Y. Ins. L. § 3420, the legislature created a statutory direct right of action in favor of an injured party against the insurer of the tortfeasor who injured him. That right of action is subject to the satisfaction of three pre-conditions: the injured party must (i) obtain a judgment against the tortfeasor, (ii) serve the insurance company with a copy of the judgment; and (iii) await payment for 30 days. Compliance with these requirements is a condition precedent to a direct action against the insurance company; no suit lies until 30 days have passed without payment by the insurer of the judgment. *Lang v. Hanover Ins. Co.*, 3 N.Y.3d 350, 354 (2004).

Once the three statutory prerequisites are met, the injured party steps into the shoes of the tortfeasor and can assert any right that the tortfeasor has against the tortfeasor's insurer. *Id.* at 355, *see D'Arata v. N.Y. Cent. Mut. Fire Ins. Co.,* 76 N.Y.2d 659, 665 (1990).

By the same token, prior to the satisfaction of the statutory prerequisites, the injured party is simply a claimant as against the tortfeasor, the injured party has no legal relationship with the tortfeasor. *Lang v. Hanover Ins. Co.*, 3 N.Y.3d 350, 353–55 (2004).

Therefore, while a default judgment declaring non-coverage can preclude an injured party's claim against the insurers for coverage under N.Y. Ins. L. § 3420, the default judgment will only be preclusive as against a third party if that party was in privity with the tortfeasor at the time the default judgment was entered. *See 2939, LLC v. Cont'l Indem. Co.*, No. 23-7466, 2024 WL 4553900, at *3 (2d Cir. Oct. 23, 2024).

C. The Default Judgments in the Insurer Coverage Actions are Not Res Judicata As Against Reem in this Action

The rules summarized above explain why the Magistrate Judge erred in concluding that the default judgments obtained by Burlington and Alterra, while preclusive as against MJR, do not preclude Reem from litigating the issue of coverage.

The default judgments obtained by Burlington and Alterra (judgment entered in December 2017 and amended and corrected in February and April 2018) and Burlington (judgment entered in August 2021) were to the effect that the two insurers had no duty to defend or indemnify MJR with respect to claims asserted against MJR by Reem arising out of the fire at Reem's premises. The learned Magistrate Judge correctly concluded that these were adjudications on the merits – despite the fact that there was no actual litigation and they were entered on default – because MJR was fully on notice of the Insurer Coverage Actions and had a full and fair opportunity to litigate that case rather than default. That MJR chose to default does not alter that conclusion.

The default judgments in the Insurer Coverage Actions are, therefore, entitled to whatever preclusive effect New York law would accord them.

As against MJR, the judgments preclude MJR from re-litigating the two insurers' duty to defend and indemnify under the policies.

The learned Magistrate Judge concluded that, under the New York Court of Appeals' decision in *D'Arata*, 76 N.Y.2d at 665, because an insured (like Reem) bringing a claim against a tortfeasor's (MJR's) insurers steps into the shoes of the tortfeasor, Reem is subject to any and all issues of estoppel or preclusion would apply to the tortfeasor. Since MJR is precluded from re-litigating the coverage issues, and since Reem stands in MJR's shoes, she concluded that Reem must be precluded from contesting the conclusion that the insurers owe no duty to defend or indemnify.

Reem, in effect, says this is not fair, because Reem was not in privity with MJR at the time the latter defaulted, because it did not yet have a judgment against MJR[3] and had no ability to intervene in the Insurers' Coverage Action in order to defend its interests before the default judgments were entered. Reem argues that MJR (which was undoubtedly judgment proof) had no incentive to protect Reem's interest, and that, by defaulting rather than litigating, it failed to do so.

Reem is absolutely correct that it could not have intervened to protect its interests in the Insurers Coverage Action, because, while it sued MJR in 2016, it did not obtain a judgment in its favor against MJR until 2024. Until it had that judgment in hand, Reem lacked standing to sue MJR's insurers. N.Y. Ins. L. § 3420(b)(1). So it had no opportunity to protect its own interest in the Insurer Coverage Actions.

Burlington and Alterra argue that the learned Magistrate Judge was correct when she concluded that, under New York law, there was at all times privity between Reem and MJR – even prior to the entry of judgment in favor of Reem and against MJR – such that Reem was subject to any defenses the insurers could assert against MJR, including specifically claim preclusion (res judicata). They so argue even though Reem could not have sued the insurers or defended its interest with respect to the issue of coverage until 2025 – eight years after the Alterra default judgment was entered in the first of the Insurer Coverage Actions, and four years after the default judgment was entered in favor of Burlington in the second of those lawsuits.

The only way to resolve this dispute is to take a hard look at the cases themselves.

The cases that were persuasive to the Magistrate Judge, and that are relied on by the insurers, are *D'Arata v. N.Y. Cen. Mut. Fire Ins. Co.*, 76 N.Y.2d 659, 665 (1990); *Lang v. Hanover*

[3] This was through no fault of its own; Reem sued MJR back in January of 2016, but the New York State Supreme Court took its time adjudicating that case, and it was not resolved until June of 2025 – eight years after Alterra first obtained a default judgment declaring that there was no coverage, and four years after Burlington did so.

*Ins. Co.*, 3 N.Y.3d 350, 355 (2004); and *N.Y. Cent. Mut. Fire Ins. Co. v. Kilmurray*, 181 A.D.2d 40, 43 (3d Dep't 1992).

*D'Arata* is the case in which the New York Court of Appeals held that an injured party who brings a direct action against a tortfeasor's insurer under N.Y. Ins. L. § 3420 steps into the shoes of the tortfeasor, and so is subject to any defenses the insurer could assert against its insured – including specifically any preclusive effect arising from a prior judgment. *D'Arata*, 76 N.Y.2d at 665. However, this holding cannot be divorced from its factual context, and the facts of *D'Arata* are rather different from the facts in our case. In *D'Arata*, the precise issue presented was whether a criminal judgment, entered after a full trial on the merits and a jury verdict in favor of the People, collaterally estopped the victim of the crime from litigating, in a direct action against the criminal defendant's insurer, the issue of whether the defendant had expected or intended to harm the victim. *Id.* at 662. The policy in *D'Arata* contained an exclusion for intentional acts, and the issue of intent arose and was litigated in the criminal case because intent to harm was an element of the crime of conviction as well as an exclusion under the insurance policy. *Id.* at 666. The New York Court of Appeals, discussing the doctrine of collateral estoppel, or issue preclusion (not *res judicata*, or claim preclusion), held that there was issue (not claim) preclusion on the issue of intent because (1) the issue was identical in both cases, and (2) the insured (the criminal defendant) had a full and fair opportunity to litigate the issue of intent (in his criminal trial) – and in fact he did litigate it, to the point that a jury found intent to harm beyond a reasonable doubt. *Id.* at 665–66. There was no question of default, and there was no possibility of claim preclusion, because the "claim" in the criminal case was not the claim being asserted by the injured party in its direct action against the insurer.

In *Lang*, the issue was whether an injured party could circumvent the limitations on direct actions against a tortfeasor's insurer by bringing a declaratory judgment action prior to obtaining a judgment against the tortfeasor – an argument the Court of Appeals readily rejected, given the statutory nature of the direct right of action against the tortfeasor's insured. *Lang*, 3 N.Y.3d at 352. Again, there was no question of default.

Finally, *Killmurray* – alone of all the cases on which the insurers rely – did involve the issue of claim, as opposed to issue, preclusion. *Killmurray*, 181 A.D.2d at 43. But there was no default in that case, either, although judgment of non-coverage was entered on consent. Interestingly, Justice Mikoll, writing in concurrence, declined to join the majority's conclusion that the earlier consent judgment was *res judicata*; he demurred on this point because there had been no full and fair opportunity to litigate the coverage issue, given the entry of a consent judgment. His was the minority view on the Third Department panel; the case did not go to the New York Court of Appeals. *Id.* at 43–44 (Mikoll, J., concurring).

The cases on which Reem relies are closer in their fact pattern to the instant case.

The primary case relied on is *Zimmerman v. Tower Ins. Co. of N.Y.*, 13 A.D.3d 137 (1st Dep't 2004). *Zimmerman*'s facts are virtually indistinguishable from the facts of this case. In Zimmerman, the plaintiff was injured at a roller rink. *Id.* at 137. The rink's insurer commenced a declaratory judgment action to disclaim coverage due to non-payment of premiums and gave the injured party notice of that litigation. *Id.* However, the Supreme Court refused to allow the injured party to intervene in the declaratory judgment action because he had not yet obtained any judgment against the tortfeasor. *Id.* at 138. The insured roller rink then defaulted in the declaratory judgment action, and judgment was entered to the effect that the policy did not cover the injury. *Id.* The injured party subsequently obtained a judgment against the roller rink, and tendered that judgment

to the insurer, which (predictably) declined to pay it. *Id.* Zimmerman then commenced a direct action against the insurer, which moved to dismiss on the grounds of both *res judicata* and collateral estoppel. *Id.*

The Supreme Court, applying *D'Arata*, held that Zimmerman stood in the shoes of the roller rink and so dismissed his claim against the insurer as precluded. *Id.* The First Department reversed. It held that there was no privity between Zimmerman and the roller rink, saying: "The concept of privity cannot be applied in any fair manner to plaintiff and [the roller rink] because, while Skate Key had an opportunity to contest the declaratory judgment [of non-coverage], its subrogees [i.e., Zimmerman] were prohibited from doing so." *Id.* at 139. The court noted note that the injured party had tried to intervene in the declaratory judgment action but had been denied the opportunity to do so – a decision that had been affirmed by the First Department in an earlier holding. The court concluded that "under the peculiar posture of the history of this case," it was impossible to conclude that Zimmerman and the roller rink were in privity with one another *at the time the default judgment was entered. Id.* at 139–40. This barred the insurer from relying on the *res judicata* effect of the default judgment in the coverage action brought by Zimmerman.

The First Department also held that the default judgment meant that there had been no actual litigation of the coverage issue. *Id.* at 140. Thus, the courts found that the application of collateral estoppel to bar Zimmerman from litigating whether coverage existed would also be inappropriate. *Id.*

It is hard to imagine a case more closely on point to the case at bar than *Zimmerman.* While Burlington and Alterra argue that it should not be applied because of "the peculiar posture of the history of the case," in fact the case's "peculiar posture" differs not a whit from the posture of this case. Furthermore, nothing in *Zimmerman* contradicts the holding in *D'Arata* that, were privity to

exist and were there to have been a full and fair opportunity to litigate the identical issue, collateral estoppel (not *res judicata*) would bar an injured party from relitigating an issue relevant to coverage in a direct action against a tortfeasor's insurer.

It is true that, in our case, there was no prior court order prohibiting Reem from intervening in the Insurers Coverage Actions. But there was a prior decision of the New York Court of Appeals (*Lang*, 3 N.Y.3d at 352) holding that the injured party could not evade the limitations on the right of direct action against an insurer by bringing a premature declaratory judgment action in order to litigate the coverage issue. Prior court order versus statutory limitation on the ability to sue – either one bars the injured party from obtaining relief. So that is not a difference that makes a difference.

A Third Department case far older than *Kilmurray* is to the same effect. In *American Motorists Insurance Co. v. North Country Motors*, 57 A.D.2d 158 (3d Dep't. 1977), an insurance company that had obtained default judgments declaring no duty to defend or indemnify against three tortfeasors argued that those judgments were determinative of its liability under the policy, and so barred a lawsuit by the injured party. A unanimous panel of the Appellate Division disagreed, concluding that, "A person concerned with the issue of insurance coverage cannot be deprived of an opportunity to be heard on that point by the default of another, and the doctrine of collateral estoppel or *res judicata* cannot be used to effectuate such an end." *Id.* at 160.

The other case on which Reem relies, *2939, LLC v. Cont'l Indem. Co.*, No. 23-7466, 2024 WL 4553900, at *3 (2d Cir. Oct. 23, 2024), is a non-precedential summary order from our own Court of Appeals. It was entered in a case involving parties with whom this court is more than passingly familiar.

The summary order was handed down on appeal from a judgment of the United States District Court for the Eastern District of New York (Kovner, J.), dismissing a breach of contract

action brought by 2939 and others (the EDNY Breach of Contract Action). The plaintiffs in the EDNY Breach of Contact Action alleged that Continental had breached its duty to defend and indemnify them in connection with a personal injury suffered by one Wang, the employee of Continental's insured, Bulson.[4] Prior to the commencement of the EDNY Breach of Bontract Action, Continental had sued Bulson in this court, seeking a declaration that it was not obligated to defend or indemnify Bulson in connection with the accident that left Wang paralyzed (the SDNY Coverage Action). 2939 and its co-defendants sought leave to intervene in a coverage action pending before my colleague Judge Furman (the SDNY Coverage Action), but their motion was denied. Bulson then defaulted in the SDNY Coverage Action, and Continental's motion for a default judgment declaring that the insurer had no duty to defend or indemnify Bulson was granted. Once that happened, our colleague in Brooklyn dismissed the EDNY Breach of Contract Action. She reasoned, applying *D'Arata*, that the default judgment declaring non-coverage was preclusive as to the breach of contract claim asserted by the plaintiffs in her lawsuit.[5]

It was Judge Kovner's order that the Second Circuit vacated. It did so on two grounds.

First, after a careful reading of the cases, the Court of Appeals panel found that there was no support in New York law for the argument that the default judgment against Bulson in the SDNY Coverage Action precluded 2939 from suing Bulson's insurer for breach of contract under

---

[4] Wang could not sue Bulson, his employer; his claim against Bulson was covered by Workers' Compensation. So Wang sued, *inter alia,* the owner of the property (2939) and its principals, David and Gitty Weiss. 2939 and the Weisses contended that Bulson's insurer had a duty to defend and indemnify them in connection with the accident, which left Wang paralyzed. It is a very sad story indeed.

[5] Interestingly, in 2021, this court ended up with yet another coverage lawsuit among some of the same parties and many more insurance companies arising out of the same events. While that lawsuit, *Massachusetts Bay Insurance Company v. Seneca Insurance Company*, 768 F. Supp. 3d 592 (S.D.N.Y. 2025), is technically related to both the EDNY Breach of Contract Action and the SDNY Coverage Action, the Second Circuit's decision vacating the order that dismissed the EDNY Breach of Contract case had no implications for my case; as far as I know, this court's decision in what I will call the Massachusetts Bay Action has not been appealed or overturned.

N.Y. Ins. L. § 3420. Noting that issue preclusion (collateral estoppel) is generally not available under New York law where the judgment in the prior action was obtained on default (because the issue was not actually adjudicated in the earlier lawsuit, see *111 Kaufman v. Eli Lilly & Co.*, 65 N.Y.2d 449, 456-57 (1985)), the panel held that my colleague in Brooklyn erred in relying on *D'Arata* for the proposition that the default judgment had claim preclusive effect as against 2939. The panel noted that *D'Arata* involved neither claim preclusion (it was an issue preclusion case) nor a default judgment. The panel concluded its opinion by stating that *D'Arata,* "does not support the application of claim preclusion based on the insured's default in a proceeding where he did not appear and no one was present to represent the claimant's interests." *2939, LLC*, 2024 WL 4553900, at *3. The panel found *Zimmerman* and *American Motorists Ins. Co.*, both of which are discussed above, to be far more persuasive on the issue of former adjudication under New York law – and so do I. I simply cannot agree with the learned Magistrate Judge's statement that Reem's interests were represented by MJR in the Insurers' Coverage Action. And I believe it misstates the law to hold that Plaintiff should live with the consequences of MJR's decision to default when it was statutorily barred from intervening and taking over litigation of the issue, in which it and it alone was truly interested. (See Report at 29.)[6]

But the panel went further. It also ruled that there could be no claim preclusion because there was no privity between Bulson and the plaintiffs in *2939* at the time the default judgment was entered in the SDNY Coverage Action. *2939, LLC*, 2024 WL 4553900, at *3. It so ruled for precisely the reason that Reem argues here: at the time the default judgment was entered, Wang

---

[6] If Reem had been able to bring a direct action against the insurance companies before the default judgment was entered, but failed to litigate the coverage issue on its own behalf, I agree that it would not be unfair to bind it to MJR's default. But it was legally unable to do so until the New York State Supreme Court finally entered judgment in the Underlying Action. Nothing in the record suggests that it was Reem's fault that it took nine years for the New York State Supreme Court to enter judgment in that case. It is an unhappy fact that these terrible personal injury construction cases often take more than a decade to resolve.

had not yet obtained a judgment against 2939 and the Weisses, so they could not have brought a direct action under N.Y. Ins. L. § 3420(b)(2) to defend their interest. *Id.* The Circuit reasoned that privity, which was the cornerstone of the holding in *D'Arata*, could not arise until Wang, the injured party, obtained his judgment in the underlying action. That being so, the case failed, *on due process grounds*, to satisfy any exception that New York might recognize to the "rule against nonparty preclusion." *Taylor v. Sturgell,* 553 U.S. 880, 893 (2008).

Burlington and Alterra argue that the learned Magistrate Judge was correct to conclude that *D'Arata* was the controlling precedent because (1) it was decided by the New York Court of Appeals, the State's highest court: (2) *Zimmerman* is a First Department case, and in the event of a conflict the higher court's ruling controls; and (3) *2939*, being a summary order, is non-precedential and so should not be followed. My responses are as follows:

*First, D'Arata* is not controlling precedent here. The case is pertinent only insofar as it declares a general rule of law – namely, that a default judgment can preclude a non-party from relitigating an issue[7] as long as there is privity between the third party and the defaulting party. I do not disagree with that statement of law. But that is not the law that controls the outcome of this case. Why? Because the facts in *D'Arata* are radically different from the facts in Reem's case, in three critically important ways: (i) there was no default in *D'Arata*, whereas the judgment here sought to be preclusive was entered on default; (ii) the common coverage-related issue that spanned the two cases (one criminal and one civil) was fully litigated in the earlier (criminal) case by a party with every interest in doing so, while in this case the coverage-related issue was not litigated at all; and (iii) *D'Arata* did not hold that there was privity between a defaulting tortfeasor and the injured party in every instance, and most certainly did not discuss the inability of an injured

[7] Remember, *D'Arata* was a collateral estoppel case, not *a res judicata* case. That happens to be a difference that makes a difference.

party to bring a direct coverage action against his tortfeasor's insurer until certain statutory conditions were met – conditions that had not been met in our case, because MJR defaulted in the Insurers Coverage Action years before Reem was able to obtain a judgment against MJR in the New York State Supreme Court. The insurers' reliance on *D'Arata* is reliance on a throwaway sentence, not on the result of the case; it fails to take into account the many important ways in which that case and this case are not a bit alike. As the Circuit panel recognized in *2939, LLC*, 2024 WL 4553900, at *3, *D'Arata* is simply not on point. And there is no other New York Court of Appeals case that is on point, either.

Second, there is no conflict between *D'Arata* and *Zimmerman* (or for that matter between *D'Arata* and *American Motorists Insurance*, which predated *D'Arata*). The cases concerned different issues on different facts – and the most persuasive case for our purposes is *Zimmerman* because its facts are virtually indistinguishable from the facts in Reem's case. Where, as here, the case most closely aligned with our case, on the facts and the law, is a case from a New York intermediate appellate court, this court is generally obliged to follow it, absent any contrary New York authority or other persuasive data establishing that the highest court of the state would decide otherwise. *Broder v. Cablevision Systems Corp.*, 418 F. 3d 187, 199-200 (2d Cir. 2005). I reject the argument that *D'Arata* is "contrary authority," and I know of absolutely no reason why the New York Court of Appeals would not adopt the rule of *Zimmerman* and preclude an absent third party from litigating an issue implicating its interests when a default judgment was entered without anyone's contesting the issue or protecting the absent party's interests.

Third, as for the summary order: non-precedential does not mean non-persuasive. I find the panel's reasoning in *2939* to be completely persuasive. The panel's reading of the cases accords with mine, right down the line. And while the summary order (which, as I noted above, is anything

but "summary") may not be binding, I can take *2939* as a pretty good indication of how the Second Circuit is likely to rule if and when it gets around to writing a precedential opinion on this complicated issue.

In sum, I conclude that Reem's objection to the Recommendations should be sustained insofar as it contends that the insurers' motions for judgment dismissing this case should be granted on claim preclusion grounds. Reem is entitled, under the Due Process Clause and New York law, to its day in court on the issue of whether Burlington and Alterra have an obligation to cover the judgment it has obtained against MJR – up to the $7 million limits of the policies.

For this reason, I reject the learned Magistrate Judge's recommendation that Alterra's motion to dismiss the complaint on the ground of *res judicata* (in which Burlington joins) be granted, and I DENY the insurers' motion to dismiss the complaint on former adjudication grounds. I decline to adopt pages 17–30 of the Report as the opinion for the court.[8]

***Ruling On Reem's Objections to the Dismissal of the Complaint under N.Y. Ins. L. § 3420 Based on The Terms of the Policy***

Because in her wisdom the learned Magistrate Judge anticipated that I might see this complicated issue differently than she did, Judge Tarnofsky also recommended that I dismiss Reem's coverage claim on the alternative ground that the loss is not covered by the policies, due to the Total Pollution Exclusion. I agree with her reasoning.

Judge Tarnofsky is correct that New York courts routinely dismiss N.Y. Ins. L. § 3420 claims when the terms of the policy preclude coverage. *Mt. Hawley Ins. Co. v. Penn-Starr Ins. Co.*,

---

[8] The Alterra Default Judgment, which is quoted above, holds that the policy was null and void *ab initio*, which suggests that the court entered the default on the ground that the policy was procured by fraud – not on the ground that there was no coverage for the loss under the Total Pollution Exclusion. The learned Magistrate Judge discussed this aspect of the case when ruling on the alternative ground that coverage should be denied on the merits.

151 A.D.3d 528, 529 (1st Dep't 2017). She recommended that I dismiss Reem's Cause of Action under N.Y. Ins. L. § 3420 because the plaintiff failed to plead facts from which a reasonable trier could conclude that Reem had stated a claim for relief. Reem objects, arguing that inconsistency between the certificates of insurance that were issued to third parties and the policy's endorsement gives rise to an issue of fact that cannot be resolved on a pre-discovery Rule 12(b)(6) motion to dismiss.

Reem's objection appears to be that the learned Magistrate Judge resolved a disputed issue of fact – or at least a potentially disputed issue of fact – prematurely, on a motion to dismiss. Burlington and Alterra counter that the objection is baseless because there is actually no inconsistency between the policies and the certificates of insurance. In this case, the insurers are correct, for the reasons Judge Tarnofsky identified in her Report.

The Burlington Policy contains the Total Pollution Exclusion. It provides that coverage is excluded for liability that would not have occurred, in whole or in part, but for the discharge, dispersal, seepage, migration. release or escape of "pollutants." The term "pollutants" includes smoke and soot. The damage suffered as a result of the fire at Reem's premises allegedly was caused by smoke and soot – not from burning or water. Dkt. 5, Ex. A, ¶ 10. It thus appears from the face of the policy that the type of damage suffered at the insured premises is excluded from coverage under the policy.

But Reem says that certificates of insurance that were issued to MJR suggest that Burlington (and Alterra, since the excess policy is follow the form) were in fact providing coverage for smoke and soot damage. The reason is not the language of the certificates – which do not mention offering coverage for smoke or soot damage, and which, by their express terms, caution that they do not "amend, extend or alter" the coverage afforded by the policies. It is, rather, that

the City of New York is named as an additional insured in the certificates of insurance, and the City's insurance requirements obligated MJR to obtain certain Commercial General Liability (CGL) coverage – coverage that would not admit of the Total Pollution Exclusion. See 1 R.C.N.Y. §101-08. Reem essentially argues that, to the extent the policy's exclusion for pollution is inconsistent with the insurance that MJR was required to obtain, the policy must be read to include the necessary coverage – even if the express terms of the policy quite plainly exclude it.

The learned Magistrate Judge concluded that the insurers had the better of the argument, and I am constrained to agree, for the following reasons:

1. The Total Pollution Exclusion is listed among the "Listings of Forms and Endorsements" in the policy, so Reem's argument that it might not have been part of the policy as issued is specious.

2. The certificate of insurance on which Reem relies is dated 16 months after the fire took place – in July 2015.

3. The certificate of insurance makes no representation, express or implied, that the insurer was offering coverage for smoke and soot damage – types of damage that are expressly excluded from coverage under the terms of the policies.

4. The certificate of insurance explicitly disclaims conferring any rights on the certificate holder, and by its terms does not amend, extend or alter the coverage made available by the terms of the policy itself. Indeed, the COI states, in all capital letters: "THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO AL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES."

5. Where, as here, the language of the policy is clear and unambiguous (and the Total Pollution Exclusion is nothing if not clear and unambiguous), there is no basis to consider, on a motion to dismiss or otherwise, evidence about what the insured "thought" it was getting or "wanted" to get by way of coverage. Courts enforce insurance policies as they are written – not as they are imagined.

6. Finally, 1 R.C.N.Y. § 108-08 does not impose any requirement that insurers provide any specific type of coverage. By its terms it applies only to "permits," *see* § 108-08(b), and imposes on the permittee (here, MJR) the duty to provide the City with proof of coverage. The section identifies the types of coverage that the permittee must obtain, and plainly included among them is commercial general liability insurance. The City is not supposed to issue a permit to a construction firm like MJR if that firm fails to submit the required proof of insurance. But if a permittee like MJR fails to obtain the

> insurance it is supposed to obtain, the City's remedy is against the permittee – not the insurer. And the remedy for the permitee's failure to obtain insurance that conforms to the requirements of §108-08(d) is that the permittee (MJR) must indemnify the City for any losses that should have been covered by insurance. Absolutely nothing Section 108-08 authorizes courts to reform insurance policies that do not conform to city requirements. Therefore, assuming arguendo that the requirements of this section were not met by MJR,[9] it is irrelevant for purposes of assessing what the policies it actually did obtain covered.

For these reasons, I find the objections unavailing and the learned Magistrate Judge's Report persuasive. I will, therefore, adopt her recommendation and dismiss Reem's claim under N.Y. Ins. L. § 3420, and I incorporate pages 31–35 of the Report into this opinion.

***Reem's Objections to the Dismissal of the Claim Asserted Under N.Y. Gen. Bus. Law § 349***

I can dispose of Reem's objection to the learned Magistrate Judge's recommendation that I dismiss its claim under N.Y. Gen. Bus. Law § 349 in much more summary fashion, because I agree entirely with her conclusions that the complaint fails to plead that these insurance policies are "consumer oriented behavior" within the meaning of that law – a ruling that disposes of the General Business Law claim without more.

The law is clear that not all contracts of insurance fall within the definition of the term "consumer oriented behavior" for purposes of N.Y. Gen. Bus. Law § 349. I can adopt wholesale the learned Magistrate Judge's Recommendation at pages 35-47 as the opinion of the court because, after reviewing Reem's objections thereto, I can see absolutely nothing wrong with Judge Tarnofsky's conclusions. The substantial amount involved in the transactions, the fact that the

---

[9] Section 108-08(d)(1)(i)(E) lists the exclusions that may not appear in a policy covered by that section; there are eight such types of exclusions. None of them expressly forbids pollution exclusions. However, one of the eight forbidden exclusions reads "an insured contract exclusion broader than any contained in the most recent edition of ISO Form CG 0001" (which, at the time of the fire, would have been the April 2013 edition of the standard Commercial General Liability Policy, *see* Commercial General Liability Coverage Form, CG 0001 (April 2013), https://forms.nationwideexcessandsurplus.com/FormsExternal/ContractForm?num=CG%2000%2001&ed=04-13). I will assume, for purposes of argument, that the City would take the position that any special exclusions from coverage not found in the base form of the standard policy (any additional exclusions) are not permitted under this regulation.

purchases of insurance were business to business transactions among sophisticated parties (large insurance companies and contractors doing business on multiple large projects in New York City), and the fact that terms of the policies appear to have been tailored to the unique circumstances of the parties, rather than simply including provisions that are common to all similar type policies, all counsel against a conclusion that these policies were not "consumer oriented" . The certificates of insurance do not contain statements that a reasonable consumer would find misleading. And the complaint fails to plead facts (as opposed to pleading conclusory allegations) from which a reasonable trier of fact could conclude that Burlington and Alterra were engaged in any recurring pattern of deceptive behavior.

I thus adopt pages 35–47 of the Report as my own opinion on this objection.

## CONCLUSION

For the foregoing reasons, I accept the learned Magistrate Judge's recommendation that the motion by Alterra and Burlington to dismiss Reem's complaint as against them be granted, and I direct the Clerk of Court to enter judgment dismissing Reem's complaint as against both defendants, and then close the file.

The Clerk should remove the motions at Docket Numbers 13, 22, and 33 from the court's list of open motions.

This is a written opinion on a motion to dismiss.

Dated: November 24, 2026

U.S.D.J.

BY ECF TO ALL COUNSEL